UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq (DSC-1397)
Caitlin C. Conklin, Esq. (CCC-5117)

*Proposed Special Counsel for the Debtors and
Counsel for non-Debtor Plaintiffs*

|  |  |
|---|---|
| In re:<br><br>Supor Properties Enterprises LLC, *et al.*[1],<br><br><br>Debtors. | Case No. 24-13427 (SLM)<br>Judge: Stacey L. Meisel<br>Chapter 11<br><br>(Joint Administration Requested) |
| Supor Properties Enterprises LLC: J Supor 136-1 Realty LLC; Supor-172 Realty LLC; Supor Properties 600 Urban Renewal, LLC; JS Realty Properties, LLC; Supor Family LLC; Supor Properties-400 Limited Liability Company and; the Marital Trust under the Last Will and Testament of Joseph Supor, Jr.,<br><br>Plaintiffs,<br><br>v. | Adv. Pro. No. |

---

[1] The Debtors in these related chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

American Dream Resorts, Ltd., RDA1: Supor
Properties Enterprises LLC;  RDA 2&3: Supor
Properties Enterprises LLC;  RDA 4: J Supor 136-
1Realty LLC;  RDA 5: Supor 172 Realty LLC; RDA
6: Supor Properties 600 Urban Renewal, LLC; Supor
Studio City 2 LLC, Supor Studio City 3 LLC; Supor
Studio City 4 LLC and Supor MT, LLC

                                    Defendants.

## VERIFIED COMPLAINT

Plaintiffs Supor Properties Enterprises LLC; J Supor 136-1 Realty LLC; Supor-172
Realty LLC; Supor Properties 600 Urban Renewal, LLC; JS Realty Properties, LLC; Supor
Family LLC; Supor Properties-400 Limited Liability Company; and the Marital Trust under the
Last Will and Testament of Joseph Supor, Jr., (each a "Plaintiff" and collectively, the
"Plaintiffs"), for their Verified Complaint against Defendants American Dream Resorts, Ltd.;
RDA1: Supor Properties Enterprises LLC; RDA 2&3: Supor Properties Enterprises LLC; RDA
4: J Supor 136-1Realty LLC;  RDA 5: Supor 172 Realty LLC; RDA 6: Supor Properties 600
Urban Renewal, LLC, Supor Studio City 2 LLC; Supor Studio City 3 LLC; Supor Studio City 4
LLC; and Supor MT, LLC (each a "Defendant" and collectively the "Defendants") hereby state
and allege as follows:

### THE PARTIES

1.      Plaintiff Supor Properties Enterprises LLC ("Supor Enterprises") is a Delaware
limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New
Jersey 07032. Supor Enterprises is a chapter 11 debtor in a bankruptcy proceeding pending
before this Court.

2.      Plaintiff J. Supor 136-1 Realty LLC ("Supor 136") is a Delaware limited liability

company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032. Supor 136 is a chapter 11 debtor in a bankruptcy proceeding pending before this Court.

3.      Plaintiff Supor-172 Realty LLC ("Supor 172") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032. Supor 172 is a chapter 11 debtor in a bankruptcy proceeding pending before this Court.

4.       Plaintiff Supor Properties 600 Urban Renewal, LLC ("Supor 600") is a New Jersey limited liability company, with a post office address of 433 Bergen Avenue, Kearny, NJ 07032. Supor 600 is a chapter 11 debtor in a bankruptcy proceeding pending before this Court.

5.      Plaintiff JS Realty Properties, LLC ("JS Realty") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032. JS Realty is a chapter 11 debtor in a bankruptcy proceeding pending before this Court.

6.      Plaintiff Supor Family, L.L.C. ("Supor Family") is a Delaware limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

7.      Plaintiff Supor Properties-400 Limited Liability Company ("SP 400") is a New Jersey limited liability company, with a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

8.      Plaintiff Marital Trust under the Last Will and Testament of Joseph Supor, Jr., dated September 13, 2002, as amended by first codicil dated June 14, 2007 (the "Marital Trust" and, with Supor Enterprises, Supor 136, Supor 172, Supor 600, JS Realty and Supor Family, each a "Plaintiff" and collectively the "Plaintiffs") has a post office address of 433 Bergen Avenue, Kearny, New Jersey 07032.

9.      Defendant American Dream Resorts, Ltd., ("ADR") is a New York corporation, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

10.    Defendant RDA1: Supor Properties Enterprises LLC ("RDA 1: Supor Enterprises") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

11.    Defendant RDA 2&3: Supor Properties Enterprises LLC ("RDA 2&3: Supor Enterprises") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

12.    Defendant RDA 4: J Supor 136-1Realty LLC ("RDA 4: Supor 136") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

13.    Defendant RDA 5: Supor 172 Realty LLC ("RDA 5: Supor 172") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

14.    Defendant RDA 6: Supor Properties 600 Urban Renewal, LLC (RDA 6: Supor 600") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

15.    Defendant Supor Studio City 2 LLC ("Supor Studio City 2") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

16.    Defendant Supor Studio City 3 LLC ("Supor City 3") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

17.    Defendant Supor Studio City 4 LLC (Supor Studio City 4") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

18.     Defendant Supor MT, LLC ("Supor MT" and, with RDA1: Supor Enterprises; RDA 2&3: Supor Enterprises; RDA 4: Supor 136; RDA 5: Supor 172; RDA 6: Supor 600; Supor Studio City 2, Supor Studio City 3 LLC; Supor Studio City 4 LLC, each a "Defendant" and collectively the "Defendants") is a New York limited liability company, with an address of 123 N Sea Road, #516, Southampton, New York, 11968.

## JURISDICTION AND VENUE

19.     On April 2, 2024, (the "Petition Date") Supor Enterprises; Supor 136; Supor 172; Supor 600; JS Realty: Supor Properties Breiderhoft LLC ("Supor Breiderhoft"); Supor Properties Devon LLC ("Supor Devon"); Shore Properties Associates North LLC ("Shore Properties"); Supor Properties Harrison Avenue LLC ("Supor Harrison Avenue") (each a "Debtor" and collectively, the "Debtors" and, with the exception of Supor Breiderhoft, Supor Devon, Shore Properties and Supor Harrison Avenue, the "Debtor Plaintiffs") filed voluntary chapter 11 bankruptcy petitions with the United States Bankruptcy Court for the District of New Jersey.  That bankruptcy case is pending.

20.     This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(b)(2) and (c).  This is a "core proceeding" as to the claims of the Debtors against pursuant to 28 U.S.C. §157(b)(2). This is a "related to" proceeding as to the claims of Plaintiffs SP 400, Marital Trust, Supor Family (collectively the "Non-Debtor Plaintiffs") pursuant to 28 U.S.C. §157(c) and 1334 (b).

21.     Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This adversary proceeding is commenced pursuant to Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### A. The Plaintiffs and Their Properties

22.     Debtor Plaintiff Supor Enterprises owns part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 5.02 in bock 151, lot 17.02 in block 137 and lot 1.02 in block 149) ("FER 1 Property"). The sole member of Supor Enterprises is S&B Realty Partnership. The partners of S&B Realty Partnership are the Marital Trust and Joseph Supor III ("Mr. Supor").

23.     Debtor Plaintiff Supor 136 owns part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1.07 in bock 136) ("FER 2 Property"). The sole member of Supor 136 is J. Supor 136-1 LLC. The sole member of J. Supor 136-1 LLC is Mr. Supor.

24.     Debtor Plaintiff Supor 172 owns part of the property commonly known as 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1 in bock 172) ("FER 3 Property" and together with FER 1 Property and FER 2 Property, the "FER Property"). The sole member of Supor 172 is Supor-172 LLC. The sole member of Supor-172 LLC is Mr. Supor.

25.     FER 1 Property, FER 2 Property and FER 3 Property are contiguous parcels of unimproved and vacant land, together comprising approximately 9.85 acres.

26.     Debtor Plaintiff Supor 600 owns the property commonly known as 600 Guyon Drive, Harrison NJ (lot 16.01 in bock 150) ("Guyon Property"). The sole member of Supor 600 is Supor Properties 600 UR Holding LLC. The sole member of Supor Properties 600 UR Holding LLC is Mr. Supor.

27.     The Guyon Property consists of the "Panasonic Building" which is a 50,000 square foot warehouse and office space on approximately 3 acres of land.

28.    The FER Property and the Guyon Property (collectively the "RDA Properties")
are the subject of an approved Redevelopment Agreement with the Town of Harrison (the
"Harrison RDA") which gives the owners of the RDA Properties the right to redevelop the FER
Properties and construct 1500 residential units, a 200-room hotel, 151,960 square feet of retail
space, office space and 4,570 parking spaces.

29.    Debtor Plaintiff JS Realty owns the property commonly known as 401 Supor
Blvd a/k/a part of 500 Supor Blvd a/k/a 608 Supor Blvd, Harrison NJ (lot 1.02 in bock 222)
("JS Realty Property"). The members of JS Realty are Mr. Supor (90%) and the Supor Family
Trust (10%).

30.    The JS Realty Property consists of the "Red Brick Building", which is a
70,000 Square foot building used for office and studio space on approximately 1 acre of land.

31.    Plaintiff Supor Family LLC ("Supor Family") owns the property commonly
known as 129 Sanford Avenue, Kearny, NJ (lot 14.01 block 279) ("Sanford Property"). The
members of Supor Family LLC are the Estate of Roseann Supor (50%) and the Marital Trust
(50%).

32    The Sanford Property consists of approximately 4.41 acres improved by a
warehouse/office building and is presently subject to a lease in favor of Bunge Oils, Inc.

33.    Plaintiff Supor Properties-400 Limited Liability Company ("SP 400") owns
the property commonly known as 400 Supor Boulevard, Harrison, NJ (lot 1 in bock 201)
("400 Supor Boulevard Property" and, collectively with the JS Realty Property and the
Sanford Property, the "Studio City Properties"). The sole member of Supor Properties-400
Limited Liability Company is Mr. Supor.

34.     The 400 Supor Boulevard Property consists of approximately 1.435 acres improved with a 70,000 square foot building commonly known the "Goodwill Building" that is presently vacant.

35.     Plaintiff Marital Trust is the owner of certain real property located at 310-314 Manor Avenue, Harrison New Jersey (the "Manor Avenue Property").

36.     The Manor Avenue property is a parcel of approximately 1.5 acres consisting of paved lot that is leased for vehicle parking and storage to, among others, PSEG and Skansa USA.

**B.  The Mortgage Loan From 1000 Frank E. Rodgers 1 LLC**

37.     On or about December 31, 2020, 1000 Frank E. Rodgers 1 LLC ("Lender") extended a loan in the original principal amount of up to $72,500,000 (the "Mortgage Loan") to, *inter alia*, Supor Enterprises, Supor 136, Supor 172, Supor 600, JS Realty, Supor Breiderhoft, Supor Devon, Shore Properties, and Supor Harrison Avenue (collectively the "Original Borrowers").

38.     The Mortgage Loan is evidenced by (i) that certain Land Loan Agreement ("Mortgage Loan Agreement") dated as of December 31, 2020 made by and between Lender and, *inter alia*, Original Borrowers (except Supor Harrison Avenue) another Supor related entity by the name of Supor Properties Boonton LLC ("Supor Boonton") and the Marital Trust, and (ii) that certain Mortgage Note (the "Mortgage Note"), dated as of December 31, 2020, by, *inter alia*, Original Borrowers and the Marital Trust in favor of Lender in the original principal amount of up to $72,500,000.

39.     The Mortgage Loan is secured by, *inter alia*, (i) that certain Mortgage and Security Agreement, dated as of December 31, 2020, by Original Borrowers (other than

Supor Breiderhoft, Shore Properties and Supor Harrison Avenue) Supor Boonton and the Marital Trust for the benefit of Lender encumbering the real property as defined in the Mortgage Loan Agreement and including, *inter alia*, the FER Property, the Guyon Property, the Sanford Property, the 400 Supor Boulevard Property, the JS Realty Property (collectively, the "Mortgaged Properties") (the "Mortgage", and together with the Mortgage Loan Agreement, the Mortgage Note, and such other documents executed in connection with and/or pertaining to the Mortgage Loan, the "Mortgage Loan Documents").

40.     The Mortgage Loan is further secured by, among other documents, certain Guaranty Agreements executed by Mr. Supor in favor of Lender.

41.     Upon information and belief, Lender is owned by/and or controlled by Madison Realty Capital Advisors LLC ("Madison").

**C. The Mezzanine Loan From 1000 Frank E. Rodgers 2 LLC**

42.     On or about December 31, 2020, 1000 Frank E Rodgers 2 LLC (also a "Lender" and together with 1000 Frank E. Rodgers 1 LLC, the "Lenders") extended a loan in the original principal amount of $1,000,000 (the "Mezzanine Loan") to *inter alia*, Supor 136, Supor 172, JS Realty, Supor 600 Supor Breiderhoft, Supor Devon, Shore Properties, and another Supor Related entity by the name of S&B Realty Partnership (collectively the, "Mezzanine Borrowers").

43.     The Mezzanine Loan is evidenced by (i) that certain Mezzanine Loan Agreement (the "Mezzanine Loan Agreement") dated as of December 31, 2020, executed by the Mezzanine Borrowers; and (ii) that certain Mezzanine Promissory Note dated as of December 31, 2020, by, among others, Mezzanine Borrowers in favor of Lender in the original principal amount of $1,000,000.

44. The Mezzanine Loan is secured by those certain Ownership Interests Pledge and Security Agreements, dated January 6, 2021, given by each Mezzanine Borrower for the benefit of Lender (collectively, the "Mezzanine Pledge," and, together with the Mezzanine Loan Agreement, the Mezzanine Note, and such other documents executed in connection with and/or pertaining to the Mezzanine Loan,  the "Mezzanine Loan Documents"), encumbering each Mezzanine Borrower's ownership interest in favor of Lender.

45. The Mezzanine Loan is further secured by, among other documents, certain Guaranty Agreements executed by Mr. Supor in favor of Lender.

46. Upon information and belief, Lender is owned by/and or controlled by Madison.

**D. The Foreclosure Action and the Forbearance Agreement**

47. On or about January 10, 2023, Lender filed a complaint in foreclosure in the Superior Court of New Jersey Chancery Division under Docket No. F-000308-23 seeking to, *inter alia,* foreclose on the Mortgaged Properties.

48. Effective as of April 12, 2023, Lenders, Original Borrowers and others entered into a Forbearance Agreement, wherein, among other things, Original Borrowers and Mr. Supor provided an Agreement Regarding DIL Documents (the "DIL Agreement").

49. Pursuant to the DIL Agreement. deeds in lieu of foreclosure for the Mortgaged Properties were given to Lender to hold in escrow pursuant to the Forbearance Agreement and DIL Agreement.

50. Additionally, pursuant to the Forbearance Agreement, on or about April 12, 2023, Lender and, inter alia, SP 400 and Supor Family entered into certain Ownership Interest Pledge and Security Agreements whereby those entities pledged their ownership interests to Lender (the "Additional Lender Pledge").

**E.  <u>The ADR Commitment to Refinance the Madison Loans</u>**

51.    Prior to May of 2023, ADR, through its agent(s), principal(s) and representative(s) Joesph Gentile Sr. and Joseph Gentile, Jr. approached the Plaintiffs and proposed a joint venture relative to the real properties owned by the Plaintiffs.

52.    In particular, Joesph Gentile Sr. and Joseph Gentile, Jr. proposed a joint venture whereby ADR would contribute knowledge, experience and relationships to refinance the Mortgaged Premises to satisfy all amounts due to Lenders (the "<u>Madison Indebtedness</u>").

53.    Pursuant to the proposed joint venture, the proceeds of the refinance would be sufficient to satisfy the Madison Indebtedness in full and provide a return of equity to the Plaintiffs in the amount of at least $117 million.

54.    To accomplish the proposed joint venture, ADR and each Plaintiff would enter into an operating agreement to create a new entity to be jointly and equally owned by ADR and the respective Plaintiff. Pursuant to that operating agreement, the applicable Plaintiff would contribute a deed to the real property owned by it to the new joint venture entity (each such property, an "<u>OA Deeded Property</u>"). Upon the successful closing of a refinancing, the contributed deed to the OA Deeded Property(ies) would be recorded in the name of the applicable joint venture entity, which recording would not be occur until the closing of the promised refinancing to satisfy the Madison Indebtedness and discharge the Lenders' Mortgages.

55.    Pursuant to the Operating Agreements executed between ADR and the Plaintiffs (defined below) ADR specifically agreed *"to obtain, replace, modify, refinance and effectuate the presently defaulted Madison Collateralized and encumbering mortgages and liens . . ."*

56.     In connection with the Operating Agreements, Joseph Gentile, Sr. and/or Joseph Gentile, Jr., as principal(s), affiliate(s) or agent(s) of ADR, made statements and representations that ADR was experienced in real estate finance generally and the refinancing of commercial properties in particular.

57.     In connection with the Operating Agreements, Joseph Gentile, Sr., and/or Joseph Gentile, Jr., as principal(s), affiliate(s) or agent(s) of ADR, made statements and representations that ADR was experienced in real estate finance with respect to municipal approved redevelopment projects.

58.     In connection with the Operating Agreements, Joseph Gentile, Sr., and/or Joseph Gentile, Jr., as principal(s), affiliate(s) or agent(s) of ADR, made statements and representations that ADR had relationships with financial institutions that would result in refinance offers and facilitate the refinancing process.

59.     In connection with the Operating Agreements, Joseph Gentile, Sr., and/or Joseph Gentile, Jr., as principal(s), affiliate(s) or agent(s) of ADR, made statements and representations that ADR would be able to timely deliver an acceptable re-financing proposal.

60.     In connection with the Operating Agreements, Joseph Gentile, Sr., and/or Joseph Gentile, Jr., as principal(s), affiliate(s) or agent(s) of ADR, made statements and representations that ADR would not record, or direct the recording of, any of the deeds to the OA Deeded Properties provided in connection with the execution of the Operating Agreements until such a time as ADR arranged for and effectuated an acceptable refinancing transaction that (i) satisfied the Madison Indebtedness; and (ii) returned a minimum agreed amount of equity to Plaintiffs.

**F.**    **The Operating Agreements and the Improper Transfer of Interests in Plaintiffs' Real Properties**

61.    On May 16, 2023, ADR entered into Operating Agreements with Plaintiffs: (i) Supor Enterprises; (ii) Supor 136; (iii) Supor 172; (iv) Supor 600; (v) The Marital Trust; (vi) Supor Family; (vii) SP 400; and (viii) JS Realty. The operating agreements between ADR and the above-listed entities are each an "Operating Agreement" and collectively referred to as the "Operating Agreements".

*(i)    The Operating Agreement between ADR and Supor Enterprises as to RDA 1*

62.    Pursuant to an Operating Agreement executed between ADR and Supor Enterprises (the "Supor Enterprises RDA 1 OA") an entity named of RDA1: Supor Properties Enterprises LLC ("RDA 1: Supor Enterprises") was formed. A true copy of the RDA1: Supor Properties Enterprises OA is annexed hereto as **Exhibit A**.

63.    Pursuant to the Supor Enterprises RDA 1 OA, ADR was appointed as Managing Member for RDA 1: Supor Enterprises.

64.    Pursuant to the Supor Enterprises RDA 1 OA, Joseph Vozza, Esq. was appointed as registered agent for RDA 1: Supor Enterprises.

65.    Pursuant to the Supor Enterprises RDA 1 OA, Supor Enterprises contributed the deed to that certain part of the FER Property consisting of Block 137; Lot 17.02 to RDA 1: Supor Enterprises. A true copy of the contributed deed to the specified portion of the FER 1 Property is annexed hereto as **Exhibit B.**

66.    The deed for the contribution of that certain part of the FER Property consisting of Block 137; Lot 17.02 to RDA 1: Supor Enterprises was prepared by Joseph Vozza, Esq.

67.    The stated consideration for the deed from Supor Enterprises to RDA 1: Supor Enterprises was $0.

68.     Neither RDA 1: Supor Enterprises, nor ADR, nor any other party or entity paid or provided any consideration to Supor Enterprises in connection with the provision of a deed for that certain part of the FER Property consisting of Block 137; Lot 17.02.

69.     It was the agreement and understanding of the parties that the deed for that certain part of the FER Property consisting of Block 137; Lot 17.02 was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

*(ii)     The Operating Agreement between ADR and Supor Enterprises as to RDA 2 & 3*

70.     Pursuant to an Operating Agreement executed between ADR and Supor Enterprises (the "Supor Enterprises RDA 2&3 OA") an entity named RDA 2&3: Supor Properties Enterprises LLC ("RDA 2&3: Supor Enterprises") was formed. A true copy of the RDA 2&3: Supor Properties Enterprises OA is annexed hereto as **Exhibit C**.

71.     Pursuant to the Supor Enterprises RDA 2&3 OA, ADR was appointed as Managing Member for RDA 2&3: Supor Enterprises.

72.     Pursuant to the Supor Enterprises RDA 2&3 OA, Joseph Vozza, Esq. was appointed as registered agent for RDA 2&3: Supor Enterprises.

73.     Pursuant to the Supor Enterprises RDA 2&3 OA, Supor Enterprises contributed the deed to that certain part of the FER Property consisting of Block 149; Lot 1.02 and Block 151; Lot 5.02 to RDA 2&3: Supor Enterprises. A true copy of the contributed deed to the specified portion of the FER 1 Property is annexed hereto as **Exhibit D.**

74.     The deed for the contribution of that certain part of the FER Property consisting of Block 149; Lot 1.02 and Block 151; Lot 5.02 to RDA 2&3: Supor Enterprises was prepared by Joseph Vozza, Esq.

75.     The stated consideration for the deed from Supor Enterprises to RDA 2&3: Supor Enterprises was $0.

76.     Neither RDA 2&3: Supor Enterprises, nor ADR, nor any other party or entity paid or provided any consideration to Supor Enterprises in connection with the provision of a deed for that certain part of the FER Property consisting of Block 149; Lot 1.02 and Block 151; Lot 5.02.

77.     It was the agreement and understanding of the parties that the deed for that certain part of the FER Property consisting of Block 149; Lot 1.02 and Block 151; Lot 5.02 was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

*(iii)     The Operating Agreement between ADR and Supor 136*

78.     Pursuant to the Operating Agreement executed between ADR and Supor 136 (the "Supor 136 OA") an entity named RDA 4: J Supor 136-1Realty LLC ("RDA 4: Supor 136") was formed. A true copy of the Supor 136 OA is annexed hereto as **Exhibit E.**

79.     Pursuant to the Supor 136 OA, ADR was appointed as Managing Member for RDA 4: Supor 136.

80.     Pursuant to the Supor 136 OA, Joseph Vozza, Esq. was appointed as registered agent for RDA 4: Supor 136.

81.     Pursuant to the Supor 136 OA, Supor 136 contributed the deed to FER 2 Property to RDA 4: Supor 136. A true copy of the contributed deed to the FER 2 Property is annexed hereto as **Exhibit F**.

82.     The deed for the contribution of FER 2 Property to RDA 4: Supor 136 was prepared by Joseph Vozza, Esq.

83.     The stated consideration for the deed from Supor 136 to RDA 4: Supor 136 was $0.

84.     Neither RDA4: Supor 136, nor ADR, nor any other party or entity paid or provided any consideration to Supor 136 in connection the provision of a deed for FER 2 Property.

85.     It was the agreement and understanding of the parties that the deed for FER 2 Property was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

(iv)     *The Operating Agreement between ADR and Supor 172*

86.     Pursuant to the Operating Agreement executed between ADR and Supor 172 (the "Supor 172 OA") an entity named RDA 5: Supor 172 Realty LLC ("RDA 5: Supor 172") was formed. A true copy of the Supor 172 OA is annexed hereto as **Exhibit G**.

87.     Pursuant to the Supor 172 OA, ADR was appointed as Managing Member for RDA 5: Supor 172.

88.     Pursuant to the Supor 172 OA, Joseph Vozza, Esq. was appointed as registered agent for RDA 5: Supor 172.

89.     Pursuant to the Supor 172 OA, Supor 172 contributed the deed to FER 3 Property to RDA5: Supor 172. A true copy of the contributed deed to the FER 3 Property is annexed hereto as **Exhibit H**.

90.     The deed for the contribution of FER 3 Property to RDA 5: Supor 172 was prepared by Joseph Vozza, Esq.

91.     The stated consideration for the deed from Supor 172 to RDA 5: Supor 172 was $0.

92.     Neither RDA5: Supor 172, nor ADR, nor any other party or entity paid or provided any consideration to Supor 172 in connection the provision of a deed for FER 3 Property.

93.     It was the agreement and understanding of the parties that the deed for FER 3 Property was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

*(iv)     The Operating Agreement between ADR and Supor 600*

94.     Pursuant to the Operating Agreement executed between ADR and Supor 600 (the "Supor 600 OA") an entity named RDA 6: Supor Properties 600 Urban Renewal, LLC (RDA 6: Supor 600") was formed. A true copy of the Supor 600 OA is annexed hereto as **Exhibit I**.

95.     Pursuant to the Supor 600 OA, ADR was appointed as Managing Member for RDA 6: Supor 600.

96.     Pursuant to the Supor 600 OA, Joseph Vozza, Esq. was appointed as registered agent for RDA 6: Supor 600.

97.     Pursuant to the Supor 600 OA, Supor 600 contributed the deed to the Guyon Property to RDA 6: Supor 600. A true copy of the contributed deed to the Guyon Property is annexed hereto as **Exhibit J**.

98.     The deed for the contribution of the Guyon Property to RDA 6: Supor 600 was prepared by Joseph Vozza, Esq.

99.     The stated consideration for the deed from Supor 600 to RDA 6: Supor 600 LLC was $0.

100.    Neither RDA 6: Supor 600 LLC, nor ADR, nor any other party or entity paid or provided any consideration to Supor 600 in connection with the provision of a deed for the Guyon Property.

101.    It was the agreement and understanding of the parties that the deed for the Guyon Property was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

(v)    *The Operating Agreement between ADR and Supor Family*

102.    Pursuant to an Operating Agreement executed between ADR and Supor Family (the "Supor Family OA") an entity named Supor Studio City 2 LLC ("Supor Studio City 2") was formed. A true copy of the Supor Family OA is annexed hereto as **Exhibit K**.

103.    Pursuant to the Supor Family OA, ADR was appointed as Managing Member for Supor Studio City 2.

104.    Pursuant to the Supor Family OA, Joseph Vozza, Esq. was appointed as registered agent for Supor Studio City 2.

105.    Pursuant to the Supor Family OA, Supor Family contributed the deed to the Sanford Property to Supor Studio City 2. A true copy of the contributed deed to the Sanford Property is annexed hereto as **Exhibit L**.

106.    The deed for the contribution of the Sanford Property to Supor Studio City 2 was prepared by Joseph Vozza, Esq.

107.    The stated consideration for the deed from Supor Family to Supor Studio City 2 was $0.

108.    Neither Supor Studio City 2, nor ADR, nor any other party or entity paid or provided any consideration to Supor Family in connection with the provision of a deed for the Sanford Property.

109.    It was the agreement and understanding of the parties that the deed for the Sanford Property was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

(vi)    *The Operating Agreement between ADR and SP 400*

110.    Pursuant to an Operating Agreement executed between ADR and SP 400 (the "SP 400 OA") an entity named Supor Studio City 3 LLC ("Supor Studio City 3") was formed. A true copy of the SP 400 OA is annexed hereto as **Exhibit M**.

111.    Pursuant to the SP 400 OA, ADR was appointed as Managing Member for Supor Studio City 3.

112.    Pursuant to the SP 400 OA, Joseph Vozza, Esq. was appointed as registered agent for Supor Studio City 3.

113.    Pursuant to the SP 400 OA, SP 400 contributed the deed to the 400 Supor Boulevard Property (Block 201, Lot 1) to Supor Studio City 3. A true copy of the contributed deed to the 400 Supor Boulevard Property is annexed hereto as **Exhibit N**.

114.    The deed for the contribution of the 400 Supor Boulevard Property (Block 201, Lot 1) to Supor Studio City 3 was prepared by Joseph Vozza, Esq.

115.    The stated consideration for the deed from Supor Family to Supor Studio City 3 was $0.

116.    Neither Supor Studio City 3, nor ADR, nor any other party or entity paid or provided any consideration to SP 400 in connection with the provision of a deed for the 400 Supor Boulevard Property.

117.    It was the agreement and understanding of the parties that the deed for the 400 Supor Boulevard Property was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

(vii)    *The Operating Agreement between ADR and JS Realty*

118.    Pursuant to the Operating Agreement executed between ADR and JS Realty (the "JS Realty OA") an entity named Supor Studio City 4 LLC (Supor Studio City 4") was formed. A true copy of the RJS Realty OA is annexed hereto as **Exhibit O**.

119.    Pursuant to the JS Realty OA, ADR was appointed as Managing Member for Supor Studio City 4.

120.    Pursuant to the JS Realty OA, Joseph Vozza, Esq. was appointed as registered agent for Supor Studio City 4.

121.    Pursuant to the JS Realty OA, JS Realty contributed the deed to the JS Realty Property (Block 222; Lots 3.03 & 1.02) to Supor Studio City 4. A true copy of the contributed deed to the JS Realty Property is annexed hereto as **Exhibit P**.

122.    The deed for the contribution of the JS Realty Property (Block 222; Lots 3.03 & 1.02) to Supor Studio City 4 was prepared by Joseph Vozza, Esq.

123.    The stated consideration for the deed from JS Realty to Supor Studio City 4 was $0.

124. Neither Supor Studio City 4, nor ADR, nor any other party or entity paid or provided any consideration to the JS Realty in connection with the provision of a deed for the JS Realty Property.

125. It was the agreement and understanding of the parties that the deed for the JS Realty Property was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

*(viii)    The Operating Agreement between ADR and The Marital Trust*

126. Pursuant to an Operating Agreement executed between the Marital Trust and ADR (the "Marital Trust OA") an entity named Supor MT LLC ("Supor MT") was formed. A true copy of the Marital Trust OA is annexed hereto as **Exhibit Q**.

127. Pursuant to the Marital Trust OA, ADR was appointed as Managing Member for Supor MT.

128. Pursuant to the Marital Trust OA, Joseph Vozza, Esq. was appointed as registered agent for Supor MT.

129. Pursuant to the Marital Trust OA, the Marital Trust contributed the deed to the Manor Avenue Property to Defendant Supor MT. A true copy of the contributed deed to the Manor Avenue Property is annexed hereto as **Exhibit R**.

130. The original stated consideration for the deed from Supor Family to Supor MT was $0.

131. It was the agreement and understanding of the parties that the deed for the Manor Avenue Property was not to be recorded unless and until there was a closing of an acceptable re-financing transaction relative to the Madison Indebtedness.

132. **Despite the fact that an acceptable re-financing transaction was never closed (or even ever proposed) ADR, or representatives of ADR at ADR's direction, recorded the deed to the Manor Avenue Property on June 5, 2023, in Book 9750 at Page 450 et seq with the Hudson County Register's Office, thereby purporting to transfer fee ownership of record to Supor MT.**

133. The deed conveying the Manor Avenue Property to Defendant Supor MT was prepared by Joseph Vozza, Esq.

134. The deed conveying the Manor Avenue Property to Defendant Supor MT was submitted for recording by Joseph Vozza, Esq.

135. Subsequent to the execution of the deed for the Manor Avenue Property and prior to its recording, someone hand-modified the stated consideration listed on the deed to $1. The hand-modification was not initialed or identified in any way. Plaintiffs did not modify the deed to the Manor Avenue Property subsequent to the execution of same to change the stated consideration, nor did Plaintiffs authorize or approve any modification of the deed to change the stated consideration.

136. Neither Supor MT, nor ADR, nor any other party or entity paid or provided any consideration to the Marital Trust in connection with the provision of a deed for, or any transfer of, the Manor Avenue Property. The Marital Trust never even received the $1 consideration mysteriously reflected in the deed for the Manor Avenue Property that was unlawfully recorded on behalf of Supor MT.

137. Subsequent to the recording of the deed to the Manor Avenue Property by Supor MT or ADR, Plaintiff Marital Trust has continued to exert dominion and control over the incidents of ownership of the Manor Avenue Property. The Marital Trust continues to maintain

and control the Manor Avenue Property including the maintenance of appropriate insurance on the property, the payment of real estate taxes, and the collection of rents from the tenants of the property.

## G.    FER Properties and the RDA

138.    The Harrison RDA was initially approved by the Town of Harrison on June 1, 2019, and recorded on December 11, 2019, and, on February 24, 2021, the Town of Harrison approved and the parties executed and Amended and Restated Redevelopment Agreement representing final approval of the RDA (the "RDA Approvals").

139.    Despite being charged with a responsibility to refinance the Madison Indebtedness and despite the availability of property(ies) of more than ample value for effectuating a refinancing, ADR did not come forward with even one single refinancing proposal, nor did it at any time identify any specific possible proposal or potential refinance lender to Plaintiff(s) or Plaintiffs' principals or representatives.

140.    As a result of ADR's failure to secure a refinancing, the amount of the Madison Indebtedness ballooned by more than $12 million in the time from the execution of the Operating Agreements through the termination of the Operating Agreements.

141.    Because the parties would need to obtain approval from the Town of Harrison for the transfer of any rights under the RDA, it was the intention and understanding of the Plaintiffs that the deeds to the OA Deeded Properties would not and could not be recorded, and that no transfer(s) of real property would be effectuated, unless and until such time as there was a refinancing of the Madison Indebtedness.

**H.** **ADR's Occupancy of the JS Realty Property**

142.    At or around the time the Operating Agreements were executed, ADR, together with affiliates of ADR and/or individuals with an interest in ADR (the "ADR Occupants") took occupancy of a portion of the JS Realty Property.

143.    None of the ADR Occupants had a lease or other agreement allowing them to occupy the JS Realty Property or any portion thereof. JS Realty did not give permission or consent to the ADR Occupants to occupy any part of the JS Realty Property.

144.    None of the ADR Occupants paid any rent for their occupancy at the JS Realty Property.

145.    Upon information and belief, certain individuals included amongst the ADR Occupants have, without permission, authorization, or agreement, established residential occupancy at the JS Realty Property in violation of applicable law, code and/or regulation.

**I.** **ADR's Defaults Under the Operating Agreements**

146.    The Gentile/ADR representations about ADR's experience real estate re-financing were false.

147.    The Gentile/ADR representations about ADR's experience in municipal approved redevelopment projects were false.

148.    The Gentile/ADR representations about ADR's relationships with lending institutions were false.

149.    The Gentile/ADR representations about the timing of the proposed re-financing were false.

150.    In over one year since the execution of the Operating Agreements, ADR did not produce one single proposal for refinancing the Madison Indebtedness.

151.    The Gentile/ADR representations that ADR would refrain from recording any of the deeds to the OA Deeded Properties until such time as an acceptable re-financing transaction was closed were false.

152.    In the time since the execution of the Operating Agreements, Plaintiffs and/or their principals or representatives made numerous inquiries and requests of ADR seeking updates as to any potential re-financing proposals and reporting as to ADR's efforts to secure an acceptable re-financing transaction.

153.    ADR never responded to Plaintiff's numerous inquiries, never presented and proposals for a refinancing transaction.

154.    ADR never provided any information demonstrating or even suggesting that ADR had taken any action at all in connection with seeking a re-financing transaction.

155.    On January 2, 2024, counsel for Mr. Supor sent ADR a formal letter ("Demand Letter") that ADR identify, among other things:

> any and all actions undertaken by ADR in furtherance of Section 5.3(g) of the Operating Agreements.  Specifically, please advise of all efforts of ADR *"to obtain, replace, modify, refinance and effectuate the presently defaulted Madison Collateralized and encumbering mortgages and liens . . ."*  Please also provide all documents regarding any actions undertaken by ADR concerning Section 5.3(g) of the Operating Agreements. If you would like to redact the identity of lenders from the documents provided, please do so.
>
> *      *      *      *      *
>
> Please advise of any and all actions undertaken by ADR in furtherance of its obligations under Section 6.1(b) of the Operating Agreements.  Please also provide all documents regarding any actions undertaken by ADR concerning Section 6.1(b) of the Operating Agreements.

A true copy of the Demand Letter is annexed hereto as **Exhibit S.**

156.    The Demand Letter requested information and documents responsive to these requests on or before January 9, 2024. ADR failed to provide any of the requested information and documents responsive to these requests before January 9, 2024, or thereafter. In fact, ADR did not respond to, or even acknowledge, the Demand Letter at all.

**J.    The Recording of the Deeds in Lieu by Lender and the Scheduled UCC Sale.**

157.    Six months after the execution of the Operating Agreement and with no potential refinancing on the horizon, on or about November 30, 2023, Lender served a Notice of Sale scheduling a sale pursuant to the Uniform Commercial Code of the pledged ownership interest(s) in, among other entities, SP 400 and Supor Family for January 17, 2024 (the "UCC Sale").

158.    The UCC Sale was adjourned pursuant to an Adjourned Notice of Sale that rescheduled the sale for February 15, 2024 and was thereafter adjourned on several occasions until April 3, 2024.

159.    Pursuant to the Forbearance Agreement and DIL Agreement, between January 26, 2024 and January 31, 2024, Lender completed and recorded Deeds in Lieu of Foreclosure for, *inter alia*, the below listed Mortgaged Properties (collectively the "DIL Properties") naming itself or its nominee as the Grantee on each deed, and the recorded each deed, purporting to establish its nominee as owner in fee of each underlying property:

1. FER 1 Property recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006630 for stated consideration of $19,000,000 in favor of 1000 Frank E. Rodgers Blvd Owner LLC;

2. FER 2 Property recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006640 for stated consideration of $500,000 in favor of 1000 Frank E. Rodgers Blvd Owner LLC;

3.  FER 3 Property recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006650 for stated consideration of $5,500,000 in favor of 1000 Frank E. Rodgers Blvd Owner LLC;

4.  Guyon Property recorded with the Hudson County Register of Deeds on January 31, 2024, as Instrument 20240131010007310 for stated consideration of $10,000,000 in favor of 600 Guyon Drive Owner LLC; and

5.  JS Realty Property recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240125010005970 for stated consideration of $12,500,000 in favor of 401 Supor Blvd Owner LLC.

160.    Had ADR fulfilled its obligation to refinance the Madison Indebtedness in a timely fashion, the Madison Indebtedness would have been satisfied and Lender would not have had the ability to record the deeds for the DIL Properties.

161.    The DIL Properties include six of the OA Deeded Properties specifically FER 1 Property (as bifurcated into two deeds to RDA1: Supor Enterprises and RDA 2&3: Supor Enterprises); FER 2 Property, FER 3 Property, the Guyon Property and the 400 Supor Boulevard Property.

162.    Because Lender has recorded deeds to six of the OA Deeded Properties (each in the name of a nominee special purpose entity) the deeds conveyed by Plaintiffs to the Defendants pursuant to the Operating Agreements as to those six specified properties are invalid and ineffectual as they are granted by part(y)ies who, based upon the current public record, are not the owners of record.

## K.    <u>The Termination of the Operating Agreements</u>

163.    On February 15, 2024, Mr. Supor, on behalf of the Plaintiffs provided notice of certain of ADR's defaults under the Operating Agreements and further provided notice of the termination of the Operating Agreements executed by Supor Enterprises, Supor 136, Supor 172,

Supor 600, Supor Family, and the Marital Trust (the "Initial Termination Notice"). A true copy of the Initial Termination Notice is annexed hereto as **Exhibit T.**

164.    On March 22, 2024, Mr. Supor, on behalf of Plaintiffs JS Realty, and SP 400, provided notice of certain of ADR's defaults under the JS Realty OA, and the SP 400 OA and further provided notice of the termination of the JS Realty OA, and the SP 400 OA (the "Supplemental Termination Notice" and, together with the Initial Termination Notice, the "Termination Notices"). A true copy of the Supplemental Termination Notice is annexed hereto as **Exhibit U**.

165.    ADR defaulted under Section 5.3(c) of the Operating Agreements on account of its failure to do all things necessary *"[t]o select and engage all architects, contractors, experts, planners, engineers, surveyors, appraisers, attorneys, accountants, consultants, managers, brokers and other professionals to be engaged to carry out the "design build preferred method" development of the Real Property or any portion thereof."*

166.    ADR defaulted under Section 5.3(d) of the Operating Agreements on account of its failure to do all things necessary *"[t]o oversee and supervise the construction and development of the 'Real Property'."*

167.    ADR defaulted under Section 5.3(e) of the Operating Agreements on account of its failure to do all things necessary *"[t]o oversee and supervise the marketing of the Real Property (sale and/or lease and/or use) of the Real Property or any portion thereof".*

168.    ADR defaulted under Section 5.3(g) of the Operating Agreements on account of, among other things, its failure to do all things necessary ***"[t]o obtain, replace, modify, refinance and effectuate the presently defaulted Madison Collateralized and encumbering mortgages and liens . . ."***

169.    ADR defaulted under Section 5.3(h) of the Operating Agreements on account of its failure to do all things necessary *"[t]o conduct the sales, leasing, use, subdivision, consolidation, or conversion of all or any part of the Real Property."*[2]

170.    ADR defaulted under Section 5.3(i) of the Operating Agreements on account of its failure to do all things necessary *"[t]o institute, prosecute and defend any proceeding in the Company's name"*.

171.    ADR defaulted under Section 5.3(j) of the Operating Agreements on account of its failure to do all things necessary *"[t]o establish reserve funds in accordance with a budget to provide for future requirements for interim carry, operations, contingencies or any other reasonable purpose that the Managing Member deems necessary or appropriate"*.

172.    ADR defaulted under Section 5.3(k) of the Operating Agreements on account of its failure to do all things necessary *"[t]o sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of the Company's property in the ordinary course of business except as limited by this Agreement"*.

173.    ADR defaulted under Section 5.3(l) of the Operating Agreements on account of its failure to do all things necessary *"[t]o invest and reinvest the Company's funds"*.

174.    ADR defaulted under Section 5.3(m) of the Operating Agreements on account of its failure to do all things necessary *"[t]o open bank accounts and make financial applications"*.

175.    ADR defaulted under Section 5.3(n) of the Operating Agreements on account of its failure to do all things necessary *"[t]o enter into all contracts, agreements, understandings and to undertake all acts to accomplish the matters, goals, and objectives set forth within this Agreement"*.

---

[2] Section 5.3(h) of the Supor Studio City 2 LLC Operating Agreement is slightly different.

176.    ADR breached its fiduciary obligations to the Supor Entities by refusing to inform the Supor Entities of ADR's efforts regarding Section 5.3 of the Operating Agreements or respond to numerous requests from the Supor Entities to ADR regarding Section 5.3 of the Operating Agreements.

177.    ADR also defaulted under Section 6.1(b) of the Operating Agreements which required ADR to *"contribute specific knowledge, expertise, and all resources, strengths of its development team, additional credit enhancements, and relationships required to restructure, refinance and or modify the existing blanket Mortgage Balance . . ."* ADR failed to make the required Capital Contribution and is therefore in default of Section 6.1(b) of the Operating Agreements.

178.    ADR defaulted in its obligations under Sections 6.1(b)(i)-(iv) of the Operating Agreements which state:

> *Additionally, "ADR"* **shall** *arrange for the Company:*
>
> *(i)      **to satisfy the disclosed liens and/or expenses currently encumbering the Real Property**;*
>
> *(ii)      to cover by credit enhancement or otherwise of behalf of the company nom advance with the intent of repayment, the initial startup costs including, but not limited to the initial, planning, design, entitlement amendment process, professional and other legal fees for the formation of the Company and the structuring of the refinancing addressed above;*
>
> *(iii)      to cover the costs and expenses associated with any transfer of the Real Property to the Company including transfer taxes, and similar costs and expenses which may not be covered from the refinance proceeds. Managing Member shall maintain its best effort to have all closing costs and taxes paid or paid back from future restructuring finance and refinance costs as opposed to from any Members additional required investment or further contribution when deemed in the best interest of the Company and its Members.*

> (iv)    to meet the ongoing costs and expenses of the Company
> and the development of the Real Property which are not met from
> anticipated debt proceeds, permanent takeout loan proceeds,
> revenues generated from the sale or lease of the Real Property or
> other sources.

179.    ADR's defaults under Sections 5.3(g) and 6.1(b) of the Operating Agreements are incurable.

180.    The Termination Notices further demanded that ADR (i) return all the deeds to the OA Deeded Properties; and (ii) direct and effectuate the re-conveyance of the Manor Avenue Property back to the Marital Trust.

181.    As a result of ADR's myriad defaults under the Operating Agreements and the termination thereof per the Termination Notices, ADR is obligated, *inter alia*, to immediately return all of the original deeds to the OA Deeded Properties and related documents provided by the Plaintiffs to ADR pursuant to Section 6.1(a) of the Operating Agreements or otherwise. ADR did not respond to either of the Termination Notices.

## FIRST COUNT

*(Declaratory Judgment Pursuant to 28 U.S.C. § 2201 and
Bankruptcy Rules 7001(9) and 7001(2))*

182.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

183.    Pursuant to the Declaratory Judgment Act, "[i]n a case or actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Bankruptcy courts, as units of the district court, have the authority to issue declaratory judgments to settle legal rights and remove uncertainty and

insecurity from legal relationships without awaiting violation of rights or disturbance of relationships.

184.     Under Bankruptcy Rules 7001(2) and (9), an adversary proceeding may be commenced "to determine the validity, priority, or extent of a lien or other interest in property," or "to obtain a declaratory judgment relating to" such a determination.

185     As a result of the acts described in the preceding paragraphs by ADR, there is a substantial and immediate actual controversy between Plaintiff(s) and ADR regarding the validity and/or enforceability of the Operating Agreements.

186.     ADR's defaults under Sections 5.3(g) and 6.1(b) of the Operating Agreements are incurable. As a result of ADR's defaults under the Operating Agreements, the Operating Agreements were validly terminated by Plaintiffs pursuant to the Termination Notices prior to the Petition date.

187.     ADR has not acknowledged the termination of the Operating Agreements per the Termination Notices and has failed to respond to same.

188.     Prior to the Termination of the Operating Agreements, Plaintiffs contributed/delivered the deeds to the OA Deeded Properties to ADR as Managing Member of applicable Defendants created under the Operating Agreements (the "Delivery of ADR Deeds").

189.     ADR has not returned the deeds to the OA Deeded Properties as demanded in the Termination Notices.

190.     ADR has not re-conveyed the Manor Avenue Property to the Marital Trust as demanded in the Termination Notices.

191.     Whether the Operating Agreements were terminated prepetition affects Plaintiff(s)' rights, including those of the Debtor Plaintiffs under 11 U.S.C. § 365 and 541,

specifically as to the return of property of the estate, namely, all of the deeds contributed per the Delivery of ADR Deeds pursuant to Section 6.1(a) of the Operating Agreements or otherwise.

192.    Plaintiffs, on the one hand, and ADR on the other, have adverse legal interests with respect to the status of the Operating Agreements.

193.    Plaintiffs are entitled to a declaration pursuant to 28 U.S.C. § 2201 that (1) the Operating Agreements were terminated pursuant to the Termination Notices, and (2) upon termination of the Operating Agreements, ADR was required to return of property of the estate, namely, all of the original deeds and related documents provided by the Plaintiff(s) to ADR pursuant to Section 6.1(a) of the Operating Agreements or otherwise.

**WHEREFORE**, Plaintiffs seeks judgment in its favor and against Defendant(s):

(a)    Declaring that:

    (i)    the Operating Agreements are terminated;

    (ii)    As a result of the termination, Defendants are required to return all original deeds contributed per the Delivery of ADR Deeds pursuant to Section 6.1(a) of the Operating Agreements or otherwise;

    (iii)    As a result of the termination, Defendants ADR and Supor MT are required to execute and deliver, or direct the execution and delivery of. a deed re-conveying title to the Manor Road Property to Plaintiff Marital Trust.

(b)    Avoiding, undoing and setting aside any and all transactions undertaken by Defendants with respect to the deeds to the OA Deeded Properties in the time since the recording of said deeds through the date of judgment herein;

(c)    To the extent that any transactions undertaken by Defendants with respect to the deeds to the OA Deeded Properties since the Delivery of ADR Deeds cannot be undone, declaring Plaintiff(s)' entitlement to and further awarding all profits and proceeds therefrom to the applicable Plaintiff(s);

(d)    Enjoining Defendants from encumbering, hypothecating, transferring or otherwise disposing of any of the OA Deeded Properties;

(e)    Awarding Plaintiffs their costs and attorneys' fees;

(f)     Awarding Plaintiffs damages in an amount to be determined at trial; and

(g)     Granting Plaintiffs such other and further relief as the Court deems equitable and just.

**SECOND COUNT**
*(Turnover of Estate Property Pursuant to 11 U.S.C. §541 & 542)*

194.    Debtor Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

195.    This is an action for turnover of property of the Bankruptcy Estate pursuant to 11 U.S.C. § 542.

196.    Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held." 11 U.S.C. § 541.

197.    Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541 (a)(6).

198.    Debtor Plaintiff(s) have a legal and equitable property interest in the deeds to the OA Deeded Properties titled in their name(s) that were contributed pursuant to the Operating Agreements, and the underlying real properties constitute property of the respective Debtor Plaintiff(s)' bankruptcy estate(s).

199.    Any entity in possession, custody, or control of property of the estate must deliver and account for such property to the applicable Debtor Plaintiff.

200.    Debtor Plaintiffs have demanded that Defendants turn over the original deeds to the OA Deeded Properties contributed by them pursuant to the Operating Agreements immediately.

201.    As of the date hereof, Defendants have refused to turn over the deeds to the OA

Deeded Properties contributed by the Debtor Plaintiffs pursuant to the Operating Agreements.

202.    The OA Deeded Properties, other than the Manor Avenue Property, are property of the bankruptcy estate(s) of the applicable Debtor/Plaintiff pursuant to 11 U.S.C. § 541, and are therefore subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, pursuant to Section 541 and 542 of the Bankruptcy Code, the Debtor Plaintiffs are entitled to judgment against Defendant(s):

(a)    Requiring Defendants, as the recipient of the original deeds to the OA Deeded Properties and/or the person for whose benefit the were given, to return the Deeds and any profits or proceeds thereof with respect to all OA Deeded Properties, other than the Manor Avenue Property, to the applicable Debtor Plaintiffs for the benefit of the respective Estates;

(b)    Awarding Plaintiffs damages in an amount to be determined at trial;

(c)    Awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(d)    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## THIRD COUNT
### *(Breach of Contract)*

203.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

204.    Plaintiffs performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Operating Agreements.

205.    ADR breached Section 5.3(c) of the Operating Agreements on account of its failure to do all things necessary "[t]o select and engage all architects, contractors, experts, planners, engineers, surveyors, appraisers, attorneys, accountants, consultants, managers, brokers and other professionals to be engaged to carry out the 'design build preferred method' development of the Real Property or any portion thereof."

206.    ADR breached Section 5.3(d) of the Operating Agreements on account of its failure to do all things necessary "[t]o oversee and supervise the construction and development of the 'Real Property'."

207.    ADR breached Section 5.3(e) of the Operating Agreements on account of its failure to do all things necessary "[t]o oversee and supervise the marketing of the Real Property (sale and/or lease and/or use) of the Real Property or any portion thereof."

208.    ADR breached Section 5.3(g) of the Operating Agreements on account of, among other things, its failure to do all things necessary "[t]o obtain, replace, modify, refinance and effectuate the presently defaulted Madison Collateralized and encumbering mortgages and liens . . . ."

209.    ADR breached Section 5.3(h) of the Operating Agreements on account of its failure to do all things necessary "[t]o conduct the sales, leasing, use, subdivision, consolidation, or conversion of all or any part of the Real Property."

210.    ADR breached Section 5.3(i) of the Operating Agreements on account of its failure to do all things necessary "[t]o institute, prosecute and defend any proceeding in the Company's name."

211.    ADR breached Section 5.3(j) of the Operating Agreements on account of its failure to do all things necessary "[t]o establish reserve funds in accordance with a budget to provide for future requirements for interim carry, operations, contingencies or any other reasonable purpose that the Managing Member deems necessary or appropriate."

212.    ADR breached Section 5.3(k) of the Operating Agreements on account of its failure to do all things necessary "[t]o sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of the Company's property in the ordinary course of business except as

limited by this Agreement."

213.    ADR breached Section 5.3(l) of the Operating Agreements on account of its

failure to do all things necessary "[t]o invest and reinvest the Company's funds."

214.    ADR breached Section 5.3(m) of the Operating Agreements on account of its

failure to do all things necessary "[t]o open bank accounts and make financial applications."

215.    ADR breached Section 5.3(n) of the Operating Agreements on account of its

failure to do all things necessary "[t]o enter into all contracts, agreements, understandings and

to undertake all acts to accomplish the matters, goals, and objectives set forth within this

Agreement."

216.    ADR breached Section 6.1(b) of the Operating Agreements due to its failure

make the Capital Contribution required from ADR.

217.    As a result of the breaches of the Operating Agreements, Plaintiff(s) have been

damaged in an amount to be proven at trial based on the facts alleged herein.

**WHEREFORE**, Plaintiff(s) demand judgment against ADR,

(a)    Declaring that:

(i)    the Operating Agreements are terminated;

(ii)    As a result of the termination, Defendants are required to
return all original deeds contributed per the Delivery of ADR
Deeds pursuant to Section 6.1(a) of the Operating Agreements or
otherwise;

(iii)    As a result of the termination, Defendants ADR and Supor
MT are required to execute and deliver, or direct the execution
and delivery of. a deed re-conveying title to the Manor Road
Property to Plaintiff Marital Trust.

(b)    Avoiding, undoing and setting aside any and all transactions undertaken by
Defendants with respect to the deeds to the OA Deeded Properties in the time
since the recording of said deeds through the date of judgment herein;

(c)    To the extent that any transactions undertaken by Defendants with respect to the deeds to the OA Deeded Properties since the Delivery of ADR Deeds cannot be undone, declaring Plaintiff(s)' entitlement to and further awarding all profits and proceeds therefrom to the applicable Plaintiff(s);

(d)    Enjoining Defendants from encumbering, hypothecating, transferring or otherwise disposing of any of the OA Deeded Properties;

(e)    Awarding Plaintiffs their costs and attorneys' fees;

(f)    Awarding Plaintiffs damages in an amount to be determined at trial; and

(g)    Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## FOURTH COUNT

### *(Fraud in the Inducement)*

218.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

219.    Prior to the execution of the Operating Agreements, agents, principals, and/or representatives of ADR made representations to Plaintiffs on behalf of ADR regarding ADR's capabilities and experience relative to its ability to obtain, replace, modify, and/or refinance the Madison Indebtedness.

220.    ADR made these representations to agents, principals and representatives of Plaintiffs to induce Plaintiffs to enter into the Operating Agreements with ADR.

221.    ADR made these representations to Plaintiffs to induce Plaintiffs to deliver deeds to the OA Deeded Properties to newly formed entities controlled by ADR as Managing Member.

222.    The representations made by ADR to the Plaintiffs were false.

223.    ADR knew these misrepresentations were false when it made them.

224.    ADR made these misrepresentations with the intent of inducing Plaintiffs to rely on them.

225. ADR made these representations wantonly, recklessly and/or maliciously.

226. Plaintiffs relied on ADR's misrepresentations when it decided to enter into the Operating Agreements and, but for the misrepresentations, would not have entered into same.

227. Plaintiffs relied on ADR's misrepresentations when it decided to deliver deeds to the OA Deeded Properties to entities controlled by ADR as Managing Member under the Operating Agreements and, but for the misrepresentations, would not have entered into the Operating Agreements.

228. ADR's misrepresentations, and Plaintiffs' reliance on said misrepresentations, proximately caused Plaintiffs to suffer loss, injury and damages.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment in  favor of Plaintiffs and against ADR for

    (a)    Declaring that:

    (i)    the Operating Agreements are terminated;

    (ii)    As a result of the termination, Defendants are required to return all original deeds contributed per the Delivery of ADR Deeds pursuant to Section 6.1(a) of the Operating Agreements or otherwise;

    (iii)    As a result of the termination, Defendants ADR and Supor MT are required to execute and deliver, or direct the execution and delivery of. a deed re-conveying title to the Manor Road Property to Plaintiff Marital Trust.

(b)    Avoiding, undoing and setting aside any and all transactions undertaken by Defendants with respect to the deeds to the OA Deeded Properties in the time since the recording of said deeds through the date of judgment herein;

(c)    To the extent that any transactions undertaken by Defendants with respect to the deeds to the OA Deeded Properties since the Delivery of ADR Deeds cannot be undone, declaring Plaintiff(s)' entitlement to and further awarding all profits and proceeds therefrom to the applicable Plaintiff(s);

(d)    Enjoining Defendants from encumbering, hypothecating, transferring or otherwise disposing of any of the OA Deeded Properties;

(e)    Awarding Plaintiffs their costs and attorneys' fees;

(f)    Awarding Plaintiffs damages in an amount to be determined at trial; and

(g)    Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## FIFTH COUNT
*(Actual Fraud)*

229.    Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

230.    Prior to the execution of the Operating Agreements, agents, principals, and/or representatives of ADR made numerous representations to Plaintiffs on behalf of ADR regarding ADR's capabilities and experience relative to ADR's ability to obtain, replace, modify, and/or refinance the Madison Indebtedness.

231.    ADR made these representations to agents, principals and representatives of Plaintiffs to induce Plaintiffs to enter into the Operating Agreements with ADR.

232.    ADR made these representations to Plaintiffs to induce Plaintiffs to deliver deeds to the OA Deeded Properties to entities controlled by ADR.

233.    The representations made by ADR to the Plaintiffs were false.

234.    ADR knew these misrepresentations were false when it made them.

235.    ADR made these representations with the intent of deceiving Plaintiffs and inducing Plaintiff(s) to rely on them.

236.    ADR made these representations wantonly, recklessly and/or maliciously.

237.    Plaintiffs justifiably relied on ADR's misrepresentations when it decided to enter into the Operating Agreements with ADR and, but for the misrepresentations, would not have entered into the Operating Agreements.

238.    Plaintiffs justifiably relied on ADR's misrepresentations when it decided to

deliver deeds to the OA Deeded Properties to entities controlled by ADR under the Operating

Agreements and, but for the misrepresentations, would not have entered into same.

239.    ADR's misrepresentations, and Plaintiffs' justifiable reliance on them,

proximately caused Plaintiffs to suffer a damages, injury and loss.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment in favor

of Plaintiffs and against ADR

(a)    Declaring that:

(i)    the Operating Agreements are terminated;

(ii)    As a result of the termination, Defendants are required to return all original deeds contributed per the Delivery of ADR Deeds pursuant to Section 6.1(a) of the Operating Agreements or otherwise;

(iii)    As a result of the termination, Defendants ADR and Supor MT are required to execute and deliver, or direct the execution and delivery of. a deed re-conveying title to the Manor Road Property to Plaintiff Marital Trust.

(b)    Avoiding, undoing and setting aside any and all transactions undertaken by Defendants with respect to the deeds to the OA Deeded Properties in the time since the recording of said deeds through the date of judgment herein;

(c)    To the extent that any transactions undertaken by Defendants with respect to the deeds to the OA Deeded Properties since the Delivery of ADR Deeds cannot be undone, declaring Plaintiff(s)' entitlement to and further awarding all profits and proceeds therefrom to the applicable Plaintiff(s);

(d)    Enjoining Defendants from encumbering, hypothecating, transferring or otherwise disposing of any of the OA Deeded Properties;

(e)    Awarding Plaintiffs their costs and attorneys' fees;

(f)    Awarding Plaintiffs damages in an amount to be determined at trial; and

(g)    Granting Plaintiffs such other and further relief as the Court deems equitable and just.

## SIXTH COUNT

*(Ejectment Pursuant to N.J.S.A. 2A:35-1; 2A:39-1 and 2A:39-6)*

240.    Debtor Plaintiff JS Realty repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

241.    The ADR Occupants are agents, principals and/or representatives of ADR, are known to Debtor Plaintiff JS Realty and are, or have been, in possession of the JS Realty Property or portions thereof, without a lease, contract or agreement and without Debtor Plaintiff JS Realty's consent since approximately May of 2023.

242.    The property located at the JS Realty Property is property of the bankruptcy estate of Debtor/Plaintiff JS Realty pursuant to 11 U.S.C. § 541.

243.    The ADR Occupants/ADR are presently occupying the JS Realty Property without the consent of Debtor Plaintiff JS Realty and against said Debtor Plaintiff's wishes.

244.    There is no landlord/tenant relationship that exists between Plaintiff JS Realty and Defendant ADR.

245.    Plaintiff JS Realty is entitled to uninterrupted possession of the JS Realty Property and ADR's illegal actions have prevented Plaintiff JS Realty from access to and possession of the JS Realty Property to which Plaintiff JS Realty has legal right and entitlement.

246.    Debtor Plaintiff JS Realty has demanded, in writing that the ADR Occupants/ADR quit, vacate and surrender the premises. The ADR Occupants/ADR have not vacated or quit the premises.

247.    Plaintiff JS Realty has suffered damages from Defendant ADR's illegal occupancy of the JS Realty Property in that it has been prevented from possession of and access to its property and that neither ADR, the ADR Occupants, nor any other party, has paid Debtor Plaintiff JS Realty for the ADR Occupants' use and occupancy of the JS Realty Property.

248.    Upon information and belief, the ADR Occupants include certain individuals affiliated with ADR who are residing at the JS Realty Property in violation of applicable laws, Code and/or regulations, and potentially in violation of insurance policies procured and maintained for the benefit of Debtor Plaintiff SP 401's bankruptcy estate.

249.    Debtor Plaintiff JS Realty is entitled to possession of said property pursuant to N.J.S.A. 2A:35-1, to recover damages for Defendant ADR's unauthorized use and occupancy of the JS Realty Property and to recover mesne profits and damages from defendants pursuant to N.J.S.A. 2A:35-2 and the common law of the State of New Jersey for the ADR Occupants/ADR's use and occupation of the property, any damage done to the property during the occupancy, and other damages suffered by Debtor Plaintiff JS Realty as a consequence of the ADR Occupants/ADR's unlawful occupation of the property.

250.    Plaintiff JS Realty seeks an immediate judgment for unlawful detainer and for the right of possession, so that uninterrupted possession of the subject premises may be restored to Plaintiff JS Realty, including costs of suit, and other relief as the Court may deem appropriate.

**WHEREFORE,** Debtor Plaintiff JS Realty demands judgment

(a)    Granting Debtor Plaintiff JS Realty possession of the JS Realty Property;

(b)    Ejecting ADR, inclusive of the ADR Occupants from the JS Realty Property;

(a)    Awarding Debtor Plaintiff JS Realty mesne profits, and damages against ADR as a result of ADR's unauthorized and uncompensated use and occupancy of the JS Realty Property;

(d)    Awarding Debtor Plaintiff JS Realty attorneys' fees and costs of suit; and

(e)    Awarding such other relief to Debtor Plaintiff JS Realty as the Court deems just.

### SEVENTH COUNT

*(Avoidance of Delivery of ADR Deeds as Fraudulent Transfers*
*Pursuant to 11 U.S.C. §§ 548(a)(1)(B) & 550)*

251.    Debtor Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

252.    Within two (2) years of the Petition Date, the Debtor Plaintiffs contributed the deeds to the OA Deeded Properties to ADR as Managing Member of applicable Defendants created under the Operating Agreements per the Delivery of ADR Deeds.

253.    The Delivery of ADR Deeds constitute multiple, separate transfers of property of the Debtor Plaintiffs to Defendants.

254.    The value of the OA Deeded Properties subject to the Delivery of ADR Deeds was far in excess of any purported consideration provided by Defendants.

255.    Debtor Plaintiffs received less than a reasonably equivalent value in exchange for the Delivery of ADR Deeds and, at the time of the Delivery of ADR Deeds, Debtor Plaintiffs:

    a.    were insolvent, or became insolvent as a result of the transfer(s));

    b.    were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the debtors was an unreasonably small capital; or

    c.    intended to incur, or believed that it would incur, debts that would be beyond the respective debtors' ability to pay as such debts matured.

256.    Debtor Plaintiffs are entitled to avoid the Delivery of ADR Deeds and recover the deeds to the OA Deeded Properties from Defendants, as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1).

257.    Alternatively, Debtor Plaintiffs are entitled to avoid the Delivery of ADR Deeds and recover the deeds to the OA Deeded Properties from Defendants, as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(2).

**WHEREFORE**, pursuant to Section 548(a)(1)(B) and Section 550 of the Bankruptcy Code, the Debtor Plaintiffs are entitled to judgment against Defendants:

(a)    Avoiding the Delivery of ADR Deeds;

(b)    Directing the Delivery of ADR Deeds be set aside;

(c)    Requiring Defendants, as the recipient of the deeds to the OA Deeded Properties and/or the person for whose benefit the were given, to return said deeds to the applicable Debtor Plaintiffs for the benefit of the respective Estates or otherwise;

(d)    Preserving and recovering the applicable Debtor Plaintiffs' interest in the OA Deeded Properties for the benefit of the applicable bankruptcy estate(s);

(e)    Enjoining against further disposition of the deeds to the OA Deeded Properties by Defendants;

(f)    Awarding Plaintiffs damages in an amount to be determined at trial, including interest

(g)    Awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(h)    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## EIGHTH COUNT

*(Avoidance of Operating Agreements as Fraudulent Transfer(s)*
*Pursuant to 11 U.S.C. §§ 548(a)(1)(B) & 550)*

258.    Debtor Plaintiffs repeat and re-allege the allegations set forth in all preceding paragrap0hs of this Complaint, as if set forth at length herein.

259.    Within two (2) years of the Petition Date, the applicable Debtor Plaintiff(s) entered into the Operating Agreements.

260.    The Operating Agreements manifest contractual agreement(s) to require the Delivery of ADR Deeds relative to the OA Deeded Properties by Debtor Plaintiffs and therefore manifest a transfer of property or property interests by the Debtor Plaintiffs to Defendants.

261.    Debtor Plaintiffs assert that Defendants did not provide any consideration for the Delivery of ADR Deeds but in any event, the value of the OA Deeded Properties was far in excess of any arguable consideration (i) provided by Defendant ADR pursuant to the Operating Agreements; (ii) otherwise provided by any other Defendant.

262.    Debtor Plaintiffs received less than a reasonably equivalent value in exchange for the Delivery of ADR Deeds under the Operating Agreements and, at the time the Operating Agreements were executed, Debtor Plaintiffs:

      a.    were insolvent, or became insolvent as a result of the transfer(s));

      b.    were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the debtors was an unreasonably small capital; or

      c.    intended to incur, or believed that it would incur, debts that would be beyond the respective debtors' ability to pay as such debts matured.

263.    To the extent the Court determines that the Operating Agreements were not validly terminated prior to the Petition Date, Debtor Plaintiffs are entitled, in the alternative, to avoid the Operating Agreements as to ADR as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1).

264.    Alternatively, to the extent the Court determines that the Operating Agreements were not validly terminated prior to the Petition Date, Debtor Plaintiffs are entitled, in the alternative to avoid the Operating Agreements as to ADR as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(2).

WHEREFORE, pursuant to Section 548(a)(1)(B) and Section 550 of the Bankruptcy Code, the Debtor Plaintiffs are entitled to judgment against ADR:

(a)    Avoiding the Operating Agreements and determining same to be void and of no force and effect;

(b)    Requiring ADR to return the deeds to the OA Deeded Properties to the applicable Debtor Plaintiffs;

(c)    Awarding Plaintiffs damages in an amount to be determined at trial, including interest

(d)    Awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(e)    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## NINTH COUNT

*(Avoidance of Delivery of ADR Deeds as Fraudulent Transfers Pursuant to N.J.S.A. 25:2-25)*

265.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

266.    Within two (2) years of the Petition Date, the Plaintiffs contributed the deeds to the OA Deeded Properties to ADR as Managing Member of the applicable defendant entity(ies) created under the Operating Agreements pursuant to the Delivery of ADR Deeds.

267.    The Delivery of ADR Deeds to the OA Deeded Properties constitute multiple, separate transfers of property of the Plaintiff to Defendants.

268.    The value of the OA Deeded Properties subject to the Delivery of ADR Deeds was far in excess of any purported consideration provided by Defendants.

269.    Plaintiffs received less than a reasonably equivalent value in exchange for the Delivery of the Deeds and, at the time of the Delivery of ADR Deeds, Plaintiffs:

a.    were engaged or were about to engage in a business or a transaction, for which the remaining assets of the Plaintiff(s) were unreasonably small in relation to the business or transaction; or

b.    intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

270.    Plaintiffs are entitled to avoid the Delivery of ADR Deeds and recover the deeds to the OA Deeded Properties from Defendants as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(a).

271.    Alternatively, Plaintiff) are entitled, to avoid the Delivery of ADR Deeds and recover the deeds to the OA Deeded Properties from Defendants as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(b).

WHEREFORE, pursuant to N.J.S.A. 25:2-25; 25:2-29 & 25:2-30, the Plaintiffs are entitled to judgment against the Defendants:

(a)    Avoiding the Delivery of ADR Deeds;

(b)    Directing the Delivery of the ADR Deeds be set aside;

(c)    Requiring ADR, as the recipient of the deeds to the OA Deeded Properties and/or the person for whose benefit the were given, to return said Deeds to the applicable Plaintiffs;

(d)    Preserving and recovering the value of the applicable Debtor Plaintiffs interest in the OA Deeded Properties for the benefit of the bankruptcy estate;

(e)    Enjoining further disposition of the deeds to the OA Deeded Properties by Defendants;

(f)    Awarding Plaintiffs damages in an amount to be determined at trial, including interest

(g)    Awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(h)    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## TENTH COUNT

*(Avoidance of Delivery of ADR Deeds as Fraudulent
Transfers Pursuant to N.J.S.A. 25:2-27)*

272.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

273.    Within two (2) years of the Petition Date, the Plaintiffs contributed the deeds to the OA Deeded Properties to ADR as Managing Member of the applicable defendant entity(ies) created under the Operating Agreements pursuant to the Delivery of ADR Deeds.

274.    The Delivery of ADR Deeds to the OA Deeded Properties constitute multiple, separate transfers of property of the Plaintiffs to Defendants.

275.    The value of the OA Deeded Properties subject to the Delivery of ADR Deeds was far in excess of any purported consideration provided by Defendants.

276.    Plaintiffs received less than a reasonably equivalent value in exchange for the Delivery of ADR Deeds and, at the time the Operating Agreements were executed, were insolvent or became insolvent as a result of the transfer or obligation.

277.    Plaintiffs are entitled to avoid the Delivery of ADR Deeds and recover the deeds to the OA Deeded Properties from Defendants as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(a).

278.    Alternatively, Plaintiffs are entitled, to avoid the Delivery of ADR Deeds and recover the deeds to the OA Deeded Properties from Defendants as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(b).

WHEREFORE, pursuant to N.J.S.A. 25:2-27; 25:2-29 & 25:2-30, the Plaintiffs are entitled to judgment against the Defendants:

(a)    avoiding the Delivery of ADR Deeds;

(b)    directing the Delivery of the ADR Deeds be set aside;

(c)    requiring the Defendants, as the recipient of the deeds to the OA Deeded Properties and/or the person for whose benefit the were given, to return said deeds to the applicable Plaintiffs;

(d)    preserving and recovering the value of the applicable Debtor Plaintiffs' interest in the OA Deeded Properties for the benefit of the bankruptcy estate;

(e)    enjoining further disposition of the deeds to the OA Deeded Properties by Defendants;

(f)    awarding Plaintiffs damages in an amount to be determined at trial, including interest;

(g)    awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(h)    awarding Plaintiffs such other and further relief as the Court
deems just and proper.

## ELEVENTH COUNT

*(Avoidance of Operating Agreements as Fraudulent Transfer(s)
Pursuant to N.J.S.A. 25:2-25)*

279.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs
of this Complaint, as if set forth at length herein.

280.    Within two (2) years of the Petition Date, the Plaintiffs entered into the
Operating Agreements.

281.    The Operating Agreements manifest contractual agreement(s) to require the
Delivery of ADR Deeds relative to the OA Deeded Properties by Plaintiffs and therefore
manifest a transfer of property or property interests by the Plaintiffs to Defendants.

282.    The value of the OA Deeded Properties was far in excess of any arguable
consideration (i) provided by Defendant ADR pursuant to the Operating Agreements; (ii)
otherwise provided by any other applicable Defendant

283.    Plaintiff(s) received less than a reasonably equivalent value in exchange for the
Delivery of ADR Deeds under the Operating Agreements and, at the time the Operating
Agreements were executed, Plaintiff(s):

a.    were engaged or were about to engage in a business or a
transaction, for which the remaining assets of the Plaintiff(s)
were unreasonably small in relation to the business or
transaction; or

b.    intended to incur, or believed or reasonably should have
believed that it would incur, debts beyond its ability to pay as
they became due.

284.    To the extent the Court determines that the Operating Agreements were not
validly terminated prior to the Petition Date, Plaintiffs are entitled, in the alternative, to avoid

the Operating Agreements as to ADR as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(a).

285.    Alternatively, to the extent the Court determines that the Operating Agreements were not validly terminated prior to the Petition Date, Plaintiffs are entitled, in the alternative, to avoid the Operating Agreements as to ADR as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(b).

WHEREFORE, pursuant to N.J.S.A. 25:2-25; 25:2-29 & 25:2-30, the Plaintiffs are entitled to judgment against Defendants:

     (a)    avoiding the Operating Agreements and determining same to be void and of no force and effect;

     (b)    requiring Defendants to return the deeds to the OA Deeded Properties to the applicable Plaintiffs;

     (c)    enjoining further disposition of the deeds to the OA Deeded Properties by Defendants;

     (d)    awarding Plaintiffs damages in an amount to be determined at trial, including interest;

     (e)    awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

     (g)    awarding Plaintiffs such other and further relief as the Court deems just and proper.

## TWELFTH COUNT

*(Avoidance of Operating Agreements as Fraudulent Transfer(s)*
*Pursuant to N.J.S.A. 25:2-27)*

286.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

287.    Within two (2) years of the Petition Date, the Plaintiffs entered into the Operating Agreements.

288.    The Operating Agreements manifest contractual agreement(s) to require the Delivery of ADR Deeds relative to the OA Deeded Properties by Plaintiffs and therefore manifest a transfer of property or property interests by the Plaintiffs to Defendants.

289.    The value of the OA Deeded Properties was far in excess of any arguable consideration (i) provided by Defendant ADR pursuant to the Operating Agreements; (ii) otherwise provided by any other applicable Defendant.

290.    Plaintiffs received less than a reasonably equivalent value in exchange for the Operating Agreements and, at the time the Operating Agreements were executed, were insolvent or became insolvent as a result of the transfer or obligation.

291.    To the extent the Court determines that the Operating Agreements were not validly terminated prior to the Petition Date, Plaintiffs are entitled, in the alternative, to avoid the Operating Agreements as to ADR as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(a).

292.    Alternatively, to the extent the Court determines that the Operating Agreements were not validly terminated prior to the Petition Date, Plaintiffs are entitled, in the alternative, to avoid the Operating Agreements as to ADR as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(b).

WHEREFORE, pursuant to N.J.S.A. 25:2-27; 25:2-29 & 25:2-30, the Plaintiffs are entitled to judgment against the Defendants:

(a)    avoiding the Operating Agreements and determining same to be void and of no force and effect;

(b)    requiring Defendants to return the deeds to the OA Deeded Properties to the applicable Plaintiffs;

(c)    enjoining further disposition of the deeds to the OA Deeded Properties by Defendants;

(d)    awarding Plaintiffs damages in an amount to be determined at trial, including interest;

(e)    awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(f)    awarding Plaintiffs such other and further relief as the Court deems just and proper.

## THIRTEENTH COUNT

*(Unjust Enrichment)*[3]

293.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

294.    As a result of their wrongful conduct, Defendants have obtained significant benefits to Plaintiffs' detriment, including Delivery of ADR Deeds, the recording of the deed to the Manor Avenue Property and other benefits incident thereto, and the unauthorized occupancy of the JS Realty Property.

295.    Defendants have not compensated Plaintiffs for these benefits.

296.    Defendants failure to compensate Plaintiffs for these benefits is unjust.

297.    Defendants retention of the deeds to the OA Deeded Properties, record title to the Manor Avenue Property, and unauthorized occupancy of the JS Realty Property is unjust.

298.    Plaintiffs have suffered and will continue to suffer damages as a direct and proximate result of Defendants' misconduct.

WHEREFORE, the Plaintiffs are entitled to judgment against the Defendants:

(a)    entering judgment in favor of Debtor Plaintiff JS Realty against Defendant ADR in an amount equal to the value of the rent for the unauthorized occupancy by the ADR:

---

[3] To the extent that this Count incorporates allegations related to the Third Count and the Nineteenth Count, Plaintiffs plead this Count in the event that the Court avoids the subject contracts and/or concludes no contract existed.

(b)     requiring Defendants to return the deeds to the OA Deeded Properties and requiring Defendant Supor MT to execute and deliver a deed re-conveying title to the Manor Avenue Property to Plaintiff Marital Trust;

(c)     awarding Plaintiffs damages in an amount to be determined at trial, including interest;

(d)     awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(e)     awarding Plaintiffs such other and further relief as the Court deems just and proper.

## FOURTEENTH COUNT
### (*Preliminary Injunction*)

299.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

300.    Plaintiffs have demonstrated that Defendant(s) have wrongfully and improperly appropriated possession of the deeds to the OA Deeded Properties.

301.    Other than the Manor Avenue Property, Lender has already recorded deeds to all of the OA Deeded Properties in the name of certain special purpose entity nominees of Lender, making a record of said nominee's asserted fee ownership of the OA Deeded Properties other than the Manor Avenue Property.

302.    Debtor Plaintiffs require an injunction to prevent Defendants ADR from taking action as to the OA Deed Properties (other than the Manor Avenue Property) that might occasion significant and irreparable harm to their respective interests and the interests of their respective bankruptcy estates.

303.    There is no risk of harm to Defendants because the *status quo* as to the OA Deeded Properties (other than the Manor Avenue Property) will be preserved and there is no

meaningful, present risk that said properties will decrease in value during the pendency of this action.

304.    If Defendants were allowed to record the deeds to the OA Deeded Properties (other than the Manor Avenue Property) or otherwise attempt to transfer, alienate or hypothecate said deeds it would cloud title and create potential complications as to the status of said properties to the irreparable harm of Debtor Plaintiffs' bankruptcy estate(s).

305.    In terms of the Manor Avenue Property, Defendants ADR and Supor MT have wrongfully recorded a deed making a public record of Supor MT's purported fee ownership of said property.

306.    If Defendants ADR and Supor MT remain in exclusive and unrestrained control over the Manor Avenue Property, they will maintain the ability to sell, transfer, encumber, hypothecate or otherwise administer same in such a way as to diminish, compromise, destroy and/or irreparably harm the significant interests therein as possessed by Plaintiff Marital Trust.

307.    Plaintiff Marital Trust requires an injunction to prevent Defendants ADR and Supor MT from taking action(s) as to the Manor Avenue Property that might occasion significant and irreparable harm to its interests.

308.    There is no risk of harm to Defendant(s) because the *status quo* as to the Manor Avenue Property will be preserved and there is no meaningful, present risk that the Manor Avenue Property will decrease in value during the pendency of this action.

WHEREFORE, the Plaintiffs requests that this Court enter judgment, pursuant to Section 105 of the Bankruptcy Code, and Federal Rule of Bankruptcy Procedure 7065:

(a)    granting a temporary and permanent injunction prohibiting Defendants, other than Supor MT, from recording, encumbering, hypothecating, transferring, conveying or otherwise disposing of the

56

deeds to the OA Deeded Properties or the underlying Properties other than the Manor Avenue Property;

(b)     granting a temporary and permanent injunction prohibiting Defendants ADR and Supor MT from encumbering, hypothecating, transferring, conveying or otherwise disposing of the Manor Avenue Property;

(c)     awarding Plaintiffs costs of suit, including reasonable attorneys' fees; and

(d)     awarding Plaintiffs such other relief as is just and appropriate.

### FIFTEENTH COUNT

*(Avoidance of Recording of Deed to Manor Avenue Property*
*as Fraudulent Transfers Pursuant to N.J.S.A. 25:2-25)*

309.    Plaintiff Marital Trust repeats and re-alleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

310.    Within two (2) years of the Petition Date, Defendant ADR as Managing Member of Defendant Supor MT effectuated the recording of a deed to the Manor Avenue Property in the name of Supor MT with the Hudson County Register of Deeds, which deed had been previously tendered to Defendant(s) by Plaintiff Marital Trust under the Marital Trust OA.

311.    The Recording of a deed to the Manor Avenue Property constitutes a transfer of property of Plaintiff Marital Trust to Defendant(s).

312.    The value of the Manor Avenue Property was far in excess of the amount of any consideration provided by Defendant(s) in exchange therefor.

313.    Plaintiff Marital Trust received less than a reasonably equivalent value in exchange for the recording of the deed to the Manor Avenue Property and, at the time of the recording of the deed, Plaintiff Marital Trust:

a.     was engaged or was about to engage in a business or a transaction, for which the remaining assets of the Plaintiff(s)

were unreasonably small in relation to the business or transaction; or

b.     intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

314.    Since the recording of the deed to the Manor Avenue Property, plaintiff Marital Trust has continued to exert dominion and control over the incidents of ownership as to the Manor Avenue Property and to maintain and control the property including the maintenance of appropriate insurance on the property, the payment of real estate taxes, and the collection of rents on the leases for the property.

315.    Plaintiff Marital Trust has demanded that title to the Manor Avenue Property be re-conveyed back to Plaintiff Marital Trust.

316.    Defendant(s) have refused to re-convey title to the Manor Avenue Property back to Plaintiff Marital Trust.

317.    Plaintiff Marital Trust is entitled to avoid the recording of the deed to the Manor Avenue Property and recover said deeds from Defendant(s) as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(a).

318.    Alternatively, Plaintiff Marital Trust is entitled to avoid the recording of the deed to the Manor Avenue Property and recover said deeds from Defendant(s) as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(b).

319.    Plaintiff Marital Trust is entitled to receipt of a deed from Defendant(s) re-conveying title to the Manor Avenue Property to Plaintiff Marital Trust.

WHEREFORE, pursuant to N.J.S.A. 25:2-25; 25:2-29 & 25:2-30, the Plaintiff Marital Trust is entitled to judgment against the Defendant(s):

(a)     avoiding the Recording of the deed to the Manor Avenue Property;

(b)     directing the Recording of the deed to the Manor Avenue Property be
        set aside;

(c)     requiring the Defendant(s) to execute and deliver a deed re-
        conveying title to the Manor Avenue Property to Plaintiff
        Marital Trust;

(d)     preserving and recovering the value of the Manor Avenue
        Property;

(e)     entering judgment against Defendant(s) in an amount equal to
        the value of the Manor Avenue Property;

(f)     enjoining further disposition of the Manor Avenue Property
        by Defendant(s); a

(g)     awarding Plaintiffs damages in an amount to be determined at
        trial, including interest;

(h)     awarding costs of suit, including reasonable attorneys' fees;
        and

(i)     awarding such other and further relief as the Court deems just
        and proper.

## SIXTEENTH COUNT

*(Avoidance of the Recording of the Manor Avenue*
*Property Deed as Fraudulent Transfers Pursuant to N.J.S.A. 25:2-27)*

320.    Plaintiff Marital Trust repeats and re-alleges the allegations set forth in all

preceding paragraphs of this Complaint, as if set forth at length herein.

321.    Within two (2) years of the Petition Date, Defendant ADR as Managing Member

of Defendant Supor MT effectuated the recording of a deed to the Manor Avenue Property in

the name of Supor MT with the Hudson County Register of Deeds, which deed had been

previously tendered to Defendant(s) by Plaintiff Marital Trust under the Marital Trust OA.

322.    The Recording of a deed to the Manor Avenue Property constitutes a transfer of

property of Plaintiff Marital Trust to Defendant(s).

323.    The value of the Manor Avenue Property was far in excess of the amount of any consideration provided by Defendants ADR and/or Supor MT in exchange therefor.

324.    Plaintiff Marital Trust received less than a reasonably equivalent value in exchange for the Recording of the deed to the Manor Avenue Property and, at the time of the Recording of the deed to the Manor Avenue Property, Plaintiff Marital Trust was insolvent or became insolvent as a result of the transfer or obligation.

325.    Since the recording of the deed to the Manor Avenue Property, plaintiff Marital Trust has continued to exert dominion and control over the incidents of ownership as to the Manor Avenue Property and to maintain and control the property including the maintenance of appropriate insurance on the property, the payment of real estate taxes, and the collection of rents on the leases for the property.

326.    Plaintiff Marital Trust is entitled to avoid the recording of the deed to the Manor Avenue Property and recover said deeds from Defendants ADR and Supor MT as initial transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(a).

327.    Alternatively, Plaintiff Marital Trust is entitled to avoid the recording of the deed to the Manor Avenue Property and recover said deeds from Defendant Supor MT as immediate or mediate transferee of such transfer(s) for whose benefit the transfer(s) were made under N.J.S.A. 25:2-30(b)(1)(b).

328.    Plaintiff Marital Trust is entitled to receipt of a deed from Defendant Supor MT re-conveying title to the Manor Avenue Property to Plaintiff Marital Trust.

WHEREFORE, pursuant to N.J.S.A. 25:2-27; 25:2-29 & 25:2-30, Plaintiff Marital Trust is entitled to judgment against the Defendants ADR and/or Supor MT:

(a)    avoiding the Recording of the deed to the Manor Avenue Property;

(b)    directing the Recording of the deed to the Manor Avenue Property be set aside;

(c)    requiring Defendant Supor MT to execute and deliver a deed re-conveying title to the Manor Avenue Property to Plaintiff Marital Trust;

(d)    authorizing and ordering the recording of a new deed establishing fee ownership of the Manor Avenue Property in the name of the Marital Trust.

(e)    preserving and recovering the value of the Manor Avenue Property;

(f)    entering judgment in favor of Plaintiff Marital Trust and against Defendants ADR and Supor MT in an amount equal to the value of the Manor Avenue Property;

(g)    enjoining further disposition of the Manor Avenue Property by Defendants ADR and/or Supor MT;

(h)    awarding Plaintiffs damages in an amount to be determined at trial, including interest;

(i)    awarding Plaintiff Marital Trust costs of suit, including reasonable attorneys' fees; and

(j)    awarding such other and further relief as the Court deems just and proper.

## SEVENTEENTH COUNT

*(Avoidance of Operating Agreements as*
*Unconscionable Pursuant to NJSA 12A:2-302)*

329.    Plaintiffs repeat and re-allege the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

330.    The Operating Agreements manifest contractual agreement(s) to require the Delivery of ADR Deeds to entities controlled by Defendant ADR as Managing Member.

331.    The value of the OA Deeded Properties was far in excess of the amount(s) of any purported consideration provided by Defendant ADR in connection with the Operating Agreements.

332.    As of the execution of the Operating Agreements the total value of consideration provided by Defendant ADR was grossly inadequate in relation to the value of the OA Deeded Properties contributed by Plaintifs pursuant to the Delivery of ADR Deeds.

333.    Any value received by Plaintiffs pursuant to the Operating Agreements was substantially and unconscionably less than the value of the Manor Avenue Property wrongfully appropriated by Defendants ADR or Supor MT.

334.    The Operating Agreements were, as a matter of law, unconscionable at the time they were made and are therefore unenforceable under N.J.S.A. 12A:2-302.

335.    To the extent the Court does not determine that the Operating Agreements were validly terminated prior to the Petition Date, Plaintiffs are entitled to void same as unconscionable under N.J.S.A. 12A: 2-302

WHEREFORE, pursuant to N.J.S.A. 12A:2-302, the Plaintiffs are entitled to judgment:

(a)    voiding the Operating Agreements as unconscionable;

(b)    directing that the deeds to the OA Deeded Properties delivered pursuant to the Delivery of ADR Deeds other than the Manor Avenue Property be set aside;

(c)    requiring Defendants, as the recipient of the deeds to the OA Deeded Properties other than the Manor Avenue Property and/or the persons for whose benefit they were given, to return the deeds to the applicable Plaintiff(s);

(d)    requiring Defendants ADR and Supor MT to execute and deliver. Or direct the execution and delivery, of a deed re-conveying title to the Manor Avenue Property to Plaintiff Marital Trust;

(e)     entering judgment against Defendants ADR and Supor MT
and in favor of Plaintiff Marital Trust for any damages
sustained by virtue of any misappropriation of the Manor
Avenue Property;

(f)     entering judgment against Defendants other than Supor MT
and in favor of Debtor Plaintiffs for any damages sustained by
virtue of any misappropriation of the OA Deeded Properties
other than the Manor Avenue Property;

(f)     enjoining further disposition of the deeds to the OA Deeded
Properties and the Manor Avenue Property: and

(g)     awarding Plaintiffs costs of suit, including reasonable
attorneys' fees; and

(h)     awarding Plaintiffs such other and further relief as the Court
deems just and proper.

## **EIGHTEENTH COUNT**

*(Breach of Duty of Good Faith and Fair Dealing)*

336.    Plaintiff Marital Trust repeats and re-alleges the allegations set forth in all

preceding paragraphs of this Complaint, as if set forth at length herein.

337.    All contracts are governed by an implied covenant of good faith and fair dealing.

338.    Despite the Delivery of ADR Deeds as provided under the Operating

Agreements, it was the intention of the Plaintiffs, inclusive of Plaintiff Marital Trust that the

contributed deeds to the OA Deeded Properties would not be recorded, and title to said OA

Deeded Properties would not and could not be conveyed, unless and until such time as ADR

delivered on its obligation(s) to secure refinancing of the Madison Indebtedness.

339.    Defendant ADR, as Managing Member of Supor MT, recorded the deed

purporting to transfer title to the Manor Avenue Property to Supor MT on June 5, 2023.

340.    At the time ADR recorded, or directed as Managing Member, the recording of

the deed to the Manor Avenue Property, ADR had not arranged for or delivered a refinancing of

the Madison Indebtedness, nor had it provided consideration of any consequence to Plaintiff

Marital Trust under the Marital Trust OA.

341.    Upon information and belief, prior to recording the deed to the Manor Avenue

Property, Defendant ADR unilaterally and without notice to or permission of Plaintiff Marital

Trust, altered and modified the deed to change the stated consideration.

342.    Defendant ADR breached its covenant of good faith and fair dealing under the

Marital Trust OA by recording a deed purporting to transfer title to the Manor Avenue Property

without providing any value therefor, by altering and modifying the deed without authorization

prior to recording same, and by recording same prior to the time for recording as intended and

agreed by the parties to the Marital Trust Operating Agreement.

343.    This breach by ADR has caused Plaintiff Marital Trust significant harm and

damage.

WHEREFORE, the Plaintiff Marital Trust is entitled to judgment against the Defendants

ADR and Supor MT:

(a)    avoiding the Recording of the deed to the Manor Avenue Property;

(b)    directing the Recording of the deed to the Manor Avenue
Property be set aside;

(c)    requiring the Defendant Supor MT, as the recipient of the
deed to the Manor Avenue Property and/or the person for
whose benefit it was given, to return the deed and any profits
or proceeds thereof to Plaintiff Marital Trust;

(d)    requiring Defendants ADR and Spor MT to execute and
deliver, or direct the execution and delivery of a deed re-
conveying title to the Manor Avenue Property to Plaintiff
Marital Trust

(d)    entering judgment against Defendants ADR and Supor MT for
damages in an amount to be established at trial; and

    (e)       awarding Plaintiff Marital Trust costs of suit, including reasonable attorneys' fees; and

    (f)       awarding Plaintiff Marital Trust such other and further relief as the Court deems just and proper.

## NINETEENTH COUNT

*(Turnover of Estate Property Pursuant to 11 U.S.C. §541 & 542)*

361.    Debtor Plaintiff JS Realty repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

362.    This is an action for turnover of property of the Bankruptcy Estate pursuant to 11 U.S.C. § 542.

363.    Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held." 11 U.S.C. § 541.

364.    Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541 (a)(6).

365.    Debtor Plaintiff JS Realty has a legal and equitable property interest in the JS Realty Property which property constitutes property of the JS Realty bankruptcy estates.

366.    Any entity in possession, custody, or control of property of the estate must deliver and account for such property to the applicable Debtor Plaintiff.

367.    Debtor Plaintiffs have demanded that the ADR Occupants/ADR vacate, quit and otherwise surrender occupancy and possession of the JS Realty Property.

368.    As of the date hereof, Defendant ADR/the ADR Occupants have refused to quit and vacate the JS Realty Property or to otherwise surrender occupancy and possession of same.

369.    The JS Realty Property is property of the JS Realty bankruptcy estate(s) pursuant

to 11 U.S.C. § 541, and are therefore subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, pursuant to Section 541 and 542 of the Bankruptcy Code, the Debtor

Plaintiffs are entitled to judgment against Defendant(s):

(a)    granting Debtor Plaintiff JS Realty possession of the JS Realty
Property;

(b)    requiring ADR the ADR Occupants and any Defendant(s) in
possession and occupancy of the JS Realty Property to quit, vacate,
surrender possession and otherwise turn over possession of the JS
Realty Property to JS Realty;

(c)    awarding Plaintiffs damages for the unauthorized and uncompensated occupancy
of the JS Realty and otherwise in an amount to be determined at trial;

(d)    awarding Plaintiffs costs of suit, including reasonable attorneys' fees;
and

(e)    awarding Plaintiffs such other and further relief as the Court deems
just and proper.

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq (DSC-1397)
Caitlin C. Conklin, Esq. (CCC-5117)
*Attorneys for Plaintiffs*

By: /s/ Daniel M. Eliades
Daniel M. Eliades

Dated:  April 7, 2024

## **VERIFICATION**

Joseph Supor III, of full age, being duly sworn accordingly to law, upon his oath, deposes and says:

1.      I am a direct or indirect principal or beneficiary of each of the Plaintiffs in this action and I am authorized to submit this Verification on behalf of each Planitiff.

2.      I have read the foregoing Verified Complaint and all of the allegations contained therein.  Except as to allegations alleged upon information and belief, which allegations I believe to be true, all of the allegations in the Complaint are true based on my personal knowledge, the records of the Plaintiffs or information available through the employees and agents of the Plaintiffs.

3.      I note that various paragraphs of the Verified Complaint state conclusions of law; I do not verify as to the accuracy of those conclusions of law, but only as to the facts upon which those conclusions are based.

        /s/  Joseph Supor III
        Joseph Supor III