# <u>EXHIBIT A</u>

---------- **Forwarded message** ---------
**From: Kevin Cassidy <kcassidy@globalintadvisors.com>**
**Date: Thu, May 25, 2023 at 2:00 PM**
**Subject: Madison Forbearance**
**To: Joe Gail Gentile <jr@teamdreaminc.com>, Louis Pontoriero**
**<lpontoriero@globalintadvisors.com>**
**Cc: Joe Supor <owner24@jsupor.com>, Kevin Cassidy**
**<kcassidy@globalintadvisors.com>**


**From: Cliff Katz platzerlaw.com. Date: Thu, May 25, 2023, 1:46 PM Subject:**
**Madison Forbearance**
**To:kcassidy@globalintadvisors.com <kcassidy@globalintadvisors.com>, Peggy Ross**
**<pross@jsupor.com>, Joe Supor <joesupor@jsupor.co**

**Kevin and Joe**

As requested please see the attached Madison forbearance agreement.

```
Cliff A. Katz, Esq.

A Member of The Firm

Platzer, Swergold,Goldberg,

Katz & Jaslow, LLP

475 Park Avenue, South

New York, New York 10016

Telephone: (212) 593-3000

Facsimile: (212) 593-0353

ckatz@platzerlaw.com
```

```
This message and any attachment are confidential and may be privileged or
otherwise protected from disclosure.  If you are not the intended recipient,
please telephone or email the sender and delete this message and any
attachment from your system.  If you are not the intended recipient you must
not copy this message or attachment or disclose the contents to any other
person.
```

CIRCULAR 230 DISCLOSURE: Pursuant to Regulations Governing Practice Before
the Internal Revenue Service, any tax advice contained herein is not intended
or written to be used and cannot be used by a taxpayer for the purpose of
avoiding tax penalties that may be imposed or promoting, marketing or
recommending to another party any transaction or  matter addressed herein.

## FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (this "**Agreement**") made this 12th day of April, 2023 and effective as of March 15, 2023 (the "**Effective Date**"), by and among:

**1000 FRANK E. RODGERS 1 LLC**, a Delaware limited liability company, having an address at 520 Madison Avenue, Suite 3501, New York, New York 10022 (together with its successors and assigns, collectively, "**Mortgage Lender**");

**1000 FRANK E. RODGERS 2 LLC**, a Delaware limited liability company, having an address at 520 Madison Avenue, Suite 3501, New York, New York 10022 (together with its successors and assigns, collectively, "**Mezzanine Lender**"; and together with Mortgage Lender, individually a "**Lender**" and collectively, the "**Lenders**");

**SUPOR PROPERTIES ENTERPRISES LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mortgage Borrower 1**"), **J. SUPOR 136-1 REALTY LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mortgage Borrower 2**"), **SUPOR-172 REALTY LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mortgage Borrower 3**", and together with FER Mortgage Borrower 1 and FER Mortgage Borrower 2, collectively, the "**FER Mortgage Borrower**"), **SUPOR PROPERTIES BREIDERHOFT LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Breiderhoft Mortgage Borrower**"), **SUPOR PROPERTIES DEVON LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Devon Mortgage Borrower**"), **SHORE PROPERTIES ASSOCIATES NORTH LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Mantoloking Mortgage Borrower**"), **SUPOR PROPERTIES 600 URBAN RENEWAL LLC,** a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Guyon Mortgage Borrower**"), **JS REALTY PROPERTIES LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Supor Boulevard Mortgage Borrower**"), **SUPOR PROPERTIES HARRISON AVENUE LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ  07032 (the "**Harrison Mortgage Borrower**", and together with FER Mortgage Borrower, Breiderhoft Mortgage Borrower, Devon Mortgage Borrower, Mantoloking Mortgage Borrower, Guyon Mortgage Borrower and Supor Boulevard Mortgage Borrower, individually and/or collectively, as the context may require, the "**Mortgage Borrower**");

**S&B REALTY PARTNERSHIP**, a New Jersey general partnership, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mezzanine Borrower 1**"), **J. SUPOR 136-1 LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mezzanine Borrower 2**"), **SUPOR-172 LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mezzanine Borrower 3**", and together with FER Mezzanine Borrower 1 and FER Mezzanine Borrower 2, collectively, the "**FER Mezzanine Borrower**"), **SUPOR PROPERTIES DEVON HOLDING LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny,

NJ 07032 (the "**Devon Mezzanine Borrower**"), **SUPOR PROPERTIES BREIDERHOFT HOLDING LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Breiderhoft Mezzanine Borrower**"), **SHORE PROPERTIES ASSOCIATES NORTH HOLDING LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Mantoloking Mezzanine Borrower**"), **JL REALTY PROPERTIES LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Supor Boulevard Mezzanine Borrower**"), **SUPOR PROPERTIES 600 UR HOLDING LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Guyon Mezzanine Borrower**"), and **SUPOR PROPERTIES HARRISON AVENUE HOLDING LLC**[1], a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Harrison Mezzanine Borrower**", and together with FER Mezzanine Borrower, Breiderhoft Mezzanine Borrower, Devon Mezzanine Borrower, Mantoloking Mezzanine Borrower, Supor Boulevard Mezzanine Borrower and Guyon Mezzanine Borrower, individually and/or collectively, as the context may require, the "**Mezzanine Borrower**"; and together with Mortgage Borrower, each individually a "**Borrower**" and collectively, the "**Borrowers**");

**S JOSEPH SUPOR, III**, an individual residing at 583 Princeton Avenue, Brick, New Jersey 08724 ("**JS**"), **J. SUPOR & SON TRUCKING & RIGGING CO. INC.**, a New Jersey corporation, having an address at 433 Bergen Avenue, Kearny, New Jersey 07032 ("**JSSTR**"), and **SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO.**, a New Jersey corporation, having an address at 433 Bergen Avenue, Kearny, New Jersey 07032 ("**Subel**"; together with JS and JSSTR, individually a "**Guarantor**" and collectively, jointly and severally, the "**Guarantors**").

## RECITALS

## THE MORTGAGE LOAN:

**WHEREAS**, on or about December 31, 2020, Mortgage Lender extended to Mortgage Borrower (except for Harrison Mortgage Borrower) and Supor Properties Boonton LLC (the "**Released Mortgage Borrower**") a loan in the original principal amount of $72,500,000.00 (the "**Mortgage Loan**");

**WHEREAS**, the Mortgage Loan (1) is evidenced by (i) that certain Land Loan Agreement (as the same may have been and may be amended, modified and/or supplemented from time to time, the "**Mortgage Loan Agreement**") dated as of December 31, 2020 made by and between Mortgage Lender and Mortgage Borrower (except for Harrison Mortgage Borrower), Released Mortgage Borrower and THE MARITAL TRUST UNDER THE LAST WILL AND TESTAMENT OF JOSEPH SUPOR, JR., DATED SEPTEMBER 13, 2002, AS AMENDED BY FIRST CODICIL DATED JUNE 14, 2007, an irrevocable New Jersey testamentary trust ("**The**

---

[1] Pursuant to that certain Joinder Agreement dated effective as of May 17, 2021, Harrison Mezzanine Borrower was joined as a Borrower under the Mezzanine Note, the Mezzanine Loan Agreement and all other Mezzanine Loan Documents.

**Marital Trust**")[2], and (ii) that certain Mortgage Note (as the same may have been and may be amended, modified and/or supplemented from time to time, the "**Mortgage Note**"), dated as of December 31, 2020, by Mortgage Borrower (except for Harrison Mortgage Borrower), the Released Mortgage Borrower and The Marital Trust in favor of Mortgage Lender in the original principal amount of $72,500,000.00, and (2) is secured by, *inter alia,* (i) that certain Mortgage and Security Agreement, dated as of December 31, 2020, by Mortgage Borrower (excluding Breiderhoft Mortgage Borrower, Mantoloking Mortgage Borrower and Harrison Mortgage Borrower), the Released Mortgage Borrower and The Marital Trust for the benefit of Mortgage Lender encumbering the Property (as defined in the Mortgage Loan Agreement, except excluding the Harrison Property[3]) (as the same may be amended, modified and/or supplemented from time to time, "**Mortgage 1**"), (ii) that certain Mortgage and Security Agreement dated as of January 8, 2021, given by Mantoloking Mortgage Borrower for the benefit of Mortgage Lender encumbering the Mantoloking Property (as defined in the Mortgage Loan Agreement) ("**Mortgage 2**"), (iii) that certain Mortgage and Security Agreement dated as of May 17, 2021, given by Breiderhoft Mortgage Borrower for the benefit of Mortgage Lender encumbering the Breiderhoft Property (as defined in the Mortgage Loan Agreement) ("**Mortgage 3**") and (iv) that certain Mortgage and Security Agreement, dated as of May 17, 2021, given by Harrison Mortgage Borrower for the benefit of Mortgage Lender encumbering the Harrison Property ("**Mortgage 4**", and together Mortgage 1, Mortgage 2 and Mortgage 3, collectively, the "**Mortgage**", and together with the Mortgage Loan Agreement, the Mortgage Note, and such other documents executed in connection with and/or pertaining to the Mortgage Loan as set forth on <u>Schedule A-1</u> attached hereto and made a part hereof, collectively, the "**Mortgage Loan Documents**");

**WHEREAS**, pursuant to that certain Partial Release of Mortgage, Assignment of Leases and Rents and Cross Collateralization Agreement and Omnibus Agreement to Mortgages, dated as of June, 2021, the Released Mortgage Borrower was released from its obligations with respect to the Mortgage Loan;

**WHEREAS**, the Mortgage Loan is further secured by, among other documents, (i) that certain Guaranty, dated December 31, 2020, by the Guarantors in favor of Mortgage Lender (the "**Mortgage Loan Payment Guaranty**"), (ii) that certain Conditional Guaranty, dated December 31, 2020, by the Guarantors in favor of Mortgage Lender (the "**Mortgage Loan Conditional Guaranty**"), (iii) that certain Guaranty of Debt Service and Carry Guaranty, dated December 31, 2020, by the Guarantors in favor of Mortgage Lender (the "**Mortgage Loan Carry Guaranty**"), and (iv) that certain Environmental Indemnity Agreement, dated as of December 31, 2020, by the Guarantors and the Mortgage Borrower in favor of Mortgage Lender (the "**Mortgage Loan Environmental Guaranty**"; together with the Mortgage Loan Payment Guaranty, the Mortgage Loan Conditional Guaranty, and the Mortgage Loan Carry Guaranty, each a "**Mortgage Loan**

---

[2] Pursuant to the terms of that certain Joinder and Release Agreement dated as of May 17, 2021, (i) The Marital Trust was released from its obligations as a borrower under the Note, the Loan Agreement and all other Loan Documents, and (ii) Harrison Mortgage Borrower was joined as Mortgage Borrower under the Mortgage Note, the Mortgage Loan Agreement and all other Mortgage Loan Documents.

[3] Pursuant to the terms of that certain Partial Release of Lien of Mortgage dated as of May 17, 2021, The Marital Trust and that certain parcel of real property located in the Town of Harrison, County of Hudson and State of New Jersey commonly known as 751 Harrison Avenue, Harrison, New Jersey (the "**Harrison Property**") was released as collateral from Mortgage 1.

**Guaranty**" and collectively, the "**Mortgage Loan Guaranties**"), which Mortgage Loan Guaranties are included in the defined term "Mortgage Loan Documents"; and

WHEREAS, on or about October 17, 2022, Mortgage Lender, Mortgage Borrower and Guarantors entered into a pre-negotiation letter (the "**Mortgage PNL**") as a condition precedent to discussing possible modifications to the Mortgage Loan, which Mortgage PNL remains in full force and effect as of the date hereof and is hereby deemed to be a "Mortgage Loan Document".

## THE MEZZANINE LOAN:

WHEREAS, on or about December 31, 2020, Mezzanine Lender extended to Mezzanine Borrower (except for Harrison Mezzanine Borrower) and Supor Properties Boonton Holding LLC (the "**Released Mezzanine Borrower**") a loan in the original principal amount of $1,000,000.00 (the "**Mezzanine Loan**"; and together with the Mortgage Loan, collectively, the "**Loan**");

WHEREAS, the Mezzanine Loan (1) is evidenced by (i) that certain Mezzanine Loan Agreement (as the same may be amended, modified and/or supplemented from time to time, the "**Mezzanine Loan Agreement**") dated as of December 31, 2020 by and among Mezzanine Lender, Mezzanine Borrower and Released Mezzanine Borrower and (ii) that certain Mezzanine Promissory Note (as the same may be amended, modified and/or supplemented from time to time, the "**Mezzanine Note**") dated as of December 31, 2020, by Mezzanine Borrower and Released Mezzanine Borrower in favor of Mezzanine Lender in the original principal amount of $1,000,000.00, and (2) is secured by those certain Ownership Interests Pledge and Security Agreements given by each Mezzanine Borrower for the benefit of Mezzanine Lender (as the same may be amended, modified and/or supplemented from time to time, collectively, the "**Pledge**", and together with the Mezzanine Loan Agreement, the Mezzanine Note, and such other documents executed in connection with and/or pertaining to the Mezzanine Loan as set forth on Schedule A-2, collectively, the "**Mezzanine Loan Documents**"), encumbering each Mezzanine Borrower's ownership interest in the applicable Mortgage Borrower;

WHEREAS, pursuant to that certain Release from Mezzanine Promissory Note and Mezzanine Loan Agreement and Termination of Ownership Interests Pledge and Security Agreement, dated as of June, 2021, the Released Mezzanine Borrower was released from its obligations with respect to the Mezzanine Loan;

WHEREAS, the Mezzanine Loan is further secured by, among other documents, (i) that certain Guaranty, dated December 31, 2020, by the Guarantors in favor of Mezzanine Lender (the "**Mezzanine Loan Payment Guaranty**"), (ii) that certain Conditional Guaranty, dated December 31, 2020, by the Guarantors in favor of Mezzanine Lender (the "**Mezzanine Loan Conditional Guaranty**"), (iii) that certain Guaranty of Debt Service and Carry Guaranty, dated December 31, 2020, by the Guarantors in favor of Mezzanine Lender (the "**Mezzanine Loan Carry Guaranty**"), and (iv) that certain Environmental Indemnity Agreement, dated as of December 31, 2020, by the Guarantors and the Mezzanine Borrower in favor of Mezzanine Lender (the "**Mezzanine Loan Environmental Guaranty**"; together with the Mezzanine Loan Payment Guaranty, the Mezzanine Loan Conditional Guaranty, and the Mezzanine Loan Carry Guaranty, each a

4

"**Mezzanine Loan Guaranty**" and collectively, the "**Mezzanine Loan Guaranties**"), which Mezzanine Loan Guaranties are included in the defined term "Mezzanine Loan Documents"; and

WHEREAS, on or about October 17, 2022, Mezzanine Lender, Mezzanine Borrower and Guarantors entered into a pre-negotiation letter (the "**Mezzanine PNL**") as a condition precedent to discussing possible modifications to the Mezzanine Loan, which Mezzanine PNL remains in full force and effect as of the date hereof and is hereby deemed to be a "Mezzanine Loan Document".

<u>**DEFAULTS:**</u>

WHEREAS, pursuant to Section 2.2.1 of the Mortgage Loan Agreement and Section 1 of the Mortgage Note, on each Payment Date (as defined in the Mortgage Loan Agreement) Mortgage Borrower is required to pay to Mortgage Lender interest on the Principal (as defined in the Mortgage Loan Agreement) accrued and accruing through the last day of the Interest Period (as defined in the Mortgage Loan Agreement);

WHEREAS, pursuant to Section 5.1.2 of the Mortgage Loan Agreement, Mortgage Borrower is required to pay Taxes and Other Charges (as defined in the Mortgage Loan Agreement) as the same become due and payable;

WHEREAS, pursuant to Section 2.2.3 of the Mortgage Loan Agreement and Section 1 of the Mortgage Note, upon the Maturity Date (as defined in the Mortgage Loan Agreement), Mortgage Borrower is required to pay to Mortgage Lender (i) the outstanding Principal, (ii) all accrues and unpaid interest thereon, (iii) the applicable Make Whole Fee, if any, (iv) the Exit Fee (as defined in the Mortgage Loan Agreement) and (v) all other amounts due pursuant to the Mortgage Loan Documents (collectively, the "**Mortgage Loan Maturity Payment**");

WHEREAS, Mortgage Borrower has defaulted under the terms of the Mortgage Loan Documents by failing to pay to Mortgage Lender the monthly payments of interest on the Principal (as defined in the Mortgage Loan Documents) accrued and accruing through the last day of the Interest Period (as defined in the Mortgage Loan Documents) that were due and payable on the Payment Dates (as defined in the Mortgage Loan Documents) occurring on June 1, 2022 (the "**Mortgage Loan Existing Default Date**"), July 1, 2022, August 1, 2022, September 1, 2022, October 1, 2022, November 1, 2022 and December 1, 2022 (collectively, the "**Mortgage Loan Monthly Payment Events of Default**");

WHEREAS, Mortgage Borrower has defaulted under the terms of the Mortgage Loan Documents by failing to pay to Taxes and Other Charges in the amount of $177,893.27, as the same were due and payable as of February 1, 2023 (the "**Mortgage Loan Tax Payment Event of Default**");

WHEREAS, Mortgage Borrower has defaulted under the terms of the Mortgage Loan Documents by failing to pay to Mortgage Lender the Mortgage Loan Maturity Payment on the Maturity Date (the "**Mortgage Loan Maturity Payment Event of Default**"; and together with the Mortgage Loan Monthly Payment Events of Default and the Mortgage Loan Tax Payment Event of Default, collectively, the "**Mortgage Loan Existing Defaults**");

**WHEREAS**, as a result of the Mortgage Loan Existing Defaults, Mortgage Lender delivered notice to Mortgage Borrower on October 24, 2022, advising Mortgage Borrower of (i) the Mortgage Loan Existing Defaults and (ii) the acceleration of the Mortgage Loan, pursuant to which, the entire Mortgage Loan Indebtedness (as hereinafter defined) is now due and payable;

**WHEREAS**, pursuant to Section 2.2.1 of the Mezzanine Loan Agreement and Section 1 of the Mezzanine Note, on each Payment Date (as defined in the Mezzanine Loan Agreement) Mezzanine Borrower is required to pay to Mezzanine Lender interest on the Principal (as defined in the Mezzanine Loan Agreement) accrued and accruing through the last day of the Interest Period (as defined in the Mezzanine Loan Agreement);

**WHEREAS,** pursuant to Section 5.1.2 of the Mezzanine Loan Agreement, Mezzanine Borrower is required to cause Mortgage Borrower to pay Taxes and Other Charges (as defined in the Mezzanine Loan Agreement) as the same become due and payable;

**WHEREAS,** pursuant to Section 2.2.3 of the Mezzanine Loan Agreement and Section 1 of the Mezzanine Note, upon the Maturity Date (as defined in the Mezzanine Loan Agreement), Mezzanine Borrower is required to pay to Mezzanine Lender (i) the outstanding Principal, (ii) all accrues and unpaid interest thereon, (iii) the applicable Make Whole Fee, if any, (iv) the Exit Fee (as defined in the Mezzanine Loan Agreement) and (v) all other amounts due pursuant to the Mezzanine Loan Documents (collectively, the "**Mezzanine Loan Maturity Payment**");

**WHEREAS**, Mezzanine Borrower has defaulted under the terms of the Mezzanine Loan Documents by failing to pay to Mezzanine Lender the monthly payments of interest on the Principal (as defined in the Mezzanine Loan Agreement) accrued and accruing through the last day of the Interest Period (as defined in the Mezzanine Loan Documents) that were due and payable on the Payment Dates (as defined in the Mezzanine Loan Documents) occurring on June 1, 2022 (the "**Mezzanine Loan Existing Default Date**", and together with the Mortgage Loan Existing Default Date, the "**Existing Default Date**"), July 1, 2022, August 1, 2022, September 1, 2022, October 1, 2022, November 1, 2022 and December 1, 2022  (collectively, the "**Mezzanine Loan Monthly Payment Events of Default**");

**WHEREAS,** Mezzanine Borrower has defaulted under the terms of the Mezzanine Loan Documents by failing to cause the Mortgage Borrower to pay Taxes and Other Charges in the amount of $177,893.27, as the same were due and payable as of February 1, 2023 (the "**Mezzanine Loan Tax Payment Event of Default**");

**WHEREAS**, Mezzanine Borrower has defaulted under the terms of the Mezzanine Loan Documents by failing to pay to Mezzanine Lender the Mezzanine Loan Maturity Payment on the Maturity Date (the "**Mezzanine Loan Maturity Payment Event of Default**"; and together with the Mezzanine Loan Monthly Payment Events of Default and the Mezzanine Loan Tax Payment Event of Default, collectively, the "**Mezzanine Loan Existing Defaults**; and together with the Mortgage Loan Existing Defaults, collectively, the "**Existing Defaults**");

**WHEREAS**, as a result of the Mezzanine Loan Existing Defaults, Mezzanine Lender delivered notice to Mezzanine Borrower on October 24, 2022, advising Mezzanine Borrower of (i) the Mezzanine Loan Existing Defaults and (ii) the acceleration of the Mezzanine Loan, pursuant to which, the entire Mezzanine Loan Indebtedness (as hereinafter defined) is now due and payable; and

**WHEREAS**, conditioned on Mortgage Borrower's, Mezzanine Borrower's and Guarantors' timely performance and full compliance with this Agreement, the Mortgage PNL and the Mezzanine PNL, the Mortgage Lender and the Mezzanine Lender are each willing to forbear from enforcing their respective rights under the Mortgage Loan Documents and the Mezzanine Loan Documents, as applicable, solely with respect to the Mortgage Loan Existing Defaults and the Mezzanine Loan Existing Defaults (but not any other Event of Default, which each Lender hereby expressly reserves all rights and remedies in connection therewith) in order to provide the Borrowers with additional time to repay the Loan, until the earlier of (i) September 15, 2023 (the "**Forbearance Period Date**"), subject to the same being extended as set forth below in accordance with the terms and conditions of this Agreement, (ii) a Termination Event (as defined below) or (iii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms of the Mortgage Loan Documents and/or Mezzanine Loan Documents, as applicable, in each case as modified herein, at which time the entire Debt (as defined in each of the Mortgage Loan Documents and Mezzanine Loan Documents, as applicable) shall become due and payable, TIME BEING OF THE ESSENCE (the "**Termination Date**") (the period from the Effective Date to the Termination Date being hereinafter referred to as the "**Forbearance Period**"), on the terms, covenants and conditions set forth herein below; *provided*, *however*, (x) so long as no Termination Event has occurred, in the event the Borrowers make a principal curtailment in an amount no less than Ten Million and 00/100 Dollars ($10,000,000.00) (the "**First Forbearance Curtailment Payment**") by September 15, 2023, the Forbearance Period Date shall be extended to November 15, 2023 and (y) so long as the Forbearance Period has been extended to November 15, 2023 in accordance with the foregoing and no Termination Event has occurred, in the event the Borrowers make an additional principal curtailment in the amount of no less than Ten Million and 00/100 Dollars ($10,000,000.00) (the "**Second Forbearance Curtailment Payment**"; and together with the First Curtailment Payment, each a "**Forbearance Curtailment Payment**" and collectively, the "**Forbearance Curtailment Payments**") by the November 15, 2023, the Forbearance Period Date shall be extended to January 15, 2024 (for the avoidance of doubt, it is understood and agreed that each Forbearance Curtailment Payment, to extent paid by the Borrowers, (1) may be applied by the Lenders against the Mortgage Loan and/or the Mezzanine Loan in such order and priority as determined by the Lenders in their sole and absolute discretion and (2) may be applied by the Lenders against any principal, interest or other amounts outstanding under the Mortgage Loan and/or the Mezzanine Loan in such order and priority as determined by the Lenders in their sole and absolute discretion).

**NOW THEREFORE**, for the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed by and among the Mortgage Borrower, the Mezzanine Borrower, the Guarantors, the Mortgage Lender and the Mezzanine Lender, as follows:

1.      The parties to this Agreement acknowledge that the above referenced recitals are true and correct, and are hereby incorporated by reference into this Agreement.

2.      The Mortgage Borrower and the Guarantors hereby acknowledge and agree that, in accordance with the terms and conditions of the Mortgage Loan Documents, Mortgage Borrower is liable to the Mortgage Lender as follows:

(a)      As of March 1, 2023, (i) the outstanding principal balance of the Mortgage Loan is $64,850,000.00, (ii) the accrued and unpaid interest due under the Mortgage Loan is $10,616,035.06, (iii) the accrued and unpaid fees due in connection with the Mortgage Loan are $773,855.90 and (iv) the per diem interest on the Mortgage Loan is $43,233.33 calculated at the Default Rate (as defined in the Mortgage Loan Documents);

(b)      Subject to Paragraph 7 below, all interest accruing upon the principal balance of the Mortgage Loan and all other amounts due under the Mortgage Loan Documents, including any protective advances, shall accrue at the Default Rate (as defined in the Mortgage Loan Agreement) of interest set forth in the Mortgage Loan Documents (the "**Mortgage Loan Default Rate**").

Hereinafter all amounts due as set forth in this Paragraph 2 above and the Debt (as defined in the Mortgage Loan Agreement) shall be referred to collectively as the "**Mortgage Loan Obligations**" and the same are presently due and payable in accordance with the terms and conditions of the Mortgage Loan Documents.

3.      The Mezzanine Borrower and the Guarantors hereby acknowledge and agree that, in accordance with the terms and conditions of the Mezzanine Loan Documents, Mezzanine Borrower is liable to the Mezzanine Lender as follows:

(a)      As of March 1, 2023, (i) the outstanding principal balance of the Mezzanine Loan is $1,000,000.00, (ii) the accrued and unpaid interest due under the Mezzanine Loan is $163,701.38, (iii) Mezzanine Lender has made Protective Advances (as defined in the Mezzanine Loan Agreement) in the amount of $418,943.96, (iv) the accrued and unpaid interest due with respect to the Protective Advances made by the Mezzanine Lender is $30,163.97, (v) the accrued and unpaid fees due in connection with the Mezzanine Loan are $272,782.11 and (vi) the per diem interest on the Mezzanine Loan is $945.96 calculated at the Default Rate (as defined in the Mezzanine Loan Documents);

(b)      Subject to Paragraph 7 below, all interest accruing upon the principal balance of the Mezzanine Loan and all other amounts due under the Mezzanine Loan Documents, including any protective advances, shall accrue at the Default Rate (as defined in the Mezzanine Loan Agreement) of interest set forth in the Mezzanine Loan Documents (the "**Mezzanine Loan Default Rate**").

Hereinafter all amounts due as set forth in this Paragraph 3 and the Debt (as defined in the Mezzanine Loan Agreement) above shall be referred to collectively as the "**Mezzanine Loan Obligations**" and the same are presently due and payable in accordance with the terms and conditions of the Mezzanine Loan Documents.

4.      <u>Forbearance</u>. In consideration of the Mortgage Borrower's, Mezzanine Borrower's and Guarantors' performance in accordance with the terms of this Agreement, provided that no Event of Default (other than the Existing Defaults) arises under the Mortgage Loan Documents and/or Mezzanine Loan Documents after the Effective Date and a Termination Event does not occur, the Mortgage Lender and Mezzanine Lender shall each forbear from exercising their respective rights and remedies under the Mortgage Loan Documents and Mezzanine Loan Documents solely with respect to the Existing Defaults, as applicable, until the Termination Date has occurred. Notwithstanding the foregoing, nothing contained in this Agreement shall constitute a waiver by the Mortgage Lender or Mezzanine Lender of any default or Event of Default, whether now existing or hereafter arising (including, without limitation, the Existing Defaults), except as expressly set forth in this Agreement. This Agreement shall only constitute an agreement by the Mortgage Lender and the Mezzanine Lender to forbear from enforcing their respective rights and remedies under the Mortgage Loan Documents and Mezzanine Loan Documents, as applicable, solely with respect to any Existing Defaults, upon the terms and conditions set forth herein.

5.      <u>Waiver of Claims and Release.</u> The Borrowers and the Guarantors hereby acknowledge and agree that they have no offsets, defenses, claims, counterclaims or other causes of action arising at law or in equity or otherwise from the action or inaction of the Mortgage Lender or Mezzanine Lender, each of their respective predecessors, successors and assigns, and any of their respective affiliates, members, agents, officers, principals, directors, employees, attorneys, and representatives (collectively, the "**Lender Parties**") with respect to the Mortgage Loan, the Mezzanine Loan, the Mortgage Loan Documents, the Mezzanine Loan Documents, the Mortgage Loan Obligations and the Mezzanine Loan Obligations, including, without limitation, the Existing Defaults or otherwise, and that if the Mortgage Borrower, Mezzanine Borrower or the Guarantors now have, or ever did have, any offsets, defenses, claims, counterclaims against the Lender Parties, whether known or unknown, at law or in equity, from the beginning of the world through the Effective Date, all of them are hereby expressly **WAIVED**, and the Mortgage Borrower, Mezzanine Borrower and the Guarantors each hereby **RELEASE** the Lender Parties from any liability therefor.  It is understood and agreed that this Paragraph shall not be deemed or construed as an admission by Mortgage Lender or Mezzanine Lender of liability of any nature whatsoever arising from or related to the subject of this Paragraph or otherwise.

6.      <u>Indemnity</u>. The Borrowers and Guarantors hereby agree to defend, indemnify, and hold the Lender Parties harmless from and against any losses, damages, costs (including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the "**Claims**") arising, directly or indirectly, from: (a) to the extent not inconsistent with the terms of this Agreement, any material breach by the Mortgage Borrower, Mezzanine Borrower or the Guarantors of any warranty or representation contained in this Agreement or in the documents executed and delivered by the Mortgage Borrower, Mezzanine Borrower and the Guarantors pursuant to this Agreement (with this Agreement, sometimes collectively referred to as the "**Borrower Documents**"); (b) to the extent not inconsistent with the terms of this Agreement, any breach, default, or violation by the Mortgage Borrower, Mezzanine Borrower or the Guarantors of any covenant, agreement, or provision of the Borrower Documents, the Mortgage Loan Documents or the Mezzanine Loan Documents other than with respect to the failure to make payment under

9

the Borrower Documents; and (c) any claims by or liabilities to third parties pertaining to injury to persons or damage to property at the Property.

7.    <u>Forbearance Terms</u>.  Provided the Mortgage Borrower, the Mezzanine Borrower and the Guarantors comply with the terms and conditions of this Agreement, and provided a Termination Event does not occur, the following provisions shall apply to the Mortgage Loan, the Mezzanine Loan, the Mortgage Loan Documents and the Mezzanine Loan Documents during the Forbearance Period:

(i)    *Indebtedness*:

a.    As of March 1, 2023, the total amount of the indebtedness secured by the Mortgage shall be deemed to be **$76,239,890.96** (the "**Mortgage Loan Indebtedness**"), consisting of the sum of (i) the existing outstanding principal balance of the Mortgage Loan in the amount of $64,850,000.00 (the "**Mortgage Loan Principal**"), (ii) the accrued and unpaid interest due and owing on the Loan at the nominal rate of interest from May 1, 2022 through May 31, 2022 in the aggregate amount of $600,312.85, (iii) the accrued and unpaid interest due and owing on the Loan at the Mortgage Default Rate of interest from June 1, 2022 through March 1, 2023 in the aggregate amount of $10,015,722.21[4], (iv) Late Fees of $30,015.64, (v) the Exit Fee in the amount of $664,000.00, (vi) legal fees in the amount of $23,250.00, (vii) the Servicing Fee in the amount of $42,875.00, (viii) entity fees in the amount of $2,215.36, and (viii) appraisal fees in the amount of $11,499.90. For the avoidance of doubt, the Mortgage Loan Indebtedness and shall be deemed earned in accordance with the terms and conditions of the Mortgage Loan Documents, as modified by this Agreement, but payment of the same shall be deferred until the Termination Date.

b.    As of March 1, 2023, the total amount of the indebtedness secured by the Pledge shall be deemed to be **$1,885,591.41** (the "**Mezzanine Loan Indebtedness**"; together with the Mortgage Loan Indebtedness, collectively, the "**Indebtedness**"), consisting of the sum of (i) the existing outstanding principal balance of the Mezzanine Loan in the amount of $1,000,000.00 (the "**Mezzanine Loan Principal**"), (ii) the accrued and unpaid interest due and owing on the Loan at the nominal rate of interest from May 1, 2022 through May 31, 2022 in the aggregate amount of $9,256.94, (iii) the accrued and unpaid interest due and owing on the Loan at the Mortgage Default Rate of interest from June 1, 2022 through March 1, 2023 in the aggregate amount of $154,444.44[5], (iii) Late Fees of $462.85, (iv) the Exit Fee in the amount of $10,000.00, (v) legal fees in the amount of $162,319.26, (vi) the Protective Advance Fee in the amount of $418,943.96, (vii) the accrued and unpaid interest due and owing in

---

[4] This amount reflects the interest at the Mortgage Default Rate from June 1, 2022 through March 1, 2023 in the amount of $11,845,933.33, less the interest payment made by Mortgage Borrower in the amount of $1,830,211.12,
[5] This amount reflects the interest at the Mezzanine Default Rate from June 1, 2022 through March 1, 2023 in the amount of $182,666.67, less the interest payment made by Mezzanine Borrower in the amount of $28,222.23,

connection with the Protective Advance of $30,163.97, and (vii) marketing fees in the amount of $100,000.00. For the avoidance of doubt, the Mezzanine Loan Indebtedness and shall be deemed earned in accordance with the terms and conditions of the Mezzanine Loan Documents, as modified by this Agreement, but payment of the same shall be deferred until the Termination Date.

(ii)     *Interest Rate.*   Subject to the last paragraph of Section 11(d) hereof, and provided that Borrowers and Guarantors comply with the terms and conditions of this Agreement, and provided that a Termination Event does not occur, during the Forbearance Period interest shall be charged on the total outstanding Indebtedness, computed from the Effective Date of this Agreement to the Termination Date at a per annum rate (the "**Forbearance Rate**") equal to eighteen percent (18%), subject in all cases to the potential imposition of the Default Rate in the event of a Termination Event (and for the avoidance of doubt, the accrual of interest at the Default Rate shall be deemed to begin as of the Existing Default Date).   For the avoidance of doubt, interest at the applicable Forbearance Rate shall be deemed earned daily during the remainder of the Forbearance Period, but payment of the same shall be deferred until the Termination Date.

(iii)     *Lockbox.*

(a)     As additional consideration to Lenders entering into this Agreement, as of the date hereof, Mortgage Borrower has entered into a "locked" deposit account control agreement with Mortgage Lender and Axos Bank (the "**Clearing Bank**") to establish an account (the "**Clearing Account**") on Clearing Bank's standard form of "locked" deposit account control agreement (with such changes thereto as reasonably agreed upon by Mortgage Borrower, Mortgage Lender , and Clearing Bank) into which all revenue, income, rents or other cashflows from the Property shall be deposited within two (2) Business Days of receipt. Such amounts shall be deemed to be collateral for the Obligations and shall be held in trust for the benefit, and as the property, of Mortgage Lender and shall not be commingled with any other funds or property of Mortgage Borrower. All costs and expenses for establishing and maintaining the Clearing Account shall be paid by Mortgage Borrower.   In the event of a resignation by Clearing Bank, Mortgage Lender shall, promptly after receipt of notice of such resignation, designate a successor to Clearing Bank, which successor shall be subject to the reasonable approval of Mortgage Borrower, and cause the execution of a replacement Clearing Account Agreement in form and substance reasonably satisfactory to Mortgage Lender and deliver a tenant direction letter (in form and substance reasonably acceptable to Mortgage Lender ) to all tenants and other parties making payments.

(b)     Funds deposited into the Clearing Account (the "**Available Funds**") shall be swept by the Clearing Bank on a daily basis into an account at a

bank selected by Mortgage Lender (the "**Cash Management Bank**") controlled by Mortgage Lender (the "**Cash Management Account**"), and then applied and disbursed by Mortgage Lender by no later than the tenth (10th) day of each calendar month in accordance with Section 7(iii)(c) and the remainder of this Agreement.  For the avoidance of doubt, Axos Bank is hereby approved as the initial Cash Management Bank.  As an alternative to establishing each account at the Cash Management Bank required pursuant to the terms of this Section 7(iii) as a separate account, Mortgage Lender may establish or cause to be established subaccounts of the Cash Management Account (which may be ledger or book entry accounts and not actual accounts) whereupon (i) all provisions of this Agreement referring to the Cash Management Account shall be deemed to apply instead to the corresponding subaccount and (ii) the accounts generally shall be deemed to apply instead to the Cash Management Account.  The Cash Management Account shall be under the sole control and dominion of Mortgage Lender, and Mortgage Borrower shall have no right of withdrawal therefrom. Mortgage Borrower shall pay for all expenses of opening and maintaining all of the above accounts. In the event of a resignation by Cash Management Bank, Mortgage Lender shall, promptly after receipt of notice of such resignation, designate a successor to the Cash Management Bank.

(c)    So long as the Termination Date has not occurred, the Available Funds swept by the Clearing Bank into the Cash Management Account shall be applied by Mortgage Lender by no later than the tenth (10th) day of each calendar month in the following order of priority:

(1)    first, funds sufficient to pay the fees and expenses of Cash Management Bank then due and payable to Cash Management Bank shall be paid to Cash Management Bank;

(2)    second, funds in the amount set forth in the Approved Annual Budget for the payment of monthly Operating Expenses (as defined in the Mortgage Loan Agreement) (or any extraordinary expenses approved by the Lenders) for the calendar month in which such Payment Date (as defined in the Mortgage Loan Agreement) occurs shall be disbursed to Mortgage Borrower for such payment (it being understood that the foregoing amount shall include (i) an amount equal to one-twelfth (1/12) of the Taxes and Other Charges (as each are defined in the Mortgage Loan Agreement) that Mortgage Lender from time to time estimates in its sole but reasonable discretion will be payable by Mortgage Borrower during the next ensuing twelve (12) months and (ii) an amount equal to one-twelfth (1/12) of the Insurance Premiums (as defined in the Mortgage Loan Agreement) that Mortgage Lender estimates in its sole but reasonable discretion will be payable for the renewal of the coverages

afforded by the Policies (as defined in the Mortgage Loan Agreement) paid for by Mortgage Borrower upon the expiration thereof);

(3)    third, an amount equal to all remaining cash flow (the "Excess Cash Flow") shall be held by Mortgage Lender in an account or subaccount of the Cash Management Account (the "Excess Cash Flow Account") as additional security for the Loan and may be applied by Mortgage Lender against either the Mortgage Loan and/or the Mezzanine Loan in such order and priority as determined by the Lenders in their sole and absolute discretion.

For purposes of this Section 7(iii), "**Approved Annual Budget**" shall mean the operating budget, including all planned capital expenditures, for the Property prepared by Mortgage Borrower for the applicable Fiscal Year (as defined in the Mortgage Loan Agreement) or other period, as approved by the Lenders in their sole discretion.

(d)    Notwithstanding anything to the contrary set forth herein, upon the occurrence of the Termination Date, all funds deposited into the Clearing Account and/or the Cash Management Account may, in the sole and absolute discretion of Mortgage Lender, be used for any purposes in connection with the Loan (irrespective of the cash management waterfall set forth above) as the Lenders shall determine in their sole discretion, including, without limitation, holding same as cash collateral.

(e)    The insufficiency of funds on deposit in the Clearing Account and/or Cash Management Account shall not relieve the Borrowers from the obligation to make any payments, as and when due pursuant to this Agreement, the Mortgage Note, the Mezzanine Note, the other Mortgage Loan Documents and the other Mezzanine Loan Documents, and such obligation shall be separate and independent, and not conditioned on any event or circumstance whatsoever.

(iv)    *Additional Collateral.*

a.    As a condition to the effectiveness of this Agreement, the Borrowers shall cause (x) SUPOR MANOR REALTY GROUP LLC, a Delaware limited liability company (the "**505 Manor Additional Collateral Property Owner**"), J. SUPOR REALTY GROUP LLC, a Delaware limited liability company (the "**500 Supor Additional Collateral Property Owner**"), SUPOR PROPERTIES–400 LIMITED LIABILITY COMPANY, a New Jersey limited liability company (the "**400 Supor Additional Collateral Property Owner**"), SUPOR FAMILY, L.L.C., a New Jersey limited liability company (the "**125 Sanford Additional Collateral Property Owner**"), and SUPOR

PROPERTIES BOONTON LLC, a New Jersey limited liability company (the "**Boonton Additional Collateral Property Owner**"; together with the 505 Manor Additional Collateral Property Owner, the 500 Supor Additional Collateral Property Owner, the 400 Supor Additional Collateral Property Owner, and the 125 Sanford Additional Collateral Property Owner, collectively, the "**Additional Collateral Property Owners**"), the respective owners of (i) 400 Supor Boulevard, Harrison, New Jersey ("**400 Supor**"), (ii) 125-129 Sanford Avenue, Kearny, New Jersey ("**125 Sanfor**d"), (iii) 500 Supor Boulevard, Harrison, New Jersey ("**500 Supor**"), (iv) 505 Manor Avenue, Harrison, New Jersey ("**505 Manor**") and (v) 95 Fulton Street, Boonton, New Jersey ("**Boonton**"; together with 400 Supor, 125 Sanford, 500 Supor and 505 Manor, collectively, the "**Additional Collateral**"), to issue to Mortgage Lender a mortgage against the respective Additional Collateral (hereinafter referred to as the "**Additional Collateral Mortgage**") and (y) Roseann Supor ("**RS**"), The Martial Trust, JS, J SUPOR REALTY LLC, a Delaware limited liability company ("**Supor Realty Pledgor**"), SUPOR MANOR REALTY LLC, a Delaware limited liability company ("**Manor Realty Pledgor**"), SUPOR PROPERTIES BOONTON HOLDING LLC, a New Jersey limited liability company ("**Boonton Pledgor 1**"), and SUPOR PROPERTIES BOONTON DE LLC, a Delaware limited liability company ("**Boonton Pledgor 2**"; together with RS, The Martial Trust, JS, Supor Realty Pledgor, Manor Realty Pledgor and Boonton Pledgor 1, in such capacity, hereinafter referred to as the "**Additional Collateral Pledgors**"), the respective indirect and direct members of the Additional Collateral Property Owners, to deliver to Mortgage Lender first priority equity pledges encumbering the equity interests in such Additional Collateral Property Owners as additional collateral for the Loan (collectively, the "**Additional Collateral Pledges**"). In connection with the foregoing, the Borrowers represent and warrant that (x) other than the first mortgage liens, there are no other encumbrances and/or direct or indirect pledges of the Additional Collateral or the equity interests in the owners of such Additional Collateral and (y) (1) The Marital Trust, RS and JS directly or indirectly collectively own one hundred percent (100%) of the equity in the 500 Supor Additional Collateral Property Owner and have full authority to pledge 500 Supor, (2) The Martial Trust directly or indirectly owns one hundred percent (100%) of the equity in the 505 Manor Additional Collateral Property Owner and has full authority to pledge 505 Manor, (3) JS directly or indirectly owns one hundred percent (100%) of the equity in the 400 Supor Additional Collateral Property Owner and has full authority to pledge 400 Supor, (4) The Marital Trust and RS directly or indirectly collectively own one hundred percent (100%) of the equity in the 125 Sanford Additional Collateral Property Owner and has full authority to pledge 125 Sanford and (6) JS directly or indirectly owns one hundred percent (100%) of

the equity in the Boonton Additional Collateral Property Owner and has full authority to pledge Boonton.

b.  Failure of the Borrowers, Additional Collateral Property Owners and/or Additional Collateral Pledgors to comply with the terms of this Section 7(iv) as and when required hereunder shall constitute an immediate Termination Event hereunder.

c.  Notwithstanding the foregoing or anything herein to the contrary, it is further agreed that in the event the Additional Collateral Property Owners are pursuing a workout, reinstatement or refinance with respect to the senior debt currently encumbering the Additional Collateral, Lender hereby agrees that upon request of the Additional Collateral Property Owners, Lender shall promptly and unconditionally, subject to the Financing ROFR (as defined below), release the lien on the Additional Collateral provided that the Additional Collateral Property Owners grant Lender a right of first refusal with respect to any such refinancing, whereby Lender shall have the right but not the obligation (unless and until it commits in writing to do so) to provide replacement financing (hereinafter the "**Financing ROFR**") and the Additional Collateral Property Owners may agree or on such terms as may be set forth in a bona fide executed letter of intent, term sheet or loan commitment from another lender (which must be a third party lender, unaffiliated with, and unrelated to, Borrower, Guarantor, or the Additional Collateral Property Owners) containing all of the material terms and conditions of the proposed refinancing. It is understood and agreed that Lender shall have the right, but not the obligation to exercise the Financing ROFR for a period of ten (10) days from the date that the Additional Collateral Property Owners present Lender with such letter of intent, term sheet or loan commitment. Following the expiration of such ten (10) day period, Lender's right to exercise the Financing ROFR shall be of no further force or effect and any lien on the Additional Collateral shall thereupon be released.  It is further agreed that (i) on the date hereof, the Additional Collateral Property Owners shall execute an additional mortgage in the same form and substance as the Additional Collateral Mortgage and Lender shall hold the same in escrow (the "**Escrowed Mortgage**") and (ii) in the event Lender has previously released the Additional Collateral Mortgage and a Termination Event thereafter occurs, Lender shall be permitted to release the Escrowed Mortgage and record the same against the Additional Collateral.

d.  Notwithstanding anything herein to the contrary, it is further agreed that in the event a default exists under any of the first mortgage liens recorded against the Additional Collateral, Lender has the option, which option may be exercised by Lender in its sole and absolute discretion, to compel the owners of such Additional Collateral to refinance the respective first mortgage lien with Lender, on the same terms as the

Loan Documents, including, but not limited to the interest rate set forth therein.

e.   Guarantors hereby agree to defend, indemnify, and hold the Lender Parties harmless from and against any Claims arising from or as a result of a lack of priority of the Lender's equity pledge in the Boonton Additional Collateral Property Owner as a result of (i) the failure to locate the original share certificate of the Boonton Additional Collateral Property Owner (the "**Lost Share Certificate**") and/or (ii) the failure to mark the Lost Share Certificate as "canceled". For the avoidance of doubt, the Borrowers and the Guarantors each agree and acknowledge that the terms and conditions of each of the Mortgage Loan Conditional Guaranty and the Mezzanine Loan Conditional Guaranty, including, but not limited to Section 1 of each, are hereby amended and modified by this Section 7(iv)(e).

f.   Guarantors hereby agree to defend, indemnify, and hold the Lender Parties harmless from and against any Claims arising from or as a result of a lack of priority of the Lender's equity pledge in the 125 Sanford Additional Collateral Property Owner or the 400 Supor Additional Collateral Property Owner as a result of that certain UCC Financing Statement Number 56144963 filed with the New Jersey Secretary of State on August 23, 2022 against The Marital Trust and JS, as debtor, and CT Corporation System, as representative, as secured party. For the avoidance of doubt, the Borrowers and the Guarantors each agree and acknowledge that the terms and conditions of each of the Mortgage Loan Conditional Guaranty and the Mezzanine Loan Conditional Guaranty, including, but not limited to Section 1 of each, are hereby amended and modified by this Section 7(iv)(f).

g.   Borrower and Guarantor further agree that it shall cause the Additional Collateral Property Owners to deliver to Lender proof that all monthly payments, taxes and insurance premiums have been paid as and when the same are due, and provide copies of any notices of default received by the Additional Collateral Property Owners from any lenders with an interest in the Additional Collateral.

(v)   *Delinquent Taxes.* As of the date of this Agreement, it is acknowledged and agreed that there are $177,893.27 of delinquent Taxes and Other Charges that have not been paid (together with all penalties and interest thereon, collectively, the "**Delinquent Taxes**"). As a condition precedent to the effectiveness of this Agreement, Mortgage Borrower shall be required to have paid all such Delinquent Taxes from its own funds (and not from either the Mortgage Loan or the Mezzanine Loan proceeds or cash-flow generated by the Property), and provide the Lenders with evidence of such payment on or prior to the Effective Date.

(vi)     _Taxes and Insurance Premiums_. Subject to Section 7(iii) above, the Borrowers shall cause the Taxes, Other Charges and the Insurance Premiums to be paid as and when due in connection with the Property. For the avoidance of doubt, it is understood and agreed that, (1) in the event the Available Funds in the Cash Management Account are insufficient at the time such payment is due (the difference between (x) the amount of the required payment and (y) the amount of Available Funds being hereinafter referred to as the "**Tax and Insurance Shortfall**"), the Borrowers shall be required to pay the Tax and Insurance Shortfall from its own funds (and not from either the Mortgage Loan or the Mezzanine Loan proceeds or cash-flow generated by the Property) as and when required pursuant to the Mortgage Loan Documents and the Mezzanine Loan documents, and (2) the Lenders shall promptly provide notice to the Borrowers (which notice may be sent via email) of the amount of the Tax and Insurance Shortfall then owed by the Borrowers with respect to such payment of Taxes and/or Insurance Premiums.

(vii)    _Failure to Cooperate_. In the event the Borrowers and/or the Guarantors asserts a defense, seeks judicial intervention or injunctive or other equitable relief or otherwise impedes, interferes with, hinders or fails to cooperate with the Lenders in connection with this Agreement, including, without limitation, (i) the DIL Agreement (as defined below), (ii) failing to deliver any consents or affidavits required by a title company in connection with the release of the DIL Documents (as defined below), and Mortgage Lender's request to execute all documents and provide the necessary consents required therein, (iii) otherwise fails to comply with Mortgage Lender's requests or (iv) fails to comply with Section 7(iv)(d) hereof, then the Borrowers and the Guarantors shall be liable and obligated for the full amount of the obligations set forth in the Loan Documents and the Mortgage Lender and the Mezzanine Lender, shall each have full recourse against the Mortgage Borrower, the Mezzanine Borrower and the Guarantors for the obligations set forth in the Mortgage Loan Documents and the Mezzanine Loan Documents, as applicable. For the avoidance of doubt, the Borrowers and the Guarantors each agree and acknowledge that (x) the terms and conditions of each of the Mortgage Loan Conditional Guaranty and the Mezzanine Loan Conditional Guaranty, including, but not limited to Section 1 of each, amended and modified by this Section 7(vii), and (y) Section 9.5(c) of each of the Mortgage Loan Agreement and Mezzanine Loan Agreement are hereby amended to add a new subsection (xii) to each, which shall state that a Springing Full Recourse Event shall be deemed to occur in the event the Borrowers and/or the Guarantors fail to comply with this Section 7(vii).

(viii)   Provided a Termination Event does not occur, the Borrowers shall have until the Termination Date, TIME BEING OF THE ESSENCE, to pay off the Mortgage Loan and the Mezzanine Loan and the entire Indebtedness (the "**Payoff**"). For the avoidance of doubt, the Mortgage Borrower and

Mezzanine Borrower hereby acknowledges and agrees that (i) the Mortgage Loan and the Mezzanine must be repaid in full simultaneously and (ii) at any time the Borrowers make a prepayment of principal of the Mortgage Loan or the Mezzanine Loan, the Lenders are permitted to apply such prepayment to the Mortgage Loan Indebtedness and/or the Mezzanine Loan Indebtedness in their sole and absolute discretion.

(ix)    Borrowers shall deliver (i) all leases and certified rent rolls for each Property and each of the Additional Collateral and (ii) updated Guarantor financials within threw (3) weeks of the date hereof.

8.    <u>Representations, Warranties and Covenants</u>. The Mortgage Borrower, the Mezzanine Borrower and the Guarantors:

(a)    Each acknowledge and agree in favor of the Lenders that except as specifically modified in this Agreement, or by the DIL Agreement and the DIL Documents, all terms and conditions of those documents, instruments, and agreements that compose the Mortgage Loan Documents and Mezzanine Loan Documents shall remain in full force and effect and the obligations set forth thereunder are valid and enforceable in accordance with the respective terms thereof;

(b)    Each hereby ratifies, confirms, and reaffirms (i) all of the terms and conditions of the Mortgage Loan Documents and Mezzanine Loan Documents to which they are a party, and (ii) the obligations secured by the Mortgage Loan Documents and the Mezzanine Loan Documents including, without limitation, the Mortgage Loan Obligations and the Mezzanine Loan Obligations, and any future modifications, amendments, substitutions or renewals thereof, and (iii) all collateral, whether now existing or hereafter acquired, granted to the Mortgage Lender and/or the Mezzanine Lender pursuant to the Mortgage Loan Documents and/or Mezzanine Loan Documents, as applicable (including, without limitation, pursuant to this Agreement and/or the DIL Agreement), or otherwise, shall secure all of the Mortgage Loan Obligations and the Mezzanine Loan Obligations, as applicable, until full and final payment of the Mortgage Loan Obligations and the Mezzanine Loan Obligations, as applicable;

(c)    Hereby confirm and agree in favor of the Lenders that a novation is expressly denied and not intended to be effected hereby, and except as amended or modified by this Agreement and the DIL Agreement, the terms, provisions, conditions, rights, duties and obligations contained in the Mortgage Loan Documents and Mezzanine Loan Documents shall remain unchanged and unimpaired by this Agreement and are in full force and effect;

(d)    Hereby represents that each is solvent as of the date hereof and shall not be rendered insolvent by the release and recordation of the DIL Documents;

(e)    Shall, from and after the execution of this Agreement, execute and deliver to the Mortgage Lender and/or Mezzanine Lender whatever additional documents, instruments, and agreements that either Mortgage Lender and/or Mezzanine Lender may require, to the extent commercially reasonable, in order to vest or perfect the Mortgage Loan Documents and/or

Mezzanine Loan Documents, as applicable (including, without limitation, this Agreement and the DIL Agreement), and the collateral granted therein more securely in the Mortgage Lender and/or Mezzanine Lender, as applicable, and to otherwise give effect to the terms and conditions of this Agreement; and

(f)      Each confirms, as well as the Additional Collateral Property Owners and the Additional Collateral Pledgors, that it has the capacity, right, power and authority to execute this Agreement, the DIL Agreement, the DIL Documents, the Additional Collateral Mortgage and the Additional Collateral Pledges and to perform their respective obligations hereunder and thereunder. Neither the Mortgage Borrower, Mezzanine Borrower, the Guarantors, the Additional Collateral Property Owners nor the Additional Collateral Pledgors have filed a petition in any case, action, or proceeding under the United States Bankruptcy Code or any similar state law; no petition in any case, action, or proceeding under the United States Bankruptcy Code or any similar state law has been filed against the Mortgage Borrower, Mezzanine Borrower, the Guarantors, the Additional Collateral Property Owners or the Additional Collateral Pledgors that have not been dismissed or vacated; and neither the Mortgage Borrower, Mezzanine Borrower, the Guarantors, the Additional Collateral Property Owners nor the Additional Collateral Pledgors have filed an answer or otherwise admitted in writing insolvency or inability to pay their debts in general or made an assignment for the benefit of creditors or consented to an appointment of a receiver or trustee of all or a material part of their property. To the Mortgage Borrower's, Mezzanine Borrower's, the Guarantors', the Additional Collateral Property Owners' or the Additional Collateral Pledgors' knowledge, the transaction contemplated herein is not a preference, voidable transfer, fraudulent conveyance, or otherwise in violation of the United States Bankruptcy Code or any other similar state or federal law.

9.      <u>Conditions Precedent</u>. The Mortgage Lender's and Mezzanine Lender's agreement to forbear as contemplated herein shall not be effective unless and until each of the following conditions precedent has been fulfilled, unless otherwise waived by the Mortgage Lender and Mezzanine Lender:

(a)      Satisfaction by Mortgage Borrower of the requirements of Section 7(iii) hereof with respect to the Cash Management Account;

(b)      Satisfaction by the Borrowers of the requirements of Section 7(iv) hereof with respect to the Additional Collateral.

(c)      Mortgage Borrower, the Guarantors and Mortgage Lender, shall enter into that certain Agreement Regarding DIL Documents (the "**DIL Agreement**"), which DIL Agreement, among other things, (A) shall be deemed to be a "Mortgage Loan Document" for purposes of this Agreement and the other Mortgage Loan Documents, (B) requires that Mortgage Borrower and the Guarantors execute, deliver and deposit with Mortgage Lender as of the date hereof the fully executed documents and instruments identified on <u>Exhibit A</u> to the DIL Agreement (collectively, the "**DIL Documents**"), which DIL Documents shall be held by Mortgage Lender in escrow until the occurrence of the DIL Effective Date (as defined in the DIL Agreement) and (C) requires that Mortgage Borrower and the Guarantors cooperate with Mortgage Lender in connection with the transfer of each of Property upon the DIL Effective Date as set forth in the DIL Agreement. By

execution hereof, Mortgage Borrower and the Guarantors (on behalf of themselves and their affiliates) agree not to assert a defense, seek judicial intervention or injunctive or other equitable relief or otherwise impede, interfere with, hinder or fail to cooperate with Mortgage Lender (including, without limitation, by failing to execute any documents reasonably requested by Mortgage Lender) in connection with a transfer of each Property in accordance with, and pursuant to, the DIL Agreement and the DIL Documents;

(d)      Mortgage Borrower and the Guarantors shall execute and deliver to Mortgage Lender a stipulation in the form and substance attached hereto as <u>Exhibit A</u> (hereinafter, the "**Stipulation**"), which stipulation shall contain a waiver of all defenses and consent to a judgment of foreclosure and writ of execution with respect to that certain Complaint For Foreclosure, dated as of January 10, 2023, filed by Mortgage Lender against Mortgage Borrower and the Guarantors in the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No.:SWC-F-000308-23 (the "**Property Foreclosure Action**") with respect to the foreclosure of the Property as a result of the Mortgage Loan Existing Defaults;

(e)      Evidence that there are no additional liens or encumbrances other than those that existed as of the initial closing of the Mortgage Loan and Mezzanine Loan, or as otherwise acceptable to Mortgage Lender and Mezzanine Lender in their sole and absolute discretion;

(f)      The Mortgage Borrower, Mezzanine Borrower and the Guarantors have the authority to execute any and all documents in connection herewith and in connection with the DIL Agreement and DIL Documents, as applicable, and thus the execution, delivery and performance by the Mortgage Borrower, Mezzanine Borrower and the Guarantors of this Agreement, the DIL Agreement and the DIL Documents are binding;

(g)      This Agreement, the DIL Agreement, and all documents, instruments, and agreements required in connection with, or related to, this Agreement, the DIL Agreement (including, without limitation, the DIL Documents), shall be executed and delivered to the Mortgage Lender and the Mezzanine Lender by the parties thereto, and shall be in full force and effect;

10.      <u>Termination Event</u>.  The occurrence of any one or more of the following events shall constitute an event of default (hereinafter, a "**Termination Event**") under this Agreement:

(a)      The failure of any of the Mortgage Borrower, Mezzanine Borrower or the Guarantors to pay any amount required to be paid to Mortgage Lender and/or Mezzanine Lender under this Agreement as and when due, TIME BEING OF THE ESSENCE;

(b)      Any failure to comply with the terms and conditions of this Agreement, and/or the DIL Agreement, including, but not limited to, the conditions set forth in Section 7 of this Agreement;

(c)      The Mortgage Loan and the Mezzanine Loan are not repaid in full on or prior to the Termination Date;

(d)      Any Event of Default under the Mortgage Loan Documents, the Mezzanine Loan Documents, the Additional Collateral Mortgage and/or the Additional Collateral Pledges, other than the Existing Defaults.

11.      <u>Rights Upon Occurrence of a Termination Event</u>.    Upon the occurrence of any Termination Event, including, without limitation, the occurrence of a Termination Event:

(a)      the Forbearance Period shall be immediately and automatically terminated without notice thereof to Borrowers or Guarantors;

(b)      Mortgage Lender and Mezzanine Lender shall have no further obligations to forbear or reinstate under this Agreement;

(c)      Mortgage Lender may apply for entry of a judgement of foreclosure and writ of execution in accordance with the Stipulation and the Property Foreclosure Action;

(d)      Mezzanine Lender may complete the sale in connection with (i) that certain Notification of Disposition of Collateral and (ii) that certain Notice of Sale, each dated as of December 1, 2022, from Mezzanine Lender with respect to the foreclosure and intended sale of the Collateral (as defined in each Pledge) as a result of the Mezzanine Loan Existing Defaults;

(e)      Mortgage Lender may direct Mortgage Borrower (or Mezzanine Lender may direct Mezzanine Borrower to direct Mortgage Borrower) with respect to management and all other matters related to control of the Property, including, but not limited to the sale, lease and maintenance thereof;

(f)      Mortgage Lender is automatically and unconditionally authorized to treat as in full force and effect, the DIL Documents with respect to all or any portion of the Property (simultaneously or in succession) and at any time in Mortgage Lender's sole and absolute discretion, following the sixtieth (60th) day after the Termination Event, cause the same to be recorded in the applicable recording office (for the avoidance of doubt, notwithstanding the discharge of the Mortgage, at the option of Lender, in the event the DIL Documents are released and recorded in accordance herewith and the DIL Agreement, the Indebtedness shall survive and shall be secured by the Additional Collateral);

(g)      Mortgage Lender and Mezzanine Lender may immediately commence enforcing their respective rights and remedies under (i) this Agreement, (ii) pursuant to the Mortgage Loan Documents and/or Mezzanine Loan Documents, as applicable, without any notice whatsoever to the Mortgage Borrower, Mezzanine Borrower and the Guarantors or their attorneys and (iii) pursuant to the Additional Collateral Mortgage and the Additional Collateral Pledges, as applicable, without any notice whatsoever to the Additional Collateral Property Owners, the Additional Collateral Pledgors or their attorneys; and

(h)      interest for the Mortgage Loan and Mezzanine Loan shall continue to accrue on the outstanding principal balances of the Mortgage Loan Obligations and the Mezzanine Loan Obligations at the Mortgage Loan Default Rate and/or Mezzanine Loan Default Rate, as applicable, effective as of the Existing Default Date, and the Mortgage Borrower and Mezzanine Borrower shall be obligated to pay the Mortgage Loan and the Mezzanine Loan and the Indebtedness in accordance with the Mortgage Loan Obligations set forth in Paragraph 2 herein and the Mezzanine Loan Obligations set forth in Paragraph 3 herein, as applicable, and any obligations for Mortgage Lender and/or Mezzanine Lender to accept interest at the contract non-default rates of interest as set forth in Paragraph 7(ii) shall be deemed null and void.

12.     Costs of Collection.  Upon the occurrence of a Termination Event, the Mortgage Borrower and the Mezzanine Borrower shall reimburse the Mortgage Lender and the Mezzanine Lender on demand for any and all unreimbursed costs, expenses, and costs of collection (including attorneys' fees and expenses) heretofore or hereafter incurred by the Mortgage Lender and Mezzanine Lender in connection with the protection, preservation, and enforcement by the Mortgage Lender and/or Mezzanine Lender of its rights and remedies under the Mortgage Loan Documents, Mezzanine Loan Documents and/or this Agreement, the DIL Agreement and/or the DIL Documents, as applicable, including, without limitation, the negotiation and preparation of this Agreement and such fees and costs shall become part of the Mortgage Loan Obligations and/or Mezzanine Loan Obligations, as applicable, until reimbursed.

13.     Non-Interference.  From and after the occurrence of the Termination Date, the Borrowers and the Guarantors agree not to unlawfully interfere with the exercise by the Mortgage Lender and/or Mezzanine Lender of any of their rights and remedies, as applicable, including, without limitation, pursuant to the DIL Agreement and the DIL Documents. The Borrowers and the Guarantors further agree that they shall not unlawfully seek to restrain Mortgage Lender's and/or Mezzanine Lender's efforts or otherwise hinder, delay, or impair the Mortgage Lender's and/or Mezzanine Lender's efforts to realize upon any collateral granted to the Mortgage Lender and/or Mezzanine Lender, or otherwise to enforce its rights and remedies pursuant to the Mortgage Loan Documents and/or Mezzanine Loan Documents, as applicable (including, without limitation, the DIL Agreement and the DIL Documents) except as otherwise set forth in this Agreement and/or the DIL Agreement. The provisions of this Paragraph shall be specifically enforceable by Mortgage Lender and Mezzanine Lender.

14.     Jury Trial.     The Mortgage Borrower, Mezzanine Borrower, the Guarantors, the Additional Collateral Property Owners and the Additional Collateral Pledgors hereby make the following waiver knowingly, voluntarily, and intentionally, and understand that the Mortgage Lender and the Mezzanine Lender, in entering into this Agreement or making any financial accommodations to the Mortgage Borrower, Mezzanine Borrower or the Guarantors, whether now or in the future, is relying on such a waiver: THE MORTGAGE BORROWER, MEZZANINE BORROWER GUARANTORS, THE ADDITIONAL COLLATERAL PROPERTY OWNERS AND THE ADDITIONAL COLLATERAL PLEDGORS HEREBY IRREVOCABLY WAIVE ANY PRESENT OR FUTURE RIGHT TO A JURY IN ANY TRIAL OF ANY CASE OR

CONTROVERSY IN WHICH THE MORTGAGE LENDER AND/OR MEZZANINE LENDER
BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR
AGAINST THE MORTGAGE LENDER AND/OR MEZZANINE LENDER OR IN WHICH
THE MORTGAGE LENDER AND/OR MEZZANINE LENDER IS JOINED AS A PARTY
LITIGANT), WHICH CASE OR CONTROVERSY ARISES OUT OF, OR IS IN RESPECT OF,
ANY RELATIONSHIP BETWEEN THE MORTGAGE BORROWER, THE MEZZANINE
BORROWER, THE GUARANTORS, THE ADDITIONAL COLLATERAL PROPERTY
OWNERS, THE ADDITIONAL COLLATERAL PLEDGORS, OR ANY OTHER PERSON,
AND THE MORTGAGE LENDER AND/OR MEZZANINE LENDER.

15.    No Reinstatement.  It is expressly understood that, other than as set forth herein,
Mortgage Lender's and Mezzanine Lender's execution of this Agreement and acceptance of
payments in accordance herewith shall by no means be considered or construed a reinstatement or
de-acceleration of the notes set forth in the Mortgage Loan Documents and/or Mezzanine Loan
Documents, an extension of the Mortgage Loan and/or Mezzanine Loan, or a waiver of Mortgage
Lender's or Mezzanine Lender's rights or remedies at law, in equity or under the Mortgage Loan
Documents and/or the Mezzanine Loan Documents, as applicable.

16.    Entire Agreement. This Agreement shall be binding upon the Mortgage Lender, the
Mezzanine Lender, the Guarantors, the Mortgage Borrower, the Mezzanine Borrower and their
respective employees, representatives, successors, and assigns, and shall inure to the benefit of the
Lender Parties. This Agreement and all documents, instruments, and agreements executed in
connection herewith incorporate all of the discussions and negotiations between the Mortgage
Borrower, the Mezzanine Borrower, the Guarantors, the Mortgage Lender and the Mezzanine
Lender, either expressed or implied, concerning the matters included herein and in such other
documents, instruments and agreements, any statute, custom, or usage to the contrary
notwithstanding. No such discussions or negotiations shall limit, modify, or otherwise affect the
provisions hereof. No modification, amendment, or waiver of any provision of this Agreement, or
any provision of any other document, instrument, or agreement between the Mortgage Borrower,
Mezzanine Borrower, the Guarantors, Mortgage Lender and Mezzanine Lender, shall be effective
unless executed in writing by the party to be charged with such modification, amendment, or
waiver, and if such party be the Mortgage Lender and/or Mezzanine Lender, then by a duly
authorized officer thereof.

17.    Construction of Agreement.  In connection with the interpretation of this
Agreement and all other documents, instruments, and agreements incidental hereto:

(a)    All rights and obligations hereunder and thereunder, including matters of
construction, validity, and performance, shall be governed by and construed in accordance with
the law of the State of New York, without regard to conflicts of law.

(b)    The captions of this Agreement are for convenience purposes only and shall not be
used in construing the intent of the Mortgage Lender, Mezzanine Lender, the Guarantors, the
Mortgage Borrower and the Mezzanine Borrower under this Agreement.

(c)     In the event of any inconsistency between the provisions of this Agreement and any other document, instrument, or agreement entered into by and between the Mortgage Lender or Mezzanine Lender, the Guarantors, the Mortgage Borrower and/or the Mezzanine Borrower, the provisions of this Agreement shall govern and control.

(d)     The Mortgage Lender, the Mezzanine Lender, the Guarantors, the Mortgage Borrower and the Mezzanine Borrower have prepared this Agreement and all documents, instruments, and agreements incidental hereto with the aid and assistance of their respective counsel. Accordingly, all of them shall be deemed to have been drafted by the Mortgage Lender, the Mezzanine Lender, the Guarantors, the Mortgage Borrower and the Mezzanine Borrower and shall not be construed against either the Mortgage Lender, the Mezzanine Lender, the Guarantors, the Mortgage Borrower or the Mezzanine Borrower.

18.     Illegality or Unenforceability.  Any determination that any provision or application of this Agreement is invalid, illegal, or unenforceable in any respect, or in any instance, shall not affect the validity, legality, or enforceability of any such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Agreement.

19.     Informed Execution.  Each party to this Agreement warrants and represents that it:

(a) Has read and understands all of the terms and conditions of this Agreement;

(b) Intends to be bound by the terms and conditions of this Agreement and the DIL Documents;

and

(c) Is executing this Agreement freely and voluntarily, without duress, after consultation with independent counsel of its own selection.

20.     Recitals.  All recitals contained in this Agreement are ratified and confirmed.  All defined terms set forth in the Mortgage Loan Documents and Mezzanine Loan Documents, as applicable, are adopted herein, and all terms used but not defined herein shall have the meanings afforded thereto in the Mortgage Loan Documents and Mezzanine Loan Documents, as applicable.

21.     Reservation of Rights. The Borrowers and Guarantor hereby acknowledge and agree that, by the Lenders agreeing to forbear from the exercise of those rights and remedies granted to Mortgage Lender and Mezzanine Lender under the Mortgage Loan Documents and the Mezzanine Loan Documents, as applicable, until expiration or earlier termination of the Forbearance Period, Mortgage Lender and Mezzanine Lender do not waive any of their respective rights or remedies with respect to the Existing Defaults. All rights and remedies of the Mortgage Lender and Mezzanine Lender with respect to the Existing Defaults are hereby preserved pending fulfillment of the Mortgage Borrower's and Mezzanine Borrower's obligations under this Agreement. The granting of the forbearance hereunder shall not, other than as expressly provided herein, be deemed a waiver of the Mortgage Lender's or Mezzanine Lender's rights and remedies or constitute a course of conduct or dealing on behalf of the Mortgage Lender and Mezzanine Lender.  As set forth herein, only upon the occurrence of a Termination Event, Mortgage Lender and Mezzanine Lender shall have the right to exercise one or more of its rights and remedies

hereunder, pursuant to the DIL Agreement, or pursuant to the Mortgage Loan Documents and/or Mezzanine Loan Documents, as applicable, including, without limitation: (a) commencement of judicial foreclosure; (b) enforcement of its rights in and to all other collateral securing the Mortgage Loan and/or Mezzanine Loan, in whole or in part, including the sale thereof or other disposition as provided in the Mortgage Loan Documents, Mezzanine Loan Documents or applicable provisions of the Uniform Commercial Code in effect in the State of New York or the State of New Jersey, as applicable; (c) commencement of proceedings to enforce the Mortgage Note, the Mezzanine Note, the Mortgage Loan Guaranties and the Mezzanine Loan Guaranties, as applicable; and (d) all other remedies available to Mortgage Lender and/or Mezzanine Lender hereunder, pursuant to the DIL Agreement, the Mortgage Loan Documents and/or Mezzanine Loan Documents, as applicable, or at law or in equity. Mortgage Lender's and Mezzanine Lender's agreements contained herein are limited to the express terms of this Agreement, and except as expressly set forth herein, shall not impair any right or remedy of Mortgage Lender and/or Mezzanine Lender, or any of the Mortgage Borrower's, Mezzanine Borrower's or the Guarantors' obligations to Mortgage Lender and/or Mezzanine Lender, as applicable, or Mortgage Lender's and/or Mezzanine Lender's right to enforce full and strict performance of all of the terms of the Mortgage Loan Documents (including, without limitation, the DIL Agreement) and/or Mezzanine Loan Documents, as applicable, upon the occurrence of the Termination Date.

22.    Guarantors. By their execution of this Agreement, the Guarantors have evidenced their consent to the execution and delivery of this Agreement, the DIL Agreement and the DIL Documents by the Mortgage Borrower and the Mezzanine Borrower and their agreement to be bound by the terms hereof and thereof to the extent applicable. Further, the Guarantors hereby: (a) ratify and confirm the Mortgage Loan Guaranties and the Mezzanine Loan Guaranties as amended by this Agreement; (b) agree that the Mortgage Loan Guaranties and the Mezzanine Loan Guaranties are and shall, subject to the provisions of this Agreement, remain in full force and effect and that the terms and provisions of the Mortgage Loan Guaranties and the Mezzanine Loan Guaranties, as applicable, cover and pertain to the Mortgage Loan, the Mezzanine Loan, the Mortgage Note, the Mezzanine Note, the other Mortgage Loan Documents and the other Mezzanine Loan Documents, as applicable; and (c) acknowledge that there are no offsets, defenses, or counterclaims of any nature whatsoever to their obligations and liabilities under the Mortgage Loan Guaranties and the Mezzanine Loan Guaranties arising at law or in equity or otherwise from the action or inaction of the Lender Parties. The Guarantors further acknowledge that the execution, delivery and effectiveness of this Agreement shall not operate as a waiver of any right, power or remedy of Mortgage Lender and/or Mezzanine Lender under the Mortgage Loan Guaranties and the Mezzanine Loan Guaranties, as applicable, or any other document, instrument or agreement executed and/or delivered in connection therewith.

23.    Counterparts and Electronic Copies Deemed Originals. This Agreement may be executed in counterparts, or electronic (i.e., PDF or DocuSign) transmission, and when taken together shall constitute one single agreement. Electronic copies of signatures shall have the same force and effect as an original.

24.    Reliance. Any third party, including, but not limited to a title insurance company or a title insurance agent, shall be permitted to rely on the authority of the Lender to record the

DIL Documents. The Borrowers, Guarantors and Lenders further agree to hold any such party harmless in connection with the reliance upon this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, this Agreement has been executed as of the date first set forth above.

**MORTGAGE LENDER:**

**1000 FRANK E. RODGERS 1 LLC,**
a Delaware limited liability company


By: _____
Name: David Speiser
Title: Authorized Signatory


**MEZZANINE LENDER:**

**1000 FRANK E. RODGERS 2 LLC,**
a Delaware limited liability company


By: _____
Name: David Speiser
Title: Authorized Signatory

STATE OF NEW YORK      )
                           ) ss.:
COUNTY OF New York     )

On this 23rd day of march, in the year 2023, before me, the undersigned, personally appeared David Speiser, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

JIGANASA PARIKH-SILO
Notary Public, State of New York
No. 01PA6179443
Qualified in Richmond County
Certificate on file in New York County
Commission Expires 03 21 24

**MORTGAGE BORROWER:**

**SUPOR PROPERTIES ENTERPRISES LLC,**
a Delaware limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory


**J. SUPOR 136-1 REALTY LLC,**
a Delaware limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory


**SUPOR-172 REALTY LLC,**
a Delaware limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory


**SUPOR PROPERTIES BREIDERHOFT LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory


*[SIGNATURES CONTINUE ON NEXT PAGE]*

*[SIGNATURES CONTINUED FROM PREVIOUS PAGE]*

**SUPOR PROPERTIES DEVON LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**SHORE PROPERTIES ASSOCIATES NORTH
LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**SUPOR PROPERTIES 600 URBAN
RENEWAL LLC,**
a Delaware limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**SUPOR PROPERTIES HARRISON AVENUE
LLC**

By:
Name: Joseph Supor, III
Title:   Trustee

*[SIGNATURES CONTINUE ON NEXT PAGE]*

*[SIGNATURES CONTINUED FROM PREVIOUS PAGE]*

**JS REALTY PROPERTIES LLC,**
a Delaware limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**MEZZANINE BORROWER:**

**S&B REALTY PARTNERSHIP,**
a New Jersey partnership

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**J. SUPOR 136-1 LIMITED
LIABILITY COMPANY,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**SUPOR-172 LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

*[SIGNATURES CONTINUE ON NEXT PAGE]*

*[SIGNATURES CONTINUED FROM PREVIOUS PAGE]*

**SUPOR PROPERTIES BREIDERHOFT HOLDING LLC,**
a New Jersey limited liability company,

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**SUPOR PROPERTIES DEVON HOLDING LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**SHORE PROPERTIES ASSOCIATES NORTH HOLDING LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**SUPOR PROPERTIES 600 UR HOLDING LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

*[SIGNATURES CONTINUE ON NEXT PAGE]*

*[SIGNATURES CONTINUED FROM PREVIOUS PAGE]*

**SUPOR PROPERTIES**
**HARRISON AVENUE HOLDING LLC,**
a New Jersey limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory


**JL REALTY PROPERTIES LLC,**
a Delaware limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory


**GUARANTOR:**


**JOSEPH SUPOR, III**, an individual


**J. SUPOR & SON TRUCKING**
**& RIGGING CO. INC.,**
a New Jersey corporation

By:
Name: Joseph Supor, III
Title:   Authorized Signatory


**SUBEL CORPORATION,**
a New Jersey corporation

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

*[SIGNATURES CONTINUED FROM PREVIOUS PAGE]*

AGREED AND ACKNOWLEDGED:

**ADDITIONAL COLLATERAL PROPERTY OWNERS:**

**SUPOR MANOR REALTY GROUP LLC,**
a Delaware limited liability company

By:
Name: Joseph Supor, III
Title:   Authorized Signatory

**J. SUPOR REALTY GROUP LLC,**
a Delaware limited liability company

By:
Name:  Joseph Supor, III
Title:   Authorized Signatory

**SUPOR PROPERTIES—400**
**LIMITED LIABILITY COMPANY,**
a New Jersey limited liability company

By:
Name:  Joseph Supor, III
Title:   Authorized Signatory

**SUPOR FAMILY, L.L.C.,**
a New Jersey limited liability company

By:
Name:  Joseph Supor, III
Title:   Authorized Signatory

**SUPOR PROPERTIES BOONTON LLC,**
a New Jersey limited liability company

By:
Name:  Joseph Supor, III
Title:   Authorized Signatory

*[SIGNATURES CONTINUE ON NEXT PAGE]*
*[SIGNATURES CONTINUED FROM PREVIOUS PAGE]*

**ADDITIONAL COLLATERAL PLEDGORS:**

_____
**ROSEANN SUPOR**, an individual

_____, **AS TRUSTEE,
UNDER THE MARITAL TRUST UNDER
THE LAST WILL AND TESTAMENT OF
JOSEPH SUPOR, JR., DATED SEPTEMBER
13, 2002, AS AMENDED BY FIRST CODICIL
DATED JUNE 14, 2007**

**J. SUPOR REALTY LLC,**
a Delaware limited liability company

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

**SUPOR MANOR REALTY LLC,**
a Delaware limited liability company

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

**SUPOR PROPERTIES BOONTON HOLDING LLC,**
a New Jersey limited liability company

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

**SUPOR PROPERTIES BOONTON DE LLC,**
a Delaware limited liability company

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

STATE OF NEW JERSEY          )
                            ) ss.:
COUNTY OF ~~HUDSON~~ *Bergen*          )

On this 17th day of April 2023 in the year 2023, before me, the undersigned, personally appeared Roseann Supor, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

Forbearance Agreement- Supor- Signature Page

**Schedule A-1**
**Mortgage Loan Documents**

*All documents are dated as of December 31, 2020 unless otherwise noted.*

1. Land Loan Agreement
2. Mortgage Note
3. Mortgage and Security Agreement executed by FER Mortgage Borrower, Supor Boulevard Mortgage Borrower, Devon Mortgage Borrower, Harrison Mortgage Borrower, and Guyon Mortgage Borrower
4. Mortgage and Security Agreement, dated January 8, 2021, executed by Mantoloking Mortgage Borrower
5. Mortgage and Security Agreement, dated May 17, 2021, executed by Harrison Mortgage Borrower
6. Mortgage and Security Agreement, dated May 17, 2021, executed by Breiderhoft Mortgage Borrower
7. Cross-Collateralization Agreement and Omnibus Amendment to Mortgages, dated January 8, 2021
8. Amended and Restated Cross-Collateralization Agreement and Omnibus Amendment to Mortgages, dated May 17, 2021
9. Assignment of Leases and Rents executed by Fee Mortgage Borrower, Supor Boulevard Mortgage Borrower, Devon Mortgage Borrower, Guyon Mortgage Borrower, The Marital Trust
10. Assignment of Leases and Rents, dated January 8, 2021, executed by Mantoloking Mortgage Borrower
11. Assignment of Leases and Rents, dated May 17, 2021, executed by Harrison Mortgage Borrower
12. Assignment of Leases and Rents, dated May 17, 2021, executed by Breiderhoft Mortgage Borrower for the benefit of Borrower 1
13. Reaffirmation and Release Agreement, dated January 8, 2021
14. Reaffirmation and Release Agreement, dated May 17, 2021
15. Reaffirmation and Release Agreement, dated May 17, 2021
16. Joinder and Release Agreement by The Marital Trust and Harrison Mortgage Borrower
17. Conditional Assignment of Property Management Agreement made by FER Mortgage Borrower and Guyon Mortgage Borrower and consented to by Supor Properties Management LLC, as agent
18. Collateral Assignment of Contracts, Permits and Development Rights
19. Conditional Guaranty
20. Debt Service and Carry Guaranty
21. Guaranty
22. Environmental Indemnity Agreement
23. Cash Management Agreement
24. Cash Management Agreement, effective May 17, 2021
25. Certification of Beneficial Owner of FER Mortgage Borrower 1
26. Certification of Beneficial Owner of FER Mortgage Borrower 2
27. Certification of Beneficial Owner of FER Mortgage Borrower 3

28. Certification of Beneficial Owner of Supor Boulevard Mortgage Borrower
29. Certification of Beneficial Owner of Devon Mortgage Borrower
30. Certification of Beneficial Owner of Breiderhoft Mortgage Borrower
31. Certification of Beneficial Owner of Guyon Mortgage Borrower
32. Certification re of Beneficial Owner of Mantoloking Mortgage Borrower
33. Certificate re "Recycled" Single-Purposed Entity executed by FER Mortgage Borrower 1
34. Certificate re "Recycled" Single-Purposed Entity executed by FER Mortgage Borrower 2
35. Certificate re "Recycled" Single-Purposed Entity executed by FER Mortgage Borrower 3
36. Certificate re "Recycled" Single-Purposed Entity executed by Supor Boulevard Mortgage Borrower
37. Certificate re "Recycled" Single-Purposed Entity executed by Devon Mortgage Borrower
38. Certificate re "Recycled" Single-Purposed Entity executed by Breiderhoft Mortgage Borrower
39. Certificate re "Recycled" Single-Purposed Entity executed by Guyon Mortgage Borrower
40. Certificate re "Recycled" Single-Purposed Entity executed by Mantoloking Mortgage Borrower
41. Affidavit of Title and Other Borrower Representations
42. Mailing Address Verification
43. Statement of Undertaking
44. UCC-1 Financing Statement filed in the Hudson County, New Jersey real property records with respect to the FER Property, Guyon Property, Devon Property, Harrison Property, and the Supor Boulevard Property
45. UCC-1 Financing Statement filed in the Hudson County, New Jersey real property records with respect to the Breiderhoft Property
46. UCC-1 Financing Statement filed in the Ocean County, New Jersey real property records with respect to the Mantoloking Property
47. UCC-1 Financing Statement filed in the Hudson County, New Jersey real property records with respect to the Harrison Property
48. UCC-1 Financing Statement filed with the Delaware Secretary of State with respect to FER Mortgage Borrower
49. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Supor Boulevard Mortgage Borrower, Devon Mortgage Borrower, The Marital Trust, Breiderhoft Mortgage Borrower, Guyon Mortgage Borrower and Mantoloking Mortgage Borrower
50. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Breiderhoft Mortgage Borrower
51. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Harrison Mortgage Borrower
52. Any and all loan agreements, notes, mortgages, guarantees, as may be amended from time to time, in connection with this Loan

**Schedule A-2**
**Mezzanine Loan Documents**

*All documents are dated as of December 31, 2020 unless otherwise noted.*

1. Mezzanine Loan Agreement
2. Mezzanine Promissory Note
3. Conditional Guaranty
4. Debt Service and Carry Guaranty
5. Guaranty
6. Environmental Indemnity Agreement
7. Joinder Agreement by Mezzanine Borrower 6 in favor of Borrower 2, dated May 17, 2021
8. Certificate re "Recycled" Single-Purposed Entity executed by FER Mezzanine Borrower 1
9. Certificate re "Recycled" Single-Purposed Entity executed by FER Mezzanine Borrower 2
10. Certificate re "Recycled" Single-Purposed Entity executed by FER Mezzanine Borrower 3
11. Ownership Interests Pledge and Security Agreement executed by FER Mezzanine Borrower 1 together with Instruction to Register Pledge
12. Ownership Interests Pledge and Security Agreement executed by FER Mezzanine Borrower 2 together with Instruction to Register Pledge
13. Ownership Interests Pledge and Security Agreement executed by FER Mezzanine Borrower 3 together with Instruction to Register Pledge
14. Ownership Interests Pledge and Security Agreement executed by Supor Boulevard Mezzanine Borrower together with Instruction to Register Pledge
15. Ownership Interests Pledge and Security Agreement executed by Devon Mezzanine Borrower together with Instruction to Register Pledge
16. Ownership Interests Pledge and Security Agreement, dated May 17, 2021, executed by Harrison Mezzanine Borrower together with Instruction to Register Pledge
17. Ownership Interests Pledge and Security Agreement, dated May 17, 2021, executed by Breiderhoft Mezzanine Borrower together with Instruction to Register Pledge
18. Ownership Interests Pledge and Security Agreement executed by Guyon Mezzanine Borrower together with Instruction to Register Pledge
19. Ownership Interests Pledge and Security Agreement executed by Mantoloking Mezzanine Borrower together with Instruction to Register Pledge
20. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to FER Mezzanine Borrower 1
21. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to FER Mezzanine Borrower 2
22. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to FER Mezzanine Borrower 3
23. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Supor Boulevard Mezzanine Borrower
24. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Devon Mezzanine Borrower
25. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Harrison Mezzanine Borrower

26. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Breiderhoft Mezzanine Borrower
27. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Guyon Mezzanine Borrower
28. UCC-1 Financing Statement filed with the New Jersey Secretary of State with respect to Mantoloking Mezzanine Borrower
29. Mailing Address Verification
30. Statement of Undertaking
31. Any and all loan agreements, notes, mortgages, guarantees, as may be amended from time to time, in connection with this Loan

**Exhibit A**
**Stipulation**

JEROLD C. FEUERSTEIN
(NJ Bar ID NO. 005781995)
KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff*
360 LEXINGTON AVENUE, SUITE 1200
NEW YORK, NEW YORK 10017
(212) 661-2900 – telephone
-------------------------------------------------------------

| | |
|---|---|
| 1000 FRANK E. RODGERS 1 LLC, | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>HUDSON COUNTY<br>DOCKET NO. SWC-F-000308-23 |
|                Plaintiff, | |
|    -against- | Civil Action |
| SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172 REALTY LLC, SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON LLC, SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON TRUCKING & RIGGING CO. INC., SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO., | **STIPULATION OF FORBEARANCE** |
|                Defendants. | |

-------------------------------------------------------------

**IT IS HEREBY STIPULATED AND AGREED** by and between the parties and their

attorneys that this proceeding is settled upon the following terms and conditions:

**THIS FORBEARANCE STIPULATION** (this "**Stipulation**" or "**Agreement**") made

this 12th day of <u>April</u>, 2023 (the "**Effective Date**") by and among:

**1000 FRANK E. RODGERS 1 LLC**, a Delaware limited liability company, having an

address at 520 Madison Avenue, Suite 3501, New York, New York 10022 (hereinafter,

"**Mortgage Lender**" or "**Plaintiff**");

**SUPOR PROPERTIES ENTERPRISES LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mortgage Borrower 1**"), **J. SUPOR 136-1 REALTY LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mortgage Borrower 2**"), **SUPOR-172 REALTY LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**FER Mortgage Borrower 3**", and together with FER Mortgage Borrower 1 and FER Mortgage Borrower 2, collectively, the "**FER Mortgage Borrower**"), **SUPOR PROPERTIES BREIDERHOFT LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Breiderhoft Mortgage Borrower**"), **SUPOR PROPERTIES DEVON LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Devon Mortgage Borrower**"), **SHORE PROPERTIES ASSOCIATES NORTH LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Mantoloking Mortgage Borrower**"), **SUPOR PROPERTIES 600 URBAN RENEWAL LLC,** a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Guyon Mortgage Borrower**"), **JS REALTY PROPERTIES LLC**, a Delaware limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ 07032 (the "**Supor Boulevard Mortgage Borrower**"), **SUPOR PROPERTIES HARRISON AVENUE LLC**, a New Jersey limited liability company, having an address at 433 Bergen Avenue, Kearny, NJ  07032 (the "**Harrison Mortgage Borrower**", and together with FER Mortgage Borrower, Breiderhoft Mortgage Borrower, Devon Mortgage Borrower, Mantoloking Mortgage Borrower, Guyon Mortgage Borrower and Supor Boulevard Mortgage Borrower, individually and/or collectively, as the context may require, the "**Mortgage Borrower**" or "**Mortgage Borrowers**");

**JOSEPH SUPOR, III a/k/a S JOSEPH SUPOR, III**, an individual residing at 583 Princeton Avenue, Brick, New Jersey 08724 ("**JS**"), **J. SUPOR & SON TRUCKING & RIGGING CO. INC.**, a New Jersey corporation, having an address at 433 Bergen Avenue, Kearny, New Jersey 07032 ("**JSSTR**"), **SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO.**, a New Jersey corporation, having an address at 433 Bergen Avenue, Kearny, New Jersey 07032 ("**Subel**"; and together with JS and JSSTR, individually a "**Guarantor**" and collectively, jointly and severally, the "**Guarantors**").

## RECITALS

## THE MORTGAGE LOAN

**WHEREAS**, on or about December 31, 2020, Mortgage Lender extended to Mortgage Borrowers (except for Harrison Mortgage Borrower) and Supor Properties Boonton LLC (the "**Released Mortgage Borrower**") a loan in the original principal amount of $72,500,000.00 (the "**Mortgage Loan**");

**WHEREAS**, the Mortgage Loan (1) is evidenced by (i) that certain Land Loan Agreement (as the same may have been and may be amended, modified and/or supplemented from time to time, the "**Mortgage Loan Agreement**") dated as of December 31, 2020 made by and between Mortgage Lender and Mortgage Borrowers (except for Harrison Mortgage Borrower), Released Mortgage Borrower and THE MARITAL TRUST UNDER THE LAST WILL AND TESTAMENT OF JOSEPH SUPOR, JR., DATED SEPTEMBER 13, 2002, AS AMENDED BY FIRST CODICIL DATED JUNE 14, 2007, an irrevocable New Jersey testamentary trust ("**The Marital Trust**")[1], and (ii) that certain Mortgage Note (as the same may have been and may be

---

[1] Pursuant to the terms of that certain Joinder and Release Agreement dated as of May 17, 2021, (i) The Marital Trust was released from its obligations as a borrower under the Note, the Loan Agreement and all other Loan Documents, and (ii) Harrison Mortgage Borrower was joined as a Mortgage Borrower under the Mortgage Note, the Mortgage

amended, modified and/or supplemented from time to time, the "**Mortgage Note**"), dated as of December 31, 2020, by Mortgage Borrowers (except for Harrison Mortgage Borrower), the Released Mortgage Borrower and The Marital Trust in favor of Mortgage Lender in the original principal amount of $72,500,000.00, and (2) is secured by, *inter alia,* (i) that certain Mortgage and Security Agreement, dated as of December 31, 2020, by Mortgage Borrowers (excluding Breiderhoft Mortgage Borrower, Mantoloking Mortgage Borrower and Harrison Mortgage Borrower), the Released Mortgage Borrower and The Marital Trust for the benefit of Mortgage Lender encumbering the Property (as defined in the Mortgage Loan Agreement, except excluding the Harrison Property[2]) (as the same may be amended, modified and/or supplemented from time to time, "**Mortgage 1**"), (ii) that certain Mortgage and Security Agreement dated as of January 8, 2021, given by Mantoloking Mortgage Borrower for the benefit of Mortgage Lender encumbering the Mantoloking Property (as defined in the Mortgage Loan Agreement) ("**Mortgage 2**"), and (iii) that certain Mortgage and Security Agreement dated as of May 17, 2021, given by Breiderhoft Mortgage Borrower for the benefit of Mortgage Lender encumbering the Breiderhoft Property (as defined in the Mortgage Loan Agreement) ("**Mortgage 3**", and together Mortgage 1 and Mortgage 2, collectively, the "**Mortgage**", and together with the Mortgage Loan Agreement, the Mortgage Note, and all other documents executed in connection with and/or pertaining to the Mortgage Loan, collectively, the "**Mortgage Loan Documents**");

WHEREAS, pursuant to that certain Partial Release of Mortgage, Assignment of Leases and Rents and Cross Collateralization Agreement and Omnibus Agreement to Mortgages, dated

---

Loan Agreement and all other Mortgage Loan Documents.

[2] Pursuant to the terms of that certain Partial Release of Lien of Mortgage dated as of May 17, 2021, The Marital Trust and that certain parcel of real property located in the Town of Harrison, County of Hudson and State of New Jersey commonly known as 751 Harrison Avenue, Harrison, New Jersey (the "**Harrison Property**") was released as collateral from Mortgage 1.

as of June, 2021, the Released Mortgage Borrower was released from its obligations with respect
to the Mortgage Loan;

**WHEREAS**, the Mortgage Loan is further secured by, among other documents, (i) that
certain Guaranty, dated December 31, 2020, by the Guarantors in favor of Mortgage Lender (the
"**Mortgage Loan Payment Guaranty**"), (ii) that certain Conditional Guaranty, dated December
31, 2020, by the Guarantors in favor of Mortgage Lender (the "**Mortgage Loan Conditional
Guaranty**"), (iii) that certain Guaranty of Debt Service and Carry Guaranty, dated December 31,
2020, by the Guarantors in favor of Mortgage Lender (the "**Mortgage Loan Carry Guaranty**"),
and (iv) that certain Environmental Indemnity Agreement, dated as of December 31, 2020, by the
Guarantors and the Mortgage Borrowers in favor of Mortgage Lender (the "**Mortgage Loan
Environmental Guaranty**"; together with the Mortgage Loan Payment Guaranty, the Mortgage
Loan Conditional Guaranty, and the Mortgage Loan Carry Guaranty, each a "**Mortgage Loan
Guaranty**" and collectively, the "**Mortgage Loan Guaranties**"), which Mortgage Loan
Guaranties are included in the defined term "Mortgage Loan Documents"; and

**WHEREAS**, on or about October 17, 2022, Mortgage Lender, Mortgage Borrowers and
Guarantors entered into a pre-negotiation letter (the "**Mortgage PNL**") as a condition precedent
to discussing possible modifications to the Mortgage Loan, which Mortgage PNL remains in full
force and effect as of the date hereof.

## DEFAULTS:

**WHEREAS**, pursuant to Section 2.2.1 of the Mortgage Loan Agreement and Section 1 of
the Mortgage Note, on each Payment Date (as defined in the Mortgage Loan Agreement) Mortgage
Borrowers are required to pay to Mortgage Lender interest on the Principal (as defined in the
Mortgage Loan Agreement) accrued and accruing through the last day of the Interest Period (as
defined in the Mortgage Loan Agreement);

**WHEREAS,** pursuant to Section 5.1.2 of the Mortgage Loan Agreement, Mortgage Borrowers are required to pay Taxes and Other Charges (as defined in the Mortgage Loan Agreement) as the same become due and payable;

**WHEREAS**, pursuant to Section 2.2.3 of the Mortgage Loan Agreement and Section 1 of the Mortgage Note, upon the Maturity Date (as defined in the Mortgage Loan Agreement), Mortgage Borrowers are required to pay to Mortgage Lender (i) the outstanding Principal, (ii) all accrues and unpaid interest thereon, (iii) the applicable Make Whole Fee, if any, (iv) the Exit Fee (as defined in the Mortgage Loan Agreement) and (v) all other amounts due pursuant to the Mortgage Loan Documents (collectively, the "**Mortgage Loan Maturity Payment**");

**WHEREAS**, Mortgage Borrowers have defaulted under the terms of the Mortgage Loan Documents by failing to pay to Mortgage Lender the monthly payments of interest on the Principal (as defined in the Mortgage Loan Documents) accrued and accruing through the last day of the Interest Period (as defined in the Mortgage Loan Documents) that were due and payable on the Payment Dates (as defined in the Mortgage Loan Documents) occurring on June 1, 2022 (the "**Mortgage Loan Existing Default Date**"), July 1, 2022, August 1, 2022, September 1, 2022, October 1, 2022, November 1, 2022 and December 1, 2022 (collectively, the "**Mortgage Loan Monthly Payment Events of Default**");

**WHEREAS,** Mortgage Borrowers have defaulted under the terms of the Mortgage Loan Documents by failing to pay to Taxes and Other Charges due and payable as of February 1, 2023 (the "**Mortgage Loan Tax Payment Event of Default**");

**WHEREAS**, Mortgage Borrowers have defaulted under the terms of the Mortgage Loan Documents by failing to pay to Mortgage Lender the Mortgage Loan Maturity Payment on the Maturity Date (the "**Mortgage Loan Maturity Payment Event of Default**"; and together with

the Mortgage Loan Monthly Payment Events of Default and the Mortgage Loan Tax Payment Event of Default, collectively, the "**Mortgage Loan Existing Defaults**);

**WHEREAS**, as a result of the Mortgage Loan Existing Defaults, Mortgage Lender delivered notice to Mortgage Borrower on October 24, 2022, advising Mortgage Borrower of (i) the Mortgage Loan Existing Defaults, and (ii) the acceleration of the Mortgage Loan, pursuant to which, the entire Mortgage Loan Indebtedness (as defined in the FB Agreement) is now due and payable;

**WHEREAS**, Mortgage Lender commenced this action by filing that certain Complaint for Foreclosure (the "**Complaint**") on January 10, 2023 entitled 1000 FRANK E. RODGERS 1 LLC v. SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172 REALTY LLC, SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON LLC, SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON TRUCKING & RIGGING CO. INC. and SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO. in the SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION HUDSON COUNTY (the "**Action**");

**WHEREAS**, the Mortgage Borrowers and the Guarantors were served with a Summons and copy of the Complaint.

**WHEREAS**, the Mortgage Borrowers and Guarantors acknowledged and accepted service of the Complaint and waived any and all jurisdictional defenses and defenses based on service of process in the Stipulation Extending Time to Appear;

**WHEREAS**, Mortgage Lender, Mortgage Borrowers and Guarantors entered into that certain Forbearance Agreement dated as of March 15, 2023, the terms of which are incorporated

7

are incorporated into this Stipulation (the "**FB Agreement**" and with the Mortgage Loan Documents, and Guaranties, the "**Loan Documents**");

**WHEREAS**, conditioned upon the Mortgage Borrowers' and Guarantors' timely performance and full compliance with the Loan Documents, the Mortgage Lender is willing to agree to forbear from enforcing its rights under the Loan Documents and this Stipulation until September 15, 2023 TIME BEING OF THE ESSENCE (the "**Termination Date**"), or if extended in accordance with the FB Agreement, November 15, 2023 (the "**First Extended Termination Date**"), or if further extended in accordance with the FB Agreement, January 15, 2024 (the "**Final Extended Termination Date**")  (the period from the Effective Date to the Termination Date [or First Extended Termination Date or Final Extended Termination Date, if applicable], the "**Forbearance Period**"), on the terms, covenants and conditions set forth in the FB Agreement and this Stipulation;

**NOW THEREFORE**, for the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed by and among the Mortgage Borrowers, the Guarantors and Mortgage Lender as follows:

## Recitals

All recitals contained in this Stipulation are ratified, confirmed and incorporated herein.

## Acknowledgment of Indebtedness

1.      The Mortgage Borrowers and Guarantors hereby acknowledge and agree that, in accordance with the terms and conditions of the Loan Documents, Mortgage Borrowers are liable to the Mortgage Lender as follows:

(a)      As of the Effective Date, the outstanding principal balance of the Senior Loan is $64,850,000.00 and the per diem interest on the Mortgage Loan is $43,233.33 calculated at the

Default Rate (as defined in the Mortgage Loan Documents);

(b)       Subject to the terms of the FB Agreement, all interest accruing upon the principal balance of the Mortgage Loan and all other amounts due under the Loan Documents, including any protective advances, shall accrue at the Default Rate (as defined in the Mortgage Loan Agreement) of interest set forth in the Mortgage Loan Documents (the "**Mortgage Loan Default Rate**").  For the avoidance of any doubt, interest shall accrue at the Mortgage Loan Default Rate through and after the entry of any judgment and payment in full of the indebtedness.

Hereinafter all amounts due as set forth in this Paragraph 1 above and the Debt (as defined in the Mortgage Loan Agreement) shall be referred to collectively as the "**Mortgage Loan Obligations**".

2.       <u>Forbearance</u>.  In consideration of the Mortgage Borrowers' and Guarantors' performance in accordance with the terms of this Stipulation, and the terms of the FB Agreement which are incorporated herein by reference, provided that no Event of Default (other than the Mortgage Loan Existing Defaults) arises under the Mortgage Loan Documents after the Effective Date and a Termination Event (as that term is defined in the FB Agreement) does not occur, the Mortgage Lender shall forbear from exercising its rights and remedies under the Mortgage Loan Documents solely with respect to the Mortgage Loan Existing Defaults, as applicable, until the Termination Date has occurred. Notwithstanding the foregoing, nothing contained in this Stipulation shall constitute a waiver by the Mortgage Lender of any default or event of default, whether now existing or hereafter arising (including, without limitation, the Mortgage Loan Existing Defaults). This Stipulation shall only constitute an agreement by the Mortgage Lender to forbear from enforcing their respective rights and remedies under the Mortgage Loan Documents,

as applicable, solely with respect to any Mortgage Loan Existing Defaults, upon the terms and conditions set forth herein.

3.    <u>Waiver of Claims and Releases</u>.  The Mortgage Borrowers and Guarantors hereby acknowledge and agree that they have no offsets, defenses, claims, or counterclaims against the Mortgage Lender, Mortgage Lender's affiliates, member of Mortgage Lender or any of its affiliates and agents, or such parties officers, principals, directors, employees, attorneys, representatives, predecessors, successors, and assigns (collectively, the "**Lender Parties**") with respect to any of the Loan Documents, the FB Agreement, Mortgage Loan Documents, the Mortgage Loan Guaranties, Mortgage Lender's ownership of the Mortgage Loan Documents, Mortgage Lender's ownership of the Mortgage Loan Guaranties, the Mortgage Loan, the Mortgage Loan Obligations, the Mortgage Loan Existing Defaults, notice provisions under the Mortgage Loan Documents, the Property, this Action and facts and circumstances therewith, including without limitation, the Mortgage Loan Documents, the Mortgage Loan Guaranties and the Mortgage Loan Obligations, or otherwise, including any deficiencies of the Guarantors, and that if the Mortgage Borrowers or Guarantors now have, or ever did have, any offsets, defenses, claims, or counterclaims against the Lender Parties, whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Stipulation, all of them are hereby expressly **WAIVED**, and the Mortgage Borrowers and Guarantors each hereby **RELEASE** the Lender Parties from any liability therefor.  It is understood and agreed that this Paragraph 3 shall not be deemed or construed as an admission by Lender Parties of liability of any nature whatsoever arising from or related to the subject of this Paragraph or otherwise.

4.    <u>Indemnity</u>.  Mortgage Borrowers and Guarantors hereby agree to defend, indemnify, and hold the Lender Parties harmless from and against any losses, damages, costs

(including, without limitation, attorneys' fees, court costs, and costs of appeal), expenses, judgments, liens, decrees, fines, penalties, liabilities, claims, actions, suits, and causes of action (collectively, the "**Claims**") arising, directly or indirectly, from: (a) any claims brought in connection with the Mortgage Loan or any of the Mortgage Loan Documents or any claimed rights, obligations, duties or liabilities owed by Mortgage Lender in connection with the Mortgage Loan Documents, (b) to the extent not inconsistent with the terms of this Stipulation, any material breach by Mortgage Borrowers or Guarantors of any warranty or representation contained in this Stipulation or in the documents executed and delivered by Mortgage Borrowers and Guarantors pursuant to this Stipulation (with this Stipulation, sometimes collectively referred to as the "**Borrower Documents**"); (c) to the extent not inconsistent with the terms of this Stipulation and after any material breach, default, or violation by Mortgage Borrowers or Guarantors of any covenant, agreement, or provision of the Borrower Documents, the FB Agreement or the Mortgage Loan Documents other than the respect to the failure to make payments under the Borrower Documents, the Mortgage Loan Documents or the FB Agreement and (d) any claims by or liabilities to third parties pertaining to injury to persons or damage as to the Property; provided, however, that Mortgage Borrowers and Guarantors shall not be liable for any Claims to the extent any such Claims arise from the gross negligence or willful misconduct of any of the Lender Parties.

5.    <u>Forbearance Terms</u>.  The forbearance terms are those terms that are set forth in the FB Agreement and are incorporated herein by reference, and:

(a)    Provided the Mortgage Borrowers and Guarantors comply with the terms and conditions of this Stipulation, and provided that neither a Termination Event occurs nor an Event of Default (as that term is defined in the Loan Documents) occurs (other than the Mortgage Loan Existing Defaults) under the Loan Documents, then the Mortgage Borrowers shall have until the Termination Date, TIME BEING OF THE ESSENCE, to pay off the full amount of the Mortgage Loan Obligations ("**Payoff**").

(b)      Mortgage Borrowers and Guarantors shall, upon execution of this Stipulation, deliver to Mortgage Lender or Mortgage Lender's counsel an executed Consent Order Granting Final Judgment, the form of which is annexed hereto as **Exhibit "A"** and an executed Writ of Execution, the form of which is annexed hereto as **Exhibit "B"**, each of which expressly reference the accrual of interest at the interest rate of 24% through and after entry of judgment which Mortgage Borrowers and Guarantors have expressly consented and agreed.

(c)      For the avoidance of doubt, the Consent Judgment shall reflect the amount of the Mortgage Loan Obligations as due and owing to the Mortgage Lender and Mortgage Borrowers and Guarantors acknowledge and agree that Mortgage Lender is permitted to request the issuance and entry of same upon the occurrence of a Termination Event or an Event of Default after the execution of the Stipulation.

(d)      Mortgage Borrowers and Guarantors acknowledge and agree that Mortgage Lender shall be permitted to seek entry of the Consent Order Granting Final Judgment and Writ of Execution by application to the court in connection with a motion on notice to their undersigned attorneys of record.

(c)      For the avoidance of doubt, a Termination Event shall occur if Mortgage Borrowers or Guarantors file a bankruptcy or they cause any impediment(s) to entry of the Consent Order Granting Final Judgment and/or the Writ of Execution after the occurrence of a Termination Event or an Event of Default, and the Forbearance Period will be withdrawn and revoked.

6.      <u>The Mortgage Borrowers and Guarantors</u>:

a)      Each hereby ratify, confirm and reaffirm all and singular the terms and conditions of the Loan Documents and this Stipulation, including, not limited to the continuing validity of the Guaranties, which further secure the Mortgage Loan and remain in full force and effect;

b)      Each hereby ratifies, confirms, and reaffirms (i) all of the terms and conditions of the Loan Documents, the FB Agreement, the Mortgage Loan Documents and Mortgage Loan Guaranties, to which they are a party, and (ii) the obligations secured by the Mortgage Loan Documents, including, without limitation, the Mortgage Loan Obligations, and any future modifications, amendments, substitutions or renewals thereof, and (iii) all collateral, whether now existing or hereafter acquired, granted to the Mortgage Lender pursuant to the Mortgage Loan Documents (including, without limitation, pursuant to the FB Agreement), or otherwise, shall secure all of the Mortgage Loan Obligations until full and final payment of the Mortgage Loan Obligations;

c)      Hereby confirm and agree in favor of the Mortgage Lender that a novation is expressly denied and not intended to be effected hereby, and except as amended or modified by this Stipulation, the FB Agreement, the terms, provisions, conditions,

12

rights, duties and obligations contained in the Mortgage Loan Documents shall remain unchanged and unimpaired by this Stipulation and are in full force and effect;

d)      Shall, from and after the execution of this Agreement, execute and deliver to the Mortgage Lender whatever additional documents, instruments, and agreements that either Mortgage Lender may require, to the extent commercially reasonable, in order to vest or perfect the Mortgage Loan Documents (including, without limitation, the FB Agreement), and the collateral granted therein more securely in the Mortgage Lender, as applicable, and to otherwise give effect to the terms and conditions of this Agreement; and

e)      Each confirms that it has the capacity, right, power and authority to execute this Stipulation, the FB Agreement and to perform their respective obligations hereunder and thereunder. Neither the Mortgage Borrower, nor the Guarantors have filed a petition in any case, action, or proceeding under the United States Bankruptcy Code or any similar state law; no petition in any case, action, or proceeding under the United States Bankruptcy Code or any similar state law has been filed against the Mortgage Borrowers or Guarantors that have not been dismissed or vacated; and neither the Mortgage Borrowers nor the Guarantors have filed an answer or otherwise admitted in writing insolvency or inability to pay their debts in general or made an assignment for the benefit of creditors or consented to an appointment of a receiver or trustee of all or a material part of their property. To the Mortgage Borrower's or the Guarantors' knowledge, the transaction contemplated herein is not a preference, voidable transfer, fraudulent conveyance, or otherwise in violation of the United States Bankruptcy Code or any other similar state or federal law.

f)      Each agree to cooperate with Mortgage Lender's reasonable request for any additional documents or signatures which may be necessary to effectuate the intent of this Stipulation;

g)      Each waive any defenses based on personal jurisdiction and service of process of the Complaint in this Action.

h)      Each agree and acknowledge that upon the occurrence of a Termination Event or an Event of Default, Mortgage Lender is entitled to an immediate CONSENT ORDER GRANTING FINAL JUDGMENT (see **Exhibit "A"**) and issuance of a WRIT OF EXECUTION (see "**Exhibit "B"**") in the Action and Mortgage Lender is permitted to request the issuance and entry of same whether *ex parte* or in connection with a motion, in Mortgage Lender's discretion.

i)      Each hereby agree and consent to any amendment to the caption of this Action before or after the filing of the Consent Order Granting Final Judgment.

7.    <u>Conditions Precedent</u>.    The Mortgage Lender's agreement to forbear as contemplated herein and in the FB Agreement, the terms of which are incorporated herein by reference, shall not be effective unless and until each of the following conditions precedent has been fulfilled:

    a. Mortgage Borrowers and Guarantors represent that they have the authority to execute any and all documents in connection herewith and thus the execution, delivery and performance by the Mortgage Borrowers and Guarantors of this Stipulation are binding;

    b. This Stipulation, and all documents, instruments, and agreements required in connection with this Stipulation, shall be executed and delivered to the Mortgage Lender by the parties thereto, shall be in full force and effect and shall be in the form (if any) annexed hereto; and

    c. Mortgage Lender shall have executed this Stipulation

8.    <u>Termination Event</u>.    The occurrence of any Termination Event as defined in the FB Agreement or any breach or default of any term or condition contained in this Stipulation (hereinafter, a "**Termination Event**").

9.    <u>Rights Upon Occurrence of a Termination Event</u>.    Mortgage Lender's rights upon an occurrence of a Termination Event shall include all rights Mortgage Lender has under the FB Agreement in addition to the following: (a) the Forbearance Period shall be terminated; (b) Mortgage Lender shall have no further obligations to forbear under this Stipulation; (c) Mortgage Lender may immediately commence enforcing its rights and remedies under this Stipulation, including an immediately seeking the entry of the CONSENT ORDER GRANTING FINAL JUDGMENT (see **Exhibit "A"**) and WRIT OF EXECUTION (see **Exhibit "B"**), (d) conducting a foreclosure sale pursuant to the Loan Documents without any notice whatsoever to the Mortgage Borrowers and Guarantors or their attorneys, including but not limited to, full prosecution of the

Action; and (e) interest shall continue to accrue on the unpaid principal balance at the Mortgage Default Rate.

10.    <u>Costs of Collection</u>.    Upon the occurrence of any Termination Event, the Mortgage Borrowers and Guarantors shall reimburse the Mortgage Lender on demand for any and all actual out-of-pocket unreimbursed costs, expenses, and costs of collection (including reasonable attorneys' fees and expenses) heretofore or hereafter incurred by the Mortgage Lender in connection with the protection, preservation, and enforcement by the Mortgage Lender of its rights and remedies under the Loan Documents, including the FB Agreement, and/or this Stipulation, including, without limitation, the negotiation and preparation of this Stipulation, and such fees and costs shall become part of the Mortgage Loan Obligations until reimbursed.

11.    <u>Non-Interference</u>.    From and after the occurrence of a Termination Event, provided Mortgage Lender has not defaulted hereunder or caused a Termination Event by the Mortgage Borrowers and the Guarantors, the Mortgage Borrowers and Guarantors agree not to interfere with the exercise by the Mortgage Lender of any of its rights and remedies unless such actions are based upon a legally meritorious basis. The Mortgage Borrowers and Mortgage Guarantors further agree that they shall not seek to restrain Mortgage Lender's efforts or otherwise hinder, delay, or impair the Mortgage Lender's efforts to realize upon any collateral granted to the Mortgage Lender, or otherwise to enforce its rights and remedies pursuant to the Loan Documents except as otherwise set forth in this Stipulation unless such actions are based upon a legally meritorious basis. The provisions of this Paragraph shall be specifically enforceable by the Mortgage Lender.

12.    <u>Jury Trial</u>.    The Mortgage Borrowers and Guarantors hereby make the following waiver knowingly, voluntarily, and intentionally, and understand that the Mortgage

Lender, in entering into this Stipulation or making any financial accommodations to the Mortgage Borrowers or Guarantors, whether now or in the future, is relying on such a waiver: THE MORTGAGE BORROWERS AND GUARANTORS HEREBY IRREVOCABLY WAIVE ANY PRESENT OR FUTURE RIGHT TO A JURY IN ANY TRIAL OF ANY CASE OR CONTROVERSY IN WHICH THE MORTGAGE LENDER BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST THE LENDER OR IN WHICH THE LENDER IS JOINED AS A PARTY LITIGANT), WHICH CASE OR CONTROVERSY ARISES OUT OF, OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN THE MORTGAGE BORROWER, GUARANTORS, OR ANY OTHER PERSON, AND THE MORTGAGE LENDER.

13.    <u>No Reinstatement</u>.    It is expressly understood that, other than as set forth herein, Mortgage Lender's execution of this Stipulation and acceptance of payments in accordance with the FB Agreement, the terms of which are incorporated herein by reference, shall by no means be considered or construed a reinstatement or de-acceleration of the Mortgage Loan as set forth in the Loan Documents, an extension of the Mortgage Loan, or a waiver of Mortgage Lender's rights or remedies at law, in equity or under the Loan Documents.

14.    <u>Entire Agreement</u>.    This Stipulation shall be binding upon the Mortgage Lender, Guarantors, Mortgage Borrowers and their respective employees, representatives, successors, and assigns, and shall inure to the benefit of the Lender Parties and the Mortgage Borrowers and Guarantors. This Stipulation and all documents, instruments, and agreements executed in connection herewith incorporate all of the discussions and negotiations between the Mortgage Borrowers, Guarantors and the Mortgage Lender, either expressed or implied, concerning the matters included herein and in such other documents, instruments and agreements, any statute,

custom, or usage to the contrary notwithstanding. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No modification, amendment, or waiver of any provision of this Stipulation, or any provision of any other document, instrument, or agreement between the Mortgage Borrowers, Guarantors and the Mortgage Lender, shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver, and if such party be the Mortgage Lender, then by a duly authorized officer thereof.

15.     <u>Construction of Agreement</u>. In connection with the interpretation of this Stipulation and all other documents, instruments, and agreements incidental hereto:

(a) All rights and obligations hereunder and thereunder, including matters of construction, validity, and performance, shall be governed by and construed in accordance with the law of the State of New York, without regard to conflicts of law.

(b) The captions of this Stipulation are for convenience purposes only, and shall not be used in construing the intent of the Mortgage Lender, Guarantors and the Mortgage Borrowers under this Stipulation.

(c) All capitalized terms not defined herein shall have the same meaning as those terms defined in the Loan Documents.

(d) In the event of any inconsistency between the provisions of this Stipulation and any other document, instrument, or agreement entered into by and between the Mortgage Lender, Guarantors and the Mortgage Borrowers, the provisions of this Stipulation, which incorporates the terms of the FB Agreement by reference, shall govern and control.

(e) The Mortgage Lender, Guarantors and the Mortgage Borrowers have prepared this Stipulation and all documents, instruments, and agreements incidental hereto with the aid and assistance of their respective counsel. Accordingly, all of them shall be deemed to have been drafted by the Mortgage Lender, Guarantors and the Mortgage Borrowers, and shall not be construed against either the Mortgage Lender, Guarantors or the Mortgage Borrowers.

16.     <u>Illegality or Unenforceability.</u> Any determination that any provision or application of this Stipulation is invalid, illegal, or unenforceable in any respect, or in any instance, shall not affect the validity, legality, or enforceability of any such provision in any other instance, or the

validity, legality, or enforceability of any other provision of this Stipulation.

17.    <u>Informed Execution.</u> Each party to this Stipulation warrants and represents to the

Mortgage Lender that the Mortgage Borrowers and Guarantor:

a)  Have read and understand all of the terms and conditions of this Stipulation;

b)  Intend to be bound by the terms and conditions of this Stipulation; and

c)  Are executing this Stipulation freely and voluntarily, without duress, after consultation
    with independent counsel of their own selection.

18.    <u>Recitals.</u> All recitals contained in this Stipulation are ratified and confirmed.

19.    <u>Reservation of Rights.</u> By agreeing to forbear from the exercise of those rights and

remedies granted to Mortgage Lender under the Loan Documents, which includes those rights and

remedies granted to Mortgage Lender under the FB Agreement, and this Stipulation until

expiration or earlier termination of the Forbearance Period, Mortgage Lender does not waive any

of its rights or remedies with respect to the Mortgage Loan Existing Defaults. All rights and

remedies of the Mortgage Lender with respect to the Mortgage Loan Existing Defaults are hereby

preserved pending fulfillment of the Mortgage Borrowers' obligations under this Stipulation and

under the Loan Documents. The granting of the forbearance hereunder shall not, other than as

expressly provided herein, be deemed a waiver of the Mortgage Lender's rights and remedies or

constitute a course of conduct or dealing on behalf of the Mortgage Lender. As set forth herein,

only upon the occurrence of a Termination Event, Mortgage Lender shall have the right to exercise

one or more of its rights and remedies hereunder or pursuant to the Loan Documents including,

without limitation: (a) commencement or prosecution of judicial foreclosure; (b) enforcement of

its rights in and to all other collateral securing the Loan, in whole or in part, including the sale

thereof or other disposition as provided in the Loan Documents or applicable provisions of the

Uniform Commercial Code in effect in the State of New Jersey; (c) commencement of proceedings

to enforce the Note and Guarantees; and (d) all other remedies available to Mortgage Lender hereunder, pursuant to the Loan Documents, including those remedies available to Mortgage Lender under the FB Agreement, or at law or in equity.  Mortgage Lender's agreements contained herein are limited to the express terms of this Stipulation which incorporates the express terms of the FB Agreement by reference, and except as expressly set forth herein, shall not impair any right or remedy of Mortgage Lender, or any of Mortgage Borrowers' or Guarantors' obligations to Mortgage Lender, as applicable, or Mortgage Lenders' right to enforce full and strict performance of all of the terms of the Loan Documents, including the FB Agreement, upon the occurrence of a Termination Event.

20.    <u>Guarantors</u>.    By the Guarantors' execution of this Stipulation, Guarantors have evidenced their consent to the execution and delivery of this Stipulation by Mortgage Borrowers and their agreement to be bound by the terms hereof to the extent applicable. Further, Guarantors hereby: (a) ratify and confirm the Guaranties; (b) agree that the Guaranties are and shall, subject to the provisions of this Stipulation and the FB Agreement, remain in full force and effect and that the terms and provisions of the Guaranties cover and pertain to the Mortgage Loan, the Mortgage Loan Documents, the Loan Documents including the FB Agreement, and (c) acknowledge that, as of the Effective Date, there are no offsets or counterclaims of any nature whatsoever to Guarantors' obligations and liabilities under the Guaranties. Guarantors further acknowledge that the execution, delivery and effectiveness of this Stipulation shall not operate as a waiver of any right, power or remedy of Mortgage Lender under the Guaranties, or any other document, instrument or agreement executed and/or delivered in connection therewith.

21.    <u>Counterparts and Electronic Copies Deemed Originals</u>. This Stipulation may be executed in counterparts, or electronic transmission, and when taken together shall constitute one

single stipulation.  Facsimile or electronic copies of signatures shall have the same force and effect

as an original.

{THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK}

{SIGNATURE PAGES TO FOLLOW}

1000 FRANK E. RODGERS 1 LLC

By: _____
Name: David Speiser
Title: Authorized Signatory


KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff –*
*1000 Frank E. Rodgers 1 LLC*

*Jerold C. Feuerstein*
_____
Jerold C. Feuerstein, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
Tel. 212-661-2900


**[FIRM NAME]**
*Attorneys for Defendants*

_____
[Name]
[Address 1]
[Address 2]
[Telephone No.]


SUPOR    PROPERTIES    ENTERPRISES
LLC

By:     _____
Name: _____
Title: _____


J. SUPOR 136-1 REALTY LLC

By:     _____
Name: _____
Title: _____


SUPOR-172 REALTY LLC

By:     _____
Name: _____
Title: _____


SUPOR    PROPERTIES    BREIDERHOFT
LLC

By:     _____
Name: _____
Title: _____


SUPOR PROPERTIES DEVON LLC

By:     _____
Name: _____
Title: _____


SHORE    PROPERTIES    ASSOCIATES
NORTH LLC

By:     _____
Name: _____
Title: _____

1000 FRANK E. RODGERS 1 LLC

By: _____
Name: _____
Title: _____


KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff –*
*1000 Frank E. Rodgers 1 LLC*


_____
Jerold C. Feuerstein, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
Tel. 212-661-2900


MEISTER SEELIG & FEIN PLLC
*Attorneys for Defendants*

_____
Sal Meli, Esq.
125 Park Avenue, 7th Floor
New York, NY 10017
Tel (732) 432-0073


SUPOR PROPERTIES ENTERPRISES LLC

By: _____
Name: _____
Title: _____


J. SUPOR 136-1 REALTY LLC

By: _____
Name: _____
Title: _____


SUPOR-172 REALTY LLC

By: _____
Name: _____
Title: _____


SUPOR PROPERTIES BREIDERHOFT LLC

By: _____
Name: _____
Title: _____


SUPOR PROPERTIES DEVON LLC

By: _____
Name: _____
Title: _____


SHORE PROPERTIES ASSOCIATES NORTH LLC

By: _____
Name: _____
Title: _____


21

1000 FRANK E. RODGERS 1 LLC

By: _____
Name: _____
Title: _____


KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff –*
*1000 Frank E. Rodgers 1 LLC*

_____

Jerold C. Feuerstein, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
Tel. 212-661-2900


Greenberg Traurig, LLP
*Attorneys for Defendants*

_____

Paul H. Schafhauser, Esq.
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
Tel 973-443-3233


SUPOR   PROPERTIES   ENTERPRISES
LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory


J. SUPOR 136-1 REALTY LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory


SUPOR-172 REALTY LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory


SUPOR   PROPERTIES   BREIDERHOFT
LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory


SUPOR PROPERTIES DEVON LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory


SHORE   PROPERTIES   ASSOCIATES
NORTH LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

SUPOR    PROPERTIES    HARRISON
AVENUE LLC

By:
Name: Joseph Supor, III
Title:    Authorized Signatory

SUPOR    PROPERTIES    600    URBAN
RENEWAL LLC

By:
Name:    Joseph Supor, III
Title:    Authorized Signatory

JS REALTY PROPERTIES LLC

By:
Name:    Joseph Supor, III
Title:    Authorized Signatory

J. SUPOR & SON TRUCKING & RIGGING
CO. INC.

By:
Name:    Joseph Supor, III
Title:    Authorized Signatory

JOSEPH SUPOR, III, individually

SUBEL    CORPORATION    D/B/A
HARRISON WAREHOUSING CO.

By:
Name:    Joseph Supor, III
Title:    Authorized Signatory

STATE OF _New Jersey_    )
                                           ) ss:
COUNTY OF _Bergen_    )

On the day of _3rd_ of _April_ in the year 2023, before me, the undersigned,
a Notary Public in and for said State, personally appeared, _Joseph Supor, III_,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual
whose name is subscribed to the within instrument and acknowledged to me that he/she executed
the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the
person upon behalf of which the individual acted, executed this instrument.

Exhibit "A"


CONSENT ORDER GRANTING FINAL JUDGMENT

JEROLD C. FEUERSTEIN
(NJ Bar ID NO. 005781995)
KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff*
360 LEXINGTON AVENUE, SUITE 1200
NEW YORK, NEW YORK 10017
(212) 661-2900 – telephone

---------------------------------------------------------------

| | |
|---|---|
| 1000 FRANK E. RODGERS 1 LLC,<br><br>              Plaintiff,<br><br>    -against-<br><br>SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172 REALTY LLC, SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON LLC, SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON TRUCKING & RIGGING CO. INC., SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO.,<br><br>              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>HUDSON COUNTY<br>DOCKET NO. SWC-F-000308-23<br><br>Civil Action<br><br>**CONSENT ORDER GRANTING FINAL JUDGMENT** |

---------------------------------------------------------------

This matter being opened to the Court by Kriss & Feuerstein LLP, attorneys for 1000

FRANK E. RODGERS 1 LLC (the "Plaintiff"), and it appearing that the Summons and

Complaint for Foreclosure (the "Complaint") has been duly issued and returned served upon,

SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172

REALTY LLC, SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON

LLC, SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON

AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN

RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON TRUCKING & RIGGING CO. INC.,

1

SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO. (collectively, the "Defendants"), and any of the Defendants having filed no answer nor appeared, and all Defendants have acknowledged and accepted service of process and waived any and all jurisdictional defenses and defenses based on service of process, on that certain Stipulation of Forbearance by and between counsel for Plaintiff and Defendants, dated April 12, 2023 and entered with this Court on _____, 2023 (the "FB Stipulation"), hereby in all respects Plaintiff and Answering Defendants stipulated, consented and agreed to this Final Judgment and have been given notice hereof; and on the Plaintiff's Note and Mortgage, both dated December 31, 2020, having been presented to the Court, and proofs having been submitted of the amounts due on Plaintiff's Mortgage, and sufficient cause appearing:

It is on this _____ day of _____, 202\_,

ORDERED AND ADJUDGED, that pursuant to the FB Stipulation that the Plaintiff is entitled to have the sum of $64,850,000.00 together with interest on the unpaid principal balance at the interest rate of 24% for a per diem of $43,233.33 after June 1, 2022 through and after entry of judgment until the satisfaction of the indebtedness, together with costs of this action to be taxed, including a counsel fee of $23,250.00 raised and paid out of the mortgaged premises; and it is further

ORDERED that the Plaintiff or any purchaser at the Sheriff's sale duly recover against the following defendants, SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172 REALTY LLC, SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON LLC, SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON

TRUCKING & RIGGING CO. INC., SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO., and all persons holding under them, the possession of the premises mentioned and described in the Complaint with appurtenances; and it is further

ORDERED AND ADJUDGED, that the mortgaged premises be sold to raise and satisfy the sum of money due to the Plaintiff in the sum of aforesaid together with interest thereon as aforesaid, together with the costs to be taxed and that an Execution for that purpose duly issue out of this Court directed to the Sheriff of Hudson County, commanding him or her to make sale, according to law, of the mortgaged premises described in the Amended Complaint, and out of the money arising from the sale that he pay to the Plaintiff its said debt with interest thereon as aforesaid, and costs aforesaid, and in case more money shall be realized by said sale than shall be sufficient to answer such several payments, that such surplus be brought into this Court to abide the further order of this Court, and that the Sheriff of Hudson County shall make his report of sale without delay as required by the Rules of this Court; and it is further

ORDERED AND ADJUDGED, that the Defendants, SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172 REALTY LLC, SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON LLC, SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON TRUCKING & RIGGING CO. INC., SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO., and each of them, stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to said mortgaged premises described in the Complaint when sold as aforesaid by virtue of this judgment.

Notwithstanding anything herein to the contrary, this judgment shall not affect the rights

3

of any person protected by the New Jersey Tenant Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq.,

the right of redemption given the United States of America under 28 U.S.C. Sec. 2410, the limited

priority rights of redemption given the United States of America under 28 U.S.C. Sec. 2410, the

limited priority rights for aggregate customary condominium assessments for the six month period

prior to the recording of any association lien as allowed by N.J.S.A. 46:8B-21 or rights afforded

by the Servicemembers Civil Relief Act, 50 U.S.C. App. 501 et seq. or N.J.S.A. 38:23C-4.


THE UNDERSIGNED HEREBY CONSENT TO THE ENTRY OF THE WITHIN
JUDGMENT.


1000 FRANK E. RODGERS 1 LLC

By: _____
Name: _____
Title: _____

KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff –*
*1000 Frank E. Rodgers 1 LLC*


_____
Jerold C. Feuerstein, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
Tel. 212-661-2900

MEISTER SEELIG & FEIN PLLC
*Attorneys for Defendants*

_____
Sal Meli, Esq.
125 Park Avenue, 7th Floor
New York, NY 10017
Tel. (646) 273-8202

SUPOR PROPERTIES ENTERPRISES LLC

By: _____
Name: _____
Title: _____

J. SUPOR 136-1 REALTY LLC

By: _____
Name: _____
Title: _____

SUPOR-172 REALTY LLC

By: _____
Name: _____
Title: _____

SUPOR PROPERTIES BREIDERHOFT LLC

By: _____
Name: _____
Title: _____

4

1000 FRANK E. RODGERS 1 LLC

By: _____

Name: *David Speiser*

Title: *Authorized Signatory*


KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff –*
*1000 Frank E. Rodgers 1 LLC*

*Jerold C. Feuerstein*
Jerold C. Feuerstein, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
Tel. 212-661-2900


**[FIRM NAME]**
*Attorneys for Defendants*


_____

[Name]
[Address 1]
[Address 2]
[Telephone No.]


SUPOR PROPERTIES ENTERPRISES LLC

By: _____

Name: _____

Title: _____


J. SUPOR 136-1 REALTY LLC

By: _____

Name: _____

Title: _____


SUPOR-172 REALTY LLC

By: _____

Name: _____

Title: _____


SUPOR PROPERTIES BREIDERHOFT LLC

By: _____

Name: _____

Title: _____


SUPOR PROPERTIES DEVON LLC

By: _____

Name: _____

Title: _____


SHORE PROPERTIES ASSOCIATES NORTH LLC

By: _____

Name: _____

Title: _____

THE UNDERSIGNED HEREBY CONSENT TO THE ENTRY OF THE WITHIN JUDGMENT.

1000 FRANK E. RODGERS 1 LLC

By: _____
Name: _____
Title: _____

KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff –*
*1000 Frank E. Rodgers 1 LLC*

_____

Jerold C. Feuerstein, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
Tel. 212-661-2900

Greenberg Traurig, LLP
*Attorneys for Defendants*

_____

Paul H. Schafhauser, Esq.
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
Tel 973-443-3233

SUPOR PROPERTIES ENTERPRISES LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

J. SUPOR 136-1 REALTY LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

SUPOR-172 REALTY LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

SUPOR PROPERTIES BREIDERHOFT LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

SUPOR PROPERTIES DEVON LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

SHORE PROPERTIES ASSOCIATES NORTH LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

SUPOR PROPERTIES HARRISON AVENUE LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

JS REALTY PROPERTIES LLC

By: _____
Name: Joseph Supor, III
Title: Authorized Signatory

_____
JOSEPH SUPOR, III, individually

SUPOR   PROPERTIES   600   URBAN
RENEWAL LLC

By:
Name:   Joseph Supor, III
Title:   Authorized Signatory


J. SUPOR & SON TRUCKING & RIGGING
CO. INC.

By:
Name:   Joseph Supor, III
Title:   Authorized Signatory

SUBEL   CORPORATION   D/B/A
HARRISON WAREHOUSING CO.

By:
Name:   Joseph Supor, III
Title:   Authorized Signatory

Exhibit "B"


WRIT OF EXECUTION

JEROLD C. FEUERSTEIN
(NJ Bar ID NO. 005781995)
KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff*
360 LEXINGTON AVENUE, SUITE 1200
NEW YORK, NEW YORK 10017
(212) 661-2900 – telephone

-----------------------------------------------------------------

| | |
|---|---|
| 1000 FRANK E. RODGERS 1 LLC,<br><br>                                        Plaintiff,<br><br>       -against-<br><br>SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172 REALTY LLC, SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON LLC, SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON TRUCKING & RIGGING CO. INC., SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO.,<br><br>                                        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>HUDSON COUNTY<br>DOCKET NO. SWC-F-000308-23<br><br>Civil Action<br><br>**WRIT OF EXECUTION** |

-----------------------------------------------------------------

THE STATE OF NEW JERSEY

To the Sheriff of the County of Hudson

## G R E E T I N G S:

Whereas, on the following date _____, by that certain Consent Order

Granting Final Judgment granted by Hon. _____, dated _____

_____, 2023 and entered on _____, 2023 in the Superior Court of New Jersey,

in a certain cause therein pending, wherein the Plaintiff is 1000 FRANK E. RODGERS 1 LLC

("Plaintiff") and the Defendants are SUPOR PROPERTIES ENTERPRISES LLC, J. SUPOR

136-1 REALTY LLC, SUPOR-172 REALTY LLC, SUPOR PROPERTIES BREIDERHOFT

LLC, SUPOR PROPERTIES DEVON LLC, SHORE PROPERTIES ASSOCIATES NORTH

LLC, SUPOR PROPERTIES HARRISON AVENUE LLC, JS REALTY PROPERTIES LLC,

SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON

TRUCKING & RIGGING CO. INC. and SUBEL CORPORATION D/B/A HARRISON

WAREHOUSING CO. (collectively, the "Defendants"), it was ordered and adjudged that certain

mortgaged premises, and all personalty, with appurtenances, in the Complaint for Foreclosure (the

"Complaint") in the said cause particularly set forth and described, that is to say:

The mortgaged premises are described as: _____(the

"Property"), **County of Hudson, State of New Jersey** and as more fully set forth upon the ride

annexed hereto as **Schedule "A"** and made a part hereof.

The Property is further described as more particularly described in that certain Deed by

and between _____.

Together, with all and singular the rights, liberties, privileges, hereditaments and

appurtenances personalty thereunto belonging or in any wise appertaining, and the reversion and

remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, use, property,

claim and demand of the said Defendants of, in, to and out of the same, be sold to pay and satisfy in

the first place unto the Plaintiff, **1000 FRANK E. RODGERS 1 LLC,** the sum of **$_____**

being principal, interest, lawful advances, if any, and late charges, if any, secured by a certain _____

_____ dated _____, and given by **SUPOR PROPERTIES**

**ENTERPRISES LLC, J. SUPOR 136-1 REALTY LLC, SUPOR-172 REALTY LLC,**

**SUPOR PROPERTIES BREIDERHOFT LLC, SUPOR PROPERTIES DEVON LLC,**

**SHORE PROPERTIES ASSOCIATES NORTH LLC, SUPOR PROPERTIES HARRISON**

2

**AVENUE LLC, JS REALTY PROPERTIES LLC, SUPOR PROPERTIES 600 URBAN RENEWAL LLC, JOSEPH SUPOR, III, J. SUPOR & SON TRUCKING & RIGGING CO. INC. and SUBEL CORPORATION D/B/A HARRISON WAREHOUSING CO.,** together with interest on the unpaid principal balance at the interest rate of <u>24</u>% for a per diem of **$_____** from **_____,** through and after entry of judgment until the satisfaction of the indebtedness and also the costs of the aforesaid Plaintiff.

And for that purpose a Writ of Execution should issue, directed the Sheriff of Hudson County, commanding him or her to make sale as aforesaid; and that the surplus money arising from such sale, if any, should be brought into the said court, subject to the further order of the said court, as by the said Judgment remaining as of record in the said Superior Court of New Jersey, at Trenton, doth and may more fully appear; and whereas, the costs of the said plaintiff have been duly taxed at the following sum of: <u>$_____</u>.

Therefore, you are hereby commanded that you cause to be made of the mortgaged premises aforesaid, and all personalty, by selling so much of the same as may be needful and necessary for the purpose, the aforesaid sums, and the same you do pay to the said Plaintiff together with the interest thereon as aforesaid, the sum aforesaid of costs; and that you have the surplus money if any there be, before the said Superior Court of New Jersey, as aforesaid, at Trenton, within thirty (30) days after sale (if no sale, Writ returnable within twenty four (24) months, pursuant to R. 4:59-1 (a)), to abide the further order of the said court, according to the Judgment aforesaid; and you are to make return at the time and place aforesaid, by certificate under your hand, of the manner in which you have executed this our Writ, together with this Writ.

3

**WITNESS,** the Hon. _____., of the Superior Court at _____

aforesaid, this _____ day of _____, 2023.

_____
MICHELLE M SMITH
Clerk of the Superior Court


KRISS & FEUERSTEIN LLP
*Attorneys for Plaintiff*

By:     _____
        Jerold C. Feuerstein
        Partner in the Firm

4