# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:    Hon. __KARLA MOSKOWITZ_____    PART __03__

Justice

-----------------------------------------------------------x

The Sedona Group, LLC.

                                      Plaintiff,

           - against -

Cathy Moriarty-Gentile, Joseph Gentile, Stanley Perelman,
Nancy Perelman, Christopher Thompson, Christopher Thompson &
Associates, P.C., The Gallery At Chelsea, LLC, The Gallery
Development Group, LLC, CJA Gallery, LLC, JN Gallery LLC, Jani
RealEstate LLC, Coleson Management, LLC, The Estate of Peter
Romano, Joseph Vozza, Ultra Construction Asssociates, Inc., LuxMac,
Covino & Company, Inc, Michael Covino, M & T Bank and Roslyn
Savings Bank,

                                   Defendants

-----------------------------------------------------------x

INDEX NO.  __115605/2006__

MOTION DATE _____

MOTION SEQ. NO. __002__

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits _____ | |
| Answering Affidavits — Exhibits _____ | |
| Replying Affidavits _____ | |

Cross-Motion:    ☐ Yes    ☐ No

**FILED**

APR 05 2007

NEW YORK
COUNTY CLERK'S OFFICE

Upon the foregoing papers, it is

    ORDERED that this motion is decided in accordance with the accompanying
Decision and Order and it is further

    ORDERED THAT the plaintiff shall serve a copy of this order with notice of entry
upon the Special Referee's Office (Rm 119).

Dated: March 29 2007

                                    KARLA MOSKOWITZ    *J.S.C.*

Check one:    ☐ **FINAL DISPOSITION**    ☒ **NON-FINAL DISPOSITION**

Check if appropriate:    ☐ **DO NOT POST**    ☒ **REFERENCE**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 3

-----------------------------------------------------------------------x

The Sedona Group, LLC.

        Plaintiff.

        -against-                     Index No. 115605/2006

Cathy Moriarty-Gentile, Joseph Gentile, Stanley Perelman, Nancy
Perelman, Christopher Thompson, Christopher Thompson &
Associates, P.C., The Gallery At Chelsea, LLC, The Gallery
Development Group, LLC, CJA Gallery, LLC, JN Gallery LLC,    Decision and Order
Jani RealEstate LLC, Coleson Management, LLC, The Estate of
Peter Romano, Joseph Vozza, Ultra Construction Asssociates, Inc.,
LuxMac, Covino & Company, Inc, Michael Covino, M & T Bank
and Roslyn Savings Bank

                Defendants

-----------------------------------------------------------------------x

**F I L E D**

APR 05 2007

NEW YORK
COUNTY CLERK'S OFFICE

**Karla Moskowitz, J.:**

    This case alleges at bottom a fraudulent scheme whereby various defendants used sham

transactions and sham corporations to siphon off money from a construction project.  The

defendants were supposed to have used loan money and capital contributions to build a

residential condominium in Chelsea.

    This motion (seq. no. 2) is to disqualify Christopher Thompson and his firm as counsel

for defendants Cathy-Moriarty-Gentile, Joseph Gentile; The Gallery at Chelsea, LLC, The

Gallery Development Group, LLC and CJA Gallery, LLC (collectively the "Gentile

Defendants").  Christopher Thompson and his firm Christopher Thompson and Associates

(collectively "Thompson') are also defendants in this action.  In addition, plaintiff requests the

court to consolidate discovery in this case with certain other related cases that are now on my

docket.  For the following reasons, the court grants plaintiff's motion.

On August 5, 2003, The Sedona Group LLC, ("Sedona"), Sedona's partner JMA and

Gallery Development Group (Gallery Group), (an entity that plaintiff claims defendants Stanley

Perelman, Joseph Gentile and Cathy Moriarity-Gentile own indirectly), executed an agreement

(the "Operating Agreement") to create The Gallery at Chelsea, LLC ("The Gallery LLC"). The

Gallery was to hold ownership of a project to develop a residential condominium at 559 West

23rd street ("The Project"). Sedona alleges it contributed $525,000 as a capital contribution.

In its complaint, plaintiff asserts that Christopher Thompson, along with the other

defendants, stole funds from the Project. Apparently, Christopher Thompson was counsel for the

Gentile defendants at the inception of the Project and, as a result of the Gentile defendants'

control over the project, became counsel for the project. In that role, Mr. Thompson apparently

exercised at least some managerial control. For example, he signed the Operating Agreement on

behalf of Gallery Group, the managing member. (See Complaint Ex. A). Christopher Thompson

was also a corporate officer of The Gallery LLC with authority to write checks for that entity.

(Affirmation of David Frydman dated January 25, 2007, Ex D). Indeed, Christopher

Thompson's control went so far that, on August 31, 2004, he directed Perelman, the person who

plaintiff believed was the day to day manager of the project, not to hire construction

professionals to continue the project. Christopher Thompson told Perelman that he (Thompson)

himself was going to place additional funding for the project. (Frydman Aff. Ex. E). It also

would appear that Mr. Thompson was possibly involved in diverting loan funds. Annexed to the

Sedona Complaint as Exhibit D are construction loan draw requests, one of which Thompson

signed on behalf of the general contractor (FI 03579) and others on which Thompson notarizes

the signature of defendant Joseph Vozza ("Vozza") (*See, e.g.,* Complaint Ex D at FI 03634).

2

Plaintiff claims that Vozza was "to be a shill that Thompson and Gentile put in charge of the general contractor entity." (Frydman Aff. ¶ 13). Mr. Thompson does not deny that he endorsed checks representing over $100,000 of construction funds or that he was an officer of The Gallery LLC with check signing power that he exercised.

That part of its motion to disqualify Thompson plaintiff brings pursuant to DR 5-101-105; 108; and Court Rules §§ 1200.20-24, and 27. DR 5-101 prohibits a lawyer from representing a client where:

> the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests, unless a disinterested lawyer would believe that the representation of the client will not be adversely affected thereby and the client consents to the representation after full disclosure of the implications of the lawyer's interest.

Nor may a lawyer represent a client in a case where it is obvious that the lawyer ought to testify on a significant issue on behalf of the client and that testimony might be adverse to that client. (DR 5-102). Nor should a lawyer represent a client with whom he or she has a conflict of interest. (DR 5-105).

Given his level of involvement in the underlying events giving rise to this lawsuit, the court must disqualify Thompson and his firm from their representation of the Gentile defendants. Plaintiff has named Thompson and his firm as defendants and has accused Mr. Thompson, as well as the other defendants, of siphoning money from the Project and stalling the inception of the Project. Therefore, there exists the potential for the various defendants to point fingers at each other as the case progresses. In this respect, Thompson's interests are such that they could be, or may already be, adverse to those of his own clients. In addition, Thompson's financial and other involvement in this case may affect his professional judgment. At the very least, there is a

3

substantial likelihood that he would be called as a witness to testify about where the allegedly

misappropriated funds went. This testimony has the potential to damage the Gentile defendants.

These reasons alone are sufficient to disqualify Mr. Thompson and his firm. *(See Chang v.*

*Chang,* 190 AD2d 311, 318-320 [court disqualified attorney from representing defendant

shareholders of closely-held family corporation where attorney had represented the corporation in

the transaction giving rise to the lawsuit and where the attorney himself allegedly had defrauded

and looted the corporation]).

The court also grants that part of plaintiff's motion seeking coordinated discovery. The

underlying transaction in this case has spawned at least four other lawsuits, all of which are now

before me. These other lawsuits are:

1.    The Gallery Development Group LLC v. The Sedona Group, 604425/2004;

2.    JMA Auto Tech v. The Gallery at Chelsea, 100707/2005;

3.    Gene Kaufman Architect PC v. The Gallery at Chelsea, 101897/2005

4.    Gene Kaufman Architect PC v. M&T Bank 602944/2006

It would be a waste of client and judicial resources not to proceed with discovery on a

consolidated basis. Although plaintiff has asked only for consolidation for discovery purposes

with the first two lawsuits, the court, *sua sponte*, consolidates all of them for discovery. The

facts underlying all the lawsuits are the same and each case could only benefit from shared

discovery. Discovery is underway in the first two actions already, but not so much as to cause

prejudice. The parties have exchanged documents and there has only been one deposition.

Indeed, the prejudice from not consolidating outweighs the prejudice to the two earlier-filed

cases that will only have to wait until the other cases catch up to their document production. The

court also orders discovery to go forward while various dispositive motions are *sub judice*.

Accordingly, it is

ORDERED THAT the court grants plaintiff's motion to disqualify Christopher

Thompson and Christopher Thompson & Associates PC; and it is further

ORDERED THAT the court stays this case for 30 days to afford defendants time to retain

new counsel; and it is further

ORDERED THAT the court grants that part of plaintiff's motion to coordinate discovery

and coordinates The Gallery Development Group LLC v. The Sedona Group, 604425/2004; JMA

Auto Tech v. The Gallery at Chelsea, 100707/2005; Gene Kaufman Architect PC v. The Gallery

at Chelsea, 101897/2005 and Gene Kaufman Architect PC v. M&T Bank 602944/2006 with this

case, pursuant to CPLR 4301 for supervised pretrial discovery before Special Referee Steven

Liebman; and it is further;

ORDERED THAT the plaintiff shall serve a copy of this decision and order with notice

of entry upon the Special Referee's Office (Rm 119).

Dated: March 2007

_____

J.S.C.

*FILED*

APR 05 2007

COUNTY NEW YORK
CLERK'S OFFICE

5

Home            Search by Justices            Recent Additions            Case Type Search



The Supreme Court Records On-Line Library

| | |
|---|---|
| INDEX NO.: | 604425-2004 |
| PLAINTIFF: | GALLERY DEVELOPMENT GROUP |
| DEFENDANT: | SEDONA GROUP, LLC |
| CASE STATUS: | Disposed |
| ACTION: | CD-OTHER COMMERCIAL |
| LAST UPDATE: | 12-26-2023 1:00PM |
| JUSTICE: | BRANSTEN, EILEEN |

SEARCH AGAIN  :  [_____] [Search]

CLICK HERE FOR A LIST OF AVAILABLE IMAGES

**COUNTY CLERK MINUTES :**

KEY TO LINKS BELOW

COUNTY CLERK INFORMATION
- FULL CAPTION
- SCANNED DOCUMENTS
- CC - CIVIL INDEX INQUIRY
- LOCATE FILES

COURT INFORMATION
- CASE CAPTION
- CASE INFORMATION
- ATTORNEYS
- APPEARANCES
- MOTIONS
- COMMENTS
- ASSIGNED JUSTICE



| DATE | DOCUMENT TYPE | DATABASE |
|---|---|---|
| 12-30-2004 | SUMMONS/NOTICE | CCOP |
| 01-13-2005 | NOTICE OF APPEARANCE | CCOP |
| 02-02-2005 | VERIFIED COMPLAINT | CCOP |
| 02-03-2005 | DEMAND | CCOP |
| 03-09-2005 | REPLY/RESPONSE | CCOP |
| 06-17-2005 | NOTICE (3) VERIFIED ANSWER | CCOP |
| 09-13-2005 | SHORT FORM ORDER IAS PART 7. SEE ORDER. SO ORDERED STIPULATION & WARRANT | CCOP |
| 09-19-2005 | PRELIMINARY CONFERENCE ORDER | CCOP |
| 09-19-2005 | ORDER IAS PART 7, SEQ. #01. SEE ORDER. | CCOP |
| 10-18-2005 | SHORT FORM ORDER IAS PART 7 | CCOP |
| 11-04-2005 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 01-11-2006 | SO ORDERED STIPULATION | CCOP |
| 03-09-2006 | ORDER | CCOP |
| 03-24-2006 | ANSWER | CCOP |
| 06-21-2006 | ORDER IAS PART 7 SEQ 003 DECIDED IN ACCORD.WITH THE ACCOMP.MEMO.DECISION | CCOP |
| 07-13-2006 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 07-13-2006 | NOTICE OF APPEAL #1957 | CCOP |
| 07-28-2006 | APPELLATE DIVISION RECEIPT | CCOP |
| 08-10-2006 | ANSWER | CCOP |
| 08-17-2006 | ORDER | CCOP |
| 08-21-2006 | ORDER IAS PART 24, SEQ. #05. MOTION IS WITHDRAWN. | CCOP |

| 12-11-2006 | ORDER IAS PART 24 SEQ 004 DECIDED IN ACCORD. WITH THE ATTACHED MEMORANDUM DECISION | CCOP |
|---|---|---|
| 12-20-2006 | NOTICE OF DISCOVERY AND INSPECTION | CCOP |
| 01-02-2007 | ADMINISTRATIVE ORDER | CCOP |
| 01-22-2007 | ANSWER | CCOP |
| 06-27-2007 | ORDER IAS PART 03 SEQ 006 GRANTED | CCOP |
| 07-03-2007 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 11-13-2007 | ORDER | CCOP |
| 11-20-2007 | ORDER IAS PART 3M SEQ 007 MOTION IS GRANTED | CCOP |
| 12-04-2007 | ORDER IAS PART 86 - PROPOSED ORDER | CCOP |
| 12-07-2007 | ORDER | CCOP |
| 12-13-2007 | NOTICE OF APPEARANCE | CCOP |
| 01-04-2008 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 02-14-2008 | SHORT FORM ORDER IAS PART 86 SO ORDERED TRANSCRIPT | CCOP |
| 02-19-2008 | NOTICE OF ENTRY | CCOP |
| 04-28-2008 | ORDER / NOTICE OF SETTLEMENT | CCOP |
| 06-09-2008 | NOTICE OF APPEAL # 01574 - 01576 (3) | CCOP |
| 06-23-2008 | APPELLATE DIVISION RECEIPT (2) | CCOP |
| 07-01-2008 | PROCEEDINGS | CCOP |
| 07-07-2008 | SHORT FORM ORDER IAS PART TRANSCRIPT | CCOP |
| 07-24-2008 | NOTICE OF APPEAL # 01974 | CCOP |
| 08-06-2008 | APPELLATE DIVISION RECEIPT | CCOP |
| 07-13-2010 | ORDER IAS PART 3 SEQ 010 MOTION IS GRANTED. | CCOP |
| 07-14-2010 | NOTICE OF ENTRY OF ORDERS | CCOP |
| 02-17-2011 | ORDER IAS PART 3 SEQ 011 MOTION IS GRANTED. | CCOP |
| 03-07-2011 | ORDER IAS PART 3 | CCOP |
| 07-19-2011 | UNFINISHED MOTION IAS PART 3M SEQ 009 | CCOP |
| 08-01-2011 | ÿ2ÿ SHORT FORM ORDERS IAS PART 03 - SEE ORDERS | CCOP |
| 08-01-2011 | AFFIDAVIT OF SERVICE LETTER | CCOP |
| 05-03-2012 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 01-18-2013 | PARTIAL STIPULATION OF DISCONTINUANCE | CCOP |
| 04-30-2013 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 07-18-2013 | SHORT FORM ORDER IAS PART 3 SEQ 013 | CCOP |
| 07-26-2013 | NOTICE OF APPEARANCE | CCOP |
| 08-27-2013 | NOTICE OF SETTLEMENT OF ORDER | CCOP |
| 09-13-2013 | ORDER IAS PART 3 SEQ 012 SEE ORDER FOR DECISION. | CCOP |
| 09-17-2013 | AFFIRMATION BY THE JMA /SEDONA PARTIES OF THE STATUS OF CLAIMS | CCOP |
| 01-14-2014 | ORDER IAS PART 3 SEQ 015 SEE ORDER | CCOP |

| 03-12-2014 | ORDER IAS PART 3 SEQ 012 | CCOP |
|---|---|---|
| 03-14-2014 | ADDITIONAL MOTION PAPERS- PT 3 SEQ 014 | CCOP |
| 08/12/2015 | OTHER | MINUTES |
| 08/12/2015 | DECISION AND ORDER SEQ | MINUTES |
| 08/12/2015 | RECEIVED PAPERS | MINUTES |
| 09/09/2015 | OTHER | MINUTES |
| 09/11/2015 | OTHER | MINUTES |
| 09/11/2015 | RECEIVED PAPERS | MINUTES |
| 05/27/2016 | ORDER SIGNED | MINUTES |

**COUNTY CLERK MINUTES :** The minutes of the County Clerk in chronological order reflecting all documents filed with the County Clerk. Motion papers are filed with the order therein and are not separately identified.

Documents that have been entered into the minutes of the County Clerk bear a stamp stating "Filed," followed by the date of filing (entry date) and the words "New York County Clerk's Office." Except in matrimonial cases (documents for which are not included in Scroll), judgments are not entered by the County Clerk until an attorney for a party to the case appears at the Judgment Clerk's desk (Rm. 141B at 60 Centre Street) and requests entry. Copies of unfiled judgments bearing a stamp stating "Unfiled Judgment" and a notice to counsel may be found in Scroll. For technical reasons, some long form orders or other documents that were scanned in the early phase of this project may be categorized here as a "Decision."

[ NEW SEARCH ]

60 Centre Street, New York NY 10007 Copyright © 2006 Unified Court System

Home          Search by Justices          Recent Additions          Case Type Search



| | |
|---|---|
| **INDEX NO.:** | **100707-2005** |
| **PLAINTIFF:** | **JMA AUTO TECH** |
| **DEFENDANT:** | **GALLERY AT CHELSEA** |
| CASE STATUS: | Disposed |
| ACTION: | CD-CONTRACT |
| LAST UPDATE: | 12-26-2023 1:00PM |
| JUSTICE: | BRANSTEN, EILEEN |

KEY TO LINKS BELOW

CLICK HERE FOR A LIST OF AVAILABLE IMAGES

**COUNTY CLERK MINUTES :**

COUNTY CLERK INFORMATION

FULL CAPTION

SCANNED DOCUMENTS

CC - CIVIL INDEX INQUIRY

LOCATE FILES

COURT INFORMATION

CASE CAPTION

CASE INFORMATION

ATTORNEYS

APPEARANCES

MOTIONS

COMMENTS

ASSIGNED JUSTICE



| DATE | DOCUMENT TYPE | DATABASE |
|---|---|---|
| 01-18-2005 | SUMMONS AND COMPLAINT | CCOP |
| 01-28-2005 | AFFIDAVIT OF SERVICE (4) | CCOP |
| 02-07-2005 | AFFIDAVIT OF SERVICE | CCOP |
| 02-10-2005 | AFFIDAVIT OF SERVICE | CCOP |
| 02-24-2005 | ANSWER/ COUNTER CLAIMS (2) | CCOP |
| 03-24-2005 | STIPULATION | CCOP |
| 04-14-2005 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 06-17-2005 | REPLY | CCOP |
| 06-17-2005 | REPLY | CCOP |
| 08-18-2006 | STATUS CONFERENCE ORDER | CCOP |
| 10-06-2006 | PRELIMINARY CONFERENCE ORDER | CCOP |
| 10-17-2006 | SHORT FORM ORDER IAS PART 03 | CCOP |
| 10-17-2006 | LETTER | CCOP |
| 10-27-2006 | STIPULATION | CCOP |
| 11-24-2006 | PRELIMINARY CONFERENCE ORDER SHORT FORM ORDER IAS PART 24 | CCOP |
| 12-27-2006 | ADMINISTRATIVE ORDER | CCOP |
| 07-03-2007 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 07-09-2007 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 12-13-2007 | NOTICE OF APPEARANCE OF CO-COUNSEL | CCOP |
| 12-21-2007 | NOTICE TO SETTLE ORDER LETTER | CCOP |
| 01-28-2008 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 05-01-2012 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 04-30-2013 | CONSENT TO CHANGE ATTORNEY | CCOP |

| 07-26-2013 | NOTICE OF APPEARANCE | CCOP |
| 09/11/2015 | OTHER | MINUTES |

**COUNTY CLERK MINUTES :** The minutes of the County Clerk in chronological order reflecting all documents filed with the County Clerk. Motion papers are filed with the order therein and are not separately identified.

Documents that have been entered into the minutes of the County Clerk bear a stamp stating "Filed," followed by the date of filing (entry date) and the words "New York County Clerk's Office." Except in matrimonial cases (documents for which are not included in Scroll), judgments are not entered by the County Clerk until an attorney for a party to the case appears at the Judgment Clerk's desk (Rm. 141B at 60 Centre Street) and requests entry. Copies of unfiled judgments bearing a stamp stating "Unfiled Judgment" and a notice to counsel may be found in Scroll. For technical reasons, some long form orders or other documents that were scanned in the early phase of this project may be categorized here as a "Decision."

NEW SEARCH

60 Centre Street, New York NY 10007 Copyright © 2006 Unified Court System

Home          Search by Justices          Recent Additions          Case Type Search



| | |
|---|---|
| **INDEX NO.:** | **101897-2005** |
| **PLAINTIFF:** | **GENE KAUFMAN ARCHITECT P.C.** |
| **DEFENDANT:** | **GALLERY AT CHELSEA LLC.** |
| CASE STATUS: | Disposed |
| ACTION: | FORECLOSURE |
| LAST UPDATE: | 12-26-2023 10:00AM |
| JUSTICE: | BRANSTEN, EILEEN |

SEARCH AGAIN  :  [            ]  [ Search ]

KEY TO LINKS BELOW

CLICK HERE FOR A LIST OF AVAILABLE IMAGES

**COUNTY CLERK MINUTES :**

| COUNTY CLERK INFORMATION |
|---|
| FULL CAPTION |
| SCANNED DOCUMENTS |
| CC - CIVIL INDEX INQUIRY |
| LOCATE FILES |

| COURT INFORMATION |
|---|
| CASE CAPTION |
| CASE INFORMATION |
| ATTORNEYS |
| APPEARANCES |
| MOTIONS |
| COMMENTS |
| ASSIGNED JUSTICE |



| DATE | DOCUMENT TYPE | DATABASE |
|---|---|---|
| 02-09-2005 | SUMMONS AND COMPLAINT | CCOP |
| 02-10-2005 | AMENDED SUMMONS AND COMPLAINT | CCOP |
| 03-03-2005 | AFFIDAVIT OF SERVICE | CCOP |
| 03-21-2005 | VERIFIED ANSWER | CCOP |
| 03-30-2005 | VERIFIED REPLY | CCOP |
| 04-07-2005 | AFFIDAVIT OF SERVICE | CCOP |
| 04-11-2005 | VERIFIED REPLY | CCOP |
| 04-15-2005 | AFFIDAVIT OF SERVICE | CCOP |
| 04-29-2005 | VERIFIED REPLY (2) | CCOP |
| 06-06-2005 | ANSWER | CCOP |
| 06-17-2005 | VERIFIED ANSWER AMENDED VERIFIED ANSWER | CCOP |
| 07-29-2005 | ORDER IAS PART 4 SEQ 001 GRANTED | CCOP |
| 08-15-2005 | NOTICE OF ENTRY | CCOP |
| 08-24-2005 | VERIFIED ANSWER | CCOP |
| 09-12-2005 | PRELIMINARY CONFERENCE ORDER | CCOP |
| 01-30-2006 | ORDER IAS PART 12 SEQ 02 RESOLVED PER STIPULATION | CCOP |
| 05-01-2006 | SO ORDERED STIPULATION | CCOP |
| 08-08-2006 | SO ORDERED STIPULATION | CCOP |
| 09-22-2006 | ORDER | CCOP |
| 12-12-2006 | NOTICE OF LAW FIRM MERGER AND NAME CHANGE | CCOP |
| 12-20-2006 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 12-26-2006 | INTERIM ORDER | CCOP |
| 01-09-2007 | CONSENT TO CHANGE ATTORNEY | CCOP |

| 02-23-2007 | INTERIM DECISION SEQ 003 | CCOP |
|---|---|---|
| 03-02-2007 | INTERIM ORDER PART 12 | CCOP |
| 05-24-2007 | SHORT FORM ORDER IAS PART | CCOP |
| 05-30-2007 | SECOND AMENDED SUMMONS AND COMPLAINT | CCOP |
| 06-21-2007 | AMENDED ANSWER WITH COUNTERCLAIM (2) | CCOP |
| 06-25-2007 | NOTICE OF ENTRY | CCOP |
| 07-03-2007 | NOTICE OF CHANGE OF ATTORNEY | CCOP |
| 07-09-2007 | CONSENT TO CHANGE ATTORNEY AMENDED ANSWER | CCOP |
| 07-16-2007 | AFFIDAVIT OF SERVICE (6) | CCOP |
| 09-10-2007 | PLAINTIFF S VERIFIED REPLY | CCOP |
| 11-19-2007 | SO ORDERED STIPULATION | CCOP |
| 11-20-2007 | ORDER IAS PART 3 SEQ 004 MOTION S ARE DECIDED AS SET FORTH IN DECISION ON THE RECORD. | CCOP |
| 11-28-2007 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 12-18-2007 | ORDER | CCOP |
| 12-21-2007 | ORDER | CCOP |
| 01-09-2008 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 01-22-2008 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 03-05-2008 | ORDER IAS PART 86 SEQ 003 MATTER DISPOSED OF PURSUANT TO DECISION ON RECORD OF 2/25/08. | CCOP |
| 03-10-2008 | COPY ORDER/NOTICE OF ENTRY | CCOP |
| 05-01-2012 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 04-30-2013 | CONSENT TO CHANGE ATTORNEY | CCOP |
| 07-26-2013 | NOTICE OF APPEARANCE | CCOP |
| 09/11/2015 | OTHER | MINUTES |

**COUNTY CLERK MINUTES :** The minutes of the County Clerk in chronological order reflecting all documents filed with the County Clerk. Motion papers are filed with the order therein and are not separately identified.

Documents that have been entered into the minutes of the County Clerk bear a stamp stating "Filed," followed by the date of filing (entry date) and the words "New York County Clerk's Office." Except in matrimonial cases (documents for which are not included in Scroll), judgments are not entered by the County Clerk until an attorney for a party to the case appears at the Judgment Clerk's desk (Rm. 141B at 60 Centre Street) and requests entry. Copies of unfiled judgments bearing a stamp stating "Unfiled Judgment" and a notice to counsel may be found in Scroll. For technical reasons, some long form orders or other documents that were scanned in the early phase of this project may be categorized here as a "Decision."

NEW SEARCH

60 Centre Street, New York NY 10007 Copyright © 2006 Unified Court System

SCANNED ON 5/31/2007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
GENE KAUFMAN ARCHITECT, P.C., and
GENE KAUFMAN,

                        Plaintiffs,

                  --Against—

THE GALLERY AT CHELSEA, LLC, THE GALLERY
DEVELOPMENT GROUP, LLC, CJA GALLERY, LLC,
JN GALLERY, LLC, JANI DEVELOPMENT, LLC,
JANI DEVELOPMENT II, LLC, COLESON MANAGEMENT,
LLC, STANLEY R. PERELMAN, JOSEPH GENTILE,
CATHY MORIARTY-GENTILE, CHRISTOPHER
THOMPSON, ESQ., ARROW DEVELOPMENT CO., LLC,
SEDONA DEVELOPMENT CO., LLC, THE SEDONA
GROUP, LLC, SEDONA DEVELOPMENT GROUP, LLC,
QUAIL RIDGE DEVELOPMENT CO., LLC, TONI COBURN,
STEPHEN E. MCARDLE, JMA AUTO TECH CORP.,
559 WEST 23RD STREET FUNDING LLC,
ULTRA CONSTRUCTION ASSOCIATES INC.,
VJB CONSTRUCTION 559 W 23RD STREET LLC,
PETER SCALAMANDRE & SONS INC., BLUEPRINT
PLUMBING LLC, NORTH AMERICAN ELEVATOR
INDUSTRIES INC., ABCON BUILDERS CORP.,
RCDOLNER, LLC, JOHN OR JANE DOES 1 -10,
and XYZ ENTITIES 1 -10,

                    Defendants.

-------------------------------------------------------------------x

**SECOND
AMENDED SUMMONS**

**INDEX NO. 101897/2005**

Plaintiffs Designate New
York County as the Place
of Trial



**FILED**

MAY 3 0 2007

NEW YORK
COUNTY CLERKS OFFICE

TO EACH OF THE ABOVE NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED to answer the Second Amended Verified

Complaint in this action and to serve a copy of your answer on plaintiffs' attorney within 20 days

after the service of this summons or within 30 days after service is complete if this summons is

not personally delivered to you within the State of New York.  If you fail to appear or answer,

judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue designated is the place of business of plaintiffs in New York County and the location of the subject premises in New York County at 559 West 23rd Street, New York, New York, Block 695, Lot 6.


Dated: New York, New York
     May 25, 2007

GENE KAUFMAN ARCHITECT, P.C.

By: _____
    Terry Eder-Kaufman, Esq.
525 Broadway, 8th Floor
New York, NY 10012
Tel: (212) 625-8700 x 106
Fax: (212) 625-8867

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X

GENE KAUFMAN ARCHITECT, P.C., and                    **INDEX NO. 101897/2005**
GENE KAUFMAN,
                                                     Hon. Karla Moskowitz
                                                     Part 3

                              Plaintiffs,
                                                     **SECOND AMENDED
                                                     VERIFIED
                                                     COMPLAINT**

            - against-

THE GALLERY AT CHELSEA, LLC, THE GALLERY
DEVELOPMENT GROUP, LLC, CJA GALLERY, LLC,
JN GALLERY, LLC, JANI DEVELOPMENT, LLC,
JANI DEVELOPMENT II, LLC, COLESON MANAGEMENT,
LLC, STANLEY R. PERELMAN, JOSEPH GENTILE,
CATHY MORIARTY-GENTILE, CHRISTOPHER
THOMPSON, ESQ., ARROW DEVELOPMENT CO., LLC,
SEDONA DEVELOPMENT CO., LLC, THE SEDONA
GROUP, LLC, SEDONA DEVELOPMENT GROUP, LLC,
QUAIL RIDGE DEVELOPMENT CO., LLC, TONI COBURN,
STEPHEN E. MCARDLE, JMA AUTO TECH CORP.,
559 WEST 23RD STREET FUNDING LLC,
ULTRA CONSTRUCTION ASSOCIATES INC.,
VJB CONSTRUCTION 559 W 23RD STREET LLC,
PETER SCALAMANDRE & SONS INC., BLUEPRINT
PLUMBING LLC, NORTH AMERICAN ELEVATOR
INDUSTRIES INC., ABCON BUILDERS CORP.,
RCDOLNER, LLC, JOHN OR JANE DOES 1 -10,
and XYZ ENTITIES 1 -10,

                              Defendants.
-----------------------------------------------------------------------X

**FILED**

**MAY 3 0 2007**

NEW YORK
COUNTY CLERK'S OFFICE

        Plaintiffs Gene Kaufman Architect, P.C. and Gene Kaufman, by and through their

attorney of record, Terry Eder-Kaufman, Esq., bring this action against defendants: to enforce a

mechanic's lien on real property by order of foreclosure and sale pursuant to NY Lien Law

section 40 et seq.; for an order directing the sheriff, or such other person as has been directed by

1

the Court to sell the property, to pay plaintiffs from the proceeds of such sale the amount

specified in the mechanic's liens filed by plaintiffs on February 26,2004, namely $74,155.39 plus

interest, costs and disbursements, pursuant to NY Lien Law § 53, RPAPL § 1354, and CPLR

section 8302, and plaintiffs' reasonable attorney's fees; for a deficiency judgment in favor of

plaintiffs and against defendants, jointly and severally, plus interest, costs and disbursements

pursuant to NY Lien Law section 53, RPAPL section 1354, and CPLR section 8302, and

plaintiffs' reasonable attorney's fees; for a money judgment against defendants, jointly and

severally, for compensatory damages and punitive damages suffered as a result of defendants'

fraud in the inducement; in the alternative to foreclosure, should this Court not find a valid lien,

for a money judgment against defendants, jointly and severally, for damages suffered as a result

of defendants' breaches of contract, unjust enrichment, and under principles of quantum meruit

and account stated; for declaratory judgments that specified defendant entities are alter egos for

specified defendant individuals, and awarding money judgments in accordance therewith,

together with interest, plaintiffs' costs, disbursements and reasonable attorney's fees for bringing

the action; for enforcement of the NY Lien Law trust against defendants and for damages

suffered as a result of defendants' diversion of assets and breach of trust, pursuant to NY Lien

Law Article 3a, sections 70-79a; and such other and further relief as the Court deems just and

proper, and allege in support thereof as follows:

## Parties and Related Facts

1.      Gene Kaufman Architect, P.C. ("GKA") is an architectural firm with its principal

place of business at 525 Broadway, New York, New York. GKA was formerly located at 371

Broadway, New York, New York.

2.      Gene Kaufman ("Kaufman") is the owner and principal of GKA. Kaufman is a

2

licensed architect in the State of New York.

3.      The Gallery at Chelsea, LLC ("Gallery") is a New York limited liability company that was formed to own a piece of property to be developed, located at 559 West 23rd Street, New York, New York, Block 695, Lot 6 (the "Premises").  A metes and bounds description of the Premises is attached hereto as Exhibit 1.  Gallery is and has been the record owner of the Premises since on or about December 11, 2003.

4.      Upon information and belief, Gallery is completely controlled and dominated by defendants Stanley Perelman ("Perelman"), Joseph Gentile ("Gentile"), Cathy Moriarty-Gentile ("Moriarty"), and Christopher Thompson ("Thompson").

5.      Upon information and belief, Perelman, Gentile, Moriarty and Thompson are the majority beneficial owners of the Premises.

6.      Gallery was record owner of the Premises on the last date that GKA and Kaufman provided work to defendants concerning the Premises, which was February 10, 2004.

7.       Upon information and belief, Perelman, Gentile, Moriarty-Gentile and Thompson caused sham limited liability companies to be formed, i.e, Gallery Development Group, LLC, CJA Gallery, LLC and JN Gallery, LLC, companies which have no offices, no employees, no books, and no bona fide operations, and which they completely dominate and control, to purportedly "manage" Gallery, in an attempt to insulate themselves from liability for their improper actions in connection with the development of the Premises.

8.      The Gallery Development Group, LLC ("GDG) is, upon information and belief, a New York limited liability company that is the managing member of Gallery.

9.      Upon information and belief, GDG owns a majority interest in Gallery.

10.     GDG is, upon information and belief, comprised of two partners, CJA Gallery, LLC, and JN Gallery, LLC.

3

11.     CJA Gallery, LLC ("CJA") is, upon information and belief, a New York limited liability company that is one of two managing members of GDG.

12.     Upon information and belief, CJA consists of and is controlled by Joseph Gentile, Cathy Moriarty-Gentile and Christopher Thompson, who are its beneficial owners.

13.     Upon information and belief, CJA owns a 50% interest in GDG.

14.     JN Gallery, LLC ("JN"), upon information and belief, is a New York limited liability company that is one of two managing members of GDG.

15.     Upon information and belief, JN consists solely of and is controlled by Stanley Perelman.

16.     Upon information and belief, JN owns a 50% interest in GDG.

17.     Upon information and belief, Perelman, Gentile, Moriarty and Thompson manage and run Gallery purportedly through GDG, JN, and CJA, all of which they dominate and completely control.  Upon information and belief, GDG and CJA are alter egos for Gentile, Thompson and Moriarty-Gentile, and GDG and JN are alter egos for Perelman, all of whom abused the corporate form of these entities in order to personally profit from the project to develop the Premises, improperly taking funds from the project financing for the Premises, to the detriment of bona fide creditors including plaintiffs, for whom the financing should have been held in trust and handled as trust funds.

18.     Jani Development, LLC ("JANI") is, upon information and belief, a New York limited liability company doing business as "Jani Real Estate" and run by Perelman.

19.     Upon information and belief, Perelman operates all of his entities from his JANI office, which is currently located at 40 Worth Street, Suite 1415, New York, New York 10013. JANI was previously located, at times relevant to the allegations herein, at 545 Madison Avenue,

4

New York, New York.

20.    Upon information and belief, JANI is completely dominated and controlled by Stanley Perelman.  Upon information and belief, JANI falsely held itself out as the owner and/or developer of the Premises.  Perelman and Gallery's correspondence to GKA and Kaufman concerning the Gallery project used JANI letterhead and contact information.

21.    Jani Development II, LLC ("JANI II") is, upon information and belief, a New York limited liability company affiliated with JANI and with Gallery, that was formed on March 19, 2004.

22.    Upon information and belief, JANI II is also run by, and dominated and controlled by Stanley Perelman.

23.    Upon information and belief, JANI II is responsible for some or all of the liabilities and obligations of JANI and/or other entities dominated and controlled by Perelman, Gentile, Moriarty and/or Thompson.

24.    Coleson Management, LLC ("Coleson") is, upon information and belief, a New York limited liability company that Perelman, Gentile, Moriarty or Thompson caused to be formed on or about May 26, 2004.

25.    Upon information and belief, Coleson is operated, managed and/or dominated and controlled by Perelman.

26.    Upon information and belief, Coleson is party to an agreement or agreements concerning the Premises, and is an entity affiliated with the Gallery project and/or Gallery, GDG, JN, CJA, JANI and/or JANI II.

27.    Upon information and belief, Coleson is responsible for some or all of the liabilities and obligations of Gallery, GDG, CJA, JN and/or other entities dominated and controlled by Perelman, Gentile, Moriarty and/or Thompson.

5

28.     Stanley R. Perelman ("Perelman"), upon information and belief, resides at 422 East 72nd Street, Apt. 30-D, New York, New York 10021, and is a principal of Gallery, GDG, JN, JANI, JANI II and Coleson. Upon information and belief, Perelman and/or entities that he dominates and controls, improperly received funds from the financing for the Premises, which should have been treated as trust funds under the Lien Law, for the benefit of bona fide creditors including plaintiffs.

29.     Upon information and belief, during the time period relevant to the allegations herein, Perelman completely dominated, controlled and operated JN, JANI, JANI II and Coleson.

30.     Upon information and belief, during the time period relevant to the allegations herein, Perelman, together with Gentile, Moriarty and Thompson, completely dominated, controlled and operated Gallery and GDG.

31.     Upon information and belief, Perelman owns a substantial beneficial interest in the Premises.

32.     At times relevant to the allegations herein, including for several months prior to the closing on or about December 11, 2003, in which Gallery acquired title to the Premises, Perelman controlled and directed the development plans for the Premises.

33.     Upon information and belief, GDG, JN, JANI, JANI II and Coleson are alter egos for Perelman, who abused the corporate form of these entities in order to personally profit from the project to develop the Premises.

34.     Joseph Gentile ("Gentile"), upon information and belief, resides at 88 Fantasy Drive, Riverhead, New York, is a beneficial owner of Gallery, GDG, and CJA, is a managing member or principal of CJA and GDG, and is married to Moriarty.  Upon information and belief,

6

Gentile improperly received funds from the financing for the Premises, which should have been treated as trust funds under the Lien Law, for the benefit of bona fide creditors including plaintiffs.

35.     Cathy Moriarty-Gentile ("Moriarty"), upon information and belief, resides at 88 Fantasy Drive, Riverhead, New York, is a managing member or principal of CJA and GDG, is a beneficial owner of Gallery, GDG, and CJA, and is married to Gentile.  Upon information and belief, Moriarty improperly received and/or used funds from the financing for the Premises, which should have been treated as trust funds under the Lien Law, for the benefit of bona fide creditors including plaintiffs.

36.     Christopher Thompson ("Thompson"), upon information and belief, is a New York State licensed attorney with his principal place of business at 35 Pinelawn Road, Suite LL4, Melville, New York 11747.  Thompson was counsel to Gallery, GDG, CJA, JN, Gentile and Perelman at times relevant to the allegations herein.  Upon information and belief, Thompson is or was an undisclosed managing member, principal, or other officer of CJA, and exercised management authority concerning the Gallery project.  Upon information and belief, Thompson improperly received funds from the financing for the Premises, which should have been treated as trust funds under the Lien Law, for the benefit of bona fide creditors including plaintiffs.

37.     Arrow Development Co., LLC ("Arrow") was at times relevant to this proceeding, a New York limited liability company with an address at 317 Madison Avenue, Suite 807, New York, NY 10017, that consisted of two members, defendants Sedona Development Co., LLP ("Sedona Development") and JMA Auto Tech Corp. ("JMA").

38.     At times relevant to this proceeding, Arrow had a project to develop the Premises for the former owner of the Premises, JMA, the present owner, Gallery, and for Sedona

7

Development's principals and beneficial owners, Toni Coburn and Stephen E. McArdle.

39.     Upon information and belief, Arrow was beneficially owned by McArdle, his wife, Toni Coburn ("Coburn"), and Russell Arezzo, the owner and president of JMA.

40.     Upon information and belief, Coburn and McArdle completely controlled and dominated Arrow and caused it to be dissolved on or about March 17, 2004 and its assets disbursed, with knowledge that GKA had not been fully paid pursuant to Arrow's contract with GKA.

41.     Sedona Development Co., LLC, upon information and belief, was at times relevant to this proceeding, a New York limited liability company located at 317 Madison Avenue, Suite 807, New York, New York 10017, that was the managing member of Arrow. Upon information and belief, Sedona Development's members at its inception were McArdle, the managing member, and Coburn.

42.     Upon information and belief, McArdle and Coburn used the entities Sedona Development and Arrow interchangeably in their relationship with plaintiffs.

43.     Upon information and belief, McArdle transferred his interest in Sedona Development to his wife, Toni Coburn, in order to insulate himself from personal liability to GKA for Arrow's debt.

44.     Upon information and belief, Coburn assigned her interest in Sedona Development to an entity known as Quail Ridge Development Co., LLC ("Quail Ridge"), in order to insulate herself from personal liability to GKA for Arrow's debt. Upon information and belief, Coburn is the sole member of Quail Ridge.

45.     Thereafter, McArdle and Coburn caused Sedona Development to be dissolved, with knowledge that GKA had not been paid its debt from Arrow.

46.     Upon information and belief, Arrow and Sedona Development were alter egos for

8

Coburn and/or McArdle, in that they were, at times relevant to the allegations herein, completely controlled by Coburn and/or McArdle, were used interchangeably, without separate existence or maintenance of corporate formalities.

47.    Upon information and belief, Arrow and Sedona Development were dissolved, at least in part, to avoid Arrow's contractual liability to GKA.

48.    The Sedona Group, LLC ("Sedona"), upon information and belief, is a domestic entity formerly located at 317 Madison Avenue, Suite 807, New York, NY 10017, and currently located at 100 Park Avenue, 20th Floor, New York, NY 10017.

49.    Upon information and belief, Coburn and/or McArdle completely dominate, control and run Sedona.

50.    Upon information and belief, Sedona is, or should be equitably held to be, the successor in interest to the assets and liabilities of Arrow.

51.    Upon information and belief, Sedona is party to an agreement dated August 2003 with JMA and GDG concerning, among other things, the anticipated profits from development of the Premises.

52.    Upon information and belief, Coburn and McArdle hold a beneficial interest in the Premises through Sedona.

53.    Sedona Development Group, LLC ("SDG"), upon information and belief, is an entity affiliated with Sedona, Sedona Development, and Arrow that was formed on or about March 24, 2004.

54.    Upon information and belief, SDG is completely dominated, controlled and run by Coburn and/or McArdle, and is the successor in interest to some or all of the assets and liabilities of Arrow.

9

Supreme Court Records OnLine Library -  page 11 of 48

55.     Quail Ridge Development Co., LLC ("Quail Ridge"), upon information and belief, is a limited liability company having Toni Coburn as its sole member.  Upon information and belief, Coburn transferred her interest in Sedona Development to Quail Ridge.

56.     Upon information and belief, Quail Ridge is the successor in interest to the assets and liabilities of Sedona Development and/or Arrow.

57.     Toni Coburn ("Coburn"), upon information and belief, resides at 333 W. 22nd St., New York, NY 10011 and 1355 Coxlane, Cutchogue, NY 11935, and was, at times relevant to this proceeding, a member, principal, and/or beneficial owner of Arrow, Sedona Development, SDG and Sedona.  Upon information and belief, Coburn appointed or authorized McArdle to act as her agent and to assume all management responsibilities for those entities.  Coburn is married to McArdle.

58.     Stephen E. McArdle ("McArdle"), upon information and belief, resides at 333 W. 22nd St., New York, NY 10011 and 1355 Coxlane, Cutchogue, NY 11935, is married to Coburn and was, at times relevant to this proceeding, managing member of Sedona Development, and had full management responsibility for Arrow, Sedona Development, Sedona and SDG, including Arrow's relationship with plaintiffs.

59.     Upon information and belief, McArdle holds a beneficial interest in the Premises through Sedona or through Coburn.

60.     Upon information and belief, McArdle was, beginning in 2001, in some capacity, a partner with JMA Auto Tech Corp. in a project to develop the Premises.

61.     Upon information and belief, McArdle, through Sedona, is party to an agreement formed in or around August 2003 with GDG, an entity run by Gentile, Perelman, Moriarty and Thompson, and JMA concerning, among other things, the anticipated profits from development

10

Supreme Court Records OnLine Library - page 12 of 48

of the Premises.

62.    Defendants Perelman, Gentile, Moriarty, Thompson, McArdle and Coburn have used their various entities to perpetrate fraud upon plaintiffs and insulate themselves from personal liability.

63.    Defendants Perelman, Gentile, Moriarty, Thompson, McArdle and Coburn have engaged in a shell game, whereby they form and dissolve entities and/or transfer assets and liabilities to new entities in an effort to insulate themselves from their wrongful conduct.

64.    JMA Auto Tech Corp. ("JMA") is a New York corporation that was record owner of the Premises prior to December 11, 2003, at which time JMA transferred title to the Premises to Gallery.  JMA was a member of Arrow, and is owned and run by Russell Arezzo.  JMA filed a lis pendens against the Premises on January 18, 2005.

65.    JMA was record owner of the Premises at the time that GKA was hired by McArdle to begin work on the Premises.

66.    At that time, McArdle represented to Kaufman that he and/or Coburn and/or Arrow were partners with JMA in the development of the Premises.

67.    Perelman represented in an application filed with the New York City Department of Buildings that he is or was Vice President of JMA.

68.    Upon information and belief, 559 West 23rd Street Funding LLC ("Funding LLC") is a domestic limited liability company with its principal place of business c/o Stark, Amron & Liner, LLP, Seven Penn Plaza, Suite 600, New York, NY  10001.

69.    Upon information and belief, Funding LLC purchased the loans and mortgages obtained by Perelman and Gallery from former defendant Fremont Investment & Loan ("Fremont").  Fremont made a motion to the Court (Justice Kapnick) to be substituted by Funding LLC in this action.  The substitution was granted by stipulation of the parties.

11

70.     Upon information and belief, Fremont filed a Notice of Lien against the Premises on February 26, 2004, but did not record any of the Gallery mortgages with the City Register of the City of New York until July 5, 2004.

71.     Ultra Construction Associates Inc. ("Ultra"), upon information and belief, is a domestic corporation that filed a Notice of Mechanic's Lien against the Premises on November 17, 2004 in the amount of $4,500,000.   Ultra has never made an appearance in this action and has defaulted.

72.     VJB Construction 559 W. 23rd Street LLC ("VJB"), upon information and belief, is a New York limited liability company that filed a Notice of Mechanic's Lien against the Premises on November 19, 2004 in the amount of $48,865.14.

73.      Peter Scalamandre & Sons Inc. ("Scalamandre"), upon information and belief, is an entity that filed a Notice of Mechanic's Lien against the Premises on November 19, 2004 in the amount of $445,013.

74.     Blueprint Plumbing LLC ("Blueprint"), upon information and belief, is a New York limited liability company that filed a Notice of Mechanic's Lien against the Premises on December 29, 2004 in the amount of $8,070.

75.     North American Elevator Industries Inc. ("North American"), upon information and belief, is a New Jersey corporation that filed a Notice of Mechanic's Lien against the Premises on January 10, 2005 in the amount of $25,000.   North American has never made an appearance in this action and has defaulted.

76.      Abcon Builders Corp. ("Abcon"), upon information and belief, is an entity that filed Notices of Mechanic's Liens against the Premises on June 28, 2004 and on July 22, 2004, each in the amount of $39,249.  Abcon filed a Notice of Appearance in this case but has

12

otherwise not participated in the lawsuit.

77.    RCDolner, LLC ("Dolner"), upon information and belief, is a domestic limited liability company with its principal place of business at 17 East 16th Street, New York, New York 10003.  Upon information and belief, Dolner filed a Notice of Mechanic's Lien on February 3, 2005 in the amount of $8,004.50 against the Premises.

78.    Dolner filed a lawsuit in this Court for foreclosure of its mechanic's lien.  The lawsuit is styled <u>RCDolner, LLC v. Jani Real Estate, et al., Index No. 107775/2005</u>.  Upon information and belief, Dolner has not prosecuted the lawsuit because it has an ongoing relationship with Perelman, and is performing other work for Perelman.

79.    John or Jane Does 1-10 ( the "Doe defendants") are as yet unidentified individuals who, upon information and belief, have a beneficial ownership interest in the Premises or some other interest in the Premises.

80.    XYZ Entities 1-10 (the "XYZ entities") are as yet unidentified entities that, upon information and belief, have a beneficial ownership interest in the Premises or some other interest in the Premises, or are additional "sham" entities formed to further insulate Perelman, Gentile, Moriarty, Thompson, McArdle and/or Coburn from liability or to secrete their assets.

## Jurisdiction and Venue

81.    This court has jurisdiction pursuant to C.P.L.R. sections 301 and 302 and N.Y. Lien Law section 41.

82.    Venue is proper pursuant to C.P.L.R. section 507, and the plaintiffs' and the Premises' location in New York County, and the fact that a Notice of Mechanic's Lien was filed against the Premises by plaintiffs on February 26, 2004 with the Commissioner of Deeds of New York County.

13

### Statement of Additional Facts

83.    In late 2001 and early 2002, Kaufman was contacted by McArdle to design a 13-story residential and retail condominium building on the Premises.

84.    McArdle represented to Kaufman that he was the developer of the Premises and a partner with the owner, which was, at that time, JMA. McArdle hired Kaufman and his company, GKA, to perform the architectural work associated with the design of a 13- story building, including preparing zoning and programmatic analysis, preparing design schematic plans, preparing design development drawings, including plans, sections and elevations, filing and obtaining Building Department approvals, preparing construction documents for bid, providing structural, mechanical, plumbing and electrical engineering by consultants, preparing the architect's report and unit plans for a condominium offering plan and tax lot filing with the city surveyor, providing standard construction administration services and obtaining a final Certificate of Occupancy for the project.

85.    McArdle expressed reluctance to sign a formal contract with GKA, using the excuse that he had had some "legal problems." McArdle urged GKA to begin work without a contract in place, representing that GKA would be paid for its work. GKA did so, but Kaufman was uncomfortable working without a contract, and continued to ask McArdle for a written agreement. McArdle agreed finally that his wife, Coburn, would execute a contract with GKA through the entity Arrow, even though McArdle was the person giving directions to Kaufman. McArdle represented to Kaufman that both he and Coburn were principals of Arrow and that Arrow had the authority to contract for work on the Premises.

### The July 9, 2002 Agreement

86.    On August 13, 2002, Kaufman and Coburn signed an agreement dated as of July

14

9, 2002 (the "July 9, 2002 Agreement"). The July 9, 2002 Agreement provided that GKA would

receive $125,000 for architectural services on a specified payment schedule, plus reimbursable

expenses. Certain additional specified categories of services were agreed to be compensated

additionally at specified hourly rates. The July 9, 2002 Agreement also provided that if the

owner terminated GKA's services or changed the development plan for the building, the owner

was required to pay for all work completed through the date of notification of termination.

87.    Following execution of the July 9, 2002 Agreement, GKA and Kaufman

continued to perform the work called for by that agreement.  In the course of GKA's and

Kaufman's interactions with McArdle and Coburn, McArdle and Coburn used Arrow and

Sedona Development interchangeably.  At times, McArdle directed Kaufman to send invoices to

him at Sedona Development, while at other times, McArdle directed Kaufman to send invoices

to him or to Coburn at Arrow.   Kaufman and GKA sent invoices concerning the work

performed pursuant to the July 9, 2002 Agreement to either Sedona Development or to Arrow as

directed by McArdle.

### The Invoices

88.    GKA issued and sent to McArdle and/or Coburn the following invoices for its

and Kaufman's work concerning the Premises: invoice number 1843 dated November 29, 2001

for $6,200.00; invoice number 1875 dated February 14, 2002 for $2,000.00; invoice number

1905 dated May 3, 2002 for $1,596.00; invoice number 1967 dated July 9, 2002 for $12,500.00;

invoice number 2030 dated September 3, 2002 for $50,000.00; invoice number 2041 dated

September 5, 2002 for $1,382.07; invoice number 2104 dated October 29, 2002 for $2,252.53;

invoice number 2148 dated December 2, 2002 for $20,000.00; invoice number 2206 dated

January 8, 2003 for $8,004.17; invoice number 2227 dated January 16, 2003 for $17,500.00 and

15

showing a balance due of $37,500.00; invoice number 2295 dated February 13, 2003 for

$2,502.10; invoice number 2355 dated March 24, 2003 for $378.59; invoice number 2368 dated

April 7, 2003 for $19,285.00 and showing a balance due of $56,785.00; invoice number 2398

dated April 8, 2003 for $2,223.34; invoice number 2423 dated May 20, 2003 for $1,915.10;

invoice number 2481 dated June 13, 2003 for $550.74; invoice number 2513 dated July 15, 2003

for $1,083.07; invoice number 2690 dated October 7, 2003 for $6.50; and invoice number 2691

dated November 17, 2003 for $706.98.

89.     GKA invoiced a total of $152,086.19 for architectural work that had been

completed, and related expenses.

90.     GKA received the following payments on the invoices: on December 24, 2001,

$6,200.00; on March 1, 2002, $2,000.00; on July 8, 2002, $2,000.00, $1,596.00, and $12,500.00

(three payments); on September 18, 2002, $25,000.00; on September 19, 2002, $1,382.07; on

October 28, 2002, $25,000.00; and on January 13, 2003, $2,252.53; for a total of $77,930.60,

leaving an outstanding balance of $74,155.59.

91.     Kaufman continued to issue invoices for ongoing work (after the last payment

was received in January 2003), and asked McArdle on several occasions to bring his account

current.  On several occasions, Kaufman sent or gave McArdle a statement of his account which

showed the balance due.

92.     Neither McArdle nor Coburn ever contested the amounts invoiced.

93.     Upon information and belief, in or about the summer of 2003, McArdle and

Coburn, together with JMA, began negotiations with Perelman and Gentile to form a venture

whereby Perelman and Gentile would arrange to finance the development of the Premises in

accordance with the plans prepared by GKA.

16

**The August 2003 Agreement**

94.     In or around August of 2003, McArdle told Kaufman that he was having financial problems, that he could not finance the construction costs necessary to develop the premises, and that he was bringing in new partners, including Perelman, to rectify the situation.

95.     GKA's analysis and the work GKA had accomplished in moving forward the development of the Premises were factors in enabling McArdle to interest new investors in the Premises, and were factors in Gallery's ability to obtain bank financing for the project.

96.     Upon information and belief, in early August 2003, Perelman, Gentile, McArdle, Coburn, JMA's president Arezzo, Thompson and Moriarty, either individually or through entities, entered into an agreement to jointly develop and market the Premises (the "August 2003 Agreement").

97.     Upon information and belief, the August 2003 Agreement required the parties to use GKA's plans for the Premises.

98.     Upon information and belief, pursuant to the August 2003 Agreement, JMA contributed and deeded to Gallery its 100% ownership interest in the Premises, valued at $2.2 million.

99.     Upon information and belief, pursuant to the August 2003 Agreement, Coburn and McArdle, through Sedona, secretly and underhandedly agreed to "contribute" GKA's work product concerning the Premises to Gallery, even though Sedona did not have GKA's permission to do so, Sedona did not own GKA's work product, and GKA had not been paid in full.

100.     GKA was not informed that Arrow was "contributing" GKA's work product to Sedona, or that Sedona was "contributing" GKA's work product to another entity, Gallery.

17

Supreme Court Records OnLine Library -  page 19 of 48

101.    Upon information and belief, pursuant to the August 2003 Agreement,
distributions, profits and losses were to be distributed among the partners as follows:  25% to
JMA, 25% to Sedona, and 50% to GDG.

102.    At about the time that the August 2003 Agreement came into existence, Perelman
started to become more involved with GKA's office than McArdle.  Kaufman reasonably
concluded that McArdle had ceded control of the development project to Perelman in return for
financial backing Perelman had provided or arranged.

103.    Beginning in the summer of 2003, Perelman consulted with Kaufman and GKA
on various matters concerning the Premises.

104.    Perelman participated in meetings and discussions with GKA about potential
alternatives to the structural and mechanical systems called for by the July 9, 2002 Agreement,
including the heating and air conditioning systems.

105.    Perelman requested information concerning the plans, and he contacted GKA's
staff on several occasions by telephone, fax and email with various requests pursuant to the July
9, 2002 Agreement, all of which were complied with by Kaufman and/or GKA.

106.    Kaufman was reasonably led to believe by Perelman and McArdle that they were
partners, and that plaintiffs would be paid by the partners for their past and continuing work on
the Premises.

**The Proposal For Additional Work**

107.    When Perelman became involved with the development of the Premises, he took
over responsibility for the payments to GKA of amounts both past due and going forward.  In
fact, the August 2003 Agreement provides, in Section 11.12, that Gallery agreed to resolve
Kaufman's outstanding fees to date.

108.    In or about October 2003, after Perelman had been actively involved in the

18

project for several months, Perelman asked Kaufman to prepare a proposal for additional services not covered under the July 9, 2002 Agreement.

109.    Kaufman reasonably understood that Perelman was happy with and wanted to continue utilizing GKA's services.

110.    Kaufman reasonably expected that Perelman would pay him the outstanding balance owed under the July 9, 2002 Agreement along with payments for the additional services requested by Perelman.

111.    GKA submitted to Perelman a proposal dated October 22, 2003 for additional services. (The document contains a typographical error in the date, reading October 22, 2002.) The compensation GKA sought under the October 22, 2003 proposal amounted to $13,500 plus reimbursable expenses.

112.    Perelman did not return a signed copy of the October 2003 proposal, nor did he express disagreement with any aspect of it.

113.    In late December 2003, Perelman, after reaping the benefits of Kaufman's and GKA's services for months, and after unsuccessfully pressuring Kaufman to provide additional services without returning the signed October 2003 proposal or making any other promise of payment, finally told Kaufman that he was not agreeing to the October 2003 proposal, and that he wished to terminate the relationship.

### The Termination Agreement

114.    For several weeks, Perelman and Kaufman negotiated a termination agreement dated January 14, 2004 (the "Termination Agreement"), which was executed by both Perelman and Kaufman on or about February 7, 2004.

115.    The Termination Agreement, by its terms, was to supersede the July 9, 2002 Agreement provided certain conditions were met.

19

116.    In substance, Perelman wanted GKA's files and work product concerning the Premises, and Kaufman was willing to turn them over, provided he was paid in full for his work performed to date on the Premises, and provided he was given a full release, among other limitations to the use of GKA's work product set forth in the Termination Agreement.

117.    In the Termination Agreement, Kaufman agreed to turn over GKA's work product concerning the Premises in hard copy and in Autocad format together with GKA's and its subconsultants' applications with the Building Department (and supporting documentation) concerning the Premises.  In return, Perelman, on behalf of Gallery, among other things, agreed to pay GKA $62,078 simultaneously with delivery of GKA's files, and agreed to cause an additional payment of  $12,078 to be paid subsequently by Arrow, Sedona Development or Coburn pursuant to a side agreement.

118.    In the Termination Agreement, Perelman expressly agreed that he would cause Sedona Development, Arrow and Coburn to sign the side agreement, and Gallery fully released Kaufman and GKA from any liability.  Kaufman was not informed that Arrow and Sedona Development would no longer exist at the time that the payment under the side agreement was due.

119.    The total amount Gallery agreed would be paid to GKA, $74,156, equaled the (rounded off) unpaid balance owed GKA pursuant to the July 9, 2002 Agreement, and did not include any payments for work contemplated under the October 2003 proposal.

120.    GKA fully complied with the July 9, 2002 Agreement.

121.    GKA fully complied with the Termination Agreement.

122.    GKA did not receive full payment under the July 9, 2002 Agreement.

123.    GKA did not receive any payment under the Termination Agreement.

20

## Perelman Stops Payment on a Bank Check to GKA

124.   On or about January 14, 2004, while the Termination Agreement was being negotiated, Perelman delivered a bank check payable to GKA in the amount of $62,078 to an attorney for Kaufman, to be held until the Termination Agreement was finalized and executed and GKA's files were exchanged for the check.

125.   The Termination Agreement expressly provided that Kaufman would receive payment simultaneously with the turnover of GKA's files to Gallery.

126.   Although the side agreement had not been signed by Coburn, or by anyone else on behalf of Arrow or Sedona Development, Perelman pressured Kaufman to release his files concerning the Premises even before Perelman returned to him the executed side agreement, representing that he was "not trying to pull a fast one" and that Coburn would sign the agreement as soon as she returned from her ski vacation.

127.   As soon as Kaufman agreed to do so and communicated this fact to Perelman by telephone, or very soon thereafter, Perelman placed a stop order on the check previously delivered to an attorney for Kaufman.

128.   Perelman did not obtain Coburn's signature on the side agreement as promised.

129.   Perelman received and signed for GKA's files on February 11, 2005, and did not refuse them or return them, despite the fact that he had stopped payment on the bank check that he had sent to Kaufman's attorney and which would constitute Gallery's payment to GKA in return.

130.   Several days later, Kaufman received a letter from Citibank dated February 12, 2004, informing him that a stop payment order had been placed on the check. Kaufman immediately called Citibank as well as the bank that had issued the check, M & T Bank, to inquire how a bank check, guaranteed by bank funds, could be stopped.  He was informed by a

21

bank representative that the only way such a check could be stopped was upon a representation by the drawer that the check had been lost or stolen.

131.     It is thus apparent that Perelman or an agent of Perelman knowingly and falsely represented to Citibank and/or to M & T Bank, from which the check had been drawn, that the bank check payable to GKA had been lost or stolen.

132.     Kaufman demanded payment from Perelman, who never responded.

133.     Kaufman demanded payment from McArdle, who responded that he was unable to pay but that he would speak to Perelman about getting payment for GKA.

### The Mechanic's Liens and Justice Shafer's Decision and Order

134.     On February 26, 2004, GKA filed two Notices of Mechanic's Liens against the Premises, each in the amount of $74,155.59, one against JMA and one against Gallery, in order to protect its interests.  At the time GKA filed the liens, Gallery's deed had not yet been recorded. A copy of the Mechanic's Liens Notices filed by GKA are attached hereto as Exhibit 2.

135.     Gallery commenced a special proceeding entitled In the Matter of the Petition of The Gallery at Chelsea LLC v. Gene Kaufman Architect, P.C. and Gene Kaufman, Index No. 103197/04.  Gallery moved to discharge GKA's mechanic's lien on the purported ground that it was facially invalid.

136.     Gallery's petition was denied in a decision and order dated July 2, 2004 and entered on July 13, 2004, by the Honorable Marilyn Shafer, J.S.C. (the "Decision").

137.     In that special proceeding, GKA and Kaufman moved by order to show cause for injunctive relief barring Gallery from using GKA's work product.

138.     The Decision granted GKA and Kaufman the injunctive relief sought, and made the following findings of fact, among others:

22

Supreme Court Records OnLine Library -  page 24 of 48

      a.  Gallery did not contest that, without payment, the Gallery is not entitled to use any of [GKA's] work product in completing the construction at the premises.

      b.  Gallery represented that GKA had been replaced with a new architect, that it had re-certified all professionals previously associated with GKA's building application and obtained new building permits, and that it did not use or rely on GKA's work.

139.    The Decision, a copy of which is annexed hereto as Exhibit 3, stated, in part:

> Here, respondents claim that without payment, the Gallery is not
> entitled to use any of its work product in completing the
> construction at the premises. It appears that the Gallery does not
> contest the respondents on this issue, claiming that GKA has been
> replaced with a new architect, that it has re-certified all
> professionals previously associated with respondents building
> application and obtained new building permits, and that it does
> not use or rely on respondents work. This Court finds that the
> equities favor GKA's position on this issue and that GKA has
> sufficiently demonstrated its entitlement to injunctive relief.

140.    Justice Shafer's findings of fact are conclusively binding for purposes of res judicata and collateral estoppel on Gallery, as well as those acting in privity with or in concert with Gallery, which, upon information and belief, includes Perelman, Gentile, Moriarty, Thompson, McArdle, Coburn, GDG, CJA, JN, JANI, JANI II, Coleson, Arrow, Sedona Development, Sedona, SDG, and JMA.

141.    Justice Shafer enjoined Gallery and its agents, employees, officers, attorneys, and representatives, including but not limited to its architects, engineers and consultants, from any and all use of the work product and files of GKA.

142.    Despite the injunction, upon information and belief, defendants Perelman, Gentile, Moriarty, Thompson, McArdle, Coburn, GDG, CJA, JN, JANI, JANI II, Coleson, Arrow, Sedona Development, Sedona, SDG, and/or JMA, their agents, employees, officers,

23

attorneys, and representatives, including but not limited to its architects, engineers and/or

consultants, have continued to use GKA's work product, in violation of Justice Shafer's order,

and without permission from or payment in full to GKA.

143.    In particular, Gallery, and/or its affiliates and/or agents, has not filed or did not

timely file new applications under new professionals with the New York City Department of

Buildings for a fire protection plan or for a builders' pavement plan. Instead, Gallery, and/or its

affiliates and/or agents, improperly used Kaufman's approved applications and permits for these

aspects of the job, in violation of Justice Shafer's order.

144.    Moreover, certain portions of Gallery's new applications have reused and relied

upon documents and reports prepared for and/or obtained by Kaufman and/or GKA, also in

violation of Justice Shafer's order.

145.    Perelman even admitted in writing to Kaufman that Gallery's new architect's

permit "will be based on the approval of your [GKA's] submission."

146.    Nonetheless, Gallery's authorized representative disingenuously assured Justice

Shafer that Gallery and/or its affiliates and/or agents, was not using and would not use any of

GKA's work product.

147.    Upon information and belief, Gallery's representative knew, at the time that he

made the representations specified in paragraph 146 to Justice Shafer, that Gallery, through its

managing member, had entered into an agreement with JMA and Sedona that required the use of

GKA's plans.

148.    Upon information and belief, Gallery's new architect's plans for the

Premises are substantially similar to GKA's plans in material respects.

149.    Upon information and belief, Gallery is using or used at least one subcontractor

who originally worked under GKA's supervision, who is using substantially similar drawings to

24

those prepared under the direction and supervision of GKA.

150.    Plaintiffs bring this action to foreclose their lien and obtain a judgment awarding

them $74,155.59, the amount specified in the mechanic's lien as the amount unpaid for work and

services completed concerning the Premises, plus interest, costs and disbursements and

reasonable attorney's fees.

151.    Plaintiffs also seek damages from defendants, in the alternative, for unjust

enrichment, quantum meruit, account stated, breach of contract, and diversion of trust funds

under the Lien Law.

152.    Additionally, plaintiffs seek damages and punitive damages for fraudulent

inducement, by which plaintiffs were deceived into giving McArdle, Coburn, Perelman, Gentile,

Moriarty, Thompson, JMA, Gallery and their related entities nearly two years' worth of work

product grounded on false representations and a collusive swindle.

153.    Other than this action, no action has been brought by plaintiffs to recover the

Mechanic's Lien debt sought herein.

## As and For a First Cause of Action

Enforcement of the Mechanic's Lien by Foreclosure (Against All Defendants)
and For Money Judgment and Deficiency Judgment (Against Defendants Gallery, GDG, CJA,
JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Thompson, Arrow, Sedona
Development, Sedona, SDG, Quail Ridge, Coburn, McArdle, JMA,
John or Jane Does 1-10, and XYZ Entities 1-10)

154.    Plaintiffs repeat and reallege each and every allegation set forth above in

paragraphs 1 through 153 as if completely restated herein.

155.    JMA was the record owner of the property on November 30, 2001, which was the

date on which plaintiffs first performed architectural and related work for defendants concerning

the Premises.

25

156.    Upon information and belief, JMA still has an ownership interest in the Premises through the August 2003 Agreement.

157.    Gallery became the record owner of the property on December 11, 2003, which was before GKA's termination as architect for the Premises, and before the last item of material was furnished by plaintiffs to defendants concerning the Premises, which was February 10, 2004.

158.    Upon information and belief, all named defendants had a beneficial ownership interest or some other interest in the Premises at the time that plaintiffs performed services and/or furnished materials concerning the Premises, or are successor entities to those that held an interest in the Premises at the relevant time.

159.    GKA performed architectural services and provided materials in connection with GKA's services concerning the Premises at the request of and/or with the consent of the owner.

160.    Beneficial owners who have received and accepted the benefits of services provided are liable for the payment of such services, even in the absence of an agreement to pay for such services.

161.    GKA, through Kaufman, duly filed two Notices of Mechanics' Liens against the Premises, dated February 26, 2004, in conformity with the requirements of N.Y. Lien Law, one naming JMA and one naming Gallery as owner of the Premises.

162.    Owners Gallery and/or JMA are liable to plaintiffs for the amount of the lien, and plaintiffs are entitled to enforce the lien herein and are entitled to judgment against Gallery and/or JMA, in the amount of $74,155.59 plus interest, disbursements and costs, pursuant to RPAPL § 1354, Lien Law section 53 and CPLR § 8302, and reasonable attorney's fees for bringing this action.

163.    Plaintiffs are also entitled to a deficiency judgment against defendants GDG,

26

CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Thompson, Arrow, Sedona

Development, Sedona, SDG, Coburn, McArdle, and XYZ Entities 1-10, jointly and severally, in

the event that foreclosure and sale of the Premises does not result in assets sufficient to satisfy

the debt claimed in the mechanic's liens dated February 26,2004, plus interest, disbursements

and costs, pursuant to RPAPL § 1354, Lien Law § 53, and CPLR § 8302, and reasonable

attorney's fees for bringing this action.

164.    In the event that, for any reason, foreclosure and sale of the Premises does not

take place, plaintiffs are entitled to a money judgment against defendants Gallery, GDG, CJA,

JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Thompson, Arrow, Sedona

Development, Sedona, SDG, Coburn, McArdle, JMA, and XYZ Entities 1-10, jointly and

severally, in the amount of $74,155.59 plus interest, disbursements and costs, pursuant to

RPAPL § 1354, Lien Law § 53, and CPLR § 8302, as well as reasonable attorney's fees for

bringing this action.

## As and For a Second Cause of Action

Fraud in the Inducement

(Against Defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile,
Moriarty, Thompson, and XZY Entities 1-10)

165.    Plaintiffs repeat and reallege each and every allegation set forth above in

paragraphs 1 through 164 as if completely restated herein.

166.    McArdle, acting on behalf of and in concert with all the partners and beneficial

owners of the Premises including himself, represented to Kaufman and GKA that his new

partners, including Stanley Perelman, were brought in to provide financing for the development

of the Premises, including payments past due to GKA.

27

167.    McArdle, acting on behalf of and in concert with all the partners and beneficial owners of the Premises including himself, intentionally led Kaufman to believe that Perelman was his partner for the purposes of GKA's engagement concerning the Premises.

168.    Perelman and Thompson, acting on behalf of and in concert with all the partners and beneficial owners of the Premises including themselves, individually and collectively defrauded Kaufman into providing all of GKA's work product, representing nearly two years' worth of work in developing the design, plans, related drawings and documents, among other services, without Kaufman receiving payment in full.

169.    Perelman, acting on behalf of and in concert with all the partners and beneficial owners of the Premises including himself, knowingly and intentionally misled Kaufman into believing that GKA finally would receive payment for the work and services GKA performed concerning the Premises, in exchange for GKA's release of its substantial work product files to Perelman.

170.    Perelman, acting on behalf of and in concert with all the partners and beneficial owners of the Premises including himself, knowingly and intentionally misled Kaufman so that he and his confederates, the defendants named in this cause of action, could obtain GKA's work product without having paid in full for it.

171.    Perelman, acting on behalf of and in concert with all the partners and beneficial owners of the Premises including himself, delivered a bank check to an attorney for Kaufman which, on its face, appeared to be as good as cash, with the intention of stopping payment on the check as soon as Kaufman and GKA had been willfully and wantonly deceived into releasing their valuable work product to him and his confederates, the defendants named in this cause of action.

172.    Perelman, acting on behalf of and in concert with all the partners and beneficial

28

owners of the Premises including himself, wantonly and willfully stopped payment on the bank

check previously delivered to Kaufman's lawyer, on false pretenses, after Kaufman had

personally assured him that he had already arranged for delivery of the files to Perelman.

173.    Perelman intended to defraud GKA and to steal its work product.  Perelman,

acting on behalf of and in concert with all the partners and beneficial owners of the Premises

including himself, signed for and accepted delivery of GKA's files and did not reject them or

refuse to receive them, knowing that he had stopped payment on the bank check to GKA.

174.    Perelman, acting on behalf of and in concert with all the partners and beneficial

owners of the Premises including himself, did not obtain Coburn's signature on the side

agreement included in the Termination Agreement, despite his representations to Kaufman that

he would do so after Coburn returned from vacation.

175.    Despite Perelman's intention not to pay GKA a penny, Perelman, acting on behalf

of and in concert with all the partners and beneficial owners of the Premises including himself,

deceitfully and maliciously told Kaufman "OK" when Kaufman told him over the telephone that

the files were being delivered to Perelman.

176.    GKA's files were never returned to Kaufman or GKA, but were retained and used

by Perelman and his confederates, the defendants named in this cause of action.

177.    Perelman, acting on behalf of and in concert with all the partners and beneficial

owners of the Premises including himself, stopped payment on the bank check issued to GKA

through false pretenses, submitting a perjurious affidavit to M & T Bank.

178.    GKA and Kaufman reasonably relied on Perelman's representations in negotiating

the Termination Agreement that GKA would receive payment simultaneously with the turnover

of GKA's work product.

179.    GKA and Kaufman reasonably relied upon McArdle's and Perelman's

29

representations, conduct and actions in continuing to expend time and resources and perform work concerning the Premises at the request of Perelman beginning in the summer of 2003.

180.    GKA and Kaufman reasonably relied on McArdle' s and Perelman's representations, conduct and actions in continuing to provide consultation and work product concerning the Premises during the period August 2003 through February 2004.

181.    GKA and Kaufman reasonably relied upon McArdle's and Perelman's representations, conduct and actions in refraining from taking legal action against Arrow before McArdle and Coburn caused Arrow to be dissolved.

182.    Plaintiffs have been harmed by defendants' misrepresentations as set forth above, on which they reasonably relied to their detriment.

183.    Defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Thompson, and/or XYZ Entities 1 -10 acted wantonly, willfully and maliciously toward Plaintiffs.

184.    As a result, Plaintiffs are entitled to an award of compensatory and punitive damages against defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Thompson, and/or XYZ Entities 1-10, jointly and severally, in amounts to be determined at trial, but no less than triple damages of $222,466.77, plus interest, costs, disbursements and reasonable attorney's fees.

### As and For a Third Cause of Action

Breach of the Termination Agreement

(Against Defendants Gallery, Perelman, Gentile, Moriarty, Thompson, GDG, CJA, JN, JANI, JANI II, Coleson and XYZ Entities 1-1-10)

185.    Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs 1 through 184 as if completely restated herein.

30

186.    Both Kaufman and Perelman executed the Termination Agreement.

187.    GKA fully performed its obligations under the Termination Agreement.

188.    Gallery failed to perform under the Termination Agreement in various ways including, but not limited to, stopping payment on its check for $62,078, which it promised to pay to GKA simultaneously with the turnover of GKA's files.

189.    Gallery failed to perform under the Termination Agreement by failing to cause Arrow, Sedona Development, Sedona, SDG, or Coburn to sign the side Agreement.

190.    Gallery failed to perform under the Termination Agreement by failing to cause Arrow, Sedona Development, Sedona, SDG, or Coburn  to pay to GKA $12,078.

191.    Gallery failed to perform under the Termination Agreement by failing to replace all of Kaufman's applications and permits on file with the New York City Department of Buildings with those of superseding professionals during the time frame specified, and by using GKA's work product without obtaining license to do so.

192.    Plaintiffs have been harmed by Gallery's failure to perform under the Termination Agreement.

193.    Upon information and belief, Perelman, Gentile, Moriarty and Thompson are the majority beneficial owners of Gallery and the sole beneficial owners of GDG, the managing member of Gallery, completely dominate and control Gallery and GDG for their personal benefit to the detriment of bona fide creditors, and accordingly the corporate veil of Gallery and GDG should be pierced to hold Perelman, Gentile, Moriarty and Thompson responsible for the debts of Gallery, including the debt to GKA.

194.    Upon information and belief, Perelman alone, or in concert with Gentile, Moriarty and/or Thompson, has formed Coleson, JANI, JANI II, and/or XYZ Entities 1-10 that are, at least in part, successor entities to Gallery, GDG, JN and/or CJA, and to which they have

31

transferred the liabilities and obligations, and/or assets, of the predecessor entities.

195.    As a result, plaintiffs are entitled to an award of money damages against
defendants Gallery, Perelman, Gentile, Moriarty, Thompson, GDG, CJA, JN, JANI, JANI II,
Coleson and XYZ Entities 1-10, jointly and severally, in an amount to be determined at trial, but
believed to be no less than $74,155.59, plus pre- and post- judgment interest as provided by the
CPLR, costs and disbursements and reasonable attorney's fees.

### As and For a Fourth Cause of Action

Breach of the July 9, 2002 Agreement

(Against Arrow, Coburn, McArdle, Sedona Development, Sedona, SDG,
Quail Ridge and XYZ Entities 1-10)

196.    Plaintiffs repeat and reallege each and every allegation set forth above in
paragraphs 1 through 195 as if completely restated herein.

197.    The July 9, 2002 Agreement was executed by Coburn, individually and/or as
Managing Member of Arrow, and by Kaufman, as principal of GKA.

198.    GKA fully performed under the July 9, 2002 Agreement.

199.    Arrow breached the July 9, 2002 Agreement by failing to pay $74,155.59 owed to
GKA.

200.    The July 9, 2002 Agreement provided that, in the event of GKA's termination, the
owner shall pay for all work completed.

201.    Arrow breached the July 9, 2002 Agreement by failing to require the owner to
pay for all work completed.

202.    GKA was never paid in full, and is still owed $74,155.59 to date, plus interest.

203.    Upon information and belief, Coburn and/or McArdle caused Arrow and Sedona
Development to be dissolved shortly after plaintiffs filed the Notice of Mechanic's Liens against

32

the Premises.

204.    Upon information and belief, Coburn and/or McArdle have caused Sedona, SDG, Quail Ridge and Entities XYZ 1-10 to be formed, which are successor entities to the assets, liabilities and obligations of Arrow and/or Sedona Development.

205.    Upon information and belief, Coburn and McArdle were the sole members of Sedona Development and the majority members of Arrow, completely dominated and controlled Sedona Development and Arrow, were alter egos of Sedona Development and Arrow, improperly caused Sedona Development and Arrow to be dissolved without properly winding up Arrow's business affairs and paying its debts, namely the debt owed to GKA in the amount of $74,155.59, and, accordingly the corporate veil of Arrow and Sedona Development should be pierced to hold Coburn and McArdle responsible for Arrow's debt to GKA.

206.    As a result of McArdle's, Coburn's and Arrow's breach, plaintiffs have been harmed and are entitled to an award of money damages against Arrow, Sedona Development, Coburn, McArdle, Sedona, SDG and XYZ Entities 1-10, jointly and severally, in an amount to be determined at trial, but no less than $74,155.59 plus pre- and post-judgment interest as provided by the CPLR, costs and disbursements and reasonable attorney's fees.

### As and For a Fifth Cause of Action

Unjust Enrichment (Against Defendants Gallery, GDG, CJA, JN, Perelman, Gentile, Moriarty, Thompson)

207.    Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs 1 through 206 as if completely restated herein.

208.    Defendants Gallery, GDG, CJA, JN, Perelman, Gentile, Moriarty and Thompson, as parties with a beneficial interest in the Premises, have been enriched with the services and work product provided by Kaufman and GKA concerning the Premises.

33

Supreme Court Records OnLine Library -  page 35 of 48

209.    Defendants (as named immediately above) have been enriched from GKA's work by using GKA's expertise, professional credentials and license, staff, work product, files, applications, and subcontractors to further their development of the Premises, in which they each hold a beneficial interest.

210.    Defendants have been enriched by taking physical possession and making use of GKA's work files concerning the Premises.

211.    Defendants have been enriched by stopping payment on a bank check that had been promised to Kaufman and GKA, and delivered to a lawyer for Kaufman.

212.    Plaintiffs have not been paid in full for said work, and are owed $74,155.59, plus interest.

213.    Defendants' retention of these benefits is unjust.

214.    As a result of the foregoing, all defendants named herein have been unjustly enriched at plaintiffs' expense, and plaintiffs are entitled to an award of money damages against all defendants named herein, jointly and severally, in an amount to be determined at trial, but no less than $74,155.59 plus interest, costs and disbursements, and reasonable attorney's fees for bringing this action.

### As and For a Sixth Cause of Action

Quantum Meruit

(Against Defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Thompson and XYZ Entities 1-10)

215.    Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs 1 through 214 as if completely restated herein.

216.    As detailed above, Plaintiffs performed architectural services with respect to the Premises.

34

217.    Defendants have received and retained the benefits of plaintiffs' services and work product.

218.    Equity therefore demands that defendants compensate plaintiffs in a just manner for the services and work product provided.

219.    Plaintiffs are entitled to just compensation from defendants based upon reasonable and prevailing rates.

220.    As a result, plaintiffs are entitled to an award of money damages against defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Gentile and XYZ Entities 1-10, jointly and severally, in an amount to be determined at trial, but no less than $74,155.59, plus interest, costs and disbursements, and reasonable attorney's fees for bringing this action.

## As and For a Seventh Cause of Action

Account Stated

(Against Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Arrow, Sedona, Sedona Development, SDG, Quail Ridge, JMA, McArdle, Coburn, Perelman, Gentile, Moriarty, Thompson and XYZ Entities 1 -10)

221.    Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs 1 through 220 as if completely restated herein.

222.    Plaintiffs have presented to the defendants and/or their agents by mail and in person the invoices and an accounting of the amount owed for work performed, as specified in paragraph 86.

223.    Defendants personally and through their agents received and retained the invoices without protest of the validity or accuracy of their contents.

224.    Defendants have never contested that $74,155.59 remains outstanding and unpaid

35

to GKA and Kaufman.

225.    As a result, plaintiffs are entitled to a money judgment against defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Arrow, Sedona, Sedona Development, SDG, Quail Ridge, JMA, McArdle, Coburn, Perelman, Gentile, Moriarty, Thompson and XYZ Entities 1-10, jointly and severally, in the amount of $74,155.59 plus interest, costs and disbursements, and reasonable attorney's fees for bringing this action.

### As and For an Eighth Cause of Action

Declaratory Judgment of Alter Ego Liability and Money Judgment against Perelman, Gentile, Moriarty and Thompson for liability of Gallery, GDG, CJA and JN

226.    Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs 1 through 225 as if completely restated herein.

227.    Upon information and belief, Perelman, Gentile, Moriarty and Thompson completely dominate and control Gallery and its related entities, including GDG, CJA, JN, JANI, JANI II, Coleson and XYZ Entities 1-10.

228.    Upon information and belief, Perelman, Gentile, Moriarty and Thompson have failed to properly capitalize Gallery, GDG, CJA, JN and the other entities they control, and/or have expended funds from these entities on personal expenses and/or expenses unrelated to Gallery's project to develop the Premises.

229.    Perelman, Gentile, Moriarty and Thompson have purposely, willfully, wantonly and fraudulently misused the "shell" limited liability companies they control to perpetrate a fraud upon plaintiffs as more fully described in the facts enumerated in this complaint and in paragraphs 3-36, 94-152, and 166-184.

230.    Upon information and belief, Gallery, GDG, CJA, JN, JANI, JANI II, Coleson and/or XYZ Entities 1-10 have no operations, no office, no employees, and no bona fide

36

operations, are completely dominated and controlled by Perelman, Gentile, Moriarty and/or Thompson, and maintain no corporate formalities.

231.    Upon information and belief, Gallery, GDG, CJA, JN, JANI, JANI II, Coleson and XYZ Entities 1-10 are sham entities which exist only on paper and are bogus entities behind which Perelman, Gentile, Moriarty and Thompson operate.

232.    Under these circumstances, Perelman, Gentile, Moriarty and Thompson should be held personally liable for any debt, liability or judgment rendered against Gallery and/or its related entities GDG, CJA JN, JANI, JANI II, Coleson and/or XYZ Entities 1 -10.

233.    As a result, plaintiffs are entitled to a declaratory judgment that Gallery, GDG, JN, CJA and/or JANI, JANI II, Coleson, and XYZ Entities 1 -10, are alter egos for Perelman, Gentile, Moriarty and/or Thompson, and a money judgment rendered for plaintiffs against these defendants individually and personally, jointly, and severally, in the amount of any judgment rendered herein against Gallery and/or its related entities GDG, CJA JN, JANI, JANI II, Coleson and/or XYZ Entities 1 -10, plus interest, costs and disbursements, and reasonable attorney's fees for bringing this action.

### As and For a Ninth Cause of Action

Declaratory Judgment of Alter Ego Liability and Money Judgment against Coburn and McArdle

234.    Plaintiffs repeat and reallege each and every allegation set forth above in paragraphs 1 through 233 as if completely restated herein.

235.    Upon information and belief, Coburn and McArdle completely dominated and controlled Arrow and Sedona Development.

236.    Upon information and belief, Coburn and McArdle caused Arrow and Sedona Development to be dissolved after the mechanic's liens were filed on the Premises, in an effort to

37

evade liability for its debt to plaintiffs.

237.    Upon information and belief, Coburn or McArdle improperly transferred Arrow's interest in the Premises and/or assets to Sedona, SDG, Quail Ridge or XYZ entity 1-10 to avoid subjecting that interest/asset to execution by plaintiffs.

238.    Upon information and belief, Coburn, alone or together with McArdle completely dominates and controls Sedona, SDG and Quail Ridge.

239.    Upon information and belief, Coburn and McArdle failed to properly capitalize Arrow, Sedona Development, Sedona, SDG and Quail Ridge.

240.    Upon information and belief, Arrow, Sedona Development, Sedona, SDG, Quail Ridge and/or XYZ Entities 1-10 have no bona fide operations, no office, and no employees other than Coburn and/or McArdle, and maintain no corporate formalities.

241.    Upon information and belief, Arrow, Sedona Development, Sedona, SDG, Quail Ridge and/or XYZ Entities 1-10 are sham entities which exist only on paper and are bogus entities behind which Coburn and McArdle operate.

242.    Coburn and McArdle have purposely, willfully, wantonly and fraudulently misused the "shell" limited liability companies they control to perpetrate a fraud upon plaintiffs as more fully described in the facts enumerated in this complaint and in paragraphs 37-63, and 83-133.

243.    Under these circumstances, Coburn and McArdle should be held personally liable for any debt, liability or judgment rendered against Arrow and/or its related entities Sedona Development, Sedona, SDG, Quail Ridge, and/or XYZ Entities 1-10.

244.    As a result, plaintiffs are entitled to a declaratory judgment that Arrow, Sedona Development, Sedona, SDG, Quail Ridge, and XYZ Entities 1-10, are alter egos for Coburn and McArdle, and to a money judgment against Coburn and McArdle personally, jointly, and

38

severally, in the amount of any judgment rendered herein against Arrow and/or its related

entities Sedona Development, Sedona, SDG, Quail Ridge, and/or XYZ Entities 1-10, plus

interest, costs and disbursements, and reasonable attorney's fees for bringing this action.

### As and For a Tenth Cause of Action

Trust Fund Diversion against Perelman, Gentile, Moriarty and Thompson

245.    Plaintiffs repeat and reallege each and every allegation set forth above in
paragraphs 1 through 244 as if completely restated herein.

246.    Upon information and belief, defendant Gallery entered into a construction loan
agreement with former defendant Fremont, pursuant to which Fremont advanced funds to
Gallery for improvements to the Premises.

247.    Upon information and belief, Perelman, Gentile and Thompson were authorized
signatories for the checking account maintained by Gallery at M & T Bank, into which Fremont
deposited advances from the construction loan.

248.    Upon information and belief, Perelman, Gentile and Thompson are members or
principals of Gallery and/or GDG, Gallery's managing member.

249.    Pursuant to the New York Lien Law Article 3A and sections 70 – 79a, monies
received from a construction lender are required to be held in trust first for the benefit and
payment of those who have provided work, labor and/or services for the improvement of the
property.

250.    Plaintiffs GKA and Kaufman are parties who performed work, labor and services
for the improvement of the Premises.  Accordingly, they are beneficiaries of the trust.

251.    Upon information and belief, Gallery, GDG, Perelman, Gentile, Moriarty and
Thompson, jointly and severally, diverted trust funds which they received to purposes other than

39

permitted under Article 3A of the New York Lien Law.

252.    By reason of the foregoing, Perelman, Gentile, Moriarty and Thompson are personally liable to all trust beneficiaries, including plaintiffs to the extent of the sums diverted.

253.    Diversion of trust funds constitutes larceny under Section 79 of the Lien Law.

254.    Defendants VJB and Scalamandre have demanded an accounting from Gallery, pursuant to Article 3A of the New York Lien Law, and on behalf of the class of similarly situated parties.

255.    Gallery's response to such demand was insufficient to account for the trust funds received by Gallery.

256.    Under the Lien Law, there is a presumption of larceny under these circumstances.

257.    By reason of the foregoing, plaintiffs request that Perelman, Gentile, Moriarty and Thompson be ordered to account for and pay over the trust funds together with interest from the date of earliest diversion for the Court's disbursement to plaintiffs and other wronged parties similarly situated and, to pay damages for their breach of trust.

**WHEREFORE,** plaintiffs GKA and Kaufman pray for judgment as follows:

1)    On the First Cause of Action, an order and money judgment directing foreclosure and sale of the Premises, pursuant to NY Lien Law section 40 et seq., and directing payment from the proceeds thereof to plaintiffs in the amount of $74,155.59 plus interest, costs and disbursements pursuant to RPAPL § 1354, Lien Law section 53, and CPLR section 8302, and plaintiffs reasonable attorney's fees for bringing this action; and a deficiency judgment in favor of plaintiffs and against defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty, Thompson, Arrow, Sedona Development, Sedona, SDG, Quail Ridge, Coburn, McArdle, JMA, John or Jane Does 1- 10, and XYZ Entities 1-10, jointly and

40

severally, in the amount of $74,155.59, plus interest, costs and disbursements pursuant to

RPAPL section 1354, Lien Law section 53, and CPLR section 8302, and plaintiffs reasonable

attorney's fees for bringing this action, or in the amount that remains unpaid from said judgment

after foreclosure and sale of the Premises; or, in the event that, for any reason, foreclosure and

sale of the Premises does not occur, a money judgment in favor of plaintiffs and against

defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile, Moriarty,

Thompson, Arrow, Sedona Development, Sedona, SDG, Coburn, McArdle, JMA, John or Jane

Does 1-10, and XYZ Entities 1-10, jointly and severally, in the amount of $74,155.59, plus

interest, costs and disbursements pursuant to RPAPL section 1354, Lien Law section 53, and

CPLR 5 8302, and plaintiffs reasonable attorney's fees in bringing this action;

      2)     On the Second Cause of Action, a money judgment in favor of plaintiffs

and against defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile,

Moriarty, Thompson, and XZY Entities 1-10, jointly and severally, awarding compensatory and

punitive damages for fraud, in amounts to be determined at trial, but no less than $222,466.77,

plus interest, costs and disbursements and plaintiffs reasonable attorney's fees for bringing this

action;

      3)     On the Third Cause of Action, a money judgment in favor of plaintiffs and

against defendants Gallery, Perelman, Gentile, Moriarty, Thompson, GDG, CJA, JN, JANI,

JANI II, Coleson and XYZ Entities 1-10, jointly and severally, for breach of the Termination

Agreement, in the amount of $74,155.59, plus pre- and post-judgment interest pursuant to the

C.P.L.R., costs and disbursements, and plaintiffs' reasonable attorney's fees for bringing this

action;

      4)     On the Fourth Cause of Action, a money judgment in favor of plaintiffs

41

and against defendants Coburn, Arrow, McArdle, Sedona Development, Sedona, SDG, Quail

Ridge, and XYZ Entities 1-10, jointly and severally, for breach of the July 9, 2002 Agreement,

in the amount of $74,155.59, plus pre- and post-judgment interest pursuant to the C.P.L.R.,

costs and disbursements and plaintiffs' reasonable attorney's fees for bringing this action;

5)    On the Fifth Cause of Action, a money judgment in favor of plaintiffs and

against defendants Gallery, GDG, CJA, JN, Perelman, Gentile, Moriarty, Thompson, jointly and

severally, for unjust enrichment, in the amount of $74,155.59, plus interest, costs and

disbursements and plaintiffs' reasonable attorney's fees for bringing this action;

6)    On the Sixth Cause of Action, a money judgment in favor of plaintiffs and

against defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Perelman, Gentile,

Moriarty, Thompson, and XYZ Entities 1-1 0, jointly and severally, for quantum meruit,

awarding compensatory damages in an amount to be determined at trial but no less than

$74,155.59, plus interest, costs and disbursements and plaintiffs' reasonable attorney's fees for

bringing this action;

7)    On the Seventh Cause of Action, a money judgment in favor of

plaintiffs and against defendants Gallery, GDG, CJA, JN, JANI, JANI II, Coleson, Arrow,

Sedona, Sedona Development, SDG, Quail Ridge, JMA, McArdle, Coburn, Perelman, Gentile,

Moriarty, Thompson and XYZ Entities 1 -10, jointly and severally, for account stated, in the

amount of $74,155.59, plus interest, costs and disbursements and plaintiffs' reasonable

attorney's fees for bringing this action;

8)    On the Eighth Cause of Action, a declaratory judgment that Gallery,

GDG, CJA and XYZ Entities 1-10 are alter egos for Gentile, Moriarty and Thompson, and that

GDG, JN and/or JANI, JANI II, Coleson, and XYZ Entities 1-10, are alter egos for Perelman,

42

and a money judgment against Gentile, Moriarty, Thompson and Perelman personally, jointly, and severally, in the amount of any judgment rendered herein against Gallery and/or its related entities GDG, CJA JN, JANI, JANI II, Colson and/or XYZ Entities 1-10, plus interest, costs and disbursements and plaintiffs' reasonable attorney's fees for bringing this action;

   9) On the Ninth Cause of Action, a declaratory judgment that Arrow, Sedona Development Co., LLC, Sedona, SDG, Quail Ridge, and XYZ Entities 1-10, are alter egos for Coburn and McArdle, and a money judgment against Coburn and McArdle personally, jointly, and severally, in the amount of any judgment rendered herein against Arrow, Sedona Development, and/or its related entities Sedona, SDG, Quail Ridge and/or XYZ Entities 1-10, plus interest, costs and disbursements and plaintiffs' reasonable attorney's fees for bringing this action;

   10) On the Tenth Cause of Action, an order that defendants Perelman, Gentile, Moriarty and Thompson be ordered to account for and pay over the trust funds together with interest from the date of earliest diversion, and for damages against them personally, jointly and severally, in an amount to be determined at trial, for their breach of trust; and

   11) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 29, 2007

BY: _____
   Terry Eder-Kaufman, Esq.
   525 Broadway, 8th Floor
   New York, NY 10012
   (212) 625-8700
   Attorney for Plaintiffs
   Gene Kaufman Architect, P.C. and
   Gene Kaufman

43

Supreme Court Records OnLine Library - page 45 of 48

## VERIFICATION

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

       Gene Kaufman, being duly sworn, deposes and says:

       I am the owner and principal of Gene Kaufman Architect, P.C., ("GKA"), plaintiff in this action. I have read the foregoing Second Amended Complaint and the same is true to the best of my knowledge. This verification is based upon my own personal knowledge or upon information and belief and, as to those items based upon information and belief, I believe the same to be true based upon the review of documents and records in my possession.

                                                    _____
                                                   Gene Kaufman

Sworn to before me this _25_ day of May, 2007.

_____
Notary Public

AARON S. VASSELL
Notary Public, State of New York
Qualified in New York County
Reg. #01VA6133216
My Comm. Expires 9/12/09

**INDEX NO. 101897/2005**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------------X

GENE KAUFMAN ARCHITECT, P.C., and
GENE KAUFMAN,

                           Plaintiffs,

             - against-

THE GALLERY AT CHELSEA, LLC, THE GALLERY
DEVELOPMENT GROUP, LLC, CJA GALLERY, LLC,
JN GALLERY, LLC, JANI DEVELOPMENT, LLC,
JANI DEVELOPMENT II, LLC, COLESON MANAGEMENT,
LLC, STANLEY R. PERELMAN, JOSEPH GENTILE,
CATHY MORIARTY-GENTILE, CHRISTOPHER
THOMPSON, ESQ., ARROW DEVELOPMENT CO., LLC,
SEDONA DEVELOPMENT CO., LLC, THE SEDONA
GROUP, LLC, SEDONA DEVELOPMENT GROUP, LLC,
QUAIL RIDGE DEVELOPMENT CO., LLC, TONI COBURN,
STEPHEN E. MCARDLE, JMA AUTO TECH CORP.,
559 WEST 23RD STREET FUNDING LLC,
ULTRA CONSTRUCTION ASSOCIATES INC.,
VJB CONSTRUCTION 559 W 23RD STREET LLC,
PETER SCALAMANDRE & SONS INC., BLUEPRINT
PLUMBING LLC, NORTH AMERICAN ELEVATOR
INDUSTRIES INC., ABCON BUILDERS CORP.,
RCDOLNER, LLC, JOHN OR JANE DOES 1 -10,
and XYZ ENTITIES 1 -10,

                      Defendants.

----------------------------------------------------------------------------X

**SECOND
AMENDED
SUMMONS
AND VERIFIED
COMPLAINT**



Terry Eder-Kaufman, Esq.
Attorney for Plaintiffs
Gene Kaufman Architect, P.C.
525 Broadway
New York, NY 10012
(212) 625-8700

To

Service of a copy of the within is hereby admitted.

Dated:........................................    ..........

 1. Place cover this side up on top of first page of document. Staple as indicated.

 2. Lift bottom of cover up and over top, folding on top score line.

 3. Fold cover down behind papers on remaining score line.



STATE OF                    COUNTY OF                    ss.:

I, the undersigned, an attorney admitted to practice law,

**Certification By Attorney** ☐ certify that the within has been compared by me with the original and found to be a true and complete copy.

**Attorney's Affirmation** ☐ state that I am

the attorney(s) of record for
in the within action; I have read the foregoing
and know the contents thereof; the same is
true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as
to those matters I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.

Dated:

.............................................................
The name signed must be printed beneath

STATE OF                    COUNTY OF                    ss.:

I,

**Individual Verification** ☐ the                                        being duly sworn, depose and say: I am
the foregoing                                        in the within action; I have read
and know the contents thereof; the same is true to
my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those
matters I believe it to be true.

**Corporate Verification** ☐ the                    of
a                                        corporation and a party in the within action; I have read the foregoing
and know the contents thereof; and the same is true to my own knowledge,
except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe
it to be true. This verification is made by me because the above party is a corporation and I am an officer thereof.
The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on

.............................................................
The name signed must be printed beneath

STATE OF                    COUNTY OF                    ss.:  (If both boxes are checked—indicate after names, type of service used.)

I,                                        being sworn, say: I am not a party to the action, am over 18 years
of age and reside at
On                                        I served the within

**Service By Mail** ☐ by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care
and custody of the U.S. Postal Service within this State, addressed to each of the following persons at the last
known address set forth after each name:

**Personal Service on Individual** ☐ by delivering a true copy thereof personally to each person named below at the address indicated. I knew each person
served to be the person mentioned and described in said papers as *a party therein:*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
JMA AUTO TECH CORP.,

                                            Plaintiff,            Index No.    05100707

                                                                 Date of Filing of Summons

                  -against-                                       Plaintiff Designates New
                                                                 York County as the Place of
                                                                 Trial

THE GALLERY AT CHELSEA, LLC,
THE GALLERY DEVELOPMENT GROUP LLC,                               **SUMMONS**  **FILED**
CJA GALLERY, LLC, JN GALLERY, LLC,
STANLEY PERELMAN and JOSEPH GENTILE,
                                                                 JAN 18 2005

                                            Defendants.          NEW YORK
-------------------------------------------------------------------X       COUNTY CLERKS OFFICE
        YOU ARE HEREBY SUMMONED to answer the verified complaint in this action and
serve a copy of your answer, on the plaintiffs' attorneys within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
in the complaint.

Dated: New York, New York
        January 11, 2005

                          Yours, etc.,

                          D'Agostino, Levine & Landesman, LLP

                          By: _____
                              George Tzimopoulos, Esq.
                              345 Seventh Avenue, 23rd Floor
                              New York, NY 10001
                              Tele: (212) 564-9800

G:\Tzimopoulos\Arezzo-Verified Complaint-GT-Changes.doc

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
JMA AUTO TECH CORP.,

<table>
<tr><td></td><td>Plaintiff,</td><td>Index No.</td></tr>
<tr><td></td><td></td><td>Verified Complaint</td></tr>
</table>

       -against-

THE GALLERY AT CHELSEA, LLC,
THE GALLERY DEVELOPMENT GROUP LLC,
CJA GALLERY, LLC, JN GALLERY, LLC,          05100707
STANLEY PERELMAN and JOSEPH GENTILE,

                Defendants.
-----------------------------------------------------------------------X

The plaintiff JMA Auto Tech Corp.("JMA"), by its attorneys D'Agostino Levine &

Landesman, LLP, as and for its complaint against the defendants, respectfully alleges as follows:

1.     At all relevant times, the plaintiff was, and still is, a corporation duly organized and existing

       under the laws of the State of New York.

2.     Mr. Russell Arezzo is the President of JMA.

3.     Upon information and belief, on or about September 18, 2003, the defendant, The Gallery At

       Chelsea, LLC ("The Gallery"), was duly formed and organized as a limited liability company

       pursuant to the laws of the State of New York, and presently exists as such.

4.     The Gallery was formed and organized by the defendants for the purpose of developing a

       one-story property owned by the plaintiff JMA Auto Tech Corp. and utilized as an

automotive repair shop (the "Property") into a multi-unit residential property which is the subject of this lawsuit.

5.  The Property is known as and has a street address of 559 West 23rd Street, New York, New York.

6.  The plaintiff, a closely held corporation, first acquired the Property on May 12, 1997 from an affiliate.  Family members of the plaintiff's President had previously owned the Property since the mid 1970s.

7.  Upon information and belief, on or about July 31, 2003 the defendant The Gallery Development Group LLC ("Gallery Development") was duly formed and organized as a limited liability company pursuant to the laws of the State of New York and presently exists as such.

8.  Gallery Development is the managing member of The Gallery and it owns a fifty one (51%) percent interest in The Gallery.  The plaintiff JMA owns a twenty-four and one half (24 ½ %) percent interest in The Gallery and an entity known as the Sedona Group, LLC ("Sedona") owns the remaining twenty four and one half (24 ½ %) percent interest in The Gallery.

9.  Upon information and belief, on or about July 31, 2003, the defendant CJA Gallery, LLC, ("CJA") was duly formed and organized as a limited liability company pursuant to the laws of the State of New York and presently exists as such.

10. Upon information and belief, CJA owns a fifty (50%) percent interest in Gallery Development.

Supreme Court Records OnLine Library -  page 3 of 25

11.    Upon information and belief, on or about July 31, 2003, the defendant JN Gallery, LLC, ("JN") was duly formed and organized as a limited liability company pursuant to the laws of the State of New York and presently exists as such.

12.    Upon information and belief, JN owns a fifty (50) percent interest in Gallery Development.

13.    Upon information and belief, individual defendant Joseph Gentile ("Gentile") is an owner of CJA.

14.    Upon information and belief Gentile manages CJA.

15.    Gentile has held himself out to plaintiff as the managing member of CJA.

16.    Upon information and belief, individual defendant Stanley Perelman ("Perelman") is the 100% owner of and the managing member of JN.

17.    Defendants Perelman and Gentile, through Gallery Development became the managers of The Gallery.

18.    Defendants The Gallery, Gallery Development, CJA, JN, Gentile and Perelman are sometimes hereinafter collectively referred to as the "Managing Member Defendants."

19.    Upon information and belief, Freemont Investment & Loan ("Freemont Bank") is a California industrial bank, with an address of 175 N. Riverside Drive, Anaheim, CA, that has acquired a mortgage interest or interests in the Property.

20.    Upon information and belief, the Managing Member Defendants have caused or permitted the following entities to file mechanic's liens against the Property naming either The Gallery or the plaintiff as a debtor:

Supreme Court Records OnLine Library -  page 4 of 25

a)    Gene Kaufman Architect PC has filed a lien on February 26, 2004 in the amount of $74,155.59 against the Property naming the The Gallery as a debtor;

b)    Abcon Builders Corp. has filed a lien on June 28, 2004 in the amount of $39, 249.99 against the Property naming the plaintiff as a debtor;

c)    Abcon Builders Corp. has filed a lien on July 22, 2004 in the amount of $39,249.99 against the Property naming the plaintiff as a debtor;

d)    Ultra Construction has filed a lien on November 17, 2004 in the amount of $4,500,000.00 against the Property naming The Gallery as a debtor;

e)    VJB Construction ... has filed a lien on November 19, 2004 in the amount of $48,865.14 against the Property naming the The Gallery as a debtor; and

f)    Peter Scalamandre & Sons, Inc. has filed a lien on November 19, 2004 in the amount of $445,013.00 against the Property naming The Gallery as a debtor.

21.    Upon information and belief, some of the entities that have filed mechanic's liens are affiliated to or related to defendant Gentile.

22.    In or about 2001, the plaintiff, along with Sedona began exploring options to develop the Property.

23.    Sedona retained architect, Gene Kaufman, R.A., to develop plans and specifications, which were submitted to the Department of Buildings of the City of New York and approved for the construction of a new condominium apartment building (the "Project") on the Property. The approved plans are hereinafter referred to as (the "Approved Kaufman Plans").

Supreme Court Records OnLine Library -  page 5 of 25

24.    Sedona also commissioned the preparation and filing of an offering plan for the sale of condominium apartments as part of the Project.

25.    In or about the summer of 2003 the plaintiff and Sedona entered into negotiations with defendants Perelman and Gentile to form a venture whereby Perelman and Gentile would finance and manage the development of the Property in accordance with the Approved Kaufman Plans.

26.    Perelman and Gentile represented to the plaintiff that they had the financial resources, development experience and marketing experience to complete the Project.

27.    On or about August 5, 2003, plaintiff and Sedona executed an operating agreement (the "Operating Agreement") prepared by Perelman and Gentile, in connection with the aforementioned limited liability company, known as The Gallery, to develop and market the Project.

28.    Pursuant to the terms of the Operating Agreement, among other things: a) plaintiff contributed and deeded to The Gallery its one hundred percent ownership interest in the Property, which interest was valued at $2.2 million and which was free and clear of any mortgage liens.

29.    Also pursuant to the terms of the Operating Agreement, Sedona contributed a) the Approved Kaufman Plans to The Gallery, b) the Offering Plan, and c) its expertise and other valuable consideration that was all valued at five hundred and twenty five thousand ($525,000) dollars.

Supreme Court Records OnLine Library - page 6 of 25

30.   The Operating Agreement provided for a budget (the "Budget") for the Project of ten million one hundred thousand dollars including the capital contribution of the Property by the plaintiff that was valued at $2.2 million dollars. It was agreed that Gallery Development was to obtain financing for the Project within the parameters set in the Operating Agreement.

31.   The Operating Agreement further required that The Gallery was to utilize the Approved Kaufman Plans for the Project.

32.   The Operating Agreement also provided that the Gallery Development would contribute an all cash/credit line of up to Two Million ($2,000,000) Dollars to, among other things, cover initial start up costs and to meet "on going costs and expenses of the Company (The Gallery) and the development of the Real Property (the Property)."

33.   The Operating Agreement provides that all distributions, profits and losses shall be distributed as follows: 25% to the plaintiff, 25% to Sedona and 50% to the defendant Gallery Development.

34.   In or about December of 2003, the Managing Member Defendants caused The Gallery to obtain construction loans from Freemont Bank (the "Freemont Loans") to finance the Project.

35.   The Freemont Loans were secured by the Property which the plaintiff had contributed to The Gallery.

36.   Subsequent to obtaining the Freemont Loans and prior to commencement of construction on the Property or of the Project, the Managing Member Defendants entered into a series of agreements on behalf of the Gallery.

Supreme Court Records OnLine Library - page 7 of 25

37.     Many of the agreements were not in the best interests of the Project.

38.     Many of the agreements were contrary to the Terms of the Operating Agreement.

39.     The Managing Member Defendants fired the architect Gene Kaufman.

40.     The Managing Member Defendants abandoned the Approved Kaufman Plans.

41.     The Managing Member Defendants substantially altered the design and specifications of the
        Project in favor of a purported new plan and a new design which included the addition of a
        cellar, even though the Project is located in a high water table area.

42.     Contrary to the terms of the Operating Agreement, the Managing Member Defendants used
        the The Gallery's funds and the proceeds of the Freemont Loans, to pay various expenses not
        directly related to the Project.

43.     The Managing Member Defendants incurred and paid expenses unrelated to the Project.

44.     The Managing Member Defendants paid themselves fees contrary to the terms of the
        Operating Agreement.

45.     In or about February of 2004, the Managing Member Defendants, acting through JN
        purported to call a special meeting of members of The Gallery to materially increase the
        Budget and to ratify the abandonment of the Approved Kaufman Plans.

46.     The plaintiff objected to the proposed increase in the Budget because, among other things,
        the Managing Member Defendants had not funded the contributions that they were required
        to make and were instead squandering monies obtained in connection with and secured by
        the plaintiff's capital contribution.

G:\TZIMOPOULOS\AREZZO-VERIFIED COMPLAINT-GT-CHANGES.DOC        7

Supreme Court Records OnLine Library - page 8 of 25

47.   The Operating Agreement required the unanimous consent of the members of The Gallery to materially increase the budget and to abandon the Approved Kaufman Plans. There was no unanimous consent.

48.   Even though there was no unanimous consent at the February 2004 meeting or otherwise, counsel to Gallery Development prepared a draft consent for signature.

49.   The draft consent was not signed or agreed to by the plaintiff or by Sedona.

50.   In or about June of 2004, the plaintiff and the defendants Perelman and Gentile entered into discussions regarding a possible purchase of the plaintiff's interests in The Gallery.

51.   Defendants Perelman and Gentile and the Gallery Development, through another entity, Coleson Management LLC ("Coleson"), agreed pursuant to a Sale and Purchase Agreement dated July 27, 2004, to purchase the plaintiff's interest in The Gallery.

52.   The terms provided for the payment of the sum of $2.3 million to the plaintiff with a proposed closing date of "on or about August 15, 2004 . . . [but] in no event . . . later than September 1, 2004 TIME BEING OF THE ESSENCE TO PURCHASER."

53.   Coleson defaulted on the Sale and Purchase Agreement.

54.   On September 8, 2004 the plaintiff sent a first notice to Coleson declaring a default under the Sale and Purchase Agreement and granted Coleson an extension to close until October 1, 2004.

55.   On October 1, 2004, plaintiff sent a second notice to Coleson declaring a default under the Sale and Purchase agreement.

Supreme Court Records OnLine Library - page 9 of 25

56.     On October 15, 2004, the plaintiff sent a notice to the Managing Member Defendants and
        demanded, among other things, an accounting for the $2,000,000 which Perelman and
        Gentile, through Gallery Development had agreed to contribute to the Project, and further
        demanded an accounting for all uses and disbursements of the funds from the Freemont
        Loans to date.

57.     Upon information and belief, under the management of Gallery Development, Perelman and
        Gentile, the Freemont Loans were declared by Freemont Bank to be in default due to among
        other things, the failure of the Gallery Development, Perelman and Gentile to make
        contributions as required by the Operating Agreement for The Gallery.

58.     Upon information and belief, the Managing Member Defendants spent substantial proceeds
        of the Freemont Loans to develop alternative plans to the Approved Kaufman Plans, which
        alternative plans have now been abandoned ("Alternative Plans").

59.     Upon information and belief, the Managing Member Defendants have stopped construction
        of the Project.

60.     Upon information and belief, the Managing Member Defendants have left the Project with a
        poured foundation which is exposed to cold temperatures, submerged in water, at risk for
        cracking, and abandoned.

61.     Upon information and belief, an examination of the Project site on or about December 27,
        2004, confirmed that the poured foundation is submersed in water, exposed to the elements
        and that the site is unsecured and appears abandoned.

Supreme Court Records OnLine Library -  page 10 of 25

62.   Upon information and belief, Perelman and Gentile and the other Managing Member Defendants entered into a scheme and conspiracy, in breach of their fiduciary duties as the managing member of The Gallery, to deprive plaintiff of the benefits of its membership/ownership interest in The Gallery, including (i) plaintiff's priority return of its capital contribution of the Property to defendant The Gallery, which was valued at $2.2 million dollars; and (ii) that the defendants Gallery Development, Perelman and Gentile would contribute construction and development costs and expenses of up to $2,000,000 to complete the Project.

63.   Upon information and belief, in or about October, 2004, the Managing Member Defendants communicated a threat to Sedona that The Gallery would give a deed in lieu of foreclosure to Freemont Bank and render the plaintiff's interest in the Gallery worthless.

64.   In or about November 2004, the Managing Member Defendants threatened to arrange for an affiliate to purchase the Freemont Loans and/or have affiliated contractors file mechanic's liens so that affiliates might then foreclose upon the Property thereby wiping out the interests of plaintiff; and leaving the Managing Member Defendants and/or their affiliates free to develop the Property and convert for themselves and/or their affiliates all profits and payment of capital otherwise due to the plaintiff.

65.   Since the closing of the Freemont Loans, the Managing Member Defendants have wasted the assets of The Gallery by using proceeds of the Freemont Loans to (i) repay to themselves costs and expenses which should have been contributed by the Managing Member Defendants (ii) expended substantial sums to develop the Alternative Plans which replaced

Supreme Court Records OnLine Library - page 11 of 25

the Approved Kaufman Plans and were never implemented, (iii) developed for an unknown

purpose, a website at a cost in excess of $90,000; (iv) added a cellar to the Project which was

not a part of the Approved Kaufman Plans, which cellar has caused substantial cost overruns

and delays to the Project; (iv) paid the personal legal fees of Gentile and Perelman, and (v)

otherwise improperly and unjustly enriched the Managing Member Defendants.

66.   As of the filing of this complaint, the Managing Member Defendants have refused to give the

plaintiff an accounting of the $2,000,000 which Gallery Development was required to

contribute to the Project.

67.   As of the filing of this complaint, no accounting has been provided as to funds borrowed

from Freemont Bank and disbursed to or used by the Development Group or any of the other

Managing Member Defendants.

**AS AND FOR A FIRST CAUSE OF ACTION
BY THE PLAINTIFF AGAINST THE DEFENDANTS,
THE GALLERY AT CHELSEA LLC,
THE GALLERY DEVELOPMENT GROUP LLC,
CJA GALLERY, LLC, JN GALLERY, LLC,
STANLEY PERELMAN AND JOSEPH GENTILE**

68.   The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67 of

this verified complaint as if set forth in their entirety.

69.   On December 11, 2003, the plaintiff contributed and deeded the Property to The Gallery in

accordance with the terms of the Operating Agreement for The Gallery.

70.   Upon information and belief, the Managing Member Defendants obtained financing from

Freemont Bank on or about December 12, 2003 and caused the Property to be mortgaged for

an amount in excess of seven million dollars.

G:\TZIMOPOULOS\AREZZO-VERIFIED COMPLAINT-GT-CHANGES.DOC    11

71. To induce the plaintiff to contribute and deed the Property to the defendant The Gallery, Gallery Development, and Perelman and Gentile falsely and fraudulently stated and represented to the plaintiff that the Managing Member Defendants had the financial resources and construction and marketing expertise to undertake the Project.

72. Gallery Development promised the plaintiff and Gentile and Perelman specifically represented to the plaintiff that Gallery Development would contribute "all cash/credit line up to Two Million Dollars ($2,000,000) required ... to meet the ongoing costs and expenses of the Company and the development of the Real Property.

73. Defendants Perelman, Gentile, Gallery Development, CJA and JN committed a fraud upon plaintiff in that they never intended to contribute the cash required to meet ongoing costs and expenses, and have failed to do so and as a result thereof, the Project has come to a halt.

74. The Gallery has apparently been declared in default in connection with the Freemont Loans and is in danger of financial collapse.

75. The Gallery has improperly declared that plaintiff's membership interest in The Gallery terminated and forfeited by a purported notice to that effect dated December 15, 2004 signed by Gallery Development.

76. The plaintiff, at the time representations were made, did not know the truth, but believed that the representations of the Managing Member Defendants to be true and relied upon them and was thereby induced to contribute and deliver the Property to The Gallery.

77. Defendants have caused or permitted various contractors/entities to place mechanic's liens on the Property.

Supreme Court Records OnLine Library -  page 13 of 25

78.    The Plaintiff has no adequate remedy at law.

79.    By reason of the foregoing, the plaintiff demands the rescission of its contribution of the

Property to The Gallery, and to have the status quo restored such that The Gallery, Perelman

and Gentile, Gallery Development, CJA and JN should be ordered and directed to transfer

title to the Property back to plaintiff, free and clear of any liens or encumbrances.

### AS AND FOR A SECOND CAUSE OF ACTION
### BY THE PLAINTIFF AGAINST THE DEFENDANTS
### STANLEY PERELMAN AND JOSEPH GENTILE

80.    The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67

and 69 to 78 of this verified complaint as if set forth in their entirety.

81.    As the sole owners or holders of controlling interests of the entities which constitute Gallery

Development and as the majority owners of The Gallery through those entities, each of

Perelman and Gentile owed certain fiduciary duties to the plaintiff.

82.    Defendants Perelman and Gentile have breached their fiduciary duties to plaintiff, including

the implied duty of good faith and fair dealing by, among other things: (i) using The

Gallery's funds to develop the Alternative Plans in lieu of the Approved Kaufman Plans; (ii)

using their position as Managing Member of The Gallery to authorize payment to themselves

of costs and expenses which should have been capital contributions required to be made by

the individual defendants; (iii) threatening to have affiliates purchase the Freemont Loans

and/or file mechanic's liens and foreclose such mortgages and liens; (iv) threatening to

abandon the Project, unless plaintiff agreed to a material increase in the Budget; (v) failing

Supreme Court Records OnLine Library - page 14 of 25

to make capital contributions in an amount of up to $2,000,000 to pay contractors; and (vi) permitting/causing contractor's entities to file mechanic's liens against the Property.

83.   By reason of the foregoing the plaintiff demands judgment against the defendants Perelman and Gentile jointly & severally in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

## AS AND FOR A THIRD CAUSE OF ACTION BY THE PLAINTIFF AGAINST THE DEFENDANT THE GALLERY DEVELOPMENT GROUP LLC,

84.   The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67, 69 to 78 and 81 to 82 of this verified complaint as if set forth in their entirety.

85.   Defendant Gallery Development has breached its obligations under the Operating Agreement by failing to contribute $2,000,000 in cash/credit line to The Gallery, abandoning the Approved Kaufman Plans, adding a cellar to the Project which has resulted in substantial costs, delays and engineering problems, intentionally delaying the Project through the repeated firings of construction managers and other personnel and then abandoning and/or threatening to abandon the Project.

86.   By reason of the foregoing the plaintiff demands judgment against the defendant Gallery Development in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

Supreme Court Records OnLine Library -  page 15 of 25

## AS AND FOR A FOURTH CAUSE OF ACTION BY THE
## PLAINTIFF AGAINST THE DEFENDANT
## THE GALLERY DEVELOPMENT GROUP, LLC AND
## THE GALLERY AT CHELSEA LLC

87.    The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67, 69 to 78, 81 to 82 and 85 of this verified complaint as if set forth in their entirety.

88.    Pursuant to among other things, the Operating Agreement and the terms of Section 502 of the New York Limited Liability Company Law, the defendant Gallery Development is obligated to contribute $2,000,000 in cash/credit line to defendant The Gallery, and has failed to do so.

89.    By having induced the plaintiff to contribute valuable property to defendant The Gallery, but not making its own requisite contribution to The Gallery, defendant Gallery Development has been unjustly enriched in that it became the effective owner of 51% of the Property for no consideration.

90.    By reason of the foregoing, plaintiff is entitled to an order (i) substituting plaintiff as managing member of The Gallery, and (ii) imposing a constructive trust for the benefit of plaintiff upon all right title and interest of Gallery Development in The Gallery, and (iii) an order directing defendant Gallery Development to transfer all of its right, title and interest in The Gallery to the plaintiff.

Supreme Court Records OnLine Library -  page 16 of 25

## AS AND FOR A FIFTH CAUSE OF ACTION
## BY THE PLAINTIFF AGAINST THE DEFENDANTS
## STANLEY PERELMAN AND JOSEPH GENTILE

91.     The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67,

69 to 78, 81 to 82, 85 and 88 to 89 of this verified complaint as if set forth in their entirety.

92.     Perelman and Gentile have purposely, fundamentally and fraudulently misused The Gallery

and the other limited liability companies they formed to the detriment of the plaintiff such

that they should be personally liable for any breaches of contracts by Gallery Development or

any outstanding financial obligations of the defendants they control.

93.     Perelman and Gentile have failed to properly capitalize The Gallery, Galley Development,

CJA and JN such that they should be personally liable for any breach of contracts by Gallery

Development or any outstanding financial obligations of the defendants they control.

94.     Upon information and belief, Perelman and Gentile have not contributed any capital to

Gallery Development or the Project, and/or have improperly used the Freemont Loans in lieu

of capital contributions which they failed to fund or make in connection with the Project.

95.     Perelman and Gentile have further fundamentally and fraudulently misused the limited

liability form of ownership by entering into a sale and purchase agreement through a "shell",

undercapitalized entity, and then defaulting upon their obligations.

96.     By reason of the foregoing, the plaintiff demands a judgment that Perelman and Gentile

should be held jointly, severally and personally liable to the plaintiff for the plaintiff's

contributions to The Gallery and any judgments against The Gallery and/or Gallery

G:\TZIMOPOULOS\AREZZO-VERIFIED COMPLAINT-GT-CHANGES.DOC     16

Development in  an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

### AS AND FOR A SIXTH CAUSE OF ACTION BY THE PLAINTIFF AGAINST THE DEFENDANTS THE GALLERY AT CHELSEA LLC, THE GALLERY DEVELOPMENT GROUP LLC, CJA GALLERY, LLC, JN GALLERY, LLC, STANLEY PERELMAN AND JOSEPH GENTILE

97.    The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67, 69 to 78, 81 to 82, 85, 88 to 89 and 92 to 95 of this verified complaint as if set forth in their entirety.

98.    The plaintiff has demanded that the Managing Member Defendants account to the plaintiff for (i) their capital contribution of $2,000,000 as required by the terms of the Operating Agreement, and (ii) the use of proceeds of the Freemont Loans.

99.    The Managing Member Defendants have refused to account to the plaintiff or make the books and records of The Gallery available to the plaintiff for examination.

100.    By reason of the foregoing the plaintiff respectfully submits it is entitled to an order directing the Managing Member Defendants to immediately account to the plaintiff for their contributions to The Gallery and the use of the proceeds of any of the Freemont Loans.

Supreme Court Records OnLine Library -  page 18 of 25

**AS AND FOR A SEVENTH CAUSE OF ACTION BY THE
PLAINTIFF AGAINST THE DEFENDANTS
THE GALLERY DEVELOPMENT GROUP LLC,
CJA GALLERY, LLC, JN GALLERY, LLC,
STANLEY PERELMAN AND JOSEPH GENTILE**

101.   The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67,

69 to 78, 81 to 82, 85, 88 to 89, 92 to 95 and 98 to 99 of this verified complaint as if set forth

in their entirety.

102.   Defendants Gallery Development, CJA, JN, Perelman and Gentile, in their capacities as

Managing Member and principals of the Managing Member, have engaged in a consistent

pattern of waste of the assets, cash and credit of The Gallery by: (i) expending substantial

sums to develop the Alternative Plans which replaced the Approved Kaufman Plans and were

never implemented, as well as, developing a website for some unknown purpose at a cost in

excess of $90,000; (ii) adding a cellar to the Project which was not a part of the Approved

Kaufman Plans, which cellar has caused substantial cost overruns and delays to the Project;

and (iii) causing affiliates to file mechanic's liens against the Property.

103.   By reason of the foregoing, plaintiff is entitled to judgment against defendants Gallery

Development, CJA, JN, Perelman and Gentile in an amount to be established at trial, but at

least two million two hundred thousand ($2,200,000) dollars.

Supreme Court Records OnLine Library - page 19 of 25

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## BY THE PLAINTIFF AGAINST THE DEFENDANTS
## THE GALLERY DEVELOPMENT GROUP LLC,
## STANLEY PERELMAN, JOSEPH GENTILE
## AND THE GALLERY AT CHELSEA LLC.

104.    The plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 to 67, 69 to 78, 81 to 82, 85, 88 to 89, 92 to 95, 98 to 99 and 102 of this verified complaint as if set forth in their entirety.

105.    The plaintiff owns a 24-1/2% interest in the Gallery and is entitled to 25% of any distributions and profits pursuant to the terms of the Operating Agreement.

106.    On December 17, 2004 the plaintiff received a termination notice (the "Termination Notice") from The Gallery purporting to terminate the plaintiff's membership interest in The Gallery.

107.    The Termination Notice cited no grounds for the purported termination of the plaintiff's membership interest.

108.    The Termination Notice was signed by Christopher Thompson on behalf of Gallery Development Group LLC, CJA Gallery LLC and The Gallery at Chelsea LLC.

109.    Upon information and belief, the Termination Notice was executed at the direction of Perelman.

110.    Upon information and belief, the Termination Notice was executed at the direction of Gentile.

111.    By letter dated December 22, 2004, the plaintiff objected to the Termination Notice and in its response demanded access to the books and records of The Gallery.

Supreme Court Records OnLine Library -  page 20 of 25

112.    The defendants Gallery Development, Perelman and Gentile and the other Managing Member Defendants refuse to grant the plaintiff access to the books and records of The Gallery.

113.    Gallery Development, Perelman and Gentile intend to permanently deprive the plaintiff of its valuable membership interest in The Gallery for no consideration.

114.    By reason of the foregoing, the plaintiff demands judgment against the Gallery Development, Perelman, Gentile and The Gallery for conversion of its membership interests in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

1).    Pursuant to its first cause of action, granting the plaintiff an order and judgment rescinding the sale by plaintiff to the Gallery at Chelsea, LLC, of the real property known as and located at 559 West 23rd Street, New York, NY, and directing the The Gallery at Chelsea LLC, The Gallery Development Group LLC, CJA Gallery LLC, JN Gallery LLC, Stanley Perelman and Joseph Gentile to convey title to the real property to the plaintiff, free and clear of any liens or encumbrances.

2).    Pursuant to its second cause of action, granting the plaintiff a monetary judgment against Stanley Perelman and Joseph Gentile, jointly and severally, in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

Supreme Court Records OnLine Library -  page 21 of 25

3).    Pursuant to its third cause of action, a monetary judgment against defendant The Gallery Development Group, LLC, in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

4).    Pursuant to its fourth cause of action, an order imposing a constructive trust in favor of plaintiff upon all right title and interest of The Gallery Development Group, LLC in The Gallery at Chelsea LLC, and substituting plaintiff for The Gallery Development Group, LLC as managing member of The Gallery at Chelsea LLC and directing defendant The Gallery Development Group, LLC to transfer all of its right, title and interest in The Gallery at Chelsea LLC to the plaintiff.

5).    Pursuant to its fifth cause of action, a monetary judgment against defendants Stanley Perelman and Joseph Gentile, jointly, severally and personally, in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

6).    Pursuant to its sixth cause of action, an order directing The Gallery at Chelsea LLC, The Gallery Development Group LLC, CJA Gallery LLC, JN Gallery LLC, Stanley Perelman and Joseph Gentile Manager Defendants to account to plaintiff for (i) their capital contribution of two million ($2,000,000) dollars as required by the terms of the Operating Agreement; and (ii) the use of proceeds of the Freemont Loan.

7).    Pursuant to its seventh cause of action, a monetary judgment against The Gallery Development Group LLC, CJA Gallery LLC, JN Gallery LLC, Stanley Perelman and Joseph Gentile, jointly and severally, in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

G:\TZIMOPOULOS\AREZZO-VERIFIED COMPLAINT-GT-CHANGES.DOC    21

8).     Pursuant to its eighth cause of action against a monetary judgment against The

Gallery Development Group LLC, Stanley Perelman, Joseph Gentile and The Gallery at Chelsea

LLC, jointly and severally, in an amount to be established at trial, but at least two million two

hundred thousand ($2,200,000) dollars.

9).     Granting to the plaintiff the costs and disbursements of this action, including

reasonable attorneys fees.

10).    Granting to the plaintiff such other and further relief as to the Court may deem just

and proper.

Dated:  January 11, 2005

D'Agostino Levine & Landesman, LLP

By:_____

George Tzimopoulos, Esq.
345 Seventh Avenue, 23rd Floor
New York, NY 10001
Tele: (212) 564-9800

G:\TZIMOPOULOS\AREZZO-VERIFIED COMPLAINT-GT-CHANGES.DOC   22

## *VERIFICATION*

*STATE OF NEW YORK   )*

*ss.:*

*COUNTY OF NEW YORK )*


    *Russell Arezzo, being duly sworn, deposes and says:*


    *I am the President of plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.*

                                     *Russell Arezzo*


*Sworn to Before Me This*
*11th Day of January, 2005*


    *Notary Public*

GEORGE TZIMOPOULOS
Notary Public, State of New York
No. 02TZ4984234
Qualified in Nassau County   2007
Commission Expires July 15, ~~1997~~


G:\TZIMOPOULOS\AREZZO-VERIFIED COMPLAINT-GT-CHANGES.DOC

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
JMA AUTO TECH CORP.,

                                  Plaintiff,

             -against-

THE GALLERY AT CHELSEA, LLC,
THE GALLERY DEVELOPMENT GROUP LLC,
CJA GALLERY, LLC, JN GALLERY, LLC,
STANLEY PERELMAN and JOSEPH GENTILE,

                        Defendants.
--------------------------------------------------------------------X

Index No.

Date of Filing of Summons

Plaintiff Designates New
York County as the Place of
Trial

**SUMMONS AND
VERIFIED COMPLAINT**


D'AGOSTINO, LEVINE & LANDESMAN, LLP
Attorneys for the Plaintiff
345 Seventh Avenue, 23rd Floor
New York, NY 10001
Tel:  (212) 564-9800
Fax: (212) 564-9802

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
THE GALLERY DEVELOPMENT GROUP, LLC,

                              Plaintiffs,          INDEX NO. #604425/04

       -against-                        **ANSWER WITH
COUNTERCLAIMS
TO PROPOSED
AMENDED COMPLAINT
DATED MARCH 10, 2006**

THE SEDONA GROUP, LLC, TONI COBURN,
STEPHEN MCARDLE, JMA AUTO TECH CORP.,
D'AGOSTINO, LEVINE & LANDESMAN, LLP,
JOHN D'AGOSTINO, MICHAEL SIMON
AND RUSSELL AREZZO,

                            Defendants.
-----------------------------------------------------------------------X

     Defendants JMA Auto Tech Corp. ("JMA") and Russell Arezzo ("Mr. Arezzo") and

D'Agostino, Levine & Landesman, LLP (collectively the "Defendants") as their answer with

counterclaims to the amended complaint of The Gallery Development Group, LLC (the

"plaintiff" or "Gallery Development") state:

1.     Deny the truth of each and every allegation set forth in paragraph "1", "12", "17", "18", "19",

       "20", "21", "23", "24", "27", "28", "29", "30", "31", "32", "33", "34", "35", "36", "37",

       "38", "39", "40", "41", "43", "44", "45", "47", "48", "50", "51", "52", "54", "55", "56",

       "57", "58", "59", "60", "61", "63", "64", "65", "66", "68", "70" and "71" of the plaintiff's

       Verified Complaint.

2.     Deny knowledge or information sufficient to form a belief about the truth of the allegations

       set forth in paragraph "2", "3", "4", "5", "8", "10", "13", "16", "25" and "26" of the

       plaintiff's verified complaint.

3.     Deny the truth of each and every allegation set forth in paragraph "6" of the plaintiff's

Verified Complaint, except admit that JMA Auto Tech Corp is a corporation operating and

existing under the laws of the State of New York.

4.     Admit the truth of the allegations set forth in paragraphs "7" and "9" of the plaintiff's

Amended Verified Complaint.

5.     Deny the truth of each and every allegation set forth in paragraph "11", except admit that

Russell Arezzo is the President and sole shareholder of JMA Auto Tech Corp.

6.     Deny the truth of each and every allegation set forth in paragraph "14", except admit that

JMA entered into an operating agreement entitled the Operating Agreement of the Gallery at

Chelsea LLC dated August 5, 2003 and respectfully refer the court to the agreement for its

terms and conditions.

7.     Deny the truth of each and every allegation set forth in paragraph "15", except admit that

D'Agostino, Levine & Landesman, LLP has appeared for Russell Arezzo in this action and

has rendered other legal advice to him from time to time.

8.     The Defendants deny each and every allegation set forth in paragraph "22" of the plaintiff's

Verified Complaint, except admit there was a valuation in the Operating Agreement and

respectfully refer the court to the agreement for its terms and conditions.

9.     The Defendants repeat and reallege each and every response to each of the allegations

referred to in paragraph "42" of the plaintiff's complaint as if they were fully set forth herein.

10.    The Defendants repeat and reallege each and every response to each of the allegations

referred to in paragraph "46" of the plaintiff's complaint as if they were fully set forth herein.

2

11.    The Defendants repeat and reallege each and every response to each of the allegations referred to in paragraph "49" of the plaintiff's complaint as if were fully set forth herein.

12.    The Defendants repeat and reallege each and every response to each of the allegations referred to in paragraph "53" of the plaintiff's complaint as if were fully set forth herein.

13.    The Defendants repeat and reallege each and every response to each of the allegations referred to in paragraph "62" of the plaintiff's complaint as if were fully set forth herein.

14.    The Defendants repeat and reallege each and every response to each of the allegations referred to in paragraph "67" of the plaintiff's complaint as if were fully set forth herein.

15.    The Defendants repeat and reallege each and every response to each of the allegations referred to in paragraph "69" of the plaintiff's complaint as if were fully set forth herein.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

16.    The plaintiff lacks clean hands.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

17.    The plaintiff's amended complaint fails to state a cause of action as against JMA and Mr. Arezzo and D'Agostino, Levine & Landesman, LLP.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

18.    The plaintiff's action is barred by the doctrines of estoppel and waiver.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

19.    The plaintiff committed fraud in its dealings with JMA and Mr. Arezzo.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

20.    The plaintiff lacks contractual privity with respect to defendant D'Agostino, Levine & Landesman, LLP.

3

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

21.    The Defendants have not breached any fiduciary duties allegedly owed to the plaintiff.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

22.    The Defendants have not committed tortuous interference with existing and prospective

business relations alleged by the plaintiff.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

23.    The Defendants have not committed Fraud.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

24.    The Defendants have not breached any contracts with the plaintiff.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE
## AND FIRST COUNTERCLAIM

25.    At all relevant times, the defendant JMA was, and still is, a corporation duly organized and

existing under the laws of the State of New York.

26.    Mr. Russell Arezzo is the President and sole shareholder of JMA.

27.    Upon information and belief, on or about September 18, 2003, The Gallery At Chelsea, LLC

("The Gallery"), was duly formed and organized as a limited liability company pursuant to

the laws of the State of New York, and presently exists as such.

28.    The Gallery was formed and organized by the plaintiff, JMA and defendant Sedona Group,

LLC for the purpose of developing a one-story property owned by defendant JMA Auto Tech

Corp. and utilized as an automotive repair shop (the "Property") into a multi-unit residential

property.

4

Supreme Court Records OnLine Library - page 4 of 22

29.     The Property is known as and has a street address of 559 West 23rd Street, New York, New
York.

30.     The defendant JMA Auto Tech Corp., a closely held corporation, first acquired the Property
on May 12, 1997 from an affiliate.  Family members of the defendant Russell Arezzo, the
President of JMA Auto Tech Corp. had previously owned the Property since the mid 1970s.

31.     Upon information and belief, the plaintiff is a limited liability company organized pursuant
to the laws of the State of New York.

32.     Plaintiff is the managing member of The Gallery and it owns a fifty one (51%) percent
interest in The Gallery.  The defendant JMA owns a twenty-four and one half (24 ½ %)
percent interest in The Gallery and defendant Sedona Group, LLC ("Sedona") owns the
remaining twenty four and one half (24 ½ %) percent interest in The Gallery.

33.     Upon information and belief, CJA Gallery, LLC, ("CJA") is a limited liability company
organized pursuant to the laws of the State of New York.

34.     Upon information and belief, CJA owns a fifty (50%) percent interest in plaintiff Gallery
Development.

35.     Upon information and belief, JN Gallery, LLC, ("JN") is a limited liability company
organized pursuant to the laws of the State of New York.

36.     Upon information and belief, JN owns a fifty (50) percent interest in the plaintiff.

37.     Upon information and belief, Joseph Gentile ("Gentile") is an owner of CJA.

38.     Upon information and belief Gentile manages CJA.

39.     Gentile has held himself out to the plaintiff and Mr. Arezzo as the managing member of CJA.

5

Supreme Court Records OnLine Library -  page 5 of 22

40.     Upon information and belief, Stanley Perelman ("Perelman") is the 100% owner of and the managing member of JN.

41.     The plaintiff is the manager of The Gallery.

42.     Upon information and belief, Freemont Investment & Loan ("Freemont Bank") is a California industrial bank, with an address of 175 N. Riverside Drive, Anaheim, CA, that acquired a mortgage interest or interests in the Property.  Upon information and belief, 559 West Funding LLC now holds a mortgage interest or interests on the Property via an assignment from Fremont Bank subsequent to the recording by the JMA of a Lis Pendens against the Property.

43.     Upon information and belief, the plaintiff has caused or permitted the following entities to file mechanic's liens against the Property naming either The Gallery or the defendant JMA as a debtor:

a)      Gene Kaufman Architect PC has filed a lien on February 26, 2004 in the amount of $74,155.59 against the Property naming the The Gallery as a debtor;

b)      Abcon Builders Corp. has filed a lien on June 28, 2004 in the amount of $39,249.99 against the Property naming defendant JMA as a debtor;

c)      Abcon Builders Corp. has filed a lien on July 22, 2004 in the amount of $39,249.99 against the Property naming defendant JMA as a debtor;

d)      Ultra Construction has filed a lien on November 17, 2004 in the amount of $4,500,000.00 against the Property naming The Gallery as a debtor;

e)      VJB Construction … has filed a lien on November 19, 2004 in the amount of $48,865.14 against the Property naming the The Gallery as a debtor; and

6

Supreme Court Records OnLine Library -  page 6 of 22

f)      Peter Scalamandre & Sons, Inc. has filed a lien on November 19, 2004 in the amount

of $445,013.00 against the Property naming The Gallery as a debtor.

44.    Upon information and belief, some of the entities that have filed mechanic's liens are

affiliated to or related to the plaintiff.

45.    In or about 2001, the defendant JMA, along with Sedona began exploring options to develop

the Property.

46.    Sedona retained architect, Gene Kaufman, R.A., to develop plans and specifications, which

were submitted to the Department of Buildings of the City of New York and approved for the

construction of a new condominium apartment building (the "Project") on the Property.  The

approved plans are hereinafter referred to as (the "Approved Kaufman Plans").

47.    Sedona also commissioned the preparation and filing of an offering plan for the sale of

condominium apartments as part of the Project.

48.    In or about the summer of 2003 the defendant JMA and Sedona entered into negotiations

with Perelman and Gentile to form a venture whereby Perelman and Gentile would finance

and manage the development of the Property in accordance with the Approved Kaufman

Plans.

49.    Perelman and Gentile represented to the defendants JMA and Mr. Arezzo that they had the

financial resources, development experience and marketing experience to complete the

Project.

50.    On or about August 5, 2003, the plaintiff, defendant JMA and Sedona executed an operating

agreement (the "Operating Agreement") prepared by Perelman and Gentile, in connection

7

with the aforementioned limited liability company, known as The Gallery, to develop and market the Project.

51.   Pursuant to the terms of the Operating Agreement, among other things: a) defendant JMA contributed and deeded to The Gallery its one hundred percent ownership interest in the Property, which interest was valued at $2.2 million and which was free and clear of any mortgage liens.

52.   Also pursuant to the terms of the Operating Agreement, Sedona contributed a) the Approved Kaufman Plans to The Gallery, b) the Offering Plan, and c) its expertise and other valuable consideration that was all valued at five hundred and twenty five thousand ($525,000) dollars.

53.   The Operating Agreement provided for a budget (the "Budget") for the Project of ten million one hundred thousand dollars including the capital contribution of the Property by the defendant JMA that was valued at $2.2 million dollars.  It was agreed that the plaintiff was to obtain financing for the Project within the parameters set in the Operating Agreement.

54.   The Operating Agreement executed by the plaintiff further required that The Gallery was to utilize the Approved Kaufman Plans for the Project.

55.   The Operating Agreement also provided that the plaintiff would contribute an all cash/credit line of up to Two Million ($2,000,000) Dollars to, among other things, cover initial start up costs and to meet "on going costs and expenses of the Company (The Gallery) and the development of the Property.

56.   The Operating Agreement provides that all distributions, profits and losses shall be distributed as follows:  25% to JMA, 25% to Sedona and 50% to the plaintiff.

8

57.   In or about December of 2003, the plaintiff caused The Gallery to obtain construction loans from Freemont Bank (the "Freemont Loans") to finance the Project.

58.   The Freemont Loans were secured by the Property which the defendant JMA had contributed to The Gallery.

59.   Subsequent to obtaining the Freemont Loans and prior to commencement of construction on the Property or of the Project, the plaintiff entered into a series of agreements on behalf of the Gallery.

60.   Many of the agreements were not in the best interests of the Project.

61.   Many of the agreements were contrary to the Terms of the Operating Agreement.

62.   The plaintiff fired the architect Gene Kaufman.

63.   The plaintiff abandoned the Approved Kaufman Plans.

64.   The plaintiff substantially altered the design and specifications of the Project in favor of a purported new plan and a new design which included the addition of a cellar, even though the Project is located in a high water table area.

65.   Contrary to the terms of the Operating Agreement, the plaintiff used the The Gallery's funds and the proceeds of the Freemont Loans, to pay various expenses not directly related to the Project.

66.   The plaintiff incurred and paid expenses unrelated to the Project.

67.   The plaintiff paid itself and/or Gentile and Perelman fees contrary to the terms of the Operating Agreement.

9

Supreme Court Records OnLine Library - page 9 of 22

68.   In or about February of 2004, the plaintiff, acting through JN purported to call a special meeting of members of The Gallery to materially increase the Budget and to ratify the abandonment of the Approved Kaufman Plans.

69.   The defendant JMA objected to the proposed increase in the Budget because, among other things, the plaintiff had not funded the contributions that it was required to make and were instead squandering monies obtained in connection with and secured by the defendant JMA's capital contribution.

70.   The Operating Agreement required the unanimous consent of the members of The Gallery to materially increase the budget and to abandon the Approved Kaufman Plans. There was no unanimous consent.

71.   Even though there was no unanimous consent at the February 2004 meeting or otherwise, counsel to the plaintiff prepared a draft consent for signature.

72.   The draft consent was not signed or agreed to by JMA or by Sedona.

73.   In or about June of 2004, defendant JMA and Perelman and Gentile entered into discussions regarding a possible purchase of the JMA's interests in The Gallery.

74.   Perelman and Gentile and the plaintiff, through another entity, Coleson Management LLC ("Coleson"), agreed pursuant to a Sale and Purchase Agreement dated July 27, 2004, to purchase JMA's interest in The Gallery.

75.   The terms provided for the payment of the sum of $2.3 million to JMA with a proposed closing date of "on or about August 15, 2004 . . . [but] in no event . . . later than September 1, 2004 TIME BEING OF THE ESSENCE TO PURCHASER."

76.   Coleson defaulted on the Sale and Purchase Agreement.

10

Supreme Court Records OnLine Library - page 10 of 22

77.     On September 8, 2004 JMA sent a first notice to Coleson declaring a default under the Sale

and Purchase Agreement and granted Coleson an extension to close until October 1, 2004.

78.     On October 1, 2004, JMA sent a second notice to Coleson declaring a default under the Sale

and Purchase agreement.

79.     On October 15, 2004, JMA sent a notice to the plaintiff and its affiliates which demanded,

among other things, an accounting for the $2,000,000 which Perelman and Gentile, through

the plaintiff had agreed to contribute to the Project, and further demanded an accounting for

all uses and disbursements of the funds from the Freemont Loans to date.

80.     Upon information and belief, under the management of the plaintiff, Perelman and Gentile,

the Freemont Loans were declared by Freemont Bank to be in default due to among other

things, the failure of the plaintiff, Perelman and Gentile to make contributions as required

pursuant to the Operating Agreement for The Gallery.

81.     Upon information and belief, the plaintiff spent substantial proceeds of the Freemont Loans

to develop alternative plans to the Approved Kaufman Plans, which alternative plans have

now been abandoned ("Alternative Plans").

82.     Upon information and belief, the plaintiff has stopped construction of the Project.

83.     Upon information and belief, the plaintiff left the Project with a poured foundation which

was exposed to cold temperatures, submerged in water, at risk for cracking, and abandoned.

84.     Upon information and belief, an examination of the Project site on or about December 27,

2004, confirmed that the poured foundation was submersed in water, exposed to the elements

and that the site was unsecured and appeared abandoned.

11

Supreme Court Records OnLine Library - page 11 of 22

85.    Upon information and belief, the City of New York filled the excavated site which it had

deemed abandoned and hazardous.

86.    Upon information and belief, the plaintiff entered into a scheme and conspiracy with

Perelman, Gentile, JN and CJA, in breach of its fiduciary duties as the managing member of

The Gallery, to deprive JMA and Russell Arezzo of the benefits of their

membership/ownership interest in The Gallery, including (i) JMA's priority return of its

capital contribution of the Property to defendant The Gallery, which was valued at $2.2

million dollars; and (ii) that the plaintiff, Perelman and Gentile would contribute

construction and development costs and expenses of up to $2,000,000 to complete the

Project.

87.    Upon information and belief, in or about October, 2004, plaintiff communicated a threat to

Sedona that The Gallery would give a deed in lieu of foreclosure to Freemont Bank and

render the JMA's interest in the Gallery worthless.

88.    In or about November 2004, the plaintiff threatened to arrange for an affiliate to purchase the

Freemont Loans and/or have affiliated contractors file mechanic's liens so that affiliates

might then foreclose upon the Property thereby wiping out the interests of JMA; and leaving

the plaintiff and/or its affiliates free to develop the Property and convert for itself and/or its

affiliates all profits and payment of capital otherwise due to JMA.

89.    Since the closing of the Freemont Loans, the plaintiff and its affiliates have wasted the assets

of The Gallery by using proceeds of the Freemont Loans to (i) repay to themselves costs and

expenses which should have been contributed by plaintiff (ii) expended substantial sums to

develop the Alternative Plans which replaced the Approved Kaufman Plans and were never

12

Supreme Court Records OnLine Library - page 12 of 22

implemented, (iii) developed for an unknown purpose, a website at a cost in excess of
$90,000; (iv) added a cellar to the Project which was not a part of the Approved Kaufman
Plans, which cellar has caused substantial cost overruns and delays to the Project; (iv) paid
the personal legal fees of Gentile and Perelman, and (v) otherwise improperly and unjustly
enriched themselves.

90.   As of the filing of this complaint, the plaintiff and its affiliates have refused to voluntarily
give the defendants JMA and Mr. Arezzo an accounting of the $2,000,000 which plaintiff
was required to contribute to the Project.

91.   As of the filing of this complaint, no accounting has been provided as to funds borrowed
from Freemont Bank and disbursed to or used by the plaintiff or any of its affiliates.

92.   On December 11, 2003, the defendant JMA contributed and deeded the Property to The
Gallery in accordance with the terms of the Operating Agreement for The Gallery.

93.   Upon information and belief, the plaintiff obtained financing from Freemont Bank on or
about December 12, 2003 and caused the Property to be mortgaged for an amount in excess
of seven million dollars.

94.   To induce the defendant JMA to contribute and deed the Property to Gallery Development,
Perelman and Gentile falsely and fraudulently stated and represented to the defendant JMA
and Mr. Arezzo that the plaintiff and Perelman, Gentile had the financial resources and
construction and marketing expertise to undertake the Project.

95.   The plaintiff promised the defendant JMA, and Gentile and Perelman specifically represented
to JMA that the plaintiff would contribute "all cash/credit line up to Two Million Dollars

13

Supreme Court Records OnLine Library -  page 13 of 22

($2,000,000) required ... to meet the ongoing costs and expenses of the Company and the development of the Real Property.

96.    The plaintiff committed a fraud upon the defendants JMA and Mr. Arezzo in that it never intended to contribute the cash required to meet ongoing costs and expenses, and has failed to do so and as a result thereof, the Project has come to a halt.

97.    The Gallery was, upon information and belief, declared in default in connection with the Freemont Loans.

98.    At the direction of the plaintiff, and its members/affiliates, and without the consent of the defendants, the Gallery refinanced the Fremont Loans with, upon information and belief, 559 West 23rd Funding, LLC and borrowed additional monies secured by the Property.

99.    Upon information and belief, in connection with the refinancing, the plaintiff paid off the Fremont Loans which were in default, borrowed additional funds and improperly distributed loan proceeds to Gentile and Perleman.

100.    Upon information and belief, as a result of the refinancing, the Property was further encumbered with liens that the defendants did not consent to.

101.    The plaintiff has improperly declared that JMA's membership interest in The Gallery was terminated and forfeited by a purported notice to that effect dated December 15, 2004 signed by the plaintiff.

102.    The defendants JMA and Mr. Arezzo, at the time representations were made by the plaintiff, and/or Gentile and/or Pereleman, did not know the truth, but believed that the representations of the plaintiff to be true and relied upon them and were thereby induced to contribute and deliver the Property to The Gallery.

14

Supreme Court Records OnLine Library -  page 14 of 22

103.    Plaintiff has caused or permitted various contractors/entities to place mechanic's liens on the

Property.

104.    The defendants JMA and Mr. Arezzo have no adequate remedy at law.

105.    By reason of the foregoing, the defendants JMA and Mr. Arezzo demand the rescission of

JMA's contribution of the Property to The Gallery, and to have the status quo restored such

that The Gallery, Perelman and Gentile, Gallery Development, CJA and JN should be

ordered and directed to transfer title to the Property back to JMA, free and clear of any and

all liens or encumbrances.

## AS A ELEVENTH AFFIRMATIVE DEFENSE
## AND SECOND COUNTERCLAIM

106.    The defendants JMA and Mr. Arezzo repeat and reallege each and every allegation set forth

in paragraphs 25 to 104 of their counterclaims as if set forth in their entirety.

107.    The plaintiff has breached its obligations under the Operating Agreement by failing to

contribute $2,000,000 in cash/credit line to The Gallery, abandoning the Approved Kaufman

Plans, adding a cellar to the Project which has resulted in substantial costs, delays and

engineering problems, intentionally delaying the Project through the repeated firings of

construction managers and other personnel and then abandoning and/or threatening to

abandon the Project.

108.    By reason of the foregoing the defendants JMA and Mr. Arezzo demand judgment against

the defendant Gallery Development in an amount to be established at trial, but at least two

million two hundred thousand ($2,200,000) dollars.

15

## AS A TWELFTH AFFIRMATIVE DEFENSE
## AND THIRD COUNTERCLAIM

109.    The defendants JMA and Mr. Arezzo repeat and reallege each and every allegation set forth in paragraphs 25 to 104, and 107 of their counterclaims as if set forth in their entirety.

110.    Pursuant to among other things, the Operating Agreement and the terms of Section 502 of the New York Limited Liability Company Law, the plaintiff is obligated to contribute $2,000,000 in cash/credit line to The Gallery, and has failed to do so.

111.    By having induced the defendant JMA to contribute valuable property The Gallery, but not making its own requisite contribution to The Gallery, plaintiff has been unjustly enriched in that it became the effective owner of 51% of the Property for no consideration.

112.    By reason of the foregoing, defendants JMA and Mr. Arezzo are entitled to an order (i) substituting JMA and Mr. Arezzo as the managing members of The Gallery, and (ii) imposing a constructive trust for the benefit of JMA upon all right title and interest of the plaintiff in The Gallery, and (iii) an order directing the plaintiff to transfer all of its right, title and interest in The Gallery to the defendant JMA.

## AS A THIRTEENTH AFFIRMATIVE DEFENSE
## AND FOURTH COUNTERCLAIM

113.    The defendants JMA and Mr. Arezzo repeat and reallege each and every allegation set forth in paragraphs 25 to 104, 107 and 108 and 110 to 111 of their counterclaims as if set forth in their entirety.

16

Supreme Court Records OnLine Library -  page 16 of 22

114.    The defendant JMA has demanded that the plaintiff account to it for (i) its capital contribution of $2,000,000 as required by the terms of the Operating Agreement, and (ii) the use of proceeds of the Freemont Loans.

115.    The plaintiffs have refused to account to the plaintiff or voluntarily make the books and records of The Gallery available to the plaintiff for examination.

116.    By reason of the foregoing the defendants JMA and Mr. Arezzo respectfully submit that they are entitled to an order directing the plaintiff to immediately account to them for any contributions to The Gallery and the use of the proceeds of any of the Freemont Loans or any other loans secured by the Property.

## AS A FOURTEENTH AFFIRMATIVE DEFENSE
## AND FIFTH COUNTERCLAIM

117.    The defendants JMA and Mr. Arezzo repeat and reallege each and every allegation set forth in paragraphs 25 to 104, 107, 108 and 110 to 111 and 114 to 115 of their counterclaims as if set forth in their entirety.

118.    The plaintiff, in its capacity as Managing Member has engaged in a consistent pattern of waste of the assets, cash and credit of The Gallery by: (i) expending substantial sums to develop the Alternative Plans which replaced the Approved Kaufman Plans and were never implemented, as well as, developing a website for some unknown purpose at a cost in excess of $90,000; (ii) adding a cellar to the Project which was not a part of the Approved Kaufman Plans, which cellar has caused substantial cost overruns and delays to the Project; and (iii) causing affiliates to file mechanic's liens against the Property.

17

119.  By reason of the foregoing, the defendants JMA and Mr. Arezzo are entitled to judgment against the plaintiff in an amount to be established at trial, but at least two million two hundred thousand ($2,200,000) dollars.

## AS A FIFTEENTH AFFIRMATIVE DEFENSE
## AND SIXTH COUNTERCLAIM

120.  The defendants JMA and Mr. Arezzo repeat and reallege each and every allegation set forth in paragraphs 24 to 104, 107 and 108, 110 to 111, 114 to 115 and 118 of their counterclaims as if set forth in their entirety.

121.  The defendant JMA owns a 24-1/2% interest in the Gallery and is entitled to 25% of any distributions and profits pursuant to the terms of the Operating Agreement.

122.  On December 17, 2004 JMA received a termination notice (the "Termination Notice") from The Gallery purporting to terminate JMA's membership interest in The Gallery.

123.  The Termination Notice cited no grounds for the purported termination of the JMA's membership interest.

124.  The Termination Notice was signed by plaintiff's counsel Christopher Thompson on behalf of the plaintiff, CJA Gallery LLC and The Gallery at Chelsea LLC.

125.  By letter dated December 22, 2004, JMA objected to the Termination Notice and in its response demanded access to the books and records of The Gallery.

126.  The plaintiff refuses to grant the defendant JMA or Mr. Arezzo access to the books and records of The Gallery.

127.  The plaintiff intends to permanently deprive the defendant JMA of its valuable membership interest in The Gallery for no consideration.

18

Supreme Court Records OnLine Library - page 18 of 22

128.    By reason of the foregoing, the defendants JMA and Mr. Arezzo demand judgment against

the plaintiff for conversion of its membership interests in an amount to be established at trial,

but at least two million two hundred thousand ($2,200,000) dollars.

WHEREFORE, the defendants demand judgment (a) dismissing the plaintiff's Amended

Complaint in its entirety and (b) awarding the defendants JMA and Mr. Arezzo judgments as

indicated on their counterclaims and awarding the defendants counsel fees, interest, the costs and

disbursements of this action, and such relief as is just and proper.

Dated:  December 27, 2006

> Yours, etc.
> D'Agostino, Levine & Landesman, LLP
>
> By:_____
>     George Tzimopoulos, Esq.
>     Attorneys for the Defendants,
>     JMA Auto Tech Corp., Russell Arezzo
>     D'Agostino, Levine & Landesman, LLP
>     345 Seventh Avenue, 23rd Floor
>     New York, New York 10001
>     Tel: (212) 564-9800

To:    Christopher Thompson & Associates, P.C.
       Attorneys for Plaintiff
       Office and Post Office Address
       P.O. Box 824
       Melville, NY 11747
       (631) 249-9500

       David S. Frydman
       Attorney for Defendants
       The Sedona Group, LLC, Toni Coburn
       And Stephen McArdle
       18 East 48th Street – 10th Floor
       New York, New York 10017
       (212) 355-9100

19

Supreme Court Records OnLine Library - page 19 of 22

## *ATTORNEY'S VERIFICATION*

*STATE OF NEW YORK*     )
                             ) *ss.:*
*COUNTY OF NEW YORK*     )

*George Tzimopoulos, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following under the penalties of perjury:*

*I am Of Counsel to D'Agostino, Levine & Landesman, LLP, attorneys for JMA Auto Tech Corp., a defendant in this action. I have read the foregoing and know the contents thereof it is true to my knowledge, except as to those matters alleged upon information and belief and as to those matters I believe them to be true.*

*The grounds of my beliefs as to all matters not stated upon my knowledge are discussions with the defendant s representatives, review of correspondence and records of the defendant and my review of our files regarding the matters at issue.*

*This verification is made by me and not the defendants JMA Auto Tech Corp. and Russell Arezzo, because they are not located in the county were my law office is.*

*Dated:*     *New York, New York*
              *December 27, 2006*

                                    *George Tzimopoulos*

G:\Tzimopoulos\Arezzo\Attorney's Verification.wpd

## AFFIDAVIT OF SERVICE BY PERSONAL SERVICE

STATE OF NEW YORK     )
                                ) ss.:
COUNTY OF NEW YORK   )

BROOKE ESTREN, being duly sworn deposes and says:

I am not a party to the action, am over 18 years of age and reside in New York County,

New York.

On December 28, 2007, I served the within ANSWER WITH COUNTERCLAIMS TO

PROPOSED AMENDED COMPLAINT DATED MARCH 10, 2006, by depositing a true copy

thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and

custody of the U.S. Postal Service with New York State, addressed to each of the following

persons at the last known address set forth after each name.

TO:    Christopher Thompson & Associates, P.C.
         P.O. Box 824
         Melville, NY 11747
         (631) 249-9500

         David S. Frydman
         18 East 48th Street – 10th Floor
         New York, New York 10017
         (212) 355-9100

                                            Brooke Estren

Sworn to before me this 28th
day of December, 2007.

Notary Public

G:\Tzimopoulos\Arezzo\Affidavit of Service.answer with counterclaims to amended.wpd

GEORGE TZIMOPOULOS
Notary Public, State of New York
No. 02TZ4984234
Qualified in Nassau County
Commission Expires July 15, 1997 2007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
THE GALLERY DEVELOPMENT GROUP, LLC,

                            Plaintiffs,

          -against-

THE SEDONA GROUP, LLC, TONI COBURN,
STEPHEN MCARDLE, JMA AUTO TECH CORP.,
D'AGOSTINO, LEVINE & LANDESMAN, LLP,
JOHN D'AGOSTINO, MICHAEL SIMON
AND RUSSELL AREZZO,

                          Defendants.

-----------------------------------------------------------------------X

INDEX NO. #604425/

**ANSWER WITH
COUNTERCLAIMS
TO PROPOSED
AMENDED COMPLAINT
DATED MARCH 10, 2006**

D'AGOSTINO, LEVINE & LANDESMAN, LLP
Attorneys for the Defendants
JMA Auto Tech Corp., Russell Arezzo,
D'Agostino, Levine & Landesman, LLP and John D'Agostino
345 Seventh Avenue, 23rd Floor
New York, NY 10001
Tel:  (212) 564-9800
Fax: (212) 564-9802

Supreme Court Records OnLine Library - page 22 of 22