# **EXHIBIT C**

## LEASE AGREEMENT

This LEASE AGREEMENT (this "Lease") is made as of the 1st day of January, 2023 by and between

    Lessor:      SUPOR PROPERTIES BERGEN AVE, LLC
                      433 BERGEN AVE
                      KEARNY, NJ, 07032

    Lessee:      AND

                      TeamDream Inc.
                      193 Park Avenue, Unit 313,
                      E Rutherford, NJ 07073;
                      Executive Office address:
                      401 Supor Blvd, First Floor,
                      Harrison NJ 07029 and
                      433 Bergen Avenue, Kearny NJ 07032

1.    Lessor. Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, those certain premises situated in the Town of Kearny, County of Hudson, State of New Jersey, consisting of warehouse and office space located at 433 Bergen Ave, Kearny, New Jersey.

2.    Term. This lease shall be effective as of January 1st, 2023, the "Commencement Date") and expire on the 10tht anniversary of the Commencement Date with a ten-year option to renew (such datebeing referred to as the "Maturity Date"), subject to the sooner termination of this lease inaccordance with the terms hereof (the "Term"). Notwithstanding the above, it is agreed that if thePremises is transferred at or post- foreclosure, any successor Lessor has the right to terminatethis lease immediately or keep it in place.

3.    Rent. Beginning as of January 1, 2023, through and including the Maturity Date, Lessee shall pay to Lessor monthly a flex lease amount of up to $175,000.00 for PO warehousing and distribution services on the Premises ("Rent"). Payment is due on or before the 1st day of each calendar month.

4.    Net Lease. Notwithstanding the foregoing, Lessee shall have no obligation to pay (a) any interest or principal due or to become due under any mortgage, (b) any mortgage recording taxes or other fees, costs, charges or other amounts due or to become due under or in connection with any mortgage, (c) any federal, state or local income taxes, franchise or similar taxes, capital

1

levy taxes, profit taxes, succession or inheritance tax or inheritance taxes, gift taxes, capital stock taxes, estate taxes or similar taxes imposed upon Lessor, (d) any transfer taxes or other amounts arising out of Lessor's sale, transfer or other exploitation of its interest in the Premises or this

Lease or (e) any amounts which Lessor has expressly agreed to pay pursuant to this lease. Under the terms of this lease, Lessee shall be responsible for, among other expenses operating charges, taxes and insurance as follows (collectively referred to as "Additional Rent", and together with Base Rent, collectively, "Rent"):

      (a)    *Operating Charges.* Lessor shall not pay any expenses in connection with the ownership and operation of the Premises, including, without limitation, water, sewer and other utility charges and electricity charges, insurance premiums, management fees, costs of service and maintenance contracts, maintenance, repair and replacement expenses, costs of compliance with laws or insurance requirements whenever enacted or imposed, charges for janitorial services.

      (b)    *Insurance.* Lessee shall be responsible for paying for and maintaining insurance coverages on the Premises throughout the term of this Lease in accordance with the coverages set forth on Exhibit "B" annexed hereto.

      (c)    *Technology.* Internet and technology will be responsible by the Lessee.

For clarity purposes, in the event any charge assessed as Additional Rent applies to all the Premises, Lessee shall only be responsible for its pro rata portion of such charge.

5.    <u>Interest & Late Charges.</u> If Lessee shall fail to pay any Rent or any other charge due under this Lease when the same is due and payable, Lessee shall, upon demand, pay Lessor interest at the rate of 12% per annum on the unpaid amount from the due date thereof until paid. In addition to any interest charges due on account thereof, if Lessee shall fail to make payment of any Rent or any other charge due under this Lease to Lessor within three (3) days after the date said amount was due, upon demand Lessee shall pay Lessor a late charge of four percent (4%) of the overdue amount, but not less than Fifty Dollars ($50.00), which late charge shall become immediately due and payable. The aforesaid interest and late charges shall not limit Lessor's other rights and remedies provided for herein on account of Lessee's failure to make payment when due.

6.    <u>Maintenance: Insurance: Liens: Compliance with Law, Operation of Business & Utilities.</u>

    A.    Lessee shall keep the Premises in good condition and repair, and shall obey all laws, ordinances and regulations affecting the Premises and the conduct of Lessee's business.

2

B. Lessee shall, at Lessee's expense, comply with all of the requirements of all governmental authorities and Lessor's hazard insurer pertaining to the Premises and the conduct of Lessee's business.

C. Lessee shall not suffer any mechanic's liens or materialmen's liens to be filed against the Premises or any part thereof.

D. Lessor shall have the right to enter upon the Premises at reasonable times, or at any time in case of an emergency, to examine the Premises, to do anything Lessor may be required to do under this Lease.

7. <u>Alterations and Tenant Improvement.</u> Lessor shall be responsible for making any alterations, decorations, additions, improvements, or other changes in or to the Premises. Lessee agrees to accept the Premises "AS IS" in its current condition. Lessee acknowledges that Lessee has had an opportunity to inspect the Premises and is familiar with the condition of the Premises. Lessee shall not make any alterations to the Premises without obtaining Lessor's prior written consent thereto.

8. <u>Signage.</u> Upon Lessor's consent, Lessee, at its expense, shall have the right to construct and maintain signage at the Premises. Lessee shall be required, at its expense, to maintain and replace, when necessary, any and all signage on the Premises, all in accordance with all laws, ordinances, rules and regulations of applicable governmental authorities.

9. <u>Access.</u> Lessor shall provide Lessee with keys and other means of access to the Premises.

10. <u>No Assignment.</u> Lessee shall not assign, transfer, or encumber this Lease or sublet all or any portion of the Premises or allow anyone else to use the Premises without the prior consent of Lessor in each instance

11. <u>Surrender, Removal and Restoration by Lessee.</u> On the last day of the Term or on the termination of this Lease, Lessee shall, at its expense, (i) peaceably surrender the Premises, broom-clean and in good order, condition, and repair, and (ii) at Lessee's expense, remove from the Premises all of Lessee's property. Lessee's obligations under this paragraph shall survive the expiration of the Term or the termination of this Lease. For each day that Lessee remains at the Premises after the Term without Lessor's written consent, Lessee shall be liable for the amount of Rent as provided for under this Lease computed on a daily basis.

12. <u>Default and Termination.</u> (a) Lessor may terminate this Lease and take possession of the Premises upon the default by Lessee of any covenant, term or condition hereof, provided Lessee first receives written notice of such default and fails to remedy same, within ten (10)

business days if a monetary default or within thirty (30) days if a nonmonetary default, after receipt of written notice thereof, or if the Lessee fails to commence remedying such non-monetary default within said thirty (30) day period if such default cannot be reasonably remedied within thirty (30) days. If Lessor takes possession of the Premises in accordance herewith, Lessor (a) shall be entitled to retain all prepaid Rents and to recover damages from Lessee on account of Lessee's default as provided by law, (b) shall be entitled to receive payment from Lessee for the total Rent due and payable to Lessor under this Lease for the full Term as though this Lease has not been terminated; and (c) may remove all of Lessee's property from the Premises and store the same in a public warehouse or elsewhere at the cost of, and for the account of, Lessee, without becoming liable for any loss or damage which may be occasioned thereby.

(b) Except as otherwise expressly provided herein, Lessee shall have no right to terminate this Lease. In the event that Lessee does terminate this Lease, however, Lessee shall be responsible for payment of all Rent due and payable to Lessor for the entire Term.

13. <u>Claims and Indemnification</u>. Lessor shall not be liable to Lessee in the event of damage to Lessee's property, both personal and otherwise, or for injuries or death of any person or injury to other Lessee-authorized employees, invitees, occupants, agents or users of the Premises, if such injuries arise from any act of negligence or omission of Lessee or Lessee-authorized invitees. Lessor shall not otherwise be liable for personal injuries or death of any employees or Lessee or any Lessee-authorized invitees or for any damage done to, or loss of, property, or for any damage or loss suffered by the business income or occupation of Lessee arising from any negligent act or negligence of third parties, or from any condition of the Premises unless such injury, death, loss or damage resulted from the negligence or omission of Lessor. This obligation shall not be construed to negate, abridge, or otherwise reduce insurance requirements or other rights or obligations of indemnity which otherwise exist as to Lessee. Lessee's obligations under this paragraph shall survive the expiration of the Term or the termination of this Lease.

14. <u>Attorneys' Fees</u>. If Lessor shall engage an attorney to enforce or defend its rights under this Lease, Lessee shall pay Lessor's reasonable attorneys' fees and expenses, including court costs, regardless of whether legal proceedings are commenced.

15. <u>Lessor's Right to Cure Defaults</u>. Notwithstanding anything to the contrary contained herein, if Lessee fails to perform any obligation on its part to be performed under this Lease, Lessor shall have the right, but not the obligation, (i) if no emergency exists, to perform the same after giving twenty-four (24) hours' notice to Lessee; and (ii) in any emergency situation, to perform the same immediately without notice or delay. Lessee shall on demand reimburse Lessor for the costs and expenses incurred by Lessor in rectifying Lessee's defaults as aforesaid, including reasonable attorneys' fees.

16. <u>Waiver</u>. The waiver by Lessor of any breach of any term, covenant, or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition herein contained.

4

17. <u>Applicable Law.</u> The laws of the State of New Jersey in which the Premises is located shall govern the validity, performance, and enforcement of this Lease.

18. <u>Notices.</u> All notices, consents, approvals, requests, demands, and other communications (collectively, "Notices") which may or are required to be sent, delivered, given or obtained pursuant to the terms of this Agreement shall be in writing and shall be given either by hand delivery, by prepaid United States certified mail, or by a reputable overnight delivery service that guarantees next day delivery and provides a receipt. All Notices shall be addressed to the parties at their respective addresses set forth on the first page of this Agreement, as same may be changed from time to time. Either party may, by Notice in the manner provided above, change its address for all subsequent Notices. All Notices given by certified mail shall be deemed given two
(2) business days after they are so mailed. All Notices given by overnight delivery or hand delivery shall be deemed given on delivery. A party's failure or refusal to accept service of a Notice will constitute delivery of the Notice.

19. <u>Survival of Obligations.</u> Any obligation of Lessee, which by its nature involves performance after the end of the Term, shall survive the expiration of the Term or the termination of this Lease.

20. <u>Casualty Damage and Condemnation.</u> If all or any part of the Premises is damaged by fire or any other cause or is taken through the exercise of eminent domain or by conveyance in lieu thereof, Lessor shall have the right to terminate this Lease upon notice to Lessee. If this Lease is not so terminated, Lessee's obligations under this Lease shall remain in full force and effect unless such event prevents Lessee from fully utilizing the Premises for its permitted use in accordance with the terms of this Lease, in which case the Rents payable under this Lease shall be equitably abated. If the Premises or any part thereof shall be damaged by fire or other casualty, Lessee shall give prompt written notice thereof to Lessor, and shall deliver any and all insurance proceeds payable as a result of any such casualty to Lessor. Lessor shall be entitled to receive the entire award for any such acquisition or condemnation of all or any part of the Premises. Lessee shall have no claim against Lessor or the condemning authority for the value of any unexpired portion of the Term, and, accordingly, Lessee hereby expressly assigns to Lessor all of its right in and to any such award. Nothing contained in this Section "21" shall be deemed to prevent Lessee from making a separate claim in any condemnation proceedings for the value of any personal property belonging to Lessee included in such taking.

5

moving costs incurred by Lessee, etc.

21.   <u>Entire Lease.</u> This Lease contains the entire agreement between the parties and maybe modified only by a writing signed by the parties hereto. If one or more provisions of this Lease shall be held to be invalid and unenforceable for any reason, the remaining provisions shall not be affected and shall be construed as if the invalid or unenforceable provision had never been contained in this Lease. The provisions of this Lease shall bind and inure to the benefit of the parties and their legal representatives, successors and permitted assigners.

22.   <u>Subordination and Estoppel.</u> This Lease is subject and subordinate to the lien, provisions, operation and effect of all mortgages, deeds of trust, ground leases, master leases, operating leases or other security instruments which may now or hereafter encumber the Premises (each, a "Mortgage"), to all funds and indebtedness intended to be secured thereby, and to all renewals, extensions, modifications, recasting's or refinancing thereof. The holder of a Mortgage to which this Lease is subordinate shall have the right (subject to any required approval of the holder of any other Mortgage) at any time to declare this Lease to be superior to the lien, provisions, operation and effect of such Mortgage. Lessee, at any time, and from time to time, upon at least ten (10) day prior notice by Lessor, shall execute, acknowledge and deliver to Lessor, and/or to any other person, firm or corporation specified by Lessor, a statement certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the Base Rent and Additional Rent have been paid, stating whether or not, to the knowledge of Lessee, there exists any default by Lessor under the Lease, and, if so, specifying each such default and such other information as shall be reasonably required of Lessee.

23.   <u>Leasehold Financing.</u> Lessee shall not encumber its leasehold estate in the Premises, by means of a leasehold mortgage, deed of trust, pledge or similar security instrument.

24.   <u>Hold Over.</u> In the event Lessee shall remain in possession of the Premises after the Term of this Lease without having executed a new written lease or extension agreement with Lessor, such holding over shall be from month to month, subject to all the terms and conditions of this Lease except that the Base Rent shall be 105% of the then current Base Rent.

25.   <u>Severability.</u> If any term, covenant, condition or provision of this Lease, or the application thereof to any person or circumstance, shall to any extent be held by a court of competent jurisdiction to be invalid, void, or enforceable, the remainder of the terms, covenants, conditions or provisions of this Lease or the application thereof to any person or circumstance shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.

26.   <u>Liens.</u> Lessee shall not permit to be enforced against the Premises mechanics', materialmen's, contractors' or other liens arising from, or any claims for damages growing out of any work, repair or alterations performed by Lessee, materials furnished to or obligations incurred by Lessee, and Lessee shall pay or cause to be paid all of said liens and claims before any action is brought to enforce the same against   Lessee, Lessor or the Premises. In the event that any action is brought to enforce same against Lessee, Lessor or the Premises, Lessee shall be solely responsible for any and all costs, including but not limited to attorneys' fees, incurred by Lessor in association with litigation of such action or actions.

27. **Miscellaneous.**

    A.    Subject to the terms of this Lease, Lessee shall be entitled to quiet enjoyment of the Premises so long as Lessee is not in default hereunder.

    B.    Nothing contained in this Lease shall be deemed or construed by the parties or by any third party to create the relationship of principal or agent or a partnership or a joint venture between the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Lease the date first above written.

LESSOR:

SUPOR PROPERTIES BERGEN AVENUE LLC.

By: _____
    Name: Joseph Supor III
    Title: Trustee of the Marital Trust of Joseph Supor Jr.

LESSEE:

TeamDream Inc.

By: _____
    Name: TeamDream Inc.
    Authorized Signature
    Title:

## EXHIBIT "A"

### INSURANCE REQUIREMENT BY LESSEE:

$1,000,000 with a $2,000,000 umbrella

Lessee shall, at its sole cost and expense, secure and maintain general liability insurance written on a so-called comprehensive general liability form with respect to any liability for injury to persons or property or death of persons occurring in or about the Premises, with death and bodily injury limits of not less than combined single limit of $1,000,000 with a $2,000,000.00 umbrella per occurrence and with Lessor named as an additional insured. Lessee shall furnish to Lessor a certificate of the insurance carrier evidencing said coverage and providing that in the event of termination or material change in coverage, Lessor shall receive ten (10) days advance written notice thereof.

affairs order, lien or encumbrance of any kind.

At fair as a material term or condition or this final agreement which includes a leasehold purchase option right of second (2nd), last, and 3rd party option to purchase. As stated above, a distribution services PO / PPO agreement for TeamDream Inc. products which is exclusively managed by TeamDream Inc., its management team, contractors and/or executives.

**SUPOR PROPERTIES BERGEN AVENUE LLC**

By: _____

Name: 5-16-2023

Kevin Cassidy

Title: Global International Advisors LLC advisor to Lessor

**LESSEE:**

TeamDream Inc.

By: _____

Name: TeamDream Inc.

Authorized Signature

Title: Chairman

5/16/23

# LEASE AGREEMENT
# ADDENDUM "A"

No other agreement or legal affair unrelated to the specific lease and its Addendum A (this addendum) collectively, final agreement, shall have any binding or enforceable effect between the parties whatsoever even if any party named or indicated to either party is relative.

1. Insurance: The insurance and coverage set forth above hereto shall not be required or due until such time that Lessee first initially places merchandise for PPO distribution or have employees, management team contractors or agents actually working at the subject premises even though the space is hereby granted effective January 1, 2023, and no rent is due.

2. Rent: The rent set forth above hereto shall not be required or due until such time that Lessee has first initially placed merchandise for PPO distribution or have employees, management team contractors or agents actually working at the subject premises even though the space is hereby granted effective January 1, 2023 and no rent is due.

3. Legal Matters: Lessor or any successor in interest into such time as all legal matters and actions of Lessor and Lessee related parties are fully adjudicated or reconfirmed to the satisfaction of Lessee counsel of choice. Should the same not be resolved, Lessee shall be entitled to any or all damages resulting from any delay caused by Lessor for its costs. Expenses and inability to fully utilize and the contemplated, and agreed to distribution services, if there is any uncured process distribution order, unrelated legal matter or actions (not fully adjudicated to the furthest extent of the law) by on or before June 1, 2023 dollar for dollar, without exception.

4. NDA – Non-Circumvent: All matters controlled herein apprising from or related to must be kept confidential by lessor and its management team or final advisors and professionals. Relative interest of Team Dream Inc or AD3D – ADND Corp shall not be circumvented in any way, shape or form.

   It is agreed and understood that Team Dream Inc. management and executives are held to a confidentially and non-circumvent agreement from its/their distribution regions both Team Dream Inc and AD3D – ADND Corp. to strictly abide to for a period of seven (7) years from execution of the same.

5. Option to Purchase: If for any reason there shall be an adverse judication of any sort or a sale of the subject site, lessee shall have the second (2nd) and last option to purchase the site for an agreed upon amount but the _meeting tenant entity_ shall have 1st option to purchase.

   Lessee shall also have at least sixty (60) days to match any other bona fide purchase offer including that of the lender (Supor) or any assignees, successor(s) or assumes of any kind company tenant and any lender or 3rd party all such from the relative or arising from any agreement, judgement, offer or any business or legal affairs adjudication order or legal